Charles Field (CA Bar No. 189817)
cfield@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, Suite 1100
San Diego, California 92103
Telephone: (619) 577-4252

Kate Mueting (DC Bar No. 988177)
*pro hac vice*
kmueting@sanfordheisler.com
Dacey Romberg (DC Bar No. 90003767)
(*pro hac vice* application forthcoming)
dromberg@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206

Christopher Owens (MD Bar No. 220280004)
*pro hac vice*
cowens@sanfordheisler.com
Samone Ijoma (MD Bar No. 2012170086)
(*pro hac vice* application forthcoming)
sijoma@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, Maryland 21202
Telephone: (410) 834-7422

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, | Case No. 3:23-cv-03461-TLT |
| Plaintiffs, | **DECLARATION OF COURTNEY MCMILLIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR NOTICE OF SUIT** |
| v. | |
| X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does, | |
| Defendants. | Case No. 3:23-cv-03461-TLT |

I, Courtney McMillian, declare as follows:

1.  I was the Head of People Experience at Twitter. I was employed at Twitter from August 2020 through my separation date of January 4, 2023.

2.  I was informed of my termination from Twitter on November 4, 2022.

3.  I attest that the separation agreement is the true and authentic document that I received upon my termination.

4.  I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 1st day of December 2023.

DATED: December 1, 2023                        Respectfully submitted,

*Courtney McMillian*
Courtney McMillian (Dec 1, 2023 16:11 MST)

Courtney McMillian

Case No. 3:23-cv-03461-TLT

**DECLARATION OF COURTNEY MCMILLIAN IN SUPPORT OF PLAINTIFFS'
MOTION FOR NOTICE OF SUIT**

2

Exhibit 1

# Twitter, Inc.
## Separation Agreement and Release of All Claims

You, Courtney McMillian, and Twitter, Inc. (the "Company" or "Twitter") agree to the following terms and conditions concerning your separation and the compensation you will receive in exchange for your promises as set out below. You and the Company are sometimes individually referred to as a "Party" or, collectively, the "Parties" to this Twitter, Inc. Separation Agreement and Release of All Claims (this "Agreement").

If before the anticipated Separation Date, (i) Twitter terminates your employment for good reason (including but not limited to violating this Agreement or engaging in any activity that would create a conflict of interest or breach your duty of loyalty to the Company), or (ii) you obtain another position at Twitter or any Twitter subsidiary, or (iii) you resign, you understand and agree that the payment due to you under Paragraph 2(a) will be reduced to the total gross sum of $500.00, which will constitute sufficient consideration to support all promises made under this Agreement, and that you will not be entitled to any further consideration to support this Agreement.

1. <u>Separation Date</u>. On 11/04/2022 ("Notification Date"), you received notice that your final day of employment with the Company will be 01/04/2023 ("Separation Date"). From the Notification Date to the Separation Date ("Notice Period") you understand and agree that you were relieved of duties and your access to systems was turned off ("Nonworking Notice Period"), and you continued to be employed but were free to actively pursue new professional opportunities not in conflict with your duty of loyalty to the Company, or Company policy, including but not limited to the Company Code of Conduct. During the Nonworking Notice Period, you acknowledged and agreed to (i) assist in the transition of your duties and provide information to the Company, upon request, and (ii) comply with the terms and conditions in this Agreement as well as Company policies, including the Company Code of Conduct; any failure to do so would result in the acceleration of your Separation Date, and reduction of the payment due to you under Paragraph 2(a) as set forth in the introductory paragraph. As of the Separation Date, you will not represent yourself to be associated in any capacity with the Company or any other Releasee (as defined below).

2. <u>Payments and Benefits</u>.

    a. Provided that this Agreement becomes effective in accordance with its terms and you comply at all times with this Agreement, the Company shall provide you with a total gross cash payment of Thirty-One Thousand Two Hundred Fifty Dollars & Zero Cents Dollars ($31,250.00), less all applicable withholdings and deductions required by law or indebtedness to the Company, which shall be paid to you within forty-five days following the Effective Date, as such term is defined in Paragraph 24, provided that you have satisfied all of the requirements in this Agreement.

    b. As a condition to receiving the payments set forth in this Paragraph 2(a), you must: (i) execute this Release by the deadline set forth in it; (ii) return all Company assets in your possession; (iii) reconcile all expenses and pay off any personal charges on your corporate credit card (if you have one); and (iv) repay all deficits (including, but not limited to, commission deficits if you are a commissionable employee) and debts owed to the Company.

    c. Any amounts required or authorized to be withheld or deducted by law, including applicable federal, state, and local withholding taxes, will be withheld or deducted from any amounts payable under this Agreement.

    d. During the Nonworking Notice Period, the Company provided you with your current (i) base pay through the Separation Date in accordance with the Company's usual payroll practices, less applicable withholdings and deductions, and (ii) any employee benefits to which you were entitled and were receiving as of the Notification Date (including but not limited to medical benefits, if applicable), through the Separation Date (collectively, "Nonworking Notice Period Benefits"). Your final paycheck will be provided on the Separation Date or the next payroll period pursuant to applicable local law.

3. <u>Health Benefits/COBRA</u>. For purposes of your eligibility to continue your health care benefits as an employee of the Company, your eligibility will terminate as of the last day of the month in which your Separation Date falls. Thereafter, you and any eligible dependents may elect to continue medical care coverage under the Company's group health care plans pursuant to your rights under COBRA. Your rights to COBRA benefits are set by law, and not determined or affected by this Agreement.

4. <u>General Release and Waiver of Claims</u>.

a. You, for and on behalf of yourself and your heirs, executors, administrators, successors and assigns, hereby voluntarily, knowingly and willingly release and forever discharge the Company, together with all of the Company's past and present owners, parents, subsidiaries, and affiliates, together with each of their respective members, officers, directors, investors, partners, employees, agents, representatives and attorneys, and each of its and their subsidiaries, affiliates, estates, predecessors, successors, and assigns (each, individually, a "Releasee," collectively referred to as the "Releasees") from any and all rights, claims, charges, actions, causes of action, complaints, sums of money, suits, debts, covenants, contracts, agreements, promises, obligations, damages, demands or liabilities of every kind whatsoever, in law or in equity, whether known or unknown, suspected or unsuspected (collectively, "Claims") which you or your heirs, executors, administrators, successors or assigns ever had, now has or may hereafter claim to have by reason of any matter, cause or thing whatsoever: (i) arising from the beginning of time up to the date you execute this Agreement including, but not limited to any such Claims (A) arising out of or relating in any way to your employment relationship with the Company or any other Releasee, and (B) arising under any federal, local or state statute or regulation, each as amended and including each of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released; (ii) arising out of or relating in any way to the termination of your employment; or (iii) arising under or relating to any policy, agreement, understanding or promise, written or oral, formal or informal, between the Company or any other Releasee and you; provided, however, that notwithstanding the foregoing, nothing contained in this release shall in any way diminish or impair: (A) any Claims you may have that cannot be waived under applicable law, (B) rights under this Agreement, (C) any rights to indemnification which you might have as a result of your employment with the Company or (D) any rights you may have to vested benefits under employee benefit plans. This release includes Claims arising under Title VII of the 1964 Civil Rights Act, as amended, the Family Medical Leave Act, the Equal Pay Act, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification (WARN) Act (and state versions thereof), and any other laws and/or regulations relating to employment or employment discrimination in any state where the employee has performed work, including but not limited to the state statutes listed in **Addendum A**, as applicable.

b. By signing below, you expressly waive all rights under Section 1542 of the Civil Code of the State of California (or any other state or federal statute or provisions of similar effect), which provides as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

You expressly acknowledge and agree that this Agreement shall extend and apply to all unknown, unsuspected and unanticipated injuries and that you may later discover claims or facts in addition to or different from those which you now know or believe to exist with regard to the subject matter of this Agreement, and which if known or suspected at the time of executing this Agreement, may have materially affected its terms. Nevertheless, you waive any and all Claims that might arise as a result of such different or additional claims or facts.

c. You do not intend, and the Company does not require, that you release claims that you may not release as a matter of private agreement, including but not limited to claims for reimbursement under California Labor Code Section 2802 (although you warrant that all expenses have been submitted prior to your executing this Agreement), unemployment benefits, workers compensation benefits (although you warrant that you do not currently have a workplace injury), and any benefit that vested prior to your Separation Date, pursuant to the terms of any benefit plan.

d. Nothing herein shall prevent you from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC") or similar federal or state agency (such as the California Civil Rights Department) or your ability to participate in any investigation or proceeding conducted by such agency. Please also note:

1. For New York employees only: Nothing in this Agreement shall prevent you from speaking with law enforcement, the state Division of Human Rights, a local commission on human rights, or an attorney retained by you.

2. For Illinois Employees only: Nothing in this Agreement shall prevent you from reporting any allegations of unlawful conduct to federal, state or local officials for investigation, including, but not limited to, alleged criminal conduct or unlawful employment practices.

5. <u>No Other Claims</u>. You represent that you have no lawsuits, claims, or actions pending in your name, or on behalf of any other person or entity, against the Company.

6. <u>No Admission of Liability</u>. This Agreement is not and shall not be construed or contended to be an admission or evidence of any wrongdoing or liability on the part of the Company or other Releasees. This Agreement shall be afforded the maximum protection allowable under California Evidence Code Section 1152 and/or any other state or federal provisions of similar effect.

7. <u>Prohibited Disclosures</u>.

   a. <u>Assistance and Cooperation</u>. Other than as may be required by law and subject to Paragraph 9, you agree that you will not knowingly encourage, counsel, or assist any attorneys or their clients in the presentation or prosecution of any disputes or claims by any third party against any of the Releasees, unless under a subpoena or other court order to do so and subject to any disclosure being made in strict accordance with Paragraph 7(b). If you are approached by anyone for counsel or assistance in the presentation or prosecution of any dispute, claim, charge, or complaint against any of the Releasees, except to the extent expressly permitted under Paragraph 9 or permitted under applicable law, you shall state no more than that you cannot provide counsel or assistance. You further agree to assist, cooperate and make yourself reasonably available to the Company to provide truthful information in connection with any investigation, legal claims, dispute or other matters concerning anything related to your employment or the Company.

   b. <u>Confidentiality</u>. Other than as, in each case, may be required by law and subject to Paragraph 9, you agree that you (a) have not divulged and will not divulge the terms and conditions of this Agreement and (b) will not, directly or indirectly, use, disclose or discuss with, or in any other way communicate or make available to any third party, (1) the existence of this Agreement, (2) information related to the negotiation of this Agreement and (3) the terms and conditions of this Agreement, including the fact or amount of the payments and benefits provided under this Agreement, in each case, except to your attorney, tax or financial advisor, or immediate family members, who must, prior to any disclosure by you, agree in turn not to divulge its contents. You further acknowledge that any disclosure by your attorney, tax or financial advisor, or immediate family member, shall constitute a material breach of this Agreement by you.

   c. <u>No Disparagement</u>. Other than as may be required by law and subject to Paragraph 9, you agree to not make any written or verbal statements about the Company, any

Releasee, or the Company's leadership team and management, Board of Directors, or products or services that are reasonably likely to impugn their honesty, integrity, morality, reputation, or business acumen, or otherwise portray them in a negative light. If you breach this clause, the Company shall be entitled to file suit for rescission and all other remedies available under law and equity.

8. <u>Twitter Confidential Information</u>.

    a. You hereby acknowledge that you remain bound by the Employee Invention Assignment and Confidentiality Agreement you signed as a condition of your employment with the Company ("Confidentiality Agreement"). You also acknowledge that, as a result of your employment with the Company, you have had access to the Company's confidential and Proprietary Information (as defined in the Confidentiality Agreement), and that you have held, and will continue to hold all such confidential and Proprietary Information in strictest confidence and that you have not disclosed, used, disseminated, revealed, lectured upon or published any such Proprietary Information on behalf of yourself or any other person or entity, and you agree that you will not do any of the foregoing.

    b. You warrant to the Company that you have returned to the Company all property and data of the Company (including any and all Proprietary Information and/or confidential information as referenced in the preceding paragraph) of any type whatsoever that is or has been in your possession or control and all copies of such data in all of the media in which it is stored. You further warrant that you have not retained any such property or copies thereof. In addition, you agree to delete from any electronic repositories (including but not limited to Box, Dropbox or similar accounts, and personal email accounts) all Company confidential or Proprietary Information, and not take or use Company confidential or Proprietary Information. You further acknowledge and agree that you will continue to comply with the terms and conditions of the Confidentiality Agreement. Breach of this Paragraph shall be considered material, entitling the Company to file suit for rescission and all other remedies available under law or equity.

9. <u>Permitted Disclosures</u>.

    a. Pursuant to 18 U.S.C. § 1833(b), you understand that you will not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret of the Company that (i) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to your attorney and (B) solely for the purpose of reporting or investigating a suspected violation of law; or

(ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding. You understand that if you file a lawsuit for retaliation by the Company for reporting a suspected violation of law, you may disclose the trade secret to your attorney and use the trade secret information in the court proceeding if you (x) file any document containing the trade secret under seal, and (y) do not disclose the trade secret, except pursuant to court order. Nothing in this Agreement, or any other agreement that you have with the Company, is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by such section.

b. Further, nothing in this Agreement or any other agreement by and between the Company and you shall prohibit or restrict you from (i) voluntarily communicating with an attorney retained by you, (ii) voluntarily communicating with any law enforcement, government agency, including the Securities and Exchange Commission ("SEC"), the Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights or any other state or local commission on human rights, or any self-regulatory organization regarding possible violations of law, in each case without advance notice to the Company, or otherwise initiating, testifying, assisting, complying with a subpoena from, or participating in any manner with an investigation conducted by such government agency, (iii) recovering a SEC whistleblower award as provided under Section 21F of the Securities Exchange Act of 1934, or (iv) disclosing any confidential information to a court or other administrative or legislative body in response to a subpoena, provided that you first promptly notify and provide the Company with the opportunity to seek, and join in its efforts at the sole expense of the Company, to challenge the subpoena or obtain a protective order limiting its disclosure, or other appropriate remedy.

1. For California employees: In addition, nothing in this Agreement (i) waives your right to testify or prohibits you from testifying in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged sexual harassment when you have been required or requested to attend the proceeding pursuant to a court order, subpoena or written request from an administrative agency or the California state legislature or (ii) shall prevent you from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful.

2. For New Jersey employees: In addition, nothing in this Agreement shall prevent you from concealing details relating to a discrimination, retaliation, or

harassment claim.

3. For New York employees: In addition, nothing in this Agreement shall (i) prevent you from filing or disclosing any facts necessary to receive unemployment insurance, Medicaid or other public benefits to which you are entitled or (ii) prohibit you from disclosing the underlying facts or circumstances relating to claims of discrimination, in violation of laws prohibiting discrimination, against the Company.

4. For Illinois employees: In addition, nothing in this Agreement shall (i) prohibit you from making truthful statements or disclosures related to unlawful discrimination, harassment or retaliation or (ii) reporting any allegations of unlawful conduct to federal, state or local officials for investigation, including, but not limited to, alleged criminal conduct or unlawful employment practices.

5. For Washington employees: In addition, nothing in this Agreement shall prevent you from discussing or disclosing conduct that you reasonably believe under Washington state, federal, or common law to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy.

c. You also may divulge the contents of this Agreement if compelled by a valid subpoena or as otherwise required by law, but in either case only after providing the Company with prior written notice as soon as practicable, and with reasonable opportunity to contest such subpoena or other requirement (such notice along with a copy of the applicable subpoena/request should be sent at minimum by email to employment-legalnotices@twitter.com).

10. Representations and Acknowledgements.

a. You acknowledge and agree that: (i) except with respect to compensation you are entitled to during the Notice Period (as described in Paragraph 1) and, except as otherwise set forth in this Agreement, you have been paid for all hours worked and have received all compensation and employee benefits to which you are entitled; (ii) except as otherwise set forth in this Agreement, the Company and all other Releasees have fully satisfied any and all obligations whatsoever owed to you arising out of or relating in any way to your employment with the Company or any other Releasee, and that no further payments or benefits are owed to you by the Company or any other Releasee; (iii) you have not suffered any on the job injury or, to the best of your knowledge, acquired any occupational disease for which you

have not already filed a claim; (iv) you have received or have had the opportunity to receive all of the leave you have requested, to the extent that leave was required by law or Company policy; and (v) except as provided for in this Agreement and excluding, if you are a commissionable employee, any Incentive Compensation you have earned (as that term is defined in the applicable Sales Incentive Compensation Plan) in the quarter your employment with the Company is terminated, you are not and will not be eligible to receive any further payments or other benefits from the Company under any incentive compensation plan, commission plan, severance plan, or other plan, program, agreement, arrangement or policy, including but not limited to the Merger Agreement.

b. Absent you signing this Agreement, you understand that you are not otherwise entitled to the payment set forth in Paragraph 2(a) above and that such payment exceeds any payment to which you otherwise may be entitled under the Company's policies and procedures, and/or under any law, agreement or plan, written, oral or implied.

c. You hereby represent that you have not engaged in gross negligence or willful misconduct in connection with the performance of your job duties while employed by the Company and have not otherwise engaged in any conduct during your employment with the Company that would constitute a breach of the fiduciary duties or other obligations you owe to the Company, including any common law nondisclosure or other obligation.

d. You further agree that prior to your Separation Date, you will: (i) submit all expense reports; (ii) reconcile all outstanding corporate credit card charges; (iii) pay off any personal charges; and (iv) repay any outstanding expenses. You also agree that the Company reserves the right to and may withhold any outstanding corporate credit card charges, deficits (including but not limited to commission deficits if you are a commissionable employee), debts (including but not limited to relocation costs and sign on bonuses not earned), outstanding advances, discretionary retention or other one time bonuses, or any negative vacation balances you have previously been advanced from the payment to be provided under Paragraph 2(a) in accordance with applicable state laws. Further, you acknowledge that you have not relied on any statements or representations by the Company or its attorneys with respect to the tax treatment of the applicable payments described in this Agreement, and that you are solely responsible for all tax payments, if any, required under the law. You further acknowledge and agree that the mutual promises in this Agreement are not conditioned on the Company's payment to you of any wages, salary, compensation, bonuses or vacation, if any, owed for work you have performed for the Company.

1. <u>Future Employment or Reemployment by the Company</u>.

    a. If you accept alternative employment with the Company or any of its subsidiaries prior to your Separation Date, you understand and agree that payment due under Paragraph 2(a) under this Agreement will be reduced to the total gross sum of $500.00, which will constitute sufficient consideration to support all promises made under this Agreement, and that you will not be entitled to any further consideration to support this Agreement.

    b. Should you obtain another position of any kind at the Company or any of its subsidiaries within 3 months after the Separation Date, (i) you agree to immediately inform the Company by emailing employment-legalnotices@twitter.com, and (ii) the Company reserves the right to request you return a pro rata portion of the payment provided under Paragraph 2(a) of this Agreement to the Company up to an amount equal to the total amount provided pursuant to Paragraph 2(a) (and you agree to comply with such request upon receipt).

12. <u>Information Regarding Pending Lawsuits</u>. A federal court has authorized and required that this information be provided to you. **As you are considering whether to sign this severance and general release agreement, you should be aware of the following three pending lawsuits filed by current and former Twitter employees.**

In *Cornet, et al. v. Twitter, Inc.*, No. 3:22-cv-06857-JD, (N.D. Cal., filed Nov. 3, 2022), current and former Twitter employees have alleged claims for (1) breach of contract, (2) breach of contract based on third-party beneficiary rights, (3) promissory estoppel, (4) violation of the federal WARN Act, (5) violation of the California WARN Act, (5) failure to pay wages timely upon termination under California law, and (6) relief under the Declaratory Judgment Act. This lawsuit primarily claims that Twitter breached an alleged promise to pay laid off employees severance pay that previously had been applicable to employees, in addition to WARN Act pay. Plaintiffs contend that laid off employees include those who did not click "yes" in response to the email sent on November 15, 2022.

In *Borodaenko, et al. v. Twitter, Inc.*, No. 3:22-cv-07226-DMR (N.D. Cal., filed Nov. 16, 2022), former Twitter employees have alleged claims for (1) disability discrimination in violation of the Americans with Disabilities Act, (2) disability discrimination in violation of the California Fair Employment and Housing Act, (3) violation of federal Family Medical Leave Act, (4) violation of the California Family Rights Act, and (5) relief under the Declaratory Judgment Act. This lawsuit primarily claims that Twitter failed to allow

remote work as a reasonable accommodation for disabled employees and also alleges that Twitter discriminated against disabled employees and improperly terminated employees who had requested family or medical leave.

In *Strifling, et al. v. Twitter, Inc.*, No. 3:22-cv-07739-KAW (N.D. Cal. Dec. 7, 2022), Twitter employees have alleged claims for (1) gender discrimination in violation of Title VII, (2) gender discrimination in violation of the California Fair Employment and Housing Act, and (3) relief under the Declaratory Judgment Act. This lawsuit claims that Twitter's laid off women at a higher rate than men.

Plaintiffs want the courts to certify each of these lawsuits as class actions. Twitter denies the allegations and claims in each of these lawsuits and contends that it at all times acted lawfully with respect to its employees, did not discriminate against employees, provided compliant WARN notice to all affected employees, and complied with any contractual obligations. Twitter also contends the claims in these lawsuits should not be resolved as class actions. The courts have not decided any substantive issues in these lawsuits and have not made any rulings about whether the plaintiffs or Twitter will prevail. The courts also have not made any decisions about whether these lawsuits may proceed as class actions or whether the plaintiffs or other employees may pursue their claims in court or are required to proceed individually in arbitration.

**If you choose to sign the severance and general release agreement, you will not be able to participate in any potential recovery that may be awarded in the Cornet, Borodaenko or Strifling lawsuits and you will be releasing any claims you may have against Twitter**

Plaintiffs in these cases are represented by Shannon Liss-Riordan, Esq. and Thomas Fowler, Esq. of LICHTEN & LISS-RIORDAN, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116, (866) 534-0390, sliss@llrlaw.com, tfowler@llrlaw.com, twitterlawsuit@llrlaw.com, www.llrlaw.com.

13. <u>Reference Checks</u>. You agree to direct anyone seeking an employment reference to the Company's Human Resources department, which will confirm the dates of your employment, your last position held, and the Company's general policy to refrain from providing additional information. Such inquiries may be directed to alum@twitter.com.

14. <u>Attorneys' Fees</u>. If any action is brought to enforce the terms of this Agreement, the prevailing Party will be entitled to recover its reasonable attorneys' fees, costs and expenses from the other Party, in addition to any other relief to which the prevailing

Party may be entitled. Each Party shall be responsible for their own attorneys' fees incurred in the drafting, review, and execution of this Agreement, however.

15. <u>Severability</u>. The provisions of this Agreement are severable, and if any part of it is found to be invalid or unenforceable, the other parts shall remain fully valid and enforceable. Specifically, should a court, arbitrator, or government agency conclude that a particular claim may not be released as a matter of law, it is the intention of the Parties that the general release and the waiver of unknown claims above shall otherwise remain effective to release any and all other claims.

16. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia.

17. <u>Entire Agreement</u>. This Agreement and any Addendum(s) hereto, together with an existing Dispute Resolution Agreement, equity agreement(s), if any, held by you as of the Separation Date (and the governing plan(s) therein incorporated), constitute the entire agreement between you and Releasees with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral, relating to such subject matter. You acknowledge that neither Releasees nor their agents or attorneys have made any promise, representation or warranty whatsoever, either express or implied, written or oral, which is not contained in this Agreement for the purpose of inducing you to execute the Agreement, and you acknowledge that you have executed this Agreement in reliance only upon such promises, representations and warranties as are contained herein, and that you are executing this Agreement voluntarily, free of any duress or coercion.

18. <u>Section 409A</u>. The severance and other benefits under this Agreement are intended, where possible, to qualify for an exemption from Section 409A of the Internal Revenue Code of 1986, as amended. Accordingly, the provisions of this Agreement shall be applied so that those payments and benefits qualify for such an exemption, to the maximum extent allowable. However, to the extent any payment to which you become entitled under this Agreement is deemed to constitute an item of deferred compensation subject to the requirements of Section 409A, the provisions of this Agreement applicable to that payment shall be applied so that such payment is made in compliance with the applicable requirements of Section 409A. Without limiting the foregoing, to the extent any amount payable to you under this Agreement is deferred compensation subject to Section 409A and you are deemed at the time of your termination of employment to be a "specified employee" under Section 409A, then such payment shall not be made until the earliest of (i) the expiration of the six (6)-month period measured from the date of your "separation from service" (as such term is

defined in Treasury Regulations under Section 409A) with Twitter or (ii) the date of your death following such separation from service. Upon the expiration of the applicable delay period, any payments which would have otherwise been made during that period shall be paid to you or your beneficiary in one lump sum. For purposes of this Agreement, each amount to be paid or benefit to be provided to you shall be treated as a separate identified payment or benefit for purposes of Section 409A. To the extent required to avoid an accelerated or additional tax under Section 409A, amounts reimbursable to you under this agreement shall be paid to you on or before the last day of the year following the year in which the expense was incurred and the amount of expenses eligible for reimbursement (and in-kind remuneration provided to you) during any one (1) year may not affect amounts reimbursable or provided in any subsequent year. To the extent required to comply with the requirements of Section 409A, a termination of employment shall not be deemed to have occurred for purposes of any provision of this Agreement until you would be considered to have incurred a "separation from service" from the Company within the meaning of Section 409A. For such purposes, references to a "termination," "termination of employment" or like terms shall mean "separation from service." In no event shall the timing of your execution of a release result, directly or indirectly, in your designation of the calendar year of any payment hereunder, and, to the extent required by Section 409A, if a payment hereunder that is subject to execution of a release could be made in more than one (1) taxable year, payment shall be made in the later taxable year.

19. <u>Modification; Counterparts; Facsimile/PDF Signatures</u>. This Agreement may not be altered, amended, modified, or otherwise changed in any respect except by another written agreement that specifically refers to this Agreement, executed by authorized representatives of each of the Parties to this Agreement. This Agreement may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument. Execution of a facsimile or PDF copy (including where this Agreement is provided to you via Adobe Sign) shall have the same force and effect as execution of an original.

20. <u>Arbitration</u>.

    a. **If you signed and did not opt out of a Dispute Resolution Agreement ("DRA") during your employment with the Company**, any dispute arising under or regarding this Agreement (or to the extent not released by this Agreement, relating to your employment as therein defined) shall be subject to the applicable provisions of the DRA signed by you as part of your employment. **If you did not sign - or you opted out of a DRA, then you agree to the following Arbitration provision:** Except for any claim for provisional injunctive relief to avoid irreparable harm, the

Parties voluntarily and knowingly agree to arbitrate, in San Francisco County, California through the American Arbitration Association (AAA), any and all disputes or claims arising out of or related to the validity, enforceability, interpretation, performance or breach of this Agreement, whether sounding in tort, contract, statutory violation or otherwise, or involving the construction or application or any of the terms, provisions, or conditions of this Agreement; provided, however, that nothing herein will require arbitration of any claim or charge which, by law, cannot be the subject of a compulsory arbitration agreement, including with respect to any sexual harassment and sexual assault disputes, which may be the subject of arbitration at your option to the extent applicable law renders a pre-dispute arbitration agreement covering such claims invalid or unenforceable. The applicable rules (including with respect to discovery and the selection of an arbitrator) governing arbitration are found at https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf or may be obtained upon request to the Company's legal counsel. Any arbitration may be initiated by a written demand to the other Party within the same time limitations that federal and, if applicable, state law applies to the underlying claims. Any written demand shall identify and describe the nature of all claims asserted and the facts upon which such claims are based. If a filing fee applies, the Party that initiates the arbitration shall be responsible for paying his/her/its filing fee prior to the other Party paying his/her/its filing fee. If you initiate the arbitration, your portion of the filing fee shall be the lesser of the comparable state and/or federal court filing fee applicable to your claims and the Company shall be responsible for the arbitrator's fees, arbitration expenses and any other costs unique to the arbitration hearing. The arbitrator's decision shall state in writing the essential findings and conclusions on which the arbitrator's award is based and shall be final, binding, and conclusive. A court of competent jurisdiction shall have the authority to enter a judgment upon the arbitrator's award. The Parties further agree that this Agreement shall be strictly construed to provide for arbitration as the sole and exclusive means for resolution of all disputes hereunder to the fullest extent permitted by law. The Parties expressly waive any entitlement to have such controversies decided by a court or a jury.

b. It is part of the essence of this Agreement that any disputes hereunder will be resolved expeditiously and as confidentially as possible. Accordingly, you and the Company agree that all proceedings in any arbitration will be conducted under seal and kept strictly confidential. In that regard, no Party will use, disclose or permit the disclosure of any information, evidence or documents produced by any other Party in the arbitration proceedings or of the existence, contents or results of the proceedings, except as may be required by law or any legal process, as required in an action in aid of arbitration or for enforcement of or appeal from an arbitral award

or as may be permitted by the arbitrator for the preparation and conduct of the arbitration proceedings. Before making any disclosure permitted by the preceding sentence, the Party intending to make such disclosure will give the other Party reasonable written notice of the intended disclosure and afford such other Party a reasonable opportunity to protect its interests.

21. <u>Knowing and Voluntary Agreement</u>. You are advised to consult with an attorney of your choice before signing this Agreement. You represent that you have had the opportunity to review this Agreement and, specifically, the release in Paragraph 4, with an attorney of your choice. You also agree and acknowledge that you are receiving benefits and payments to which you would not otherwise be entitled unless you sign this Agreement, that you have voluntarily consented to the release set forth in Paragraph 4 of this Agreement and that you have entered into this Agreement freely, knowingly, and voluntarily.

22. <u>Review of Separation Agreement</u>.

    a. You understand and agree that this is a voluntary and knowing release of claims.

    b. You understand that this Agreement includes the release of claims arising under the Age Discrimination in Employment Act of 1967 and the Older Worker Benefit Protection Act of 1990. You understand that you may take up to forty-five (45) days to consider this Agreement from the date originally provided to you ("Consideration Period"), and that you are further advised to consult with an attorney of your choice before signing this Agreement. You understand and agree that any change to this Agreement during the Consideration Period, whether material or immaterial, does not restart the running of the forty-five (45) days. You also understand you may revoke this Agreement within seven (7) days of signing it, because of which this Agreement will be of no force or effect until the eighth (8th) day following execution, without revocation. Notice of revocation under this paragraph must be sent to employment-legalnotices@twitter.com. You further acknowledge that you have received a copy of **Addendum B**, which sets forth the decisional factors and unit and the list of job titles and ages of those employees who have been selected and those employees who have not been selected, for this group termination program

    c. **For Minnesota Employees Only:** You also understand you may revoke this Agreement within fifteen (15) days of signing it. This Agreement will not become effective until the sixteenth (16th) day following execution, without revocation. Notice of revocation under this Section must be sent to employment-

legalnotices@twitter.com. If you revoke your consent to this Agreement, the Company's offer the payment under Paragraph 2(a) shall be null and void, and the release in Paragraph 4 shall be of no force or effect.

23. <u>Remedies</u>.

    a. In the event that you breach this Agreement, or any of the attached addendums and exhibits, in addition to any other remedies to which the Company may be entitled, you agree to reimburse the Company for the payment provided to you as described in Paragraph 2(a).

    b. You acknowledge that the covenants contained in this Agreement, any of the attached addendums and exhibits, are reasonable and necessary to protect the Company's business and other interests, and that any violation of these covenants would cause substantial irreparable injury. Accordingly, you agree that a remedy at law for the breach of any of the foregoing covenants would be inadequate, and that the Company, in addition to any other remedies available, shall be entitled to obtain preliminary and permanent injunctive relief and to prevent an attempted or actual breach of such covenants without having to prove actual damage or posting any bond that might otherwise be required.

24. <u>Effective Date</u>. For Employees Age 40 and Above only, the Effective Date of this Agreement shall be the eighth (8th) day following your execution of the Agreement, without revocation. For Employees in Minnesota only, the Effective Date of this Agreement shall be the sixteenth (16th) day following your execution of the Agreement, without revocation. For Employees Under the Age of 40 Only, the Effective Date of this Agreement shall be the date on which it is executed by you.

25. <u>Deadline to Sign</u>. This offer, if not accepted by you, will expire on 02/26/2023.

26. By signing below, you acknowledge and agree that: you have carefully read and fully understand all of the provisions of this Agreement; you knowingly and voluntarily agree to all of the terms set forth in this Agreement; you knowingly and voluntarily intend to be legally bound by the same; you were advised and hereby are advised in writing to consider the terms of this Agreement and that you have a right to, and should, consult with an attorney of your choice prior to executing this Agreement.

# Separation Agreement Acknowledgement, Approval and Signature.

AGREED:

## Employee

Type Name Here

Courtney McMillian
Date: 01-19-2023
Twitter, Inc.

By: Elon Musk
Title: CEO
Dated: 01-19-2023

# Separation Agreement Acknowledgement of Receipt and Intent Not to Sign.

By clicking the following button, you acknowledge that you received and reviewed your Separation Agreement and Release of All Claims ("Release") and understand that you had the opportunity to fully review and consider whether or not to sign the Release in accordance with the terms and timeline specified in the Release. If, after reviewing and considering the Release, you have decided not to sign and return the Release, even if you still have time to consider based on the timeline in the Release, we would appreciate you letting us know of your decision by checking the box below and then clicking the red Submit button at the bottom of the page. Please note that this is a courtesy and that you are not obligated to respond.

☐ I Have Decided Not to Sign.