Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: 415.442.1000

Melissa Hill (*pro hac vice*)
melissa.hill@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000

Sean K. McMahan (*pro hac vice*)
sean.mcmahan@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel: 214.466.4000

Jared R. Killeen (*pro hac vice* forthcoming)
jared.killeen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000

*Attorneys for Defendants X Corp., f/k/a Twitter, Inc.; X Holdings; Elon Musk; and Does*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR NOTICE OF ACTION**<br><br>Am. Compl. Filed: Oct. 13, 2023<br>Date: April 9, 2024<br>Time: 2:00 pm<br>Judge: Hon. Trina L. Thompson |

## I. INTRODUCTION

Plaintiffs have filed a putative class action against X Corp., the successor-in-interest to Twitter, Inc.,[1] X Holdings,[2] and Elon Musk (together, "Defendants") seeking severance payments under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiffs' lawsuit comes over six months after other putative class actions have been filed and thousands of arbitration actions have been submitted by different plaintiffs' law firms seeking materially identical relief on behalf of former Twitter employees, including several such matters that have gone to mediation. Apparently worried they will be left out of a potential class-wide resolution led by other plaintiffs' lawyers, this Plaintiffs' law firm asks this Court to take the extraordinary action of requiring X Corp. to notify its employees of this lawsuit before a class has been certified. These attorneys' request is motivated solely by their desire to secure a piece of any potential settlement for their own benefit, a result that runs counter to the best interests of the former Twitter employees they represent, and that would only serve to complicate any potential resolution and reduce any potential recovery by the former employees.

Plaintiffs are not entitled to this unusual relief. To start, Plaintiffs concede that another California district court has already required Twitter, Inc. (predecessor-in-interest to X Corp.) to provide notice to its employees of an earlier and ongoing putative class action regarding former employees' claims for severance. In *Cornet v. Twitter, Inc.*, Judge Donato directed Twitter to provide notice of that lawsuit before asking employees to release their legal claims against the Company. 2022 WL 18396334, at *2 (N.D. Cal. Dec. 14, 2022). Although Plaintiffs suggest the *Cornet* claims differ from those asserted here, both lawsuits concern Twitter's allegedly deficient severance payments following the restructuring of its workforce in October 2022, and therefore the putative class members in both suits will be virtually if not entirely identical (*i.e.*, former Twitter employees who left the company in late 2022 and early 2023 following its acquisition). Because the notice ordered in *Cornet* is more than sufficient to apprise potential class members of the

---

[1] In March 2023, Twitter, Inc. was merged into X Corp. and ceased to exist. X Corp. is the successor-in-interest to Twitter, Inc.

[2] No legal entity named "X Holdings" exists. X Corp.'s parent entity is named X Holdings Corp.

ongoing litigation over Twitter's severance payments, Plaintiffs are not entitled to a *second, duplicative* notice.

In addition, the court's decision to require notice in *Cornet* was predicated on unique facts that are not present here. In *Cornet*, the plaintiffs sought an emergency motion for a protective order five days after Twitter began to implement a large-scale reduction in its workforce in which the Company admittedly and actively planned to seek releases from employees. Mot. at 6. *See generally Cornet, et al. v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, Dkt. No. 7 (N.D. Cal. Nov. 9, 2022) (the "*Cornet* Action"). The plaintiffs in *Cornet* alleged that Twitter was providing misleading FAQs and severance communications that may have inhibited employees' ability to participate in a class action that had been filed days earlier. Plaintiffs make no such allegations here, and do not even assert X Corp. is in the process of laying off employees and asking them to sign releases. Instead, Plaintiffs speculate that if X Corp. reduces its workforce in the future, or engages in settlement efforts with plaintiffs in other pending actions, it might seek releases similar to those Twitter offered employees in late 2022, and "[those] releases *may* purport to hinder the ability of class members to engage with or participate in the ongoing class action without informing them of [this] action . . . ." Mot. at 6 (emphasis added). This hypothetical harm—to individuals already ably represented by sophisticated plaintiffs' counsel and whose releases would, in the case of a class-wide settlement, also need to be approved by a court—is a far cry from the concerns underlying the *Cornet* decision. Indeed, *Cornet*—and the other caselaw cited in Plaintiffs' Motion—only underscores why a court-mandated notice is inappropriate here. Those decisions require an employer to notify its employees of a putative class action before certification only in extraordinary circumstances, such as when the employer *coerced* the employees into signing a release. Plaintiffs offer no such evidence here. Also, none of those decisions involved a situation where—as here—the employees *already* have received notice of the pendency of a lawsuit alleging the same type of claims. Plaintiffs' Motion should be denied.

**II.   BACKGROUND**

Plaintiffs allege that on November 4, 2022, Twitter notified a number of employees of their layoff as part of a reduction in force and that their last day of employment with the Company would

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR NOTICE OF ACTION

be January 4, 2023. *See* Dkt. No. 13, Pls.' Amended Complaint ("Am. Compl.") ¶ 55. According to Plaintiffs, employees were provided 60-days' notice (during which time they received full pay and benefits) and a discretionary severance package equivalent to one month's pay. *See id.* ¶¶ 71-72, 77. Following this initial round of layoffs, Plaintiffs allege additional employees were laid off and offered one month's pay. *See id.* ¶ 79.

Multiple lawsuits have been filed by former Twitter employees related to the restructuring in November 2022 and subsequent layoffs. For example, on November 3, 2022, *Cornet, et al. v. Twitter, Inc.*, N.D. Cal., Case No. 3:22-cv-06857-JD ("the *Cornet* Action) was filed amidst ongoing layoffs at Twitter. The *Cornet* plaintiffs assert contract-based claims for severance benefits on behalf of a nationwide putative class of X Corp. employees. *See generally id.* Dkt. No. 6, Amended Complaint (Nov. 8, 2022). Since the November 2022 restructuring, at least five lawsuits brought by nearly as many plaintiffs' firms were filed before Plaintiffs' counsel filed the instant complaint.

Despite having been offered one month's severance pay (Am. Compl. ¶¶ 77, 79) in addition to being provided two months' non-working pay under state and federal WARN Acts, Plaintiffs brought the instant lawsuit long after they were each terminated, claiming entitlement to additional severance.[3] Specifically, Plaintiff McMillian was a former Twitter employee and human resources executive who alleges she was informed of her termination on November 4, 2022, and left the company on January 4, 2023. *See* Ex. 1 to Mot. (Declaration of Courtney McMillian ("McMillian Decl.")) ¶¶ 1-2; Am. Compl. ¶ 5. Plaintiff Cooper was a former Twitter employee who alleges he was laid off in February 2023 (Am. Compl. ¶ 64) and left the company on April 28, 2023. *Id.* ¶ 6. Both claim that, under ERISA, they are entitled to more severance than the one-month they were offered.

Plaintiffs purport to assert claims for severance benefits under an alleged ERISA-governed severance plan, and for fiduciary breaches in connection with Defendants' alleged failure to (i) fund

---

[3] Plaintiff McMillian initiated this action on July 17, 2023. Dkt. No. 1. Defendants agreed to waive service of the complaint within several days, yet Plaintiff's counsel "held service" for over three months. On October 13, 2023, Plaintiffs filed an amended complaint, adding Plaintiff Cooper as a named plaintiff, Dkt. No. 13, and finally served Defendants with the Amended Complaint. Dkt. No. 14.

1  the ambiguously defined ERISA severance "plan," and (ii) provide complete and accurate
2  information about the plan. Plaintiffs seek to represent a class of all participants and beneficiaries
3  of the alleged plan whom Twitter terminated since October 27, 2022, through the date of judgment.
4  *Id.* ¶ 82. The plaintiffs in the *Cornet* Action seek to represent all employees laid off by Twitter
5  from October 2022 onward as well. *See* Case No. 22-cv-06857-JD, Dkt. No. 7 at 5-7. Plaintiffs'
6  putative class thus seeks the same relief for virtually if not entirely the same employees as the
7  *Cornet* putative class, and the two putative classes differ only insofar as Plaintiffs have included a
8  different cause of action to obtain such relief.

### III. LEGAL STANDARD

Plaintiffs argue that the notice they seek is proper under Federal Rule of Civil Procedure 23(d)(1). Mot. at 6-7. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). But that authority is discretionary, and a court's "discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Id.* at 100. Orders issued pursuant to Rule 23(d) "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02. The party moving for Rule 23(d) relief bears the burden of establishing its need. *E.g.*, *Goodman v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 12607854, at *2 (D.N.J. Aug. 20, 2014).

### IV. ARGUMENT

#### A. Plaintiffs' Requested Notice Is Unnecessary and Duplicative of the Notice Already Required and Provided in *Cornet*

Plaintiffs argue that potential class members "may not be aware of the claims" this lawsuit presents on their behalf. Mot. at 8. But Plaintiffs' purported concern is unfounded. Judge Donato already ordered Twitter to notify employees who were provided with a severance and release agreement about *Cornet*, a class action that seeks essentially the same relief as that sought here. *See Cornet*, 2022 WL 18396334, at *2. As a result, Twitter sent the hundreds of impacted employees written notice spelling out in detail the *Cornet* action allegations and sharing names and

contact information for the plaintiffs' attorneys, and following receipt of this notice, more than 2,000 employees were individually retained by plaintiffs' counsel in the *Cornet* action. That is more than enough to address Plaintiffs' concerns. Requiring Defendants to provide yet another notice to the same group of putative class members would be entirely unnecessary and undoubtedly confusing.

Courts routinely decline to authorize a pre-certification notice when it would be "unnecessary." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, 2022 WL 1137885, at *3 (D.S.C. Apr. 18, 2022) (same). Indeed, "nothing in [Rule 23(d)] expressly authorizes pre-certification notice to potential class members," and "courts have routinely rejected similar requests to order notice before a class is certified" when notice is unwarranted. *Clark v. Hyatt Hotels Corp.*, 2020 WL 6870599, at *2 (D. Colo. Oct. 30, 2020).

That is the case here. Plaintiffs' notice is entirely unnecessary because the *Cornet* notice already did exactly what Plaintiffs say a notice would do here. Specifically, the Order in *Cornet* "compels Defendants to inform potential class members of an ongoing action" and advises them that they may be entitled to "more compensation" through class litigation. Mot. at 9. The notice provided to laid off employees was negotiated with plaintiffs' counsel and approved by the court, and stated as follows:

> <u>Information Regarding Pending Lawsuits</u>. A federal court has authorized and required that this information be provided to you. **As you are considering whether to sign this severance and general release agreement, you should be aware of the following three pending lawsuits filed by current and former Twitter employees**:
>
> In *Cornet, et al. v. Twitter, Inc.*, No. 3:22-cv-06857-JD, (N.D. Cal., filed Nov. 3, 2022), current and former Twitter employees have alleged claims for (1) breach of contract, (2) breach of contract based on third-party beneficiary rights, (3) promissory estoppel, (4) violation of the federal WARN Act, (5) violation of the California WARN Act, (5) failure to pay wages timely upon termination under California law, and (6) relief under the Declaratory Judgment Act. This lawsuit primarily claims that Twitter breached an alleged promise to pay laid off employees severance pay that previously had been applicable to employees, in addition to WARN Act pay.

> . . .
>
> Plaintiffs want the courts to certify each of these lawsuits as class actions. Twitter denies the allegations and claims in each of these lawsuits and contends that it at all times acted lawfully with respect to its employees, did not discriminate against employees, provided compliant WARN notice to all affected employees, and complied with any contractual obligations. Twitter also contends the claims in these lawsuits should not be resolved as class actions. The courts have not decided any substantive issues in these lawsuits and have not made any rulings about whether the plaintiffs or Twitter will prevail. The courts also have not made any decisions about whether these lawsuits may proceed as class actions or whether the plaintiffs or other employees may pursue their claims in court or are required to proceed individually in arbitration.
>
> . . .
>
> **If you choose to sign the severance and general release agreement, you will not be able to participate in any potential recovery that may be awarded in the *Cornet*, *Borodaenko* or *Strifling* lawsuits and you will be releasing any claims you may have against Twitter.**
>
> Plaintiffs in these cases are represented by Shannon Liss-Riordan, Esq. and Thomas Fowler, Esq. of LICHTEN & LISS-RIORDAN, P.C., 729 Boylston Street, Suite 2000, Boston, MA 02116, (866) 534-0390, sliss@llrlaw.com, tfowler@llrlaw.com, twitterlawsuit@llrlaw.com, www.llrlaw.com.

*Cornet*, Dkt. No. 43-1, Proposed Form of Notice.

The court in *Cornet* ordered that notice be provided *more than one year ago*. *Cornet*, 2022 WL 18396334, at *2. That means any employee who was laid off and offered a release since Plaintiffs filed their complaint in July 2023 already would have received the notice, just as any hypothetical employee who may be laid off in the coming weeks and months would receive it. A *second* redundant court-mandated notice will not materially improve upon the *Cornet* notice and will only confuse employees.

Because Plaintiffs' proposed notice is redundant, it serves the interests of Plaintiffs' lawyers rather than putative class members. As courts have noted, there is a "danger of abuse that always attends [pre-certification] class communications," namely "the possibility that plaintiffs might use widespread publication of their claims, disguised as class communications, to coerce defendants into settlement." *Jackson*, 130 F.3d at 1004. Plaintiffs' demand that Defendants provide a notice specifically tailored to their own late-filed action—when a court already ordered a notice related to

an earlier similar action—is more akin to a lawyer-driven marketing campaign than a remedial action under Rule 23(d). This Court should not allow it.

### B. Plaintiffs' Requested Notice Is Unwarranted Because They Offer No Evidence of Harm

Even if Plaintiffs' proposed notice were not redundant, it is nonetheless still inappropriate because Plaintiffs offer no evidence that putative class members will be harmed without it.

"[W]hen considering whether remedial action is warranted pursuant to Rule 23(d), courts are primarily concerned with whether arbitration agreements with, or releases given by, putative class members were the result of coercion or deception." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 263 (S.D.N.Y. 2020); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, 2022 WL 1137885, at *3 (D.S.C. Apr. 18, 2022) ("Courts typically grant curative relief where the record shows that one of the parties has communicated with putative class members in a way that misleads them about their rights related to the pending litigation."). Thus, "[b]efore a Rule 23(d) order issues, the Court looks for specific harm that would result from the allegedly misleading communication." *Tripicchio v. UPS Store, Inc.*, 2023 WL 6307528, at *5 (D.N.J. Sept. 28, 2023).

Here, Plaintiffs offer zero argument suggesting that X Corp. engaged in improper conduct that "undermined the purposes of Rule 23 such that curative action by the court was required." *Clark*, 2020 WL 6870599, at *2. At most, Plaintiffs' counsel express their concern that a December 1, 2023, mediation in *Cornet* (which has since passed) might result in a class-wide settlement in which releases are offered to the same former Twitter employees that Plaintiffs' counsel seeks to represent. That is not enough to warrant premature, class-wide notice here. Plaintiffs acknowledge that *Cornet* was filed as a putative class action, with the putative class of former employees represented by counsel, that any class-wide settlement would require court approval, and that Plaintiffs' counsel here could attempt to intervene. Mot. at 5. So the interests of Twitter's former employees are already adequately protected.

Moreover, this case is no different from numerous others where courts have declined to require pre-certification notice because the plaintiffs failed to show a resulting harm. For example,

in *In re Allergan BIOCELL Textured Breast Implant Prod. Liability Litigation*, the court declined to limit communications with class members under Rule 23(d) because "[p]laintiffs have not suggested how the [contested waiver] is otherwise misleading or abusive." 2020 WL 3977674, at *5 (D.N.J. July 14, 2020). And in *Tolmasoff v. Gen. Motors, LLC*, the court did not enjoin communications because "there is nothing coercive or intimidating about the communications." 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016). As in those cases, Plaintiffs do not (and cannot) claim that Defendants coerced or intimidated potential class members into signing releases. Indeed, Twitter provided in the court-ordered *Cornet* notice the plaintiffs' allegations and the contact information for plaintiffs' counsel, along with a release. Therefore, Plaintiffs' proposed notice is unwarranted.

Plaintiffs' own caselaw is wholly distinguishable from the facts here. For example, in *Guifu Li v. A Perfect Day Franchise*, the court mandated notice and invalidated opt-out forms which the defendant company obtained through coercive one-on-one meetings with potential massage therapist class members with poor English language skills. 270 F.R.D. 509 (N.D. Cal. 2010). And in *O'Connor v. Uber Techs., Inc.*, the court found Uber's attempt to require drivers to sign arbitration agreements was "potentially misleading, coercive, and threaten[ed] to interfere with the rights of class members" amidst two ongoing class actions in other states. 2014 WL 1760314, at *2 (N.D. Cal. May 2, 2014); *see also Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *1 (N.D. Cal. Nov. 2, 2015) (invalidating settlement releases and ordering corrective notice where employer in FLSA action obtained releases through misleading letters that "confusingly suggest[ed] [employees] could not contact Plaintiffs' counsel," putative class consisted of plumbers unlikely to understand their legal rights, and employer did not explain that settlement would require judicial approval); *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *1 (N.D. Cal. July 8, 2010) (voiding releases in pharmaceutical overcharge case obtained after defendant sent settlement letter, with payment, to putative class members that contained misleading information about the case and proposed settlement).

Plaintiffs hang their hat on *Cornet,* where Judge Donato ordered Twitter to provide notice to putative class members in a litigation involving similar claims for severance following the

November 2022 layoffs. But *Cornet* was predicated on very different facts: that complaint was filed when Twitter was in the midst of a massive restructuring and specifically sought "requisite notice or severance payment in connection with the anticipated layoffs." *Cornet* Compl. ¶ 7. The *Cornet* plaintiffs sought an emergency motion for a protective order five days after Twitter began to implement a large and unprecedented reduction in its workforce. 3:22-cv-06857-JD, Dkt. No. 7. The Company conceded that it was planning to perform a mass mailing to send laid-off employees an agreement giving them the opportunity to release their claims in exchange for payment of severance. The plaintiffs submitted three declarations detailing multiple communications they received over the preceding several months regarding their severance, explaining that they felt misled and that in order to receive any severance, they would need to sign a release. *Id.* Exs. A-C. Twitter opposed the plaintiffs' motion seeking a pre-certification notice to putative class members, arguing that notice was unnecessary in light of the arbitration and class action waiver clauses contained in the company's employment agreements. *Cornet*, 2022 WL 18396334, at *2. The Court disagreed, however, and found notice appropriate based on the specific facts alleged.

Those facts—and any factual allegations about ongoing or imminent communications at all—are wholly absent here. More than one year after the *Cornet* Order, X Corp. is no longer amidst an active employee restructuring. Indeed, Plaintiffs do not assert that, to the extent any employees may be terminated going forward or asked to sign releases, there is anything misleading, coercive, or unlawful about any ongoing or potential communications to those employees. Unlike the plaintiffs in *Cornet,* Plaintiffs point to no immediate, concrete reason that a pre-certification notice is appropriate. Indeed, the impacted employee plaintiffs have already received fulsome court-ordered notice in *Cornet,* and further notice is unnecessary. Therefore, the Court should decline to take the extraordinary measure of ordering one and deny Plaintiffs' Motion.

**V.    CONCLUSION**

The Court should deny Plaintiffs' Motion for Notice of Action.

| | |
|---|---|
| Dated: December 29, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| | By  /s/ *Melissa Hill*                              .<br>Melissa Hill (pro hac vice)<br>Mark Feller<br>Sean McMahan (pro hac vice)<br>Jared R. Killeen (pro hac vice forthcoming)<br><br>Attorneys for Defendants |