Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: 415.442.1000

Melissa Hill (*pro hac vice*)
melissa.hill@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000

Sean K. McMahan (*pro hac vice*)
sean.mcmahan@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel: 214.466.4000

Jared R. Killeen (*pro hac vice*)
jared.killeen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000

*Attorneys for Defendants X Corp., f/k/a
Twitter, Inc.; X Holdings; Elon Musk; and
Does*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants | Case No. 3:23-cv-03461-TLT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Am. Compl. Filed:   Oct. 13, 2023<br><br>Mtn Hearing Date:   April 9, 2024<br><br>Judge:  Trina L. Thompson |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

III. ARGUMENT ....................................................................................................... 4

    A.   Legal Standard Governing Motion to Dismiss ......................................... 4

    B.   Plaintiffs Fail to State a Claim for Unlawful Denial of Benefits Under ERISA Section 502(a)(1)(B) (Count I) ..................................................... 4

    C.   Plaintiffs Fail to State a Claim for Fiduciary Breach Under ERISA Sections 409 and 502(a)(2) (Count II) ...................................................... 8

        1.   Defendants Are Not Liable Under ERISA for Funding Decisions ............. 8

        2.   Plaintiffs Cannot Assert a Claim for Individual Relief Under Section 502(a)(2) ........................................................................ 10

    D.   Plaintiffs Fail to State a Claim for Equitable Relief Under ERISA Section 502(a)(3) (Count III) ................................................................... 11

        1.   Count III Must Be Dismissed Because It Seeks Duplicative Relief ......... 11

        2.   Count III Should Be Dismissed Because It Fails to State a Failure-to- Disclose or Misrepresentation Claim Under ERISA ...................... 13

    E.   Plaintiffs Fail to State a Claim for Failure to Monitor (Count IV) ...................... 15

    F.   Defendant Musk Is Not a Fiduciary to Any Twitter Severance Plan ................... 16

IV.  CONCLUSION ................................................................................................. 18

Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
5    99 F. Supp. 3d 1110 (C.D. Cal. 2015)................................................................................. 4, 12

6

*Ashcroft v. Iqbal*,
7    556 U.S. 662 (2009) ................................................................................................................ 4, 9

8

*Baker v. Save Mart Supermarkets*,
    2023 WL 2838109 (N.D. Cal. Apr. 7, 2023) ............................................................................ 14

9

*Bogue v. AmPex Corp.*,
10    976 F.2d (9th Cir. 1992)............................................................................................................. 5

11

*Brixius v. Am. Transfer Co.*,
    2017 WL 1408096 (E.D. Cal. Apr. 20, 2017) ....................................................................... 5, 6

12

*Brown v. Cal. Law Enforcement Ass'n, Long–Term Disability Plan*,
13    81 F.Supp.3d 930 (N.D. Cal. 2015) ................................................................................. 16, 17

14

*In re Calpine Corp.*,
15    2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ........................................................................ 18

16

*Chappel v. Lab. Corp. of Am.*,
    232 F.3d 719 (9th Cir. 2000)................................................................................................... 12

17

*CIGNA Corp. v. Amara*,
18    563 U.S. 421 (2011) ................................................................................................................ 12

19

*Coomer v. Bethesda Hosp., Inc.*,
20    370 F.3d 499 (6th Cir. 2004)..................................................................................................... 8

21

*Cornet, et al. v. Twitter, Inc.*,
    Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 3, 2022) ......................................................... 3, 4

22

*Cotton v. Mass. Mut. Life Ins. Co.*,
23    402 F.3d 1267 (11th Cir. 2005)............................................................................................... 17

24

*Curtiss-Wright v. Schoonejongen*,
25    514 U.S. 73 (1995) .................................................................................................................... 9

26

*Daley v. Lockheed Martin Corp.*,
    2017 WL 2834130 (N.D. Cal. June 30, 2017) ....................................................................... 17

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii        Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

*Delaye v. Agripac, Inc.*,
 39 F.3d 235 (9th Cir. 1994)..........................................................................5, 6

*Edwards v. Lockheed Martin Corp.*,
 954 F. Supp. 2d 1141 (E.D. Wash. 2013) ............................................................5

*Ferrand v. Credit Lyonnais*,
 2003 WL 22251313 (S.D.N.Y. Sept. 30, 2003).......................................................7

*Fifth Third Bancorp v. Dudenhoeffer*,
 573 U.S. 409 (2014) ...............................................................................................4

*Ford v. MCI Commc'ns Corp. Health & Welfare Plan*,
 399 F.3d 1076 (9th Cir. 2005)..............................................................................10

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
 2011 WL 2748724 (N.D. Cal. July 13, 2011)........................................................5, 6

*Fort Halifax Packing Co. v. Coyne*,
 482 U.S. 1 (1987)................................................................................................4, 5

*Foster v. Adams & Assoc., Inc.*,
 2020 WL 3639648 (N.D. Cal. July 6, 2020)..........................................................15

*Gabriel v. Alaska Elec. Pension Fund*,
 773 F.3d 945 (9th Cir. 2014)..................................................................................12

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
 546 F.3d 639 (9th Cir. 2008)....................................................................................6

*Grumet v. Life Ins. Co. of N. Am.*,
 2021 WL 4907234 (C.D. Cal. Sept. 23, 2021).........................................................7

*Haw. Masons' Pension Tr. Fund v. Glob. Stone Haw., Inc.*,
 292 F. Supp. 3d 1063 (D. Haw. 2017) ...................................................................17

*Horan v. Goal Structured Sols., Inc.*,
 2021 WL 5177459 (S.D. Cal. Nov. 2, 2021) ..........................................................12

*Hutcherson v. Krispy Kreme Doughnut Corp.*,
 2010 WL 3893840 (S.D. Ind. Sept. 30, 2010) .......................................................12

*In re JDS Uniphase Corp. Erisa Litig.*,
 2005 WL 1662131 (N.D. Cal. July 14, 2005)....................................................16, 17

*Johnson v. Couturier*,
 572 F.3d 1067 (9th Cir. 2009)................................................................................16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii                    Case No. 3:23-cv-03461-TLT

*Kaminskiy v. Kimberlite Corp.*,
2014 WL 2196191 (N.D. Cal. May 27, 2014) ........................................................ 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .............................................................................. 13

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) ......................................................................................... 8, 9

*Magin v. Monsanto Co.*,
420 F.3d 679 (7th Cir. 2005) ............................................................................... 11

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .................................................................................. 8, 10, 12

*Massachusetts v. Morash*,
490 U.S. 107 (1989) ............................................................................................ 8

*Mathews v. Chevron Corp.*,
362 F.3d 1172 (9th Cir. 2004) ......................................................................... 13, 14

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
823 F.3d 948 (9th Cir. 2016) ............................................................................... 12

*In re Mut. Fund Inv. Litig.*,
403 F. Supp. 2d 434 (D. Md. 2005) ................................................................... 14, 18

*Orozco v. United Air Lines, Inc.*,
887 F.2d 949 (9th Cir. 1989) ................................................................................. 8

*Ortega v. Rainbow Disposal Co Inc.*,
2016 WL 11757786 (C.D. Cal. Jan. 14, 2016) ....................................................... 10

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .......................................................................................... 16

*Pfahler v. Nat'l Latex Prods. Co.*,
517 F.3d 816 (6th Cir. 2007) ................................................................................. 9

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ............................................................................................ 11

*Poore v. Simpson Paper Co.*,
566 F.3d 922 (9th Cir. 2009) ............................................................................... 15

*Rosenblatt v. United Way of Greater Houston*,
590 F. Supp. 2d 863 (S.D. Tex. 2008) .................................................................. 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv                    Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

*Schnitzer v. Bank Leumi USA*,
    2010 WL 3069646 (S.D.N.Y. July 29, 2010) ............................................................. 7

*Simi Surgical Ctr., Inc v. Conn. Gen. Life Ins.*,
    2018 WL 6332285 (C.D. Cal. Jan. 4, 2018) ............................................................. 7

*Snodgrass v. Simpson Timber Co.*,
    955 F.2d 48 (9th Cir. 1992)...................................................................................... 8

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)............................................................................... 2, 4, 7

*Velarde v. PACE Membership Warehouse, Inc.*,
    105 F.3d 1313 (9th Cir. 1997)................................................................................ 5, 6

*In re WorldCom, Inc.*,
    263 F.Supp.2d 745 (S.D.N.Y. 2003) ...................................................................... 10

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 .................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)......................................................................................................... 13

Fed. R. Civ. P.  9(b) ....................................................................................................... 13

Fed. R. Civ. P.  12(b)(6)................................................................................................... 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

**NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that on April 9, 2024, or as soon thereafter as the matter may be

3   heard before the Honorable Trina L. Thompson, San Francisco Courthouse, Courtroom 9, 450

4   Golden Gate Avenue, San Francisco, CA 94102, Defendants X Corporation, X Holdings

5   Corporation, and Elon Musk (together, "Defendants") move to dismiss with prejudice the Amended

6   Complaint filed by Plaintiffs Courtney McMillian and Ronald Cooper.

7       Defendants make this Motion pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that

8   Plaintiffs fail to state a claim under the Employee Retirement Income Security Act of 1974

9   ("ERISA"), 29 U.S.C. §§ 1001-1461, for which relief can be granted.   This Motion is based on this

10  Notice of Motion and Motion, and the accompanying Memorandum of Points and Authorities, all

11  pleadings and filings in this action, and any argument presented to the Court.

12

13   Dated: January 9, 2024              MORGAN, LEWIS & BOCKIUS LLP

14

15                                       By   /s/ *Melissa Hill*                          .
                                            Melissa Hill (pro hac vice)
16                                          Mark Feller
                                            Sean McMahan (pro hac vice)
17                                          Jared R. Killeen (pro hac vice forthcoming)

18                                          Attorneys for Defendants

19

20

21

22

23

24

25

26

27

28

Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

## I.    INTRODUCTION

2       This is one of several class actions filed against X Corp., the successor-in-interest to Twitter,

3   Inc.,[1] X Holdings,[2] and Elon Musk (together, "Defendants") by former Twitter employees claiming

4   they are entitled to severance payments they did not receive upon their departure from Twitter.  The

5   only difference between this copycat lawsuit and the others that were filed months before it is that

6   Courtney McMillian and Robert Cooper ("Plaintiffs") assert their claims under the Employee

7   Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, instead of under

8   state law theories of breach of contract and promissory estoppel.  The Court should dismiss the

9   Amended Complaint because Plaintiffs cannot state a claim under ERISA.

10      In dressing up their lawsuit as a putative ERISA class action, Plaintiffs offer a series of

11  fantastical assertions.  To start, they allege Defendants maintained a so-called "Twitter Severance

12  Plan," which they contend is an employee welfare benefit plan as defined in ERISA Section

13  3(1)(A), 29 U.S.C. § 1002(1)(A), "for the purpose of providing employee participants with certain

14  benefits in the event of unemployment[.]"  Am. Compl. ¶¶ 2, 27.  Plaintiffs' primary claim (Count

15  I) asserts a wrongful denial-of-benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),

16  alleging the so-called "Twitter Severance Plan" failed to provide participants the benefits

17  purportedly owed.  But this claim fails for the simple reason that there is no such thing as a "Twitter

18  Severance Plan," and Plaintiffs' conclusory assertions otherwise fail to plausibly assert the

19  existence of such a plan.  Because they cannot show that Twitter maintained an ERISA-governed

20  plan, Plaintiffs' Section 502(a)(1)(B) claim should be dismissed.

21      Plaintiffs next assert in Count II that Defendants failed to adequately fund the alleged

22  severance plan in violation of their fiduciary duties under ERISA Section 409, 29 U.S.C. § 1109,

23  and Section 502(a)(2), 29 U.S.C. § 1132(a)(2).  Am. Compl. ¶ 114.  But the duty to fund a severance

24  plan is no more real than the alleged plan itself.  Indeed, ERISA does *not* require an employer to

25  fund an employee welfare benefit plan, such as the alleged severance plan, and creates no liability

26

27

28

---

[1] In March 2023, Twitter, Inc. was merged into X Corp. and ceased to exist.  X Corp. is the successor-in-interest to Twitter, Inc.

[2] No legal entity named "X Holdings" exists.  X Corp.'s parent entity is named X Holdings Corp.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1                    Case No. 3:23-cv-03461-TLT

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1   for an employer that chooses not to do so.  Further, decisions about a plan's source of funding are

2   quintessentially *settlor* functions, not fiduciary ones, and Defendants cannot be held liable under

3   ERISA for settlor decisions.  And, finally, Section 502(a)(2) allows a "participant, beneficiary, or

4   fiduciary" to pursue appropriate relief under Section 409, which authorizes recovery on behalf of

5   the "*plan* [for] any losses to the *plan*[,]" resulting from a breach of fiduciary duty.  29 U.S.C. § 1109

6   (emphasis added).  But Plaintiffs do not identify any loss to the plan and do not seek recovery *on*

7   *behalf of the plan.*  They merely seek additional severance payments to the individual class

8   members.  Plaintiffs cannot bring that sort of claim under ERISA Section 502(a)(2). The Court

9   should similarly dismiss Count IV, asserting a failure-to-monitor claim, because it is wholly

10  derivative of Plaintiffs' fiduciary-breach claim under Count II and fails for the same reasons.

11      Next, Count III purports to seek "equitable" relief under ERISA Section 502(a)(3), 29

12  U.S.C. § 1132(a)(3), based on allegations that Defendants made misrepresentations and failed to

13  disclose information about the alleged severance plan to participants.  But this claim just asks the

14  Court to force Defendants to pay Plaintiffs the benefits they allege the plan provides, the same

15  remedy Plaintiffs request in Count I.  It is blackletter law that Plaintiffs cannot obtain this

16  duplicative relief under Section 502(a)(3).  Further, Plaintiffs offer none of the plausible or specific

17  allegations necessary to support a fiduciary-breach claim based on a misrepresentation as required

18  by the very Ninth Circuit caselaw cited in the Amended Complaint.

19      Finally, Plaintiffs fail to establish that Defendant Musk was a fiduciary in relation to the

20  alleged "Twitter Severance Plan."  Even if such a plan existed (and it did not), Plaintiffs do not

21  allege Defendant Musk exercised any discretionary authority or control respecting the management

22  of Twitter's severance packages that could possibly confer de facto fiduciary status.  Plaintiffs'

23  claims against Defendant Musk fail for this additional reason.

24  **II.    FACTUAL BACKGROUND**

25      In October 2022, Musk acquired ownership of Twitter.  Am. Compl. ¶ 9.  After the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2       Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

acquisition, he was CEO of X Corp.  *Id.* ¶ 10.[3]  X Corp. is a Nevada corporation and the successor-in-interest to Twitter, Inc.  *Id.* ¶ 7.  X Holdings Corporation (named in the Amended Complaint as "X Holdings") is a Nevada corporation and the parent entity of X Corp.  *Id.* ¶ 8.

Beginning in November 2022, Twitter engaged in a reduction of its workforce as part of a strategic reorganization to improve the health of the company.  Am. Compl. ¶ 55.  On November 4, 2022, Twitter notified approximately 2,600 employees they were being discharged as part of a reduction in force and their last day of employment with Twitter would be January 4, 2023.  *See id.* ¶ 55.  In addition to receiving at least 60 days' paid, non-working time between the date they were notified of the layoff and their termination date, consistent with applicable law, these individuals were also promised a severance package equivalent to one month's pay.  *See id.* ¶ 77.  Following the initial rounds of layoffs, additional employees were let go and also offered one month's pay in severance, in addition to the 60 days' or more paid, non-working time.  *See id.* ¶ 79.

Plaintiffs are former employees of Twitter.  Am. Compl. ¶¶ 5-6.  Upon termination of their employment, Plaintiffs were offered severance packages as described above.  *Id.* ¶ 30.  Plaintiffs' severance packages included a "lump sum" cash payment.  *Id.* ¶¶ 76-79.  Plaintiffs claim they are entitled to additional severance benefits.  Plaintiffs assert four causes of action against Defendants: (1) a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) a breach-of-fiduciary duty claim under 29 U.S.C. § 1132(a)(2) (Count II); (3) a claim for equitable relief based on Defendants' alleged failure to disclose information about Twitter's severance packages under 29 U.S.C. § 1132(a)(3) (Count III), and (c) a failure-to-monitor claim under 29 U.S.C. §§ 1105(a) and 1132(a)(3) (Count IV). *See id*. ¶¶ 89-140.

Plaintiffs filed this lawsuit following several other similar lawsuits filed months earlier by former Twitter employees, including *Cornet, et al. v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 3, 2022), which was filed on November 3, 2022.  The *Cornet* plaintiffs assert contract-based claims for severance benefits on behalf of a nationwide putative class of former

---

[3]  Musk was replaced by Linda Yaccarino as the CEO of X Corp. in June 2023.  *See, e.g.*, "Elon Musk Is No Longer the CEO of Twitter. Linda Yaccarino Officially Starts in Role," CNN, June 6, 2023, https://www.cnn.com/2023/06/05/tech/linda-yaccarino-twitter-ceo-elon-musk/index.html

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Twitter employees.  *See generally id.* Dkt. 6, Amended Complaint (Nov. 8, 2022).  Since the November 2022 restructuring, and before Plaintiffs' counsel filed the instant complaint, at least five lawsuits brought by nearly as many plaintiffs' firms were filed challenging the terminations. None asserts claims under ERISA.

## III.   ARGUMENT

### A.   Legal Standard Governing Motion to Dismiss

Rule 12(b)(6) is an "important mechanism for weeding out meritless claims" in the ERISA context.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  Among other reasons, this is because "the prospect of discovery" in these cases is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 718-19 (2d Cir. 2013) (citation omitted).  The Rule 12(b)(6) inquiry "will necessarily be context specific," to ensure that courts separate the "plausible sheep from the meritless goats."  *Dudenhoeffer*, 573 U.S. at 425.  A complaint's "factual content" must be more than "merely consistent with" a defendant's liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conduct "compatible with, but indeed [] more likely explained by, lawful" behavior does not state a claim.  *Id.*  Conclusions are entitled to no presumption of truth.  *Id.* at 680.

### B.   Plaintiffs Fail to State a Claim for Unlawful Denial of Benefits Under ERISA Section 502(a)(1)(B) (Count I)

ERISA governs the management of employee benefit plans, and as a result the Supreme Court has made clear that the existence of a "plan" is a prerequisite to an ERISA lawsuit.  *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).  Therefore, to state a claim under ERISA Section 502(a)(1)(B)—or any provision of ERISA—a "plaintiff must allege facts that establish *the existence of an ERISA plan* as well as the provisions of the plan that entitle [him] to benefits." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015) (emphasis added); *see also* 29 U.S.C. §1132(a)(1)(B) (authorizing an action "to recover

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4          Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

benefits due . . . under the terms of [the] plan").  Although "extremely detailed factual allegations are not required . . . there must be some showing the nature of the benefits promised required [Defendants'] ongoing administrative oversight and some degree of discretion." *Brixius v. Am. Transfer Co.*, 2017 WL 1408096, at *7 (E.D. Cal. Apr. 20, 2017).  "Failure to identify the controlling ERISA plan[] makes a complaint unclear and ambiguous." *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011). Based on this straightforward principle, courts routinely and rightly reject claims for benefits under Section 502(a)(1)(B) where the plaintiff does not plausibly allege the existence of an ERISA-governed benefit plan.

Here, the allegations in the Amended Complaint do not establish that Twitter maintained an ERISA "plan."  To start, Plaintiffs fail to allege that any severance payments made by Twitter necessitated "an ongoing administrative scheme" that would constitute a plan under ERISA. *Coyne*, 482 U.S. at 11 (ERISA applies only "with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.").  "Traditional severance packages, which call for nothing more than a one-time, lump-sum payment, generally do not satisfy the requirement" of an ongoing administrative scheme. *Edwards v. Lockheed Martin Corp.*, 954 F. Supp. 2d 1141, 1149 (E.D. Wash. 2013).  Instead, the Ninth Circuit has recognized as an ERISA plan an ongoing administrative scheme where, unlike here, "the program's administration required a case-by-case, discretionary application of its terms." *Bogue v. AmPex Corp.*, 976 F.2d at 1319, 1323 (9th Cir. 1992).  Thus, "the key" to the analysis is whether there is "enough ongoing, particularized, administrative discretionary analysis to make the plan an 'ongoing administrative scheme . . .'" *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997).  Where conferring the promised benefit requires only "slight discretion by the employer," the Ninth Circuit has concluded ERISA is not implicated. *Id.*; *see also Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994).

Plaintiffs' allegations show the administration of Twitter severance payments required minimal, if any, administrative discretion.  Specifically, Plaintiffs allege that severance payments

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5                    Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

were calculated and distributed based on a single formula involving the former employee's level of employment and years of service.  Am. Compl. ¶ 29.  The former employee then received a single "lump sum" payment based on those ministerial calculations.  *Id.* ¶¶ 74-76.  In other words, severance payments were "fixed, due at known times, and [did] not depend on contingencies outside the employee's control."  *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 546 F.3d 639, 650-51 (9th Cir. 2008) (employer severance payments based on "mechanical recordkeeping" "do not create an ERISA plan.").  Critically, Plaintiffs do not allege that Twitter exercised any discretion in calculating or distributing the payment, but rather "applied" the same rote analysis from a "Plan Matrix" for each departing employee.  Am. Compl. ¶ 34.  Nor do Plaintiffs allege that, once calculated pursuant to the applicable formula, the severance payments were subject to change or reduction over time—they were simply paid out in full.  Thus, as in *Brixius v. American Transfer Co.* and other cases where courts have found no ERISA severance plan existed, "the promised benefit was not contingent on any discretion . . . and required only a cash payment of a sum certain . . . , which was not subject to any changing circumstances or ongoing eligibility requirements."  *Brixius*, 2017 WL 1408096, at *5; *see also Velarde*, 105 F.3d at 1317; *Delaye*, 39 F.3d at 237; *Golden Gate Rest. Ass'n*, 546 F.3d at 650-51.  In short, Plaintiffs do not allege Twitter's severance payments necessitated "an ongoing administrative scheme" that would constitute a "plan" under ERISA, and their benefits claim cannot proceed.

Plaintiffs also fail to allege that Twitter's severance pay bears many of the required characteristics of an ERISA "plan."  To satisfy this pleading requirement, they must plausibly identify "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *Forest Ambulatory Surgical Assocs., L.P.*, 2011 WL 2748724, at *5.  The Amended Complaint lacks these allegations.  For example, Plaintiffs do not allege the source of the alleged plan's funding.  They do not say whether the plan was funded through general corporate assets, through a trust or separate account, or through some other vehicle.  Nor do they allege any funding parameters, actuarial assumptions, or other formulas used to determine the plan's funding needs.  Indeed, Plaintiffs allege absolutely *nothing* about the so-called plan's funding, except that

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1   Defendants stopped funding the plan at some unidentified date.  These bare-bones allegations are

2   insufficient to establish that Twitter maintained an ERISA severance plan. *See, e.g., Simi Surgical*

3   *Ctr., Inc v. Conn. Gen. Life Ins.*, 2018 WL 6332285, at *3 (C.D. Cal. Jan. 4, 2018) ("simply alleging

4   that the plans for the 100 patients are employer and employee funded does not establish the

5   financing for those plans").

6          In attempting to conjure a plan out of thin air, Plaintiffs resort to vague and conclusory

7   allegations that Twitter used a "Matrix" to calculate severance packages and that "[i]nternal

8   procedures existed" for administering and amending the alleged plan.  Am. Compl. ¶¶ 33-36.  These

9   allegations are not enough.  Simply because Twitter paid certain former employees lump-sum

10  severance packages does not on its own mean it maintained an ERISA severance plan.  Indeed,

11  Plaintiffs point to no governing plan documents, no summary plan descriptions, no plan handbook,

12  no formal benefits statements, no administrative committee that reviewed severance benefit claims,

13  no procedures for requesting severance payments or for appealing denial of such payments, and no

14  plan-related public filings with the Department of Labor or Internal Revenue Service[4]—all

15  hallmarks of any ERISA plan.  "[T]he absence of such indicators and policies weighs against the

16  finding of an ERISA employee benefit plan." *Ferrand v. Credit Lyonnais*, 2003 WL 22251313, at

17  *15 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 F. App'x 160 (2d Cir. 2004) (internal quotation marks

18  omitted); *see also Schnitzer v. Bank Leumi USA*, 2010 WL 3069646, at *5 (S.D.N.Y. July 29, 2010)

19  (holding no ERISA plan existed where "[t]here is not a scintilla of evidence of any of the 'usual

20  earmarks' of an ERISA plan[.]").

21         Because Plaintiffs cannot establish the existence of an ERISA severance plan as a matter of

22  law, their claim for benefits should be dismissed.

23

24  _____

[4] Specifically, employee benefit plans are required to file annual Form 5500 disclosures.  "[T]he
25  Department of Labor, Internal Revenue Service, and the Pension Benefit Guaranty Corporation
    jointly developed the Form 5500 series so employee benefit plans could satisfy annual reporting
26  requirements under Title I and Title IV of ERISA and under the Internal Revenue Code." *See
    Grumet v. Life Ins. Co. of N. Am.*, 2021 WL 4907234, at *2 n.2 (C.D. Cal. Sept. 23, 2021).  Notably,
27  Twitter has filed Form 5500s related to the company's 401(k) plan and health plan, but Plaintiffs
    do not allege Twitter filed any Forms 5500 related to the alleged "Twitter Severance Plan."

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7            Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

2

**C.      Plaintiffs Fail to State a Claim for Fiduciary Breach Under ERISA Sections 409 and 502(a)(2) (Count II)**

3          Count II asserts that Defendants breached fiduciary duties under ERISA Sections 409 and

4    502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), by failing to fund the alleged Twitter severance plan

5    "as required."  Am. Compl. ¶ 115.  This claim fails as a matter of law for multiple reasons.

6                  **1.      *Defendants Are Not Liable Under ERISA for Funding Decisions***

7          For starters, even if Twitter maintained a severance "plan" that provided former employees

8    with severance benefits, ERISA does not require Defendants to "fund" such a plan, much less

9    maintain a particular funding level that Plaintiffs deem adequate.  As Plaintiffs acknowledge (Am.

10   Compl. ¶ 2), severance plans are "employee welfare benefit plans" as defined by ERISA.  "The

11   terms 'employee welfare benefit plan' and 'welfare plan' mean any plan . . . established or

12   maintained by an employer . . . for the purpose of providing for . . . benefits in the event of sickness,

13   accident, disability, death or unemployment . . ."  29 U.S.C. § 1002(1)(A) (cited in Am. Compl.

14   ¶ 2); *see also Massachusetts v. Morash*, 490 U.S. 107, 113 & n. 8 (1989); *Orozco v. United Air

15   Lines, Inc.*, 887 F.2d 949, 952 (9th Cir. 1989).[5]

16         However, unlike a pension plan, for example, an employer has no obligation to fund an

17   employee welfare benefit plan under ERISA.  Specifically, the Ninth Circuit has made clear that

18   because "there is no ERISA requirement to vest in employees a right to severance pay," "an

19   employee does not possess nonforfeitable rights in severance pay."  *Snodgrass v. Simpson Timber

20   Co.*, 955 F.2d 48 (9th Cir. 1992) (citing *West v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir.

21   1987); *Turner v. Local Union No. 302, Int'l Bhd. of Teamsters*, 604 F.2d 1219, 1225 n.5 (9th Cir.

22   1979)).  This means that ERISA "does not require vesting or funding of 'employee welfare benefit

23

24   _____

[5] Importantly, "[n]othing in ERISA requires employers to establish employee benefits plans.  Nor
25   does ERISA mandate the kind of benefits employers must provide if they choose to have such a
plan."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).  These voluntary decisions are left to
26   the "large leeway" employers have in deciding what benefits they want to provide to their
employees.  *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508 (6th Cir. 2004) (quotations
27   omitted).  ERISA serves only to protect that commitment once it is made.  *See, e.g.*, *Mass. Mut.
Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985) (noting that ERISA was enacted to "protect
contractually defined benefits" based on the plan document).

28

plans'" such as severance plans, including the Twitter severance "plan" Plaintiffs allege existed here. *Id.*; *see also* ERISA § 201(1), 29 U.S.C. § 1051(1) (exempting welfare plans from ERISA's participation and vesting requirements); ERISA § 301(a)(1), 29 U.S.C. § 1081(a)(1) (exempting welfare plans from ERISA's funding requirements). Therefore, Plaintiffs' fiduciary-breach claim under Section 502(a)(2) based on the purported failure to fund the "plan" fails as a matter of law.[6] *See Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 78 (1995) (ERISA does not establish "any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans," meaning the fact that defendant "amended its plan to deprive respondents of health benefits is not a cognizable complaint under ERISA"); *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 833 (6th Cir. 2007) ("Because ERISA does not require an employer to fund a [welfare] plan, a plan fiduciary 'is not duty-bound to bring suit to collect contributions from an employer unless an employer is bound contractually to . . . make those contributions.'"). Plaintiffs cannot premise a fiduciary-breach claim on Defendants' alleged failure to meet an obligation that simply does not exist under the law.

Moreover, even if an ERISA-governed severance plan exists (it does not) and even if the law required Defendants to fund the plan (it does not), a plan's funding is a quintessential *settlor* activity, and cannot support a fiduciary-breach claim. Plaintiffs ignore the crucial distinction between fiduciary conduct (involving ongoing plan administration) and non-fiduciary "settlor" conduct (involving plan funding and design decisions). When a plan sponsor makes plan-design decisions—such as determining how plan benefits will be funded—it is not acting in a fiduciary capacity or subject to fiduciary liability. *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 890

---

[6] Even if Plaintiffs could assert a claim under Section 502(a)(2) that Defendants did not fund the "Twitter Severance Plan" in violation of their obligations, the Amended Complaint provides zero allegations about the plan's funding mechanisms, its "required" funding level, or even the amount of any claimed shortfall. Rather, Plaintiffs make the conclusory allegation that "Defendants secretly disemboweled the Plan" and "likely divert[ed] Plan funds to other company expenses...." Am. Compl. ¶¶ 114-115. In short, Plaintiffs provide no plausible factual allegations to support their conclusion that the "Twitter Severance Plan" was underfunded, particularly because Defendants' decisions regarding the payment of severance packages to former employees are "more likely explained" by "lawful behavior" than a failure to abide by funding requirements the Amended Complaint does not bother to allege and, in fact, do not exist. *Iqbal*, 556 U.S. at 678, 680.

1   (1996) (explaining that the "defined functions [of a fiduciary] do not include plan design" and

2   ERISA leaves employers "generally free . . . , for any reason at any time, to adopt, modify, or

3   terminate . . . plans," acting "analogous to the settlors of a trust" rather than as its fiduciary) (citation

4   omitted).  Thus, "[a]n employer's or plan sponsor's decision to adopt, modify, or terminate a benefit

5   plan . . . is not a fiduciary act since the statute's defined functions of a fiduciary do not include plan

6   design."  *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 758 (S.D.N.Y. 2003) (citing *Lockheed Corp.,*

7   517 U.S. at 890).  Plaintiffs' fiduciary-breach claim fails.

8           **2.      *Plaintiffs Cannot Assert a Claim for Individual Relief Under Section***

9                   ***502(a)(2)***

10          Plaintiffs' fiduciary-breach claim fails for another reason: Plaintiffs seek to recover

11   individual monetary benefits, not relief *on behalf of the alleged plan*.  ERISA Sections 409 and

12   502(a)(2) allow a "participant, beneficiary, or fiduciary" to sue to recover for the "*plan*[,] any losses

13   to the *plan*[,]" resulting from a breach of fiduciary duty.  29 U.S.C. §§ 1109, 1132(a)(2) (emphasis

14   added).  Because this section protects the interests of a plan as opposed to the personal interests of

15   any individual participant, Section 502(a)(2) claims may be brought only by plan participants "in a

16   representative capacity on behalf of the plan."  *Russell*, 473 U.S. at 142 n.9.  By contrast, "[s]uits

17   by individuals or classes of individuals to compel payment of improperly denied claims or

18   adherence to plan obligations do not meet this threshold."  *Ortega v. Rainbow Disposal Co Inc.*,

19   2016 WL 11757786, at *3 (C.D. Cal. Jan. 14, 2016); *Ford v. MCI Commc'ns Corp. Health &*

20   *Welfare Plan*, 399 F.3d 1076, 1082 (9th Cir. 2005) (holding that an individual is "foreclosed from

21   seeking and receiving an individual remedy for damages under 29 U.S.C. § 1109(a) because that

22   type of remedy is not consistent with ERISA's emphasis on the relationship between a fiduciary

23   and the employee benefit plan as a whole").

24          Here, Plaintiffs do not allege that the so-called "Twitter Severance Plan" has been harmed

25   at all.  Instead, Plaintiffs allege that they personally did not receive all the benefits provided by the

26   plan under "*the terms of the Plan*."  Am. Compl. ¶ 142 (emphasis added).  Allegations, like these,

27   that a plaintiff is entitled to additional severance benefits under a plan's terms do not support a

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10          Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

claim under Sections 409 or 502(a)(2) of ERISA.  *See, e.g., Magin v. Monsanto Co.*, 420 F.3d 679, 687 (7th Cir. 2005) (former employee could not maintain Section 502(a)(2) action where he sought to recover severance benefits on his own behalf); *Rosenblatt v. United Way of Greater Houston*, 590 F. Supp. 2d 863, 876 (S.D. Tex. 2008) (dismissing Section 502(a)(2) claim because employee "[did] not argue that his benefits have been impaired in any manner by the defendants' actions[,]" but instead "focuse[d] on the idea that his benefits have not been properly calculated.").  Plaintiffs here allege that under "the terms of the Plan" they personally should have received *more money* from the plan for themselves, Am. Compl. ¶ 142, which would *reduce*—not increase—the remaining value of the plan's assets (assuming *arguendo* any such assets exist) after those distributions.  That is a claim for individual benefits (addressed above), not a claim on behalf of the "Twitter Severance Plan" (if it existed) for losses to the plan.

### D.      Plaintiffs Fail to State a Claim for Equitable Relief Under ERISA Section 502(a)(3) (Count III)

#### 1.      *Count III Must Be Dismissed Because It Seeks Duplicative Relief*

The Amended Complaint's Section 502(a)(3) claim seeks the same basic relief as the denial-of-benefits claim under Section 502(a)(1)(B).  Specifically, Plaintiffs allege under Count III that as a result of Defendants' supposed misrepresentations (or omissions) about Twitter's severance packages, "[e]mployees received less severance than they were owed and *were denied Plan benefits*."  Am. Compl. ¶ 129 (emphasis added).  Because Count III—again—merely asks the Court to force Defendants to pay Plaintiffs the additional amounts they think they deserve, it fails as a matter of law because the relief requested impermissibly duplicates the relief available under ERISA Section 502(a)(1)(B).[7]

The civil enforcement provisions of ERISA—codified in Section 502(a)—are "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).  By

---

[7] Of course, this claim also fails for the same reason that Plaintiffs' Section 502(a)(1)(B) claim fails: Plaintiffs have not established the existence of a Twitter severance plan that would entitle them to certain severance benefits.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

contrast, "[w]hen a fiduciary breaches its duty and relief is not otherwise available under the statute, [Section 502(a)(3)] provides for individualized equitable relief." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 727 (9th Cir. 2000). Appropriate equitable relief under Section 502(a)(3) refers to categories of relief that were "typically available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011). "[P]laintiffs may not disguise an attempt to obtain monetary relief as a traditional equitable remedy." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014).

The Ninth Circuit has held that a plaintiff may not seek equitable redress under Section 502(a)(3) when adequate relief is available under Section 502(a)(1)(B). *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Because Plaintiffs' benefits claim would be adequately remedied under Section 502(a)(1)(B), they cannot obtain duplicative relief under Section 502(a)(3). *See, e.g.*, *Horan v. Goal Structured Sols., Inc.*, 2021 WL 5177459, at *6 (S.D. Cal. Nov. 2, 2021) ("A plaintiff may not resort to this equitable catchall provision to seek the same relief that a claim for ERISA benefits under § 1132(a)(1)(B) affords."); *Kaminskiy v. Kimberlite Corp.*, 2014 WL 2196191, at *4 (N.D. Cal. May 27, 2014) ("a plaintiff may not base a breach of fiduciary duty claim on an allegation that a plan erroneously denied a claim for benefits, and may only bring such a claim under § 1132(a)(1)(B)."); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp.*, Inc., 2016 WL 6601662, at *11 (C.D. Cal. Feb. 3, 2016) ("To the extent Plaintiffs seek to recover benefits under the plans through injunctions, the requested relief is obviously duplicative of Count I.").[8]

The fact that the Amended Complaint seeks injunctive or declaratory relief does not alter this analysis. Section 502(a)(1)(B) already allows a plaintiff to "enforce his rights under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and to seek declaratory and injunctive relief. *Russell*, 473 U.S. at 147 (participant can file an "action pursuant to § 502(a)(1)(B) to recover accrued benefits,

---

[8] This analysis—and the necessary result—is not altered by the fact that Plaintiffs' claim for benefits under Section 502(a)(1)(B) in Count I fails. *See, e.g.*, *Hutcherson v. Krispy Kreme Doughnut Corp.*, 2010 WL 3893840, at *3 (S.D. Ind. Sept. 30, 2010), *on reconsideration in part on other grounds*, 803 F. Supp. 2d 952 (S.D. Ind. 2011) (dismissing Section 502(a)(3) claim as duplicative even where 502(a)(B) claim was dismissed on standing grounds). After all, what matters for purposes of the analysis is that Plaintiffs have a basis to pursue the relief that they seek, not that they will prevail.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12                    Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1    to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan

2    contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the

3    future").  Simply put, because Plaintiffs seek the payment of additional severance benefits, ERISA

4    Section 502(a)(1)(B) governs, and their attempt to pursue that same relief under the guise of Section

5    502(a)(3) is entirely without merit.

6           **2.     *Count III Should Be Dismissed Because It Fails to State a Failure-to-*

7                    *Disclose or Misrepresentation Claim Under ERISA*

8           To the extent Count III seeks relief beyond the payment of benefits sought in Count I, and

9    on behalf of the alleged plan and not Plaintiffs themselves, it fails on its own terms.  When alleging

10   misrepresentation, Rule 9(b) requires Plaintiffs to state the circumstances constituting the

11   misrepresentation "with particularity."  Fed. R. Civ. P. 9(b).  Particularity requires, at a minimum,

12   "the who, what, when, where, and how of the misconduct charged," *Kearns v. Ford Motor Co.*, 567

13   F.3d 1120, 1124 (9th Cir. 2009), "as well as what is false or misleading about [the] statement, and

14   why it is false," *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

15   2011) (internal quotation marks omitted).  Plaintiffs' vague and conclusory allegations fall far short

16   of this standard, as well as the more lenient standard under Rule 8(a).

17          First, Plaintiffs vaguely allege Defendants breached their "duty to inform plan participants

18   when changes to [the] plan [were] under 'serious consideration.'"  Am. Compl. ¶ 117 (citing

19   *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180–82 (9th Cir. 2004)).  According to *Mathews*,

20   "'[s]erious consideration' occurs when (1) a specific proposal (2) is being discussed for purposes

21   of implementation (3) by senior management with the authority to implement the change."  362

22   F.3d at 1180 (internal quotation marks omitted).  "These three related elements . . . must be

23   analyzed together in an 'inherently fact-specific' review."  *Id.*  The Amended Complaint offers zero

24   "fact-specific" allegations regarding any "specific proposal" by Defendants to alter Twitter's

25   severance payments, including the timing of such a proposal and whether it was "seriously

26   considered" *before or after* any alleged representations by Defendants about the continuance of

27   Twitter's severance program.  As the Ninth Circuit has held, any representations about Twitter

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13        Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

employees' severance made *before* Defendants "seriously consider[ed]" changes to the Company's severance "are not material and hence not an actionable violation of the ERISA-imposed duty to respond 'accurately and straightforwardly' to inquiries from the [P]laintiffs" about Twitter's severance. *Id.* In other words, to state a claim, the Amended Complaint must allege that Defendants "seriously considered" making changes to Plaintiffs' severance before making representations that the severance payments would not change. Plaintiffs do not offer this basic (but crucial) information, and thus their claim fails.

Second, Plaintiffs allege "Defendants misled Plan participants" about their eligibility and benefits under the supposed severance plan. Am. Compl. ¶ 119. To prevail on a breach-of-fiduciary-duty claim based on a misrepresentation, a plaintiff must show: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation by the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *Baker v. Save Mart Supermarkets*, 2023 WL 2838109, at *3 (N.D. Cal. Apr. 7, 2023). The Amended Complaint fails at every step.

To start, Plaintiffs do not identify any alleged misrepresentations by "an ERISA fiduciary." Instead, the Amended Complaint alleges that "Plaintiff Cooper asked his manager multiple times about the layoffs and the availability of severance[,]" but that Cooper did not receive a response. Am. Compl. ¶¶ 63-65. These vague allegations about an unnamed "manager" and the alleged lack of a response do not plausibly suggest an ERISA fiduciary made any actionable misrepresentation about Twitter severance. The law is clear that corporate managers "do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, 'unless it can be shown that they have individual discretionary roles as to plan administration.'" *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 447 (D. Md. 2005) (citing *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991)). Such allegations are completely absent here. Even more attenuated are Plaintiffs' allegations that "[a] senior Twitter executive told Plaintiff McMillian that Twitter human resource officials repeatedly told Defendant Musk" that the company would pay certain severance amounts after the sale of Twitter in late 2022. *Id.* ¶ 57. These allegations are more akin to a game

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

of "Telephone" than well-pleaded facts about a specific misrepresentation made by a specific ERISA fiduciary, and do not form a basis for a fiduciary-breach claim.

Plaintiffs' claim must also be dismissed because they fail to establish "reasonable and detrimental reliance on" a specifically identified misrepresentation. *See Poore v. Simpson Paper Co.*, 566 F.3d 922, 928 (9th Cir. 2009) (quoting *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam) (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3d Cir. 1995))). Instead, Plaintiffs allege in the most general terms that "[e]mployees continued working at Twitter throughout the layoffs, understanding they would be eligible for severance benefits in the event of layoffs." Am. Compl. ¶ 129. That is not enough. Not only are these generic allegations devoid of any particularities specific to either Plaintiff—for example, allegations that McMillian or Cooper made a particular decision regarding their employment at Twitter based on a specific misrepresentation about their potential severance—but the very premise of these allegations makes no sense. Plaintiffs simultaneously allege they "continued working at Twitter *throughout the layoffs*" based on a promise of severance payments down the road, but also that they were let go from the company *as a result of the layoffs. See, e.g.*, Am. Compl. ¶ 5 ("Plaintiff McMillian was informed of her termination on November 4, 2022."). Plaintiffs do not explain how they "continued working" at the Company at the same time they were terminated, or what they would have done differently upon being laid off had they been informed that their severance payments would be smaller than the amounts they had expected. As a result, Plaintiffs cannot establish the elements necessary to make out a plausible claim for breach of fiduciary duty.

### E.   Plaintiffs Fail to State a Claim for Failure to Monitor (Count IV)

Count IV alleges that Defendants breached their fiduciary duties under ERISA by failing to monitor "other Plan fiduciaries or non-fiduciaries who knowingly participated in the fiduciaries' breach of duties." Am. Compl. ¶ 133. The Court should dismiss Plaintiffs' failure-to-monitor claim because it is entirely derivative of their claim for breach of duty (Count II), and so fails along with it. *See Foster v. Adams & Assoc., Inc.*, 2020 WL 3639648, at *2, 3 (N.D. Cal. July 6, 2020)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15          Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1   (collecting cases).  Because the Amended Complaint fails to allege facts sufficient to plausibly state

2   a claim of fiduciary-breach, its failure-to-monitor claim must be dismissed too.

3   **F.     Defendant Musk Is Not a Fiduciary to Any Twitter Severance Plan**

4       Plaintiffs assert Defendant Musk is liable as "sole owner and CEO of Twitter during the

5   events in this case . . . ."  Am Compl. ¶ 3.  Plaintiffs' claims against Defendant Musk fail for all the

6   reasons described above, including because Twitter's severance practices, even as alleged, do not

7   constitute a "plan" under ERISA, Defendants had no obligation under ERISA to fund such an

8   alleged "plan," and any decisions about such a plan's funding were settlor acts that are not subject

9   to ERISA's regulation.  *See supra* 4-15.

10      Plaintiffs' claims against Defendant Musk fail for the additional reason that, even if a

11  Twitter severance plan existed, Defendant Musk is not an ERISA fiduciary in relation to that plan.

12  "In every case charging breach of ERISA fiduciary duty, the threshold question is . . . whether that

13  person was acting as a fiduciary . . . when taking the action subject to complaint."  *Pegram v.*

14  *Herdrich*, 530 U.S. 211, 226, (2000).  The "authority to control and manage the operation and

15  administration of the plan must be vested in one or more named fiduciaries."  *Johnson v. Couturier*,

16  572 F.3d 1067, 1076 (9th Cir. 2009) (citing 29 U.S.C. § 1102(a)).  Here, Plaintiffs do not allege

17  that Defendant Musk was a named fiduciary of the so-called Twitter severance plan.

18      ERISA also contemplates liability for those who exercise fiduciary responsibility over a

19  plan even if they are not the plan's named fiduciaries.  Thus, ERISA "defines 'fiduciary' not in

20  terms of formal [roles], but in functional terms of control and authority over the plan."  *Johnson*,

21  572 F.3d at 1076 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)).  Therefore, "[t]o

22  determine whether one qualifies as a fiduciary, courts ask whether one exercises discretionary

23  authority or control respecting management over the plan . . . or has discretionary authority or

24  responsibility in the administration of the plan."  *Brown v. Cal. Law Enforcement Ass'n, Long–*

25  *Term Disability Plan*, 81 F.Supp.3d 930, 934 (N.D. Cal. 2015) (citing 29 U.S.C. § 1002(21)(A)).

26  Fiduciary status under ERISA is not an "all-or-nothing concept," and "a court must ask whether a

27  person is a fiduciary *with respect to the particular activity at issue*."  *In re JDS Uniphase Corp.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16          Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1    *Erisa Litig.*, 2005 WL 1662131, at *2 (N.D. Cal. July 14, 2005)

2        The Amended Complaint does not plausibly assert Defendant Musk was a functional

3   fiduciary of the supposed Twitter severance plan. Plaintiffs offer only conclusory allegations that

4   "Defendant Musk exercised discretion and control over the Twitter Severance Plan and was thus a

5   functional fiduciary of the Plan." Am. Compl. ¶ 10. These boilerplate allegations might check a

6   box, but simply aping statutory language is insufficient to plead fiduciary liability. *See, e.g., Haw.*

7   *Masons' Pension Tr. Fund v. Glob. Stone Haw., Inc.*, 292 F. Supp. 3d 1063 (D. Haw. 2017) (finding

8   "conclusory allegations" regarding defendants' authority and control over plan assets failed to plead

9   fiduciary status) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *In*

10   *re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *In re JDS Uniphase Corp. Erisa*

11   *Litig.*, 2005 WL 1662131, at *2 (finding "conclusory allegations" that defendants "exercis[ed]

12   discretionary authority with respect to management and administration of the Plans" insufficient);

13   *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (holding that simple

14   allegations that a defendant falls within the statutory definition of fiduciary are conclusory

15   assertions, not well-pleaded factual allegations); *Daley v. Lockheed Martin Corp.*, 2017 WL

16   2834130, at *5 (N.D. Cal. June 30, 2017) (similar).

17        To the extent Plaintiffs offer any specific allegations about Defendant Musk's activities

18   regarding Twitter's severance payments, they allege only that he "communicated with employees

19   about the availability of severance." Am. Compl. ¶ 21. While courts have held that fiduciary

20   conduct encompasses conveying information about the likely future of plan benefits, *Brown v. Cal.*

21   *Law Enforcement Ass'n, Long–Term Disability Plan*, 81 F. Supp. 3d 930, 934 (N.D. Cal. 2015)

22   (quoting *Bins v. Exxon Co. U.S.A*., 220 F.3d 1042, 1048 (9th Cir. 2000)), the Amended Complaint

23   does not identify any particular communication by Defendant Musk except for a November 2022

24   Twitter message in which he allegedly stated terminated employees were receiving "50% more

25   than legally required." Am. Compl. ¶ 71. But as the Amended Complaint acknowledges, "Musk

26   appears to be referring to the two-month notice period required under the Worker Adjustment and

27   Retraining Notification Act" rather than the actual amount or availability of severance benefits. *Id.*

28

1  at ¶ 72.   Thus, Plaintiffs all but concede their own allegations do not show Defendant Musk

2  communicated with employees about the form or amount of any severance benefits in a way to

3  suggest he was a fiduciary to the plan.

4  In the end, Plaintiffs fall back on the theory that Defendant Musk is a *de facto* fiduciary

5  because he owns Twitter and held the position of CEO, and thus allegedly "acted with unchecked

6  discretion and control over nearly every aspect of the company." Am. Compl. ¶¶ 97-105.   But

7  Plaintiffs cannot successfully end-run ERISA's functional fiduciary test merely by asserting that

8  Defendant Musk is an officer of the company.   Indeed, corporate officers "do not become

9  fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, unless

10  it can be shown that they have individual discretionary roles as to plan administration." *In re Mut.*

11  *Fund Inv. Litig*., 403 F. Supp. 2d at 447  (citing *Confer*, 952 F.2d at 37).   Here, as explained *supra*,

12  Plaintiffs offer zero non-conclusory allegations to support a claim that Defendant Musk exercised

13  authority or control regarding the alleged severance plan that would make him a fiduciary. *In re*

14  *Calpine Corp.*, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) (finding corporate officers were not

15  *de facto* fiduciaries simply because they controlled the sponsor company).   Therefore, their claims

16  against Defendant Musk fail as a matter of law and should be dismissed.

## IV. <u>CONCLUSION</u>

18  For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its

19  entirety and with prejudice.

20  Dated: January 9, 2024                              MORGAN, LEWIS & BOCKIUS LLP

22  By   /s/ *Melissa Hill*
                                                   Melissa Hill (*pro hac vice*)
23                                                 Mark Feller
                                                   Sean McMahan (*pro hac vice*)
24                                                 Jared R. Killeen (*pro hac vice*)

25                                                 Attorneys for Defendants

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18        Case No. 3:23-cv-03461-TLT
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES