Kate Mueting, DC Bar No. 988177 (*pro hac vice*)
Dacey Romberg, DC Bar No. 90003767 (*pro hac vice*)
Samone Ijoma, MD Bar No. 2012170086 (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206
kmueting@sanfordheisler.com
dromberg@sanfordheisler.com
sijoma@sanfordheisler.com

Charles Field, SBN 189817
**SANFORD HEISLER SHARP, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
Telephone: (619) 577-4252
cfield@sanfordheisler.com

Kristi Stahnke McGregor, GA Bar No. 674012 (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com

Christopher Owens, MD Bar No. 220280004 (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, Maryland 21202
Telephone: (410) 834-7422
cowens@sanfordheisler.com

*Attorneys for Plaintiffs
and the Potential Class*

Case No. 3:23-cv-03461-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

i

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTHERN CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hon. Trina L. Thompson<br><br>DATE: April 9, 2024<br>TIME: 2:00 pm PT<br>LOCATION: Courtroom 09 |

1

## <u>**TABLE OF CONTENTS**</u>

2

I.    INTRODUCTION ..................................................................................................1

3

II.   SUMMARY OF ARGUMENT .............................................................................1

4

III.   ARGUMENT .......................................................................................................3

5

   A.   Standard for Motion to Dismiss .......................................................................... 3

6

   B.   Count I: Plaintiffs Have Adequately Pled the Existence of an ERISA Plan ....................... 3

7

   C.   Counts II-IV: Musk Was a Fiduciary; He and Other Fiduciaries Breached Their Duties... 8

8

      i.    Plaintiffs Have Pled Sufficient Facts to Establish That Musk was a Fiduciary.............. 8

   D.   Count II: Defendants Had a Duty to Ensure the Plan Could Pay Contractually Guaranteed

9

   Benefits, and the Plan was Harmed by Defendants' Breach ....................................................... 10

10

      i.    Because the Merger Agreement Guaranteed Severance Benefits, the Fiduciaries had a

   Duty to Ensure the Plan Could Pay Severance Benefits ........................................................ 10

11

      ii.   Plaintiffs Have Adequately Alleged Harm to the Plan.................................................. 12

12

   E.   Count III: Defendants Breached Their Fiduciary Duties by Failing to Provide Complete

13

   and Accurate Information ....................................................................................................... 13

14

      i.    Plaintiffs' Claims Based on the Failure to Disclose or Misrepresentation are Subject to

   Rule 8 Notice Pleading, Not Rule 9(b) Heightened Pleading................................................. 13

15

      ii.   Plaintiffs Have Adequately Pled Failure to Disclose and Misrepresentation .............. 14

16

   F.   Count IV: Plaintiffs' Claims for Equitable Relief Should Not be Dismissed As Seeking

   Duplicative Relief .................................................................................................................. 18

17

      i. Plaintiffs Can Assert Claims in the Alternative for Both Benefits and Equitable Remedies

18

   ............................................................................................................................................... 18

      ii.  Plaintiffs Seek Equitable Relief Not Available Under a Claim for Benefits ................ 19

19

   G.   Count IV: Dismissal of the Failure to Monitor Claim Would Be Inappropriate at This

20

   Stage...................................................................................................................................... 20

21

IV.   CONCLUSION....................................................................................................21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Cases**

*Alday v. Raytheon Co.*, 693 F.3d 772 (9th Cir. 2012)......................................................................... 11

*Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016) ...................................................... 15, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................. 3

*Bafford v. Northrup Grumman Corp.*, 994 F.3d 1020 (9th Cir. 2021) ........................................... 10

*Barker v. Save Mart Supermarkets*, 2023 WL 2838109 (N.D. Cal. Apr. 7, 2023)...................... 16

*Bd. of Trs. of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*,
2014 WL 4383062 (N.D. Cal. Sept. 4, 2014) ................................................................................. 20

*Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042 (9th Cir. 2000).................................................... 9, 13, 16

*Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984) .......................................................... 15, 20

Bogue v. Ampex Corporation, 976 F.2d 1319 (9th Cir. 1992).................................................... 4, 5, 6, 8

*Bouboulis v. Transp. Workers Union*, 442 F.3d 55, 58 (2d Cir. 2006)........................................ 10

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ..................................................... 17

*Brixius v. Am. Transfer Co.*, 2017 WL 1408096 (E.D. Cal. Apr. 20, 2017) ................................. 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ............... 14

*Cf. Sutton v. Brandywine Realty Trust*, 2007 WL 2288118 (N.D. Cal. Aug. 7, 2007)................. 5

*Champagne v. Revco*, 997 F. Supp. 220 (D.R.I. 1998)................................................................... 6

*Chea v. Lite Star ESOP Comm.*, 2024 WL 280771 (E.D. Cal. Jan. 25, 2024) ........................... 14

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)............................................................ 16, 17, 18, 20

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ................................................................. 13, 14

*Davis v. Old Dominion Tobacco Co. Inc.*, 688 F. Supp.2d 466 (E.D. Va. 2010).......................... 8

*Delaye v. Agripac, Inc.*, 39 F.3d 236 (9th Cir. 1994) .................................................................... 4

*Diak v. Dwyer, Costello & Knox*, 33 F.3d 809 (7th Cir. 1994) ..................................................... 7

*Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982)..................................................... 4, 6, 8

*Edwards v. Lockheed Martin Corp.*, 954 F. Supp. 2d 1141 (E.D. Wash. 2013) ........................... 6

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999).............................................. 6

*Fair v. Giant of Maryland LLC*, 2006 WL 361338 (D. Md. 2006) ........................................ 7

*Fischer v. Phila. Elec. Co.*, 96 F.2d 1533 (3d Cir. 1996) ............................................... 20

*Fischer v. Phila. Elec. Co.*, 994 F.2d 130 (3d Cir. 1993) ................................................ 15

*Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076 (9th Cir. 2005).............. 13

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*,

2011 WL 2748724 (N.D. Cal. July 13, 2011)............................................................ 3

*Fort Halifax Co., Inc. v. Coyne*, 482 U.S. 1 (1989)............................................... passim

*Frulla v. CRA Holdings Inc.*, 2006 WL 8452995 (S.D. Fla. July 21, 2006) .............................. 12

*Frulla v. CRA Holdings*, 596 F. Supp. 2d 275 (D. Conn. 2009)..................................... 10, 11, 12

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945 (9th Cir. 2014)........................................ 16

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco* 546 F.3d 639 (9th Cir. 2008)............. 5

*Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012 (9th Cir. 1992)........................................ 11

*Hutcherson v. Krispy Kreme Doughnut Corp.*, 803 F.Supp.2d 952 (S.D. Ind. 2011) ................. 18

*In re AEP ERISA Litig.*, 327 F. Supp.2d 812 (S.D. Ohio 2004) .................................... 17

*In re Elec. Data Sys. Corp., ERISA Litig.*, 305 F.Supp.2d 658 (E.D.Tex. 2004) ........................ 21

*In re First Am. Corp. ERISA Litig.*, 2008 WL 5666637 (C.D. Cal. July 14, 2008).......... 14, 15, 17

*In re Polaroid*, 362 F. Supp.2d 461 (S.D.N.Y.2005).................................................... 14

*In re Sprint Corp., ERISA Litig.*, 388 F.Supp.2d 1207 (D. Kan. 2004) ....................................... 21

*In re Syncor ERISA Litig.*, 351 F.Supp.2d 970 (C.D. Cal. 2004) .............................................. 21

*In re WorldCom, Inc.*, 263 F. Supp.2d 745 (S.D.N.Y. 2003) ...................................... 12

*Inter-Modal Rail Emp. Ass'n. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 520 U.S. 510 (1997) .. 12

*Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538 (S.D.N.Y. 2016) .............................. 14

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)..................................................... 8

*Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir. 2004)............................. 13

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................ 18

Case No. 3:23-cv-03461-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

v

*Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010)..........................................10, 15

*King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730 (9th Cir. 2017) ...................................9, 13

*Kokesh v. SEC*, 581 U.S. 455 (2017) ...............................................................................................19

*Kolkowski v. Goodrich Corp.,* 448 F.3d 843 (6th Cir. 2006) ........................................................6, 7

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*,

710 F.3d 57 (2d Cir. 2013).............................................................................................................10

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) .................................................12

*LD v. United Behavioral Health*, 508 F. Supp. 3d 583 (N.D. Cal. 2020)......................................20

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)...............................................................................12

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) ........................................................10

*Magin v. Monsanto Co.*, 420 F.3d 679 (7th Cir. 2005)...................................................................13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)................................3

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .............................................................12

*Massachusetts v. Morash*, 490 U.S. 107 (1989) ..............................................................................5

*Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004) ...........................................................13

*Messmer v. Xerox Corp.*, 139 F. Supp. 2d 398 (W.D.N.Y. 2001) ..................................................12

*Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948 (9th Cir. 2016)..............................................18

*Mullins v. Pfizer, Inc.,* 147 F. Supp.2d 95 (D. Conn. 2001) ..........................................................15

*Ortega v. Rainbow Disposal Co. Inc.*, 2016 WL 11757786 (C.D. Cal. Jan. 14, 2016)................13

*Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999 (8th Cir. 2004)..............................20

*Parker v. Bain*, 68 F.3d 1131 (9th Cir. 1995)................................................................................8, 9

*Pfahler v. Nat'l Latex Prods. Co.* 517 F.3d 816 (6th Cir. 2007) ..............................................10, 13

*Poore v. Simpson Paper Co.*, 566 F.3d 922 (9th Cir. 2009)...........................................................16

*Rosenblatt v. United Way of Greater Hous.*, 590 F. Supp. 2d 863 (S.D. Tex. 2008)....................13

*Scott v. Gulf Oil Corp.* 754 F.2d 1499 (9th Cir. 1985) ....................................................................8

*Shannahan v. Dynegy., Inc.*, 2006 WL 3227319 (S.D. Tex. Nov. 6, 2006) ...................................17

*Simi Surgical Ctr., Inc. v. Conn. Gen. Life. Ins.*, 2018 WL 6332285 (C.D. Cal. Jan 4, 2018) ...... 7

*Snodgrass v. Simpson Timber Co.,* 955 F.2d 48 (9th Cir. 1992) ................................... 12

*Su v. Fensler*, No. 22-cv-01030, 2023 WL 5152640 (N.D. Il Aug. 10, 2023) ............................ 19

*Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862 (9th Cir. 2018) .............. 11

*Turner v. Local Union No. 302, Int'l Bhd. Of Teamsters*, 604 F.2d 1219 (9th Cir. 1979) .......... 12

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ......................................................... 9, 10

*Vartanian v. Monsanto Co.*, 131 F.3d 264 (1st Cir. 1997) ........................................ 16

*Vasseur v. Halliburton Co.*, 950 F.2d 1002 (5th Cir. 1992) ...................................... 10

*Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313 (9th Cir. 1997) .................... 4, 5

*W. v. Greyhound Corp.*, 813 F.2d 951 (9th Cir. 1987) ............................................. 12

*Warmenhoven v. NetApp, Inc.*, 12 F.4th 717 (9th Cir. 2021) ...................................... 13

*Williams v. Wright*, 927 F.2d 1540 (11th Cir. 1991) ............................................... 7

*Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933 (9th Cir. 2003) .......................... 6

**Statutes**

29 U.S.C. § 1002(21)(A) ........................................................................... 8

## I.     <u>INTRODUCTION</u>

This case concerns the rights of thousands of employees to obtain the benefits that they are owed under Twitter's Severance Plan ("Plan" or "Severance Plan"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. For years, the employer maintained a policy of providing severance packages to departing employees, calculated pursuant to an intricate matrix, and with dedicated staff from numerous departments processing claims. In defiance of ERISA, however, the employer kept the Plan largely secret until the day a controversial merger was announced. To prevent an expected outflow of talent, the company publicized summaries of Plan benefits to employees and guaranteed them that the benefits would continue for at least one year following the merger. Defendant Elon Musk—the acquirer of the company—approved these communications. Nonetheless, upon taking control of the company, Defendants began to plan for mass layoffs and firings to take place contrary to the terms of the Plan and promised benefits. Contractual obligations to provide services and funds to and through the Plan, were cast aside, with those revenues going instead into Defendants' pockets. Defendants ceased further communication regarding the Plan, cut off avenues of inquiry about it, and denied that employees were covered by any plan at all. In the process of terminating thousands, Defendants told employees that they were entitled to little or no severance. Plaintiff-employees filed this suit under ERISA to show Defendants that they are wrong.

## II.     <u>SUMMARY OF ARGUMENT</u>

Count I asserts claims under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), for failure to pay benefits due under the Plan. Amended Complaint ¶¶ 89–109 ("Compl."). Defendants challenge Count I only by asserting that there was no severance plan. Mot. at 4–7. This is a question of fact inappropriate for resolution before discovery. Plaintiffs have adequately pled facts indicating the Plan is an ongoing administrative scheme with reasonably ascertainable components.

Plaintiffs also assert claims for breach of fiduciary duties under §§ 502(a)(2) (Count II) and (a)(3) (Count III) of ERISA, 29 U.S.C. §§1132(a)(2) & (a)(3). Compl. ¶¶ 110–31. However,

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs plead facts sufficient to establish Defendant Musk was a fiduciary. He discussed layoffs during meetings with human resources ("HR") officials, who told him that laid-off employees were eligible for benefits under the Plan and that Twitter was obligated to pay these benefits under the Merger Agreement. Plaintiffs also allege that Defendants exercised complete control over the Plan, managed the Plan, directed communications about the Plan, and decided not to pay benefits.

Count II asserts claims for breach of fiduciary duties under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), for failing to fund the Plan. Compl. ¶¶ 110–15. Twitter had a contractual obligation to fund the Plan under the Merger Agreement, and under these circumstances, courts find it a breach of fiduciary duty not to fund a welfare benefit plan. The harm is to the Plan and any recovery in this action will be returned to the Plan. The fact that recovery to the Plan will benefit Plan participants does not transform the claim into one for individual benefits.

Count III asserts claims for equitable relief for breach of fiduciary duty under § 502(a)(3) of ERISA for failure to provide complete and accurate information to Plan participants. Compl. ¶¶ 116–31. Plaintiffs properly assert this claim in the alternative to the benefits claims. The equitable relief sought is not duplicative of Plaintiffs' claims for benefits; Plaintiffs seek, for example, an order compelling the appointment of one or more independent fiduciaries and disgorgement of any amounts by which Defendants were unjustly enriched through their breaches of fiduciary duties, neither of which are available under Plaintiffs' claim for benefits under ERISA §502(a)(1)(B). Defendants insist that Plaintiffs should have to identify details of the decision to change the Plan, despite the fact that Defendants concealed this information from employees. Defendants speak out of both sides of the mouth, first claiming that they were not obligated to pay severance benefits under ERISA, and then claiming that Plaintiffs may not seek equitable relief because they could be made whole by Defendants' payment of benefits.

Defendants' arguments against Plaintiffs' failure-to-disclose and misrepresentation claims are unavailing: Plaintiffs identified the specific proposal to change Twitter's severance payments (a proposal not to pay benefits) and numerous misrepresentations (promises of benefits and

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

subsequent omissions). Furthermore, detrimental reliance is not necessary for Plaintiffs' requested remedies.

Count IV alleges that Defendants breached their fiduciary duty by failing to monitor other Plan fiduciaries and non-fiduciaries, Compl. ¶¶ 132–40, and Defendants challenge this only on the basis that Plaintiffs' breach of fiduciary duty claim fails (which it does not).

### III.   **ARGUMENT**

### A.   **Standard for Motion to Dismiss**

In ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiffs need only provide a facially plausible plain statement of fact that gives defendants notice of the claims and "that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### B.   **Count I: Plaintiffs Have Adequately Pled the Existence of an ERISA Plan**

Plaintiffs' allegations easily "raise the existence of an ERISA plan above a speculative level." *Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011). Plaintiffs clearly identify the Plan and Plan provisions at issue and attach to their complaint ███████████████████████████. Dkt. 1–1. Plaintiffs detail how this Plan requires a dedicated staff to apply a multi-variable eligibility matrix containing numerous discretionary criteria, parameters, and formulae to departing employees whom the company has provided with severance packages since at least 2019. Compl. ¶¶ 27–34, 43, 48, 49, 51, 66–70. Through these allegations, and ████████ Plaintiffs have carried their burden of setting forth non-conclusory facts to show that the Plan constituted an "ongoing administrative scheme," and is thus covered by ERISA. *Fort Halifax Co., Inc. v. Coyne*, 482 U.S. 1, 18 (1989). Though such fact-intensive questions are more properly resolved after discovery, Plaintiffs' allegations are also sufficient to meet the standard set forth in *Donovan v. Dillingham*, which asks "whether from the surrounding circumstances a reasonable person could ascertain the

intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." 688 F.2d 1367, 1373 (11th Cir. 1982).

*Ongoing administrative scheme.* A plan is governed by ERISA where it is an "ongoing administrative program for processing claims and paying benefits." *Fort Halifax*, 482 U.S. at 12. In *Fort Halifax*, the Supreme Court held that a state statute requiring one-time, automatic payments to workers in the event of a factory shutdown did not qualify as an employee welfare benefit plan under ERISA, because "the employer assume[d] no responsibility to pay benefits on a regular basis, and thus face[d] no periodic demands on its assets." *Id.* Instead, the employer's obligation was "predicated on the occurrence of a single contingency that may never materialize." *Id.* In contrast, an ERISA plan is established where the employers' "commitment to pay severance benefits to employees as each person left employment . . . created the need for an administrative scheme to pay these benefits on an ongoing basis." *Id.* at 18 n.10.

In *Bogue v. Ampex Corporation*, the Ninth Circuit elaborated on this standard, holding that a lump-sum severance plan for ten employees constituted an "ongoing administrative scheme." 976 F.2d 1319, 1323 (9th Cir. 1992). The court relied on two facts about the plan: first, "the circumstances of each employee's termination ha[d] to be analyzed in light of certain criteria," thus requiring some decision-making on the part of the employer beyond an "unthinking, one-time, nondiscretionary application"; and second, this analysis, and subsequent payment, would "occur more than once, at a different time for each employee." *Id.* As such "[w]hether or not [the company] ever thought it would have to administer an ERISA plan does not matter; there was no way to administer the program without an administrative scheme." *Id.*

By contrast, in *Delaye v. Agripac, Inc.*, 39 F.3d 236 (9th Cir. 1994) and *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997), the Ninth Circuit found that the policies did not require an ongoing administrative scheme where they were triggered by a single, across-the-board event, and the employer was only required to determine whether an employee was terminated "for cause" and make a single arithmetic calculation to calculate benefits. *See Delaye*, 39 F.3d at 237–38 (benefits triggered by sole beneficiary's individual

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   termination); *Velarde*, 105 F.3d at 1316–17 (all employees would receive identical automatic

2   payments upon working through a uniform date).[1]

3          Here, Plaintiffs allege sufficient facts to show the Severance Plan constituted an "ongoing

4   administrative scheme." First, contrary to Defendants' assertions, the Plan does not comprise a

5   "single formula," nor involve mere "ministerial calculations," nor involve "the same rote analysis

6   . . . for each departing employee." Mot. at 6. Rather, ████████████████████████████████

7   ██████████████████████████ █████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████   already far exceeds what the Ninth Circuit found sufficient in *Bogue*.[3]

13         Second, Defendants are wrong that the Plan consists of only of lump sums that "were

14  simply paid out in full." Mot. at 6. The Plan also consists of outplacement services that continue

15  for a variable period following departure. Compl. ¶¶ 30–31. Such services, along with lump-sum

16  payments create a plan of ongoing administration. *See Kolkowski v. Goodrich Corp.,* 448 F.3d

17

18

19  [1] Likewise, another case upon which Defendants rely, *Golden Gate Rest. Ass'n v. City & Cnty. of*

20  *San Francisco*, concerned what was, in effect, a local tax. It was not an ERISA plan for numerous reasons, among them, that benefits were not paid to employees, and it required no case-by-case

21  assessment of employees beyond hours worked. 546 F.3d 639, 650–51 (9th Cir. 2008). Additionally, the language Defendants cite from this case comes from *Massachusetts v. Morash*,

22  490 U.S. 107, 115 (1989) in a discussion of paid vacation benefits, not severance. *Golden Gate Rest. Assan.*, 546 F.2d at 651.

23  [2] ████████████████████████████████████████████████████████████

24  ████████████████████████████████  The lack of a definition of █████████

25  highlights why the Court need not address this issue at this juncture. *Cf. Sutton v. Brandywine*

26  *Realty Trust*, 2007 WL 2288118 (N.D. Cal. Aug. 7, 2007)( ERISA severance plan ████████ ████████████████████████  with sufficient employer discretion).

27  [3] For example, the Matrix states ████████████████ ████████████████████████████   thereby preventing the sort of "unthinking, one-time, nondiscretionary"

28  analysis described in *Bogue* as insufficient. 976 F.2d at 1323.

Case No. 3:23-cv-03461-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

5

843, 849 (6th Cir. 2006); *Champagne v. Revco*, 997 F.Supp. 220, 225 (D.R.I. 1998). [4]

Furthermore, even if the Plan were based only on lump sums, it would still comprise an "ongoing administrative scheme" because, as in *Bogue*, the analysis and payments "occur more than once, at a different time for each employee." 976 F.2d at 1323. Indeed, the very case Defendants appeal to on this point found that a lump-sum severance plan was an ERISA plan, because of facts that mirror those pled by Plaintiffs. *See Edwards v. Lockheed Martin Corp.*, 954 F.Supp. 2d 1141, 1151 (E.D. Wash. 2013), *aff'd* 617 F.App'x. 648 (9th Cir. 2015) ("Given the massive scope of the Plan—approximately 2,263 employees were eligible to participate—it would have been exceedingly difficult for Defendant to have administered the program *without* an administrative scheme in place.")(cleaned up; emphasis in original); Compl. ¶¶ 66–70 (Plan covered workforce of approximately 7,500, of whom around 6,000 were terminated); ¶ 27 (Plan has existed "[s]ince at least 2019"). [5]

*Reasonably ascertainable components.* Plaintiffs' complaint also sets forth facts sufficient for this Court to "determine whether from the surrounding circumstances a reasonable person could ascertain the source of funding, intended benefits, beneficiaries, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373; *see also Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003)("Very few offers to extend benefits will fail the test laid out in *Donovan*, which requires neither formalities nor elaborate details").

Contrary to Defendants' assertions, Plaintiffs allege that the Plan was funded via "company funds," and describe communications in which the company identifies itself as the source of

---

[4] Of note, Twitter acknowledges in a government filing that its executive severance plan, which included a "lump-sum severance payment," is an ERISA plan. *See* Pls'. Req. for Judicial Notice, Exhibit B at 1.

[5] *See also*, *Fort Halifax*, 482 U.S. at 23, n. 9 ("The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, *whether those benefits are received by beneficiaries in a lump sum or on a periodic basis*."); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 935 (8th Cir. 1999)(one-page severance policy demonstrated existence of ERISA plan of ongoing administration: creating it would have been unnecessary "[w]ere there not some discretion to be exercised""); *Kolkowski*, 448 F.3d at 849 (finding ongoing administration because the plan "covered every involuntary termination over a two-year period"); *Bogue*, 976 F.2d at 1322–23(lump-sum severance plan covering 10 employees for 17 months necessitated "ongoing administration").

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   payments. Compl. ¶¶ 36, 41, 42, 43, 48.[6] The "payment of benefits out of general funds satisfies

2   the requirement of an ascertainable source of funding." *Diak v. Dwyer, Costello & Knox*, 33 F.3d

3   809, 813 (7th Cir. 1994); *see also, Fair v. Giant of Maryland LLC*, 2006 WL 361338 at *10 (D.

4   Md. 2006)(". . . benefits are to be paid by the Company, or the Company's successor . . .") *cf. Fort

5   Halifax,* 482 U.S. at 18 ("[A]n employer . . . should not be able to evade the requirements of the

6   statute merely by paying . . . benefits out of general assets.").[7]

7           Though Defendants make little or no argument on these points, Plaintiffs have also set forth

8   the remaining Plan elements: (1) intended beneficiaries are "each continuing employee" and

9   "continuing Tweeps whose employment [is] terminated," Compl. ¶¶ 43, 48; (2) intended benefits

10  "included payments based on employee salary, tenure, job level, department, and reason for

11  departure; a payment for health insurance continuation; pro-rated bonuses for certain types of

12  employees; payments for RSUs; and outplacement services," *id.* ¶ 30; (3) procedure for receiving

13  benefits, *id.* ¶¶ 33–34, (describing how payments were calculated, processed, and paid),[8] *see* Dkt.

14  1-1, ████████████████████████████████████████.[9]

15

16

---

17  [6] Defendants' assertion that Plaintiffs do not allege any "formulas used to determine the plan's
    funding needs," Mot. at 6, is also belied by Plaintiffs' allegations describing the RSU calculations,
18  Compl. ¶¶ 32, 43.

    [7] Defendants' appeal to *Simi Surgical Ctr., Inc. v. Conn. Gen. Life. Ins.*, 2018 WL 6332285 (C.D.
19  Cal. Jan 4, 2018) is unavailing and misleading. That case dealt with the distinct issue of medical
    reimbursements, and as the court pointed out, plaintiffs' allegations did not identify any relevant
20  plan or provision, and were so vague that the court could not ascertain if there were "100 different
    plans at issue, and thus 100 different plan sponsors and terms." *Id.* at 3. Here, there is one plan,
21  one sponsor, and one document with plan terms, which Plaintiffs provided to the Court.

22  [8] *See Williams v. Wright*, 927 F.2d 1540, 1544-45 (11th Cir. 1991) (statement that employer "will
    issue you a check . . . monthly . . . until your death" was sufficient); *Kolkowski*, 448 F.3d at 850
23  ("automatic receipt of benefits within 15 days after termination" was sufficient ); *Brixius v. Am.
    Transfer Co.*, 2017 WL 1408096, at *4 (E.D. Cal. Apr. 20, 2017) (allegation that "benefits were
24  payable upon retirement and . . . made through payroll . . . are sufficient to allege the *Donovan*
    elements"); *Fair*, 2006 WL 361338 at *10 ("[T]he procedures for obtaining benefits are reasonably
25  clear from the terms of the Agreement–the benefits are triggered by change in control, coupled
26  with the employee's termination or voluntary resignation.").

    [9] *See Davis v. Old Dominion Tobacco Co. Inc.*, 688 F.Supp.2d 466, 470 (E.D. Va. 2010)(presence
27  of named individuals responsible for processing benefits sufficient for the court to find that
28  plaintiffs identified the procedures to obtain plan benefits).

1       That Plaintiffs cannot point to any governing plan documents or filings with a government

2   agency has no effect on whether the Severance Plan is governed by ERISA. *See Fort Halifax*, 482

3   U.S. at 18 n.10 ("The fact that the employer had not complied with the requirements of ERISA in

4   operating this scheme does not . . . mean that no such program for paying benefits was in

5   existence."). "Failure to meet these requirements does not exempt [the defendant] from coverage

6   by ERISA. Such a failure merely indicates a failure by [the defendant] to comply with ERISA."

7   *Scott v. Gulf Oil Corp.* 754 F.2d 1499, 1503 (9th Cir. 1985).[10]

8       Defendants' only argument against Count I is to continue to deny the existence of the

9   Severance Plan—just as they have done since the day Defendant Musk took over the company.

10  Not only is this plain factual denial inappropriate for adjudication on a motion to dismiss, but, as

11  demonstrated above, it is without basis in the law.

12      **C.  Counts II-IV: Musk Was a Fiduciary; He and Other Fiduciaries Breached Their**

13      **Duties**

14      **i.      Plaintiffs Have Pled Sufficient Facts to Establish That Musk was a Fiduciary**

15      "ERISA's definition of 'fiduciary' is functional rather than formal." *Parker v. Bain*, 68

16  F.3d 1131, 1139 (9th Cir. 1995) (citations omitted). The inquiry is whether a person "in fact

17  exercised any discretionary authority . . . regardless whether the Plan itself named [them] as such."

18  *Id.* at 1140. ERISA fiduciary status is to be construed "liberally, consistent with ERISA's policies

19  and objectives." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009); *see also* 29 U.S.C. §

20  1002(21)(A).

21      Plaintiffs have pled specific facts to show that Defendant Musk was a Plan fiduciary.

22  Plaintiffs' allegations are not based merely on Defendant Musk's status as a corporate executive,

23  as Defendants assert, Mot. at 18, but on his status as the ultimate decisionmaker in the management

24  of the Plan and its assets, as well as specific fiduciary acts he took. *See Bins v. Exxon Co. U.S.A.*,

---

25  [10] S*ee also Donovan*, 688 F.2d at 1372 ("[I]t would be incongruous for persons establishing or
26  maintaining informal or unwritten employee benefit plans . . . to circumvent the Act merely
    because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards."),
27  *Bogue*, 976 F.2d at 1323 ("Whether or not [the company] ever thought it would have to administer
28  an ERISA plan does not matter.").

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

220 F.3d 1042, 1053 (9th Cir. 2000)("[W]hen an employer communicates with its employees about a plan, fiduciary responsibilities come into play."). Defendants' assertion that Plaintiffs plead "zero non-conclusory allegations" is false.

First, Plaintiffs have alleged that Defendant Musk was the ultimate decisionmaker of how the Plan was to be administered and whether benefits were to be paid. Plaintiffs specifically allege that in "meetings prior to the November 4 layoffs" Defendant Musk ordered for the terms of the Plan to be disregarded and severance paid inconsistent with the Plan. Compl. ¶¶ 56–59, 108, 121. Decisions regarding the administration of the plan and payment of benefits are a quintessential fiduciary function. *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 745 (9th Cir. 2017)("final authority to authorize or disallow benefit payments" creates fiduciary status).

Second, Plaintiffs assert facts that show Defendant Musk had decision-making authority over communications to employees about future benefits before he formally acquired the company. Compl. ¶¶ 45–46, 120. Plaintiffs allege that upon taking control of the company, Defendant Musk instituted specific policy changes designed to hinder employees' awareness of the Plan, as the company engaged in mass layoffs and firings. Compl. ¶¶ 58–64, 122–28.[11] Making these communications—and failing to do so when required by ERISA—are fiduciary acts. *Varity Corp. v. Howe*, 516 U.S. 489, 502-03 (1996). That Defendant Musk may have instructed others to communicate on his behalf does not relieve him of his fiduciary duty to provide full and accurate information about the Plan.[12]

---

[11] Because "the definition of 'fiduciary' is functional rather than formal," it matters not that these communications occurred before Defendant Musk formally became sole owner and CEO. *Parker*, 68 F.3d at 1139. What matters is, as Plaintiffs allege, communications to employees about future benefits were subject to his discretionary approval. Compl. ¶¶ 45–46. Furthermore, these communications and subsequent conduct on the part of Defendant Musk were undertaken with the purpose to defeat the legitimate expectations of Plan participants in their benefits. Compl. ¶¶ 118–128. Similarly, the relevance of Defendant Musk's communications via Twitter is set forth in the complaint, where it is alleged that employees were instructed to view his Twitter account to find information about company policy. Compl. ¶125. Defendants' argument that this Tweet concerned the WARN Act and not the Plan ignores that this Tweet was about severance and purportedly states a legal conclusion about employees' eligibility for severance. *See Varity*, 516 U.S. at 504 (rejecting argument that "parses the . . . communications too finely").

[12] *Bafford v. Northrup Grumman Corp.,* 994 F.3d 1020, 1027 (9th Cir. 2021)("[T]he fiduciary cannot hide behind that delegation to escape liability for fiduciary breach."); *Bouboulis v. Transp.*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### D.  Count II: Defendants Had a Duty to Ensure the Plan Could Pay Contractually Guaranteed Benefits, and the Plan was Harmed by Defendants' Breach

While Defendants are not obligated to have a severance plan, once Twitter created one and contractually agreed in the Merger Agreement to pay severance, the Plan fiduciaries could not fail to fund the Plan without breaching their fiduciary duties. Plaintiffs seek relief to the Plan in the amount necessary for the Plan to pay the contractually guaranteed benefits. This remedy is proper relief to the Plan even though it may ultimately benefit Plan participants as well.

### i.  Because the Merger Agreement Guaranteed Severance Benefits, the Fiduciaries had a Duty to Ensure the Plan Could Pay Severance Benefits

Where a contractual obligation to provide benefits exists, fiduciaries have a duty to ensure the plan can meet that obligation. *See Frulla v. CRA Holdings*, 596 F.Supp. 2d 275 (D. Conn. 2009).[13] Breaches of that duty are not protected by the settlor function doctrine and, therefore, can form the basis of a claim for breach of fiduciary duties. *Id.* Defendants recognize this duty in quoting *Pfahler v. Nat'l Latex Prods. Co.* 517 F.3d 816, 833 (6th Cir. 2007): "Because ERISA does not require an employer to fund a [welfare] plan, a plan fiduciary 'is not duty-bound to bring suit to collect contributions from an employer *unless* an employer is bound *contractually* to . . . make those contributions." Mot. at 9 (emphasis added).

In *Frulla*, for example, the court rejected the defendants' argument (the same argument Defendants make here) that because the defendants had "no obligation to fund the Plan in the first instance, [they were] not obligated to ensure that the benefits in the plan are adequately funded."

---

*Workers Union*, 442 F.3d 55, 58, 66 (2d Cir. 2006)(union acting as fiduciary may be liable for misrepresentations about benefits made by officers and staff); rather, it merely raises the inference that, in addition to violating these duties, he failed to monitor those acting on his behalf. *See, e.g. Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 469–70 (7th Cir. 2010)(fiduciary could be liable for misrepresentations of customer service representatives where it directed beneficiaries to consult them and did not otherwise provide avenue for learning reliable benefits information).

[13] *See also L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty. Inc.*, 710 F.3d 57, 69 (2d Cir. 2013)(citing *Frulla* and holding that fiduciaries breached their duties by not funding plan in violation of trust agreement); *Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1006 (5th Cir. 1992)(noting that "[a]n employer can oblige itself contractually to maintain benefits at a certain level in ways that are not mandated by ERISA"); *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015)(contemplating the effect of a contract on ERISA welfare benefits).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    596 F.Supp. 2d at 283. The court held that "even if ERISA itself imposes no minimum funding

2    requirement for welfare plans," the defendants had a fiduciary duty to ensure the plan had enough

3    funds to pay benefits because they were "contractually obligated to provide and fund benefits under

4    the Plan as a result of the [contract]."[14] *Id.* at 283-84.

5         Plaintiffs allege that the Merger Agreement created an obligation, like the contract in

6    *Frulla*, to provide a certain level of benefits. Compl. ¶ 113. Specifically, the Merger Agreement

7    declares that X Corp. "shall provide . . . severance payments and benefits . . . that are no less

8    favorable than those applicable . . . immediately prior to [the Merger] under the Company Benefit

9    Plans."[15] Pls'. Req. for Judicial Notice, Exhibit A, § 6.9(a). Another section specifically guarantees

10   RSUs, a component of the Severance Plan, by stating that RSUs will convert to a "right to receive

11   $54.20" per RSU upon the merger. *Id*. at § 1.01. Defendants diverted funds away from the Plan

12   leaving it unfunded and "unable to make promised payments" described in the Merger Agreement.

13   Compl. ¶ 114. As in *Frulla*, these allegations sufficiently plead a claim for breach of fiduciary

14   duty.

15        Funding decisions out of line with the Merger Agreement's requirement to pay severance

16   benefits are breaches of fiduciary duties, not settlor activities. *Frulla v. CRA Holdings Inc.*, 2006

17   WL 8452995, at *5 (S.D. Fla. July 21, 2006), *rev'd on other grounds*, 543 F.3d 1247 (11th Cir.

18   2008) (holding in a case unrelated to the *Frulla* case mentioned above that "the Agreed Judgment

---

[14] The contract in *Frulla* was an Agreed Judgment enforcing a settlement between employees and CRA Holdings in earlier litigation unrelated to the *Frulla* cases discussed here. 596 F.Supp. 2d at 279. The effect of the Agreed Judgment in *Frulla* is the same as the effect of the Merger Agreement here; an agreed judgment is akin to a contract and is generally interpreted by applying principles of contract interpretation. *See Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992)("[C]onsent decrees are essentially contractual agreements that are given the status of a judicial decree. Contract principles are generally applicable in our analysis of consent decrees[.]").

[15] To the extent a provision in the Merger Agreement disclaims that the agreement does not have any effect on employee benefit plans, this vague general provision conflicts with the specific provision relating to continued severance. Therefore, the specific provision prevails over any vague provision regarding the Merger Agreement's effect on employee benefit plans. See *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 903 F.3d 862, 872 (9th Cir. 2018)(refusing to "interpret a contract so as to render one of its provisions meaningless"); *Alday v. Raytheon Co.*, 693 F.3d 772, 784 (9th Cir. 2012). Such a reading would also contradict Twitter's FAQs that said the Merger Agreement guaranteed severance for at least a year. Compl. ¶ 48.

Case No. 3:23-cv-03461-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  clearly abrogated Defendants' authority to modify or terminate benefits, substitute benefits, or

2  terminate the plan").[16] Because the cases cited by Defendants do not involve contractual

3  obligations to pay benefits, they are inapplicable here.[17]

4        **ii.**      **Plaintiffs Have Adequately Alleged Harm to the Plan**

5        Plaintiffs' § 502(a)(2) claim is brought on behalf of the Plan and alleges harm to the Plan,

6  not individual beneficiaries and participants. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552

7  U.S. 248 (2008)(citing *Russell*, 473 U.S. at 142, n. 9). Plaintiffs allege that Defendants harmed the

8  Plan by failing to ensure that it can meet its contractual obligations. *Frulla*, 596 F.Supp. 2d at 284;

9  *see also* Compl. ¶ 113–14.[18] Plaintiffs request an order requiring Defendants to "fund the Plan in

10  an amount sufficient to pay benefits to Plan participants." Compl. ¶ 145. That the recovery to the

11  Plan will ultimately benefit participants does not transform the claim into one for individual

12  benefits. *See Pfahler*, 517 F.3d at 826 ("[T]he fact that damages awarded to the Plan may provide

13

14

15

16  [16] *See also Inter-Modal Rail Emp. Ass'n. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 520 U.S. 510,
515 (1997)(recognizing that employers may "contractually cede[]" its freedom "to adopt, modify,
17  or terminate [its] welfare pla[n]")(citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78
18  (1995)); *see also Messmer v. Xerox Corp.*, 139 F.Supp. 2d 398, 402 (W.D.N.Y. 2001)("Certainly
an employer may contractually limit its ability to modify a welfare plan, or bind itself not to
19  discontinue or reduce existing welfare benefits . . . .").
[17] *See Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)(no contract requiring benefits); *Mass. Mut.
20  Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)(same); *Snodgrass v. Simpson Timber Co.*, 955
F.2d 48 (9th Cir. 1992)(same); *Curtiss-Wright*, 514 U.S. 73 (1995)(same); *In re WorldCom, Inc.*,
21  263 F.Supp.2d 745, 758 (S.D.N.Y. 2003)(contemplating effect of contract on funding obligations
22  but instead looking at whether fiduciaries breached their duties by leaving the company's stock
among 401(k) options for employees even though they allegedly knew the company was not doing
23  well financially); *W. v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir. 1987)(recounts that during
merger, selling employer paid all ERISA severance benefits owed under collective bargaining
24  agreement, demonstrating that benefits can be guaranteed by contract, but the actual dispute was
25  whether purchasing employer had discriminated in violation of ERISA); *Turner v. Local Union
No. 302, Int'l Bhd. Of Teamsters*, 604 F.2d 1219, 1255 n.5 (9th Cir. 1979)(no contract requiring
26  benefits because not ERISA case).
[18] Plaintiffs also allege that by not providing the outplacement services that were part of the
27  severance benefits, Defendants may have violated the contract with the provider and incurred fees
28  or expenses to the Plan, further demonstrating harm to the Plan itself. Compl. ¶ 115.

1   plaintiffs with an indirect benefit, the payment of their claims, does not convert their derivative

2   suit into an action for individual relief.").[19]

3       **E.  Count III: Defendants Breached Their Fiduciary Duties by Failing to Provide**

4            **Complete and Accurate Information**

5       "[W]hen an employer communicates with its employees about a plan, fiduciary

6   responsibilities come into play." *Bins*, 220 F.3d at 1053. These duties include a duty to provide

7   complete and accurate information, to disclose potential changes to a plan under serious

8   consideration, and to not mislead plan participants. *King*, 871 F.3d at 744; *Mathews v. Chevron

9   Corp.*, 362 F.3d 1172, 1183 (9th Cir. 2004); *Kalda v. Sioux Valley Physician Partners, Inc.*, 481

10  F.3d 639, 644 (8th Cir. 2004)("A fiduciary has a duty to inform when it knows that silence may

11  be harmful and cannot remain silent if it knows or should know that the beneficiary is laboring

12  under a material misunderstanding of plan benefits.").

13      **i.      Plaintiffs' Claims Based on the Failure to Disclose or Misrepresentation are**

14              **Subject to Rule 8 Notice Pleading, Not Rule 9(b) Heightened Pleading**

15      Defendants are wrong that Plaintiffs' failure to disclose and misrepresentation claims are

16  subject to Rule 9(b)'s heightened pleading standard for fraud. *See Concha v. London*, 62 F.3d

17  1493, 1502–03 (9th Cir. 1995)(explaining why Rule 9(b) does not apply). The Ninth Circuit has

18  "expressly rejected . . . the analogy to fraud" in ERISA misrepresentation cases. *Warmenhoven v.

19  NetApp, Inc.*, 12 F.4th 717, 727 (9th Cir. 2021). Accordingly, courts in this circuit apply Rule 8,

20  not Rule 9(b), to allegations of breach of fiduciary duty due to misrepresentation and failure to

21  disclose. *See e.g., Chea v. Lite Star ESOP Comm.*, 2024 WL 280771, at *20 (E.D. Cal. Jan. 25,

22

23

---

24  [19] The cases cited by Defendants do not suggest otherwise because the plaintiffs in those cases,
    unlike here, did not allege any harm to the plan or request any remedy for the plan. *See, e.g.*, *Ford
25  v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1082 (9th Cir. 2005)( § 502(a)(2)
    claim not available where plaintiff sought only individual remedy); *Magin v. Monsanto Co.*, 420
26  F.3d 679, 688-89 (7th Cir. 2005)(plaintiff alleged no harm to plan and requested no remedy to the
    plan); *Ortega v. Rainbow Disposal Co. Inc.*, 2016 WL 11757786, at *3 (C.D. Cal. Jan. 14,
27  2016)(plaintiff did not plead any injuries to the plan or seek any remedies on behalf of the plan);
    *Rosenblatt v. United Way of Greater Hous.*, 590 F.Supp. 2d 863, 876 (S.D. Tex. 2008).
28                                                                          Case No. 3:23-cv-03461-TLT

2024); *In re First Am. Corp. ERISA Litig.*, 2008 WL 5666637, at *7 (C.D. Cal. July 14, 2008).[20]
The entirety of Defendants' challenges to Plaintiffs' breach of fiduciary duty claims for failure to
disclose or misrepresentations are based on a false assumption that the claims are subject to a
heightened pleading standard and must fail as a result—especially considering that many of these
details are in Defendants' exclusive possession, because of Defendants' active and unlawful efforts
to conceal the existence of the Plan. *See Concha*, 62 F.3d at 1503 ("relax[ed] pleading
requirements" are appropriate in ERISA cases because "facts will frequently be in the exclusive
possession of the breaching fiduciary").

### ii.   Plaintiffs Have Adequately Pled Failure to Disclose and Misrepresentation

Defendants' contention that Plaintiffs have failed to allege any misrepresentations ignores
that a failure to disclose or misrepresentation can arise by omission. *In re First Am. Corp.* at *5.
Defendants repeatedly represented that employees would continue to be eligible for the same
severance benefits after the merger as before, in accord with the existing Plan. Compl. ¶¶ 44–51.
Defendant Musk was aware of and approved these communications. Compl. ¶ 45–46. Statements
by Defendant Musk's associates and subordinates "were part of Defendant Musk's disloyal and
dishonest strategy . . . to deny the Plan's existence when the employees were fired." Compl. ¶ 128.
Knowing that continued silence would harm employees by defeating their well-founded
expectations, Defendants not only maintained silence, but enforced it throughout the workforce.
Compl. ¶¶ 58–65, 124–127. Through this continued silence, Defendants violated their duty to
provide complete and accurate information. Plaintiffs were misled by Defendants' silence, and
later, by their repeated insistence that Plaintiffs were entitled to only one month's pay, when the
Plan offered much more. Compl. ¶¶ 62, 71, 123–128.

---

[20] *See also Jander v. Int'l Bus. Machines Corp.*, 205 F.Supp. 3d 538, 542 (S.D.N.Y.
2016)("[A]llegations similar to fraud do not implicate Rule 9(b) where the gravamen of the claim
is grounded in ERISA.")(internal quotation and citation omitted); *In re Polaroid*, 362 F.Supp.2d
461, 469–70 (S.D.N.Y.2005)("Allegations of intentional conduct do not transmogrify breach of
fiduciary duty claims into causes of action for fraud."). The cases cited by Defendants do not
involve breach of fiduciary duty claims under ERISA. *See* Mot. at 13 (citing *Kearns*, 567 F.3d at
1124 (claims under California state laws)); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047, 1055 (9th Cir. 2011)(claims under False Claims Act).

That some of the misrepresentations and omissions were made by non-fiduciary managers does not absolve the fiduciaries, on whom the managers relied, of liability for the misrepresentations. *See* Mot. at 14–15; Compl. ¶¶ 58–65, 71–80, 123–128; *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1027–28 (9th Cir. 2021) "[I]f a fiduciary delegates a fiduciary function to an entity that normally performs a ministerial function, that entity's performance of a fiduciary function can still constitute a breach of fiduciary duty, imputed to the delegating fiduciary.") A fiduciary's duties "cannot be circumvented by building a 'Chinese wall' around those employees on whom plan participants reasonably rely for important information and guidance." *Fischer v. Phila. Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984), *abrogation on other grounds recognized by Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 n.4 (9th Cir. 1990) ("The administrator of an employee welfare benefit program, such as this severance benefit policy, has no discretion to secrete the plan, to flout the reporting, disclosure[,] and fiduciary obligations imposed by ERISA, or to deny benefits in contravention of the plan's plain terms.").[21]

Defendants did not disclose when changes to the Plan were under "serious consideration," contrary to Defendants' assertion, Mot. at 13, and the "specific proposal" is clear from the complaint: a proposal not to pay Plan benefits.[22] This proposal was discussed by Defendant Musk

---

[21] *See also Mullins v. Pfizer, Inc.,* 147 F.Supp.2d 95, 109 (D. Conn. 2001)(even a truthful statement by a benefits counselor that she does not know about upcoming change to a plan is a misrepresentation when the employer-fiduciary purposefully withheld the existence of the plan from the counselor); *Kenseth*, 610 F.3d at 469-70 (fiduciary could be liable for misrepresentations of telephonic customer service representatives).

[22] Defendants' argument regarding "serious consideration" demonstrates why this is a mixed question of law and fact inappropriate for resolution here. Mot. at 13-14. "[A]n ERISA plaintiff alleging breach of duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). Regardless, Defendants' argument fails. First, Plaintiffs plead facts that would support an inference that serious consideration arose prior to Defendant Musk taking formal control of the company. Compl. ¶ 52. Second, misrepresentations can be achieved just as easily through omission as through affirmative statement. *See In re First Am. Corp.* at *5 (the duty not to mislead encompasses "an affirmative duty to inform when the [fiduciary] knows that silence might be harmful")(quotation omitted). Finally, by describing Plaintiff Cooper's failed attempts to obtain information following the November 4 meetings, Plaintiffs have presented facts that show a

Case No. 3:23-cv-03461-TLT

1   and "senior management with the authority to implement the change" to be implemented with the

2   November 4 layoffs. Compl. ¶ 66. Not only did Defendants fail to disclose the serious

3   consideration of this proposal—knowing Plaintiffs had been promised otherwise—but they sought

4   to prevent employees from discussing among themselves or asking about what they had been

5   promised. *Bins*, 220 F.3d at 1049 ("[F]lexibility [in determining "serious consideration"] is

6   particularly necessary in cases that present evidence of an employer's deliberate attempt to

7   circumvent ERISA[.]"); *Vartanian v. Monsanto Co.*, 131 F.3d 264, 272 (1st Cir. 1997)(focus of

8   test should be "composite picture of serious consideration" so as to "remove any temptation that

9   might exist to deliberately evade . . . ERISA's fiduciary commands").

10           Furthermore, Defendants are incorrect that Plaintiffs must establish detrimental reliance on

11   a misrepresentation. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 443–44 (2011)("[T]here is no

12   general principle that "detrimental reliance" must be proved before a remedy is decreed. To the

13   extent any such requirement arises, it is because the specific remedy being contemplated imposes

14   such a requirement."); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 963 (9th Cir.

15   2014)(finding no reliance but remanding to district court to consider remedy of surcharge in

16   misrepresentation claim in light of Supreme Court's holding in *CIGNA*).[23] Plaintiffs do not seek

17   equitable estoppel, a remedy which requires detrimental reliance,[24] but injunctive relief related to

18   the Plan and its management that does not require detrimental reliance. Compl. ¶ 83(b) (noting

19   that the Court will determine "what Plan-wide equitable and other relief the Court should impose

20   in light of the Defendants' breach of duties"). Defendants' premature attack on the merits of the

21   claim must be rejected. *See CIGNA*, 563 U.S. at 444 (noting that equity courts are empowered to

---

continued refusal to provide complete and accurate information to Plan beneficiaries about the
benefits they were promised. Compl. ¶ 63.

[23] The single case Defendants cite for the proposition that detrimental reliance is required merely
states that "[a]ssuming that [a misrepresentation claim] does [require detrimental reliance]," the
plaintiffs' have met that burden. *Barker v. Save Mart Supermarkets*, 2023 WL 2838109, at *5
(N.D. Cal. Apr. 7, 2023).

[24] Defendants cite *Poore v. Simpson Paper Co.*, 566 F.3d 922, 928 (9th Cir. 2009) for the notion
that Plaintiffs' misrepresentation claim must plead detrimental reliance, but plaintiffs in *Poore*
sought equitable estoppel, unlike Plaintiffs here, and that case predates the Supreme Court's ruling
in *CIGNA*.

"mold the relief to protect the rights of the beneficiary according to the situation involved.")(citation omitted).

Moreover, even if detrimental reliance were required, the Court can presume it at this stage where, as here, employees relied on an employers' misstatements and employers failed to disclose that such statements are no longer true. *See In re First Am. Corp. ERISA Litig.*, 2008 WL 5666637, at *7 (C.D. Cal. July 14, 2008); *In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 813 (S.D. Ohio 2004); *Shannahan v. Dynegy., Inc.*, 2006 WL 3227319, at *6 (S.D. Tex. Nov. 6, 2006). Furthermore, Plaintiffs have expressly alleged detrimental reliance and facts which, if true, would establish it. Defendant Musk and others working at his behest (the Doe Defendants), took affirmative steps to prevent employees from learning about the Plan in the workplace, and directed employees to echo misleading public statements made by Defendant Musk and others. Compl. ¶¶ 62, 64, 98, 99. These statements were material, in that they were designed to and would have changed the position of a reasonable person hearing them, Compl. ¶¶ 46, 47, and they expressly stated a severance benefit whose value was determined by and increased according to an employees' separation date, Compl. ¶ 48. Plaintiffs allege that employees reasonably relied on these statements by "working at Twitter throughout the layoffs, understanding they would be eligible for severance benefits in the event of layoffs," Compl. ¶¶ 129, and made efforts to obtain more information about the promised benefits, which Defendants rebuffed. Compl. ¶¶ 61–65, These facts "tell a plausible story" of deception and reliance sufficient for an ERISA plaintiff alleging breach of fiduciary duty. *Allen,* 835 F.3d at 678 (7th Cir. 2016); *see also, Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."); *Shannahan* at *6 ("Plaintiffs therefore need not plead facts establishing the reliance of every Plan participant, or as Defendants contend, make individualized assessments of each member of the putative class . . .").[25]

---

[25] Indeed, Plaintiffs' allegation alone that Plan participants, including Plaintiff Cooper, "continued working at Twitter throughout the layoffs, understanding they would be eligible for severance benefits in the event of layoffs," Compl. ¶ 129, is more detailed than allegations of reliance courts routinely find sufficient. *See, Shannahan*, 2006 WL 3227319, at *6 (upholding claim that alleged plaintiffs "relied to their detriment on the material misrepresentations" made by defendants); *In re*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    Finally, even if Rule 9(b) were applicable, Plaintiffs have satisfied it. Plaintiffs allege

2    specific communications, their content, and the dates they were made, easily satisfying the "who,

3    what, when, where, how" of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

4    2009) *See* Compl. ¶¶ 38–51 (describing and excerpting specific, dated company communications

5    and documents alleged to be misleading).

6        **F.    Count IV: Plaintiffs' Claims for Equitable Relief Should Not be Dismissed As**

7             **Seeking Duplicative Relief**

8        **i.    Plaintiffs Can Assert Claims in the Alternative for Both Benefits and**

9             **Equitable Remedies**

10    The Ninth Circuit has held that a plaintiff can assert claims in the alternative under both §

11   502(a)(3) for equitable relief and under §502(a)(1)(B) for benefits. *See Moyle v. Liberty Mut. Ret.*

12   *Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016); *see also* CIGNA, 563 U.S. 421 (2011) (analyzing

13   available remedies under ERISA, and specifically, the interplay between §§ 502(a)(1)(B) and

14   (a)(3)). At this stage, Plaintiffs need not prove likelihood of success on both claims. *Id.* ("[T]his

15   approach not only comports with [*CIGNA*] and *Varity*, it also adheres to the Federal Rules of Civil

16   Procedure, which requires that '[a] pleading that states a claim for relief must contain . . . a demand

17   for relief sought, which may include relief in the alternative or different types of relief.")(citations

18   omitted).[26] Thus, dismissal of the § 502(a)(3) claim as duplicative is inappropriate on a motion to

19   dismiss.

20

_____

21   *Cardinal Health, Inc. ERISA Litig*., 424 F.Supp.2d 1002, 1046 (S.D. Ohio 2006)(upholding claim
     that alleged "[t]he Plan, and the Participants acting on behalf of the Plan, relied upon, and are

22   presumed to have relied upon, Defendants representation and nondisclosures to their detriment.");
     *In re AEP ERISA Litig*., 327 F.Supp.2d 812, 833 (S.D. Ohio 2004)(same); *In re First Am. Corp.*

23   *ERISA Litig*., 2008 WL 5666637 at *6–7 (C.D. Cal. July 14, 2008).

24   [26] Defendants misstate the holding in *Moyle*, which clearly stands for the premise that claims under
     502(a)(1)(b) and (a)(3) "may proceed simultaneously as long as there is no double recovery." *Id.*

25   at 161. Defendants cite no case in this Circuit contradicting this rule. The cases Defendants cite
     stand for the proposition that plaintiffs may not *obtain* duplicative relief, but not that they cannot

26   bring claims in the alternative. Defendants' reference to *Hutcherson v. Krispy Kreme Doughnut*
     *Corp.*, 803 F.Supp.2d 952, 958 (S.D. Ind. 2011), is similarly misguided, claiming the court

27   dismissed the 502(a)(3) claim because it was duplicative when the court took issue with the
     plaintiff's failure to allege equitable relief at all. Defendants seem to want to have it both ways in

28                                                                    Case No. 3:23-cv-03461-TLT

1

ii.      **Plaintiffs Seek Equitable Relief Not Available Under a Claim for Benefits**

2          While not appropriate to dismiss Plaintiffs' § 502(a)(3) claims at the pleadings stage,

3  Plaintiffs will ultimately prevail on the following claims for equitable relief, which are not

4  duplicative of Plaintiffs' claims for benefits.[27]

5          ***Appointment of Independent Fiduciary***:[28] Plaintiffs seek "[a]n Order compelling

6  Defendants to appoint one or more independent fiduciaries to participate in the management of the

7  Plan." Compl. ¶143. *Su v. Fensler*, No. 22-cv-01030, 2023 WL 5152640 (N.D. Il Aug. 10, 2023)

8  (granting a motion for preliminary injunction to appoint an independent fiduciary where trustees

9  used plan assets inappropriately).

10         ***Disgorgement***: Disgorgement is an equitable remedy that a court may apply where a

11  defendant has profited from unlawful acts. Unlike restitution, which focuses on the deprivation of

12  the plaintiff, disgorgement focuses on the defendants' ill-gotten gains. *See Kokesh v. SEC*, 581

13  U.S. 455, 458–89 (2017). Plaintiffs seek disgorgement of Defendants' ill-gotten gains obtained

14  from their breaches of fiduciary duty. Compl. ¶ 146. The Plan entitles employees to the cash value

15  of RSUs that vest within a certain number of months from termination. Compl. ¶ 32; Pls'. Req. for

16  Judicial Notice, Exhibit A, § 3.6(d). The Merger Agreement includes, and Twitter represented to

17  the SEC and employees, that employees' unvested RSUs would "convert 'into the right to receive

18  an amount in cash,'" which would then be paid out through the Plan. *Id*. ¶ 43. The value of these

19  RSUs was set by Defendant Musk's purchase price of Twitter at $54.20 per share. *Id.* Defendant

20  Musk did not make these payments, and the Plan did not distribute these funds to employees. *Id*.

21  ¶¶ 77, 79. Rather, these and other expenses associated with the management of the Plan "accru[ed]

22  to the company and Defendant Musk rather than participants" or the Plan. *Id*. ¶¶ 4, 104. Plaintiffs

23  have therefore adequately pled claims for disgorgement of these ill-gotten gains. *See LD v. United*

24  ─────────────────────

their insistence that Plaintiffs have no denial of benefits claim and because of the denial of benefits
25  claim, they cannot have (a)(3) case.

[27] For this reason, cases on which Defendants rely that stand only for the proposition that Plaintiffs
26  cannot obtain duplicative relief, or disguise monetary relief as an equitable remedy, are
inapplicable. Mot. at 12.

27  [28] Plaintiffs have no reason to believe that the Plan is not still in effect and does not apply to current
employees who could be laid off.

28

*Behavioral Health*, 508 F.Supp. 3d 583, 596 (N.D. Cal. 2020)(disgorgement is a suitable remedy if the defendant breached fiduciary duties and unjustly gained profits as a result of the breach); *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1008–09 (8th Cir. 2004)("[A] defendant who owes a fiduciary duty . . . may be forced to disgorge any profits made by breaching that duty, even if the defendant's breach was simply a failure to perform its fiduciary duty.").

  ***Injunctive Relief***: Injunctive relief is appropriate in equity where there has been irreparable harm, where remedies at law would be inadequate, and where the court finds it warranted, balancing the equities and public interest. *See Bd. of Trs. of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 2014 WL 4383062 at *2 (N.D. Cal. Sept. 4, 2014). Plaintiffs have been irreparably harmed by Defendants' failures to disclose changes to the Severance Plan and misrepresentations regarding Plan benefits to which Plaintiffs were entitled. Plaintiffs seek "[a]n order compelling Defendants to abide by the terms of the Plan—as described in the Matrix, the Acquisition FAQ[s], and other relevant documents." Compl. ¶¶ 142–44. The balancing of the equities and public interest weigh in favor of injunctive relief. *See CIGNA,* 563 U.S. at 440–41, 445 (finding failure to follow ERISA's notice procedures and misrepresentations about benefits caused the potential class "likely harm"; upholding an order to reform the plan to remedy the misleading statements and pay benefits as provided by the terms of the revised plan).[29]

### G.  Count IV: Dismissal of the Failure to Monitor Claim Would Be Inappropriate at This Stage

  "Because the scope of the duty to monitor is often unclear, many courts have declined to

---

[29] To the extent that Defendants sought to amend or terminate the Plan, they failed to follow ERISA-required procedures, including notifying Plan participants about purported amendments. *See Fischer v. Phila. Elec. Co.*, 96 F.2d 1533, 1539 (3d Cir. 1996). Any purported funding or benefits decisions amending the Plan were concealed from participants and violated ERISA fiduciary duties. Courts will invalidate an amendment where amendments are done in bad faith or are actively concealed from Plan participants. *Blau*, 748 F.2d at 1353–54 (holding that "wholesome and flagrant" violations of ERISA procedural requirements "infected" decision to deny benefits and warranted substantive remedy). In asking the Court to enjoin Defendants from further violations of ERISA and compelling Defendants to abide by the terms of the Plan before any purported amendments—Plaintiffs seek equitable relief not available under § 502(a)(1)(B) if the Plan was, in fact, changed.

1  dismiss a duty to monitor claim on a motion to dismiss." *In re Syncor ERISA Litig.*, 351 F.Supp.2d

2  970, 986 (C.D. Cal. 2004); *see also, In re Elec. Data Sys. Corp., ERISA Litig.*, 305 F.Supp.2d 658,

3  671 (E.D.Tex. 2004)("[A]t this stage of the proceedings the Court will not endeavor to define the

4  duty to monitor's outer edges with no factual record to indicate how far this may or may not push

5  those edges."); *In re Sprint Corp., ERISA Litig.*, 388 F.Supp.2d 1207, 1228 (D. Kan. 2004). "The

6  court [found] it unnecessary to precisely define the contours of the duty to monitor at this early

7  phase of litigation"). As with Plaintiffs' others claims, this is because of the intensive fact analysis

8  required to determine the scope and applicability of the duty. *Id.* Defendants' only challenge to the

9  failure to monitor claims is that they are derivative of the breach of fiduciary duty claims. Since

10  Plaintiffs have adequately pled breach of fiduciary duty claims, their duty to monitor claims should

11  be sustained.

## IV.   CONCLUSION

13  Plaintiffs have adequately pled claims for benefits and breaches of fiduciary duties, and

14  Defendants' motion should be denied and this case permitted to move forward without delay. If

15  the Court were to decide to grant Defendants' Motion, Plaintiffs respectfully request leave to

16  amend the complaint.

DATED: February 9, 2024                    Respectfully submitted,

Sanford Heisler Sharp, LLP

Kate Mueting, DC Bar No. 988177
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Ave SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206
kmueting@sanfordheisler.com

*Attorney for Plaintiffs
and the Potential Class*

**CERTIFICATE OF SERVICE**

1

2          I hereby certify that on February 9, 2024, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system, which will send a copy of this filing to all counsel

4   of record.

5

6

7   DATED: February 9, 2024

8                                                    Kate Mueting, DC Bar No. 988177
                                                     **SANFORD HEISLER SHARP, LLP**
9                                                    700 Pennsylvania Ave SE, Suite 300
                                                     Washington, DC 20003
10                                                   Telephone: (202) 499-5206
                                                     kmueting@sanfordheisler.com
11

12                                                   *Attorney for Plaintiffs*
                                                     *and the Potential Class*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:23-cv-03461-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**