1  Mark A. Feller (SBN 319789)
   mark.feller@morganlewis.com
2  **MORGAN, LEWIS & BOCKIUS, LLP**
   One Market, Spear Street Tower
3  San Francisco, CA 94105-1596
   Tel: 415.442.1000
4
   Melissa Hill (*pro hac vice*)
5  melissa.hill@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS, LLP**
6  101 Park Avenue
   New York, NY 10178
7  Tel: 212.309.6000

8  Sean K. McMahan (*pro hac vice*)
   sean.mcmahan@morganlewis.com
9  **MORGAN, LEWIS & BOCKIUS, LLP**
   1717 Main Street, Suite 3200
10 Dallas, TX 75201-7347
   Tel: 214.466.4000
11
   Jared R. Killeen (*pro hac vice*)
12 jared.killeen@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS, LLP**
13 2222 Market Street
   Philadelphia, PA 19103
14 Tel: 215.963.5000

15 *Attorneys for Defendants X Corp., f/k/a*
   *Twitter, Inc.; X Holdings; Elon Musk; and*
16 *Does*

17               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
18

19 COURTNEY MCMILLIAN and RONALD       Case No. 3:23-cv-03461-TLT
   COOPER
20                                      **REPLY IN SUPPORT OF DEFENDANTS'**
                Plaintiffs,             **MOTION TO DISMISS PLAINTIFFS'**
21                                      **AMENDED COMPLAINT**

22          v.                          Am. Compl. Filed:      Oct. 13, 2023

23 X CORP., f/k/a/ TWITTER, INC., X     Mtn Hearing Date:      April 9, 2024
   HOLDINGS, ELON MUSK, Does,
24                                      Judge:  Trina L. Thompson

25              Defendants

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 3

    A.    Plaintiffs Fail to State a Claim for Unlawful Denial of Benefits ............................ 3

    B.    Plaintiffs Fail to State a Claim for Fiduciary Breach ............................................. 6

        1.    Defendants Are Not Liable Under ERISA for Funding Decisions For a Plan That Does Not Exist..................................................................... 6

        2.    Plaintiffs Cannot Assert a Claim for Individual Relief Under Section 502(a)(2)................................................................................... 10

    C.    Plaintiffs Fail to State a Claim for Equitable Relief ............................................. 10

        1.    The Claim Must Be Dismissed Because It Seeks Duplicative Relief....... 10

        2.    Plaintiffs Fail to State a Misrepresentation Claim Under ERISA............. 12

    D.    Defendant Musk Is Not a Fiduciary to Any Twitter Severance Plan.................... 14

III.  CONCLUSION................................................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 1, 10

5

*Baker v. Save Mart Supermarkets*,
    2023 WL 2838109 (N.D. Cal. Apr. 7, 2023) ...................................................... 13, 14

6

*Bogue v. AmPex Corp.*,
    976 F.2d 1319 (9th Cir. 1992) ................................................................................... 4

7

8

*Bolden v. Acosta*,
    2022 WL 2668370 (N.D. Cal. July 11, 2022) .......................................................... 5

9

10

*Bos v. Bd. of Trustees*,
    795 F.3d 1006 (9th Cir. 2015) ............................................................................... 7, 8

11

*Bradford v. Yates*,
    2012 WL 13973 (E.D. Cal. Jan. 4, 2012) ................................................................. 5

12

13

*Brixius v. Am. Transfer Co.*,
    2017 WL 1408096 (E.D. Cal. Apr. 20, 2017) .......................................................... 3

14

15

*Brown v. Cal. Law Enforcement Ass'n, Long–Term Disability Plan*,
    81 F. Supp. 3d 930 (N.D. Cal. 2015) ..................................................................... 14

16

*Castillo v. Metro. Life Ins. Co.*,
    970 F.3d 1224 (9th Cir. 2020) ............................................................................... 10

17

18

*Champagne v. Revco D.S., Inc.*,
    997 F. Supp. 220 (D.R.I. 1998) ................................................................................ 4

19

20

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011) .................................................................................................. 6

21

*Cleghorn v. Blue Shield of California*,
    408 F.3d 1222 (9th Cir. 2005) ................................................................................... 6

22

23

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
    200 F.3d 1223 (9th Cir. 2000) ................................................................................... 7

24

25

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ................................................................................... 12

26

*Cornet, et al. v. Twitter, Inc.*,
    Case No. 3:22-cv-06857-JD, Dkt. No. 28-1 (N.D. Cal. Nov. 23, 2022) .................. 6

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii    Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

*Cotton v. Mass. Mut. Life Ins. Co.*,
   402 F.3d 1267 (11th Cir. 2005)..........................................................................................15

*Daley v. Lockheed Martin Corp.*,
   2017 WL 2834130 (N.D. Cal. June 30, 2017) ....................................................................15

*Delaye v. Agripac, Inc.*,
   39 F.3d 235 (9th Cir. 1994)...................................................................................................4

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019)...........................................................................................6, 11

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*,
   2017 WL 11467730 (C.D. Cal. Sept. 25, 2017)..................................................................12

*Edwards v. Lockheed Martin Corp.*,
   954 F. Supp. 2d 1141 (E.D. Wash. 2013) .............................................................................4

*Evanson v. Price*,
   2006 WL 2829789 (E.D. Cal. Sept. 29, 2006) ....................................................................12

*Ferrand v. Credit Lyonnais*,
   2003 WL 22251313 (S.D.N.Y. Sept. 30, 2003)....................................................................5

*In re First Am. Corp. ERISA Litig.*,
   2008 WL 5666637 (C.D. Cal. July 14, 2008) .....................................................................14

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
   2011 WL 2748724 (N.D. Cal. July 13, 2011) .......................................................................3

*Frulla v. CRA Holdings*,
   596 F. Supp. 2d 275 (D. Conn. 2009) ...............................................................................7, 8

*Frulla v. CRA Holdings, Inc.*,
   2006 WL 8452995 (S.D. Fla. July 21, 2006) ........................................................................7

*Gamino v. KPC Healthcare Holdings, Inc.*,
   2021 WL 7081190 (C.D. Cal. Aug. 6, 2021) ......................................................................11

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
   546 F.3d 639 (9th Cir. 2008)........................................................................................3, 4, 5

*Haw. Masons' Pension Tr. Fund v. Glob. Stone Haw., Inc.*,
   292 F. Supp. 3d 1063 (D. Haw. 2017) ................................................................................15

*Horan v. Goal Structured Solutions, Inc.*,
   2021 WL 5177459 (S.D. Cal. Nov. 2, 2021) ......................................................................11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii          Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

*In re JDS Uniphase Corp. Erisa Litig.*,
  2005 WL 1662131 (N.D. Cal. July 14, 2005) ........................................................ 15

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) .............................................................................. 14

*Kaminskiy v. Kimberlite Corp.*,
  2014 WL 2196191 (N.D. Cal. May 27, 2014) ........................................................ 11

*Karo v. San Diego Symphony Orchestra Ass'n*,
  762 F.2d 819 (9th Cir. 1985).................................................................................. 8

*Kolkowski v. Goodrich Corp.*,
  448 F.3d 843 (6th Cir. 2006).................................................................................. 4

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)................................................................................................ 8

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985).............................................................................................. 11

*Mathews v. Chevron Corp.*,
  362 F.3d 1172 (9th Cir. 2004) .............................................................................. 13

*Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*,
  2016 WL 107838 (D. Ariz. Jan. 11, 2016) ........................................................... 11

*In re Mut. Fund Inv. Litig.*,
  403 F. Supp. 2d 434 (D. Md. Dec. 6, 2005) ......................................................... 15

*Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*,
  500 F. App'x 575 (9th Cir. 2012) ........................................................................... 6

*Ortega v. Rainbow Disposal Co. Inc.*,
  2016 WL 11757786 (C.D. Cal. Jan. 14, 2016) ..................................................... 10

*Pette v. Int'l Union of Operating Eng'rs*,
  2016 WL 4596338 (C.D. Cal. Sept. 2, 2016)......................................................... 12

*RJ v. Cigna Health & Life Ins. Co.*,
  625 F. Supp. 3d 951 (N.D. Cal. 2022) .................................................................. 14

*Scott v. Gulf Oil Corp.*
  754 F.2d 1499 (9th Cir. 1985)................................................................................. 5

*Skinner v. Northrop Grumman Ret. Plan B*,
  673 F.3d 1162 (9th Cir. 2012)............................................................................ 6, 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv          Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

*Snodgrass v. Simpson Timber Co.*,
   955 F.2d 48 (9th Cir. 1992)...................................................................................................... 6

*Vazquez v. DataRobot, Inc.*,
   2023 WL 6323101 (N.D. Cal. Sept. 28, 2023) ...................................................................... 14

*Velarde v. PACE Membership Warehouse, Inc.*,
   105 F.3d 1313 (9th Cir. 1997)................................................................................................... 4

*Walsh v. Clawson Constr., Inc.*,
   2021 WL 6618458 (N.D. Cal. Oct. 29, 2021) ...................................................................... 11

*In re WorldCom, Inc.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003) ..................................................................................... 8

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)................................................................................................................... 12

Fed. R. Civ. P. 9(b) ............................................................................................................. 12, 13

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v     Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    **I.      INTRODUCTION**

2          Defendants moved to dismiss the Complaint for three reasons: (1) there is no such thing as

3    a "Twitter Severance Plan," meaning Plaintiffs' contention in Count I that they are entitled to

4    severance benefits from that plan fails as a matter of law; (2) there is no obligation under ERISA

5    to fund severance plans, so even if the "Twitter Severance Plan" were anything other than a figment

6    of Plaintiffs' imagination, the Court must dismiss fiduciary-breach claim in Count II based on the

7    purported failure to fund that plan; and (3) Plaintiffs' fiduciary-misrepresentation claim in Count

8    III impermissibly seeks the same remedy as their claim for benefits, and thus fails as a matter of

9    law.  Nothing in Plaintiffs' Opposition alters these conclusions.  Instead, Plaintiffs double down on

10   the implausible theory that they are owed severance payments from an ERISA-governed severance

11   plan that Plaintiffs have invented out of thin air.  *See* Opposition (Dkt. 45 ("Opp.")) at 1. But

12   "[d]etermining whether a complaint states a plausible claim for relief . . . requires the reviewing

13   court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

14   (2009).  Common sense does not support Plaintiffs' theory of liability under ERISA, but rather

15   dictates the Amended Complaint be dismissed.

16         To start, Plaintiffs' denial-of-benefits claim under Section 502(a)(1)(B) fails because their

17   own allegations show Defendants did not maintain an ERISA severance plan.  Plaintiffs point to

18   no public record of such a plan, even while acknowledging Twitter made regular public filings (as

19   required by the Department of Labor) for its employee benefit plans.  Instead, Plaintiffs contend

20   for the first time in their Opposition that Defendants kept the alleged severance plan a "secret" "for

21   years." Opp. at 1.  This ludicrous argument is implausible on its face: Plaintiffs do not (and cannot)

22   explain why Twitter would maintain a severance plan for its employees only to hide it from those

23   same employees, particularly when Twitter "publicized" its employee benefits as a way to attract

24   and retain talent.  *Id.*  Further, the Opposition's caselaw shows that the sort of non-discretionary

25   severance payments Plaintiffs allege entitlement to here do not necessitate "an ongoing

26   administrative scheme" that would constitute a plan under ERISA.  The single document Plaintiffs

27   rely on—a so called "matrix"—is *not* an ERISA plan document, but *privileged* work-product

28   (currently filed under seal) that was improperly used in this litigation by Plaintiffs' attorneys.  That

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1          Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    document cannot save Plaintiffs' claim.

2          Plaintiffs' secondary claims likewise fail.  Plaintiffs cannot plead a plausible fiduciary

3    breach under ERISA Section 502(a)(2) based on allegations that Defendants failed to fund the

4    alleged "plan" because no such plan exists and, even if it did, ERISA does not require an employer

5    to fund an employee welfare benefit plan.  Unable to plead around this blackletter law, Plaintiffs

6    shift tack by adopting the argument made by the plaintiffs in another pending lawsuit that

7    Defendants were contractually obligated to "fund" the alleged plan under the merger agreement

8    between Twitter and X Corp. (the "Merger Agreement").  But that eleventh-hour theory does not

9    give rise to a claim under ERISA because the Merger Agreement says *nothing* about funding an

10   ERISA severance plan, and, in any event, any contractual entitlement to X Corp.'s general

11   corporate assets is not a plan asset governed by ERISA for which fiduciary responsibility would

12   attach.  And even if Plaintiffs could pursue such a claim under ERISA, which preempts state-law

13   breach-of-contract claims, it would fail because Plaintiffs are neither parties to nor intended third-

14   party beneficiaries under the Merger Agreement, and therefore cannot assert a claim for an alleged

15   violation of that agreement.  Separately, Plaintiffs' misrepresentation claim for "equitable relief"

16   under Section 502(a)(3) is a textbook attempt to recast their benefits claim as a fiduciary breach,

17   and fails under Ninth Circuit law.  Even if Plaintiffs were permitted to clone their benefits claim

18   into one for equitable relief, such a claim would still fail because Plaintiffs fail to allege any

19   actionable misrepresentation that they relied upon to their detriment.

20         Finally, Plaintiffs' claims against Defendant Musk fail for the additional reason that they

21   do not plausibly allege he exercised fiduciary discretion over Twitter's severance payments.  The

22   Opposition recites the same conclusory allegations that Defendant Musk was "the ultimate

23   decisionmaker" regarding severance payments, Opp. at 8, but such boilerplate allegations are

24   insufficient to plead fiduciary liability.  Further, the alleged misrepresentations concerning

25   Twitter's severance benefits all occurred *before* Defendant Musk assumed control.  For all the

26   reasons explained below, and in Defendants' opening memorandum (Dkt. 38 ("Mem.")), the Court

27   should dismiss the Amended Complaint in full.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2          Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## II.     ARGUMENT

### A.     Plaintiffs Fail to State a Claim for Unlawful Denial of Benefits

In an effort to sidestep the simple fact that no ERISA severance plan exists that entitles Plaintiffs to the benefits they seek, they contort their theory of the case to assert that Twitter kept an ERISA severance plan "secret" from thousands of employees for "years."  Plaintiffs trip over themselves to suggest that Twitter spent time and money on a severance plan only to hide it from employees, while at the same time trying to attract and retain employees by publicizing its employee benefits.  *See* Opp. at 1.  Equally contradictory is Plaintiffs' claim that Defendants unveiled the "secret" plan at the same time they began "mass layoffs and firings," *id.*, while also trying to *hide* company severance practices during the 2022 layoffs.  Plaintiffs' Amended Complaint defies common sense and does nothing to plausibly establish entitlement to ERISA-governed severance benefits under any theory.

As Defendants explained (Mem. at 4-7), Plaintiffs' claim under Section 502(a)(1)(B) fails because the allegations in the Amended Complaint do not establish that Twitter maintained an ERISA "plan" under which Plaintiffs are entitled to benefits.[1]  According to the Ninth Circuit, an employer's payment of employee benefits from its general assets "does not necessarily create an ERISA plan."  *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 546 F.3d 639, 649 (9th Cir. 2008).  Instead, a plaintiff must show there is "enough ongoing, particularized, administrative, discretionary analysis to make the plan an ongoing administrative scheme."  *Id.* at 651.  Plaintiffs allege no such thing.  The Amended Complaint shows only that the "promised benefit was not contingent on any discretion . . . and required only a cash payment of a sum certain . . . , which was not subject to any changing circumstances or ongoing eligibility requirements."  *Brixius v. Am. Transfer Co.*, 2017 WL 1408096, at *5 (E.D. Cal. Apr. 20, 2017).

The Opposition fails to grapple with governing Ninth Circuit law that disposes of Plaintiffs'

---

[1] Plaintiffs contend the question of whether a "Twitter Severance Plan" existed is "more properly resolved after discovery," Opp. at 3, but the Opposition's caselaw says just the opposite.  *See, e.g., Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.,* 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011) (dismissing ERISA claims where complaint's "conclusory allegations" were insufficient "to raise the existence of an ERISA plan above [a] speculative level.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3                    Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1   denial-of-benefits claim.  For example, Plaintiffs all but ignore *Delaye v. Agripac, Inc.*, 39 F.3d

2   235, 237 (9th Cir. 1994), where the Ninth Circuit found no ongoing administrative scheme because,

3   like here, the "severance calculation" was "a straightforward computation of a one-time obligation"

4   with "nothing discretionary about the timing, amount or form of the payment."  Nor do Plaintiffs

5   meaningfully address *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir.

6   1997), which held that an employer's mathematical calculations of severance benefits, like the

7   alleged calculations here, required little "ongoing particularized discretion" and were not

8   "sufficient to turn a severance agreement into an ERISA plan."  These cases are dispositive.

9        The Opposition relies largely on *Bogue v. AmPex Corp.*, 976 F.2d 1319 (9th Cir. 1992),

10  which does not help Plaintiffs.  *See* Opp. at 4.  In *Bogue*, the employer defendant was acquired by

11  another company and established a severance program to provide benefits to executive employees

12  who were not offered "substantially equivalent" positions by the buyer.  976 F.2d at 1321.  The

13  court found "the program's administrator[] remained obligated to decide whether a complaining

14  employee's job was 'substantially equivalent' to his pre-acquisition job," a "case-by-case,

15  discretionary application" of the program's terms.  *Id.* at 1323.  Plaintiffs allege nothing like that

16  here.  Instead, Twitter made one-time severance payments based on basic employment criteria so

17  that payments were "fixed, due at known times, and [did] not depend on contingencies outside the

18  employee's control."  *Golden Gate Rest. Ass'n*, 546 F.3d at 650-51.[2]

19       Tellingly, Plaintiffs concede they "cannot point to any governing plan documents or filings

20

21  [2] The Opposition's remaining caselaw is also distinguishable.  Plaintiffs rely on several cases where
    the employer intended to establish an ERISA plan by, among other things, creating a governing

22  plan document and a discretionary administrative process.  Those are all things that Plaintiffs do
    *not* allege here, rendering Plaintiffs' caselaw inapposite.  *See Edwards v. Lockheed Martin Corp.*,

23  954 F. Supp. 2d 1141, 1149-51 (E.D. Wash. 2013) (recognizing ERISA plan where plan document
    allowed administrator discretion to deny enrollment, claims, and appeals related to benefits that

24  were more than just "[t]raditional severance packages"); *Champagne v. Revco D.S., Inc.*, 997 F.
    Supp. 220, 223-26 (D.R.I. 1998) (plan document provided employees ongoing medical and health

25  benefits based on administrator's discretionary inquiries "that exceed[ed] making simple or
    mechanical determinations"); *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848-49 (6th Cir. 2006)

26  (plan document provided discretionary "authority to evaluate and determine facts, including
    whether an employee's prior or prospective position [had] 'at least comparable' benefits").

27  Because Plaintiffs do not allege Defendants made discretionary assessments regarding benefit
    enrollment, claims, and appeals that amounted to more than "mechanical recordkeeping," they fail

28  to establish the existence of an ERISA plan. *Golden Gate Rest. Ass'n*, 546 F.3d at 650-51.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4        Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

with a government agency" showing a "Twitter Severance Plan" exists.  Opp. at 8.  Instead, Plaintiffs rely on outdated law[3] to suggest the absence of plan records doesn't matter.  *Id.*  Not only do Plaintiffs ignore more-recent law holding the absence of plan documents and public filings "weighs against the finding of an ERISA employee benefit plan," *Ferrand v. Credit Lyonnais*, 2003 WL 22251313, at *15 (S.D.N.Y. Sept. 30, 2003), *aff'd*, 110 F. App'x 160 (2d Cir. 2004), but they acknowledge Twitter in fact *did* make public filings related to its actual employee benefit plans as required by law.  Opp. at 6 n.4 (describing filing related to Twitter's executive severance program).

In the end, Plaintiffs resort to the so-called "matrix," which they say contains "discretionary criteria" used to determine severance benefits.  *See* Opp. at 3, 5, 7.  But the Court should disregard the "matrix."  As a technical matter, the "matrix" was attached to Plaintiffs' original complaint, not the Amended Complaint, and courts generally observe "the rule that an amended pleading supersedes all prior pleadings and must be complete within itself without reference to the prior pleadings." *Bradford v. Yates*, 2012 WL 13973, at *1 (E.D. Cal. Jan. 4, 2012); *see also Bolden v. Acosta*, 2022 WL 2668370, at *4 (N.D. Cal. July 11, 2022).  More importantly, the "matrix" bears the subheading "Attorney-Client Privileged + Confidential" and contains X. Corp.'s privileged compensation information, so that the document is protected from discovery.  Because Plaintiffs improperly filed the "matrix" on the Court's docket (before seeking to have it sealed), the document is not properly before the Court and should not be considered part of Plaintiffs' pleadings.  In any event, the "matrix" does not set forth "plan terms," as Plaintiffs suggest (Opp. at 7), but rather is attorney work-product prepared by X Corp.'s in-house counsel in anticipation of litigation related to the Twitter merger and certain employment decisions connected to the merger.  Therefore, the "matrix" is not a "plan document," does not make plausible Plaintiffs' outlandish allegations that Twitter maintained a "secret" severance plan, and cannot save Plaintiffs' benefits claim from dismissal.[4]

---

[3] For example, Plaintiffs cite *Scott v. Gulf Oil Corp*. 754 F.2d 1499 (9th Cir. 1985), but the Ninth Circuit later held that *Scott* is "no longer good law." *Golden Gate Rest.* Ass'n, 546 F.3d at 651.

[4] To the extent Plaintiffs suggest the "Acquisition FAQs" communication Twitter sent to employees in 2022 establishes the "terms" of an ERISA plan, they are wrong. *See* Am. Compl. ¶¶ 38, 44-49, 57, 142; Opp. at 11, 20. The Supreme Court has made clear that this sort of summary communication does not "constitute the terms of the plan" and so cannot support a claim for

**B.**     **Plaintiffs Fail to State a Claim for Fiduciary Breach**

1.     ***Defendants Are Not Liable Under ERISA for Funding Decisions For a Plan That Does Not Exist***

Plaintiffs assert Defendants breached fiduciary duties under ERISA Section 502(a)(2) (Count II) because they did not ensure the alleged Twitter severance plan was sufficiently funded. But the Opposition concedes Defendants are ***not obligated*** to fund an employee welfare benefit plan under ERISA, Opp. at 10, acknowledging blackletter Ninth Circuit law holding ERISA "does not require vesting or funding of 'employee welfare benefit plans'" such as the alleged Twitter severance plan. *Snodgrass v. Simpson Timber Co.*, 955 F.2d 48 at *2 (9th Cir. 1992) (citing *West v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir. 1987); *see also* ERISA § 301(a)(1), 29 U.S.C. § 1081(a)(1) (exempting welfare plans from ERISA's funding requirements). That should be the end of Count II.

Instead, Plaintiffs now take a page from the second amended complaint in *Cornet, et al. v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, Dkt. No. 28-1 (N.D. Cal. Nov. 23, 2022), which seeks payment of severance benefits under state-law theories of breach of contract and estoppel, and argue Defendants are contractually obligated to fund the alleged plan under the Merger Agreement. Opp. at 10. Plaintiffs' pivot to contract law effectively shows they have all but given up on pursuing their claim under ERISA, which preempts any breach-of-contract claim Plaintiffs might try to assert here.[5] But no matter how Plaintiffs style their claim, it fails as a matter of law for multiple reasons.

**First**, the Merger Agreement says *nothing* about funding a severance plan and cannot form

---

benefits under ERISA Section 502(a)(1)(B). *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). Ninth Circuit precedent holds the same. *See, e.g., Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012); *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 500 F. App'x 575, 577 (9th Cir. 2012).

[5] ERISA preempts "all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Moreover, preemption applies when a state law's enforcement conflicts with the "comprehensive scheme of civil remedies" provided by ERISA. *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). This means "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore barred by conflict preemption." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667 (9th Cir. 2019). Thus, preemption bars a state-law claim "even if the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6                Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

a basis for Plaintiffs' claim.  As Plaintiffs acknowledge, the Merger Agreement says only that X Corp. "shall provide . . . severance payments and benefits . . . that are no less favorable than those applicable . . . immediately prior to [the Merger] under the Company Benefit Plans."  Opp. at 11 (citing Dkt. 47, Pls.' Request for Judicial Notice, Ex. A, § 6.9(a)).  This language never mentions an ERISA severance plan, much less dictates that Defendants "fund" such a plan.  Not only does the Merger Agreement show that no "Twitter Severance Plan" exists, but it distinguishes this case from *Frulla v. CRA Holdings*, 596 F. Supp. 2d 275 (D. Conn. 2009), which Plaintiffs say supports their claim.  Unlike here, the parties in *Frulla* entered a settlement agreement that expressly required the employer to provide adequate funding for healthcare and life-insurance benefits provided through a preexisting welfare benefit plan sponsored by the employer.  *Id.* at 279-81.  The plaintiffs there claimed the plan's fiduciaries breached their duty to ensure the employer adequately funded the plan pursuant to the settlement.  *Id.*  Here, by contrast, there is no plan and no agreement requiring its funding.

**Second**, even if the Merger Agreement required X Corp. to contribute assets to "fund" the alleged plan (it does not), any contractual entitlement to X Corp.'s general corporate assets under the Merger Agreement would not constitute *a plan asset* governed by ERISA.  Indeed, the Ninth Circuit has "consistently held that unpaid contributions by employers to employee benefit funds are not plan assets."  *Bos v. Bd. of Trustees*, 795 F.3d 1006, 1009 (9th Cir. 2015); *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) (holding corporate assets are not "plan assets over which fiduciaries of the plan have a fiduciary obligation").  And because a contractual entitlement to the contribution of employer assets is not a *plan* asset, an employer is not an ERISA *fiduciary* and has no *fiduciary liability* in relation to such assets.  *Id.* "[T]his is true even where the employer is also a fiduciary of the plan."  *Cline*, 200 F.3d at 1234.

Ignoring Ninth Circuit authority, Plaintiffs rely on caselaw from the Second, Fifth, and Eleventh circuits to suggest an employer may be fiduciarily liable for a contractual obligation to fund a plan.  *See* Opp. at 10-11.[6]  But the Ninth Circuit *expressly considered and rejected* the

---

[6] Not only do Plaintiffs rely on inapposite out-of-circuit law, but they mischaracterize that law.  For example, Plaintiffs cite *Frulla v. CRA Holdings, Inc.*, 2006 WL 8452995 (S.D. Fla. July 21, 2006) to argue "[f]unding decisions out of line with the Merger Agreement's requirement to pay severance

7                    Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    reasoning of those courts in deciding to adopt a narrower view of fiduciary liability.  *See Bos*, 795

2    F.3d at 1009-11 (rejecting view of Second, Fifth, and Eleventh Circuits).  Plaintiffs also argue that

3    other "cases cited by Defendants do not involve contractual obligations to pay benefits, [and

4    therefore] are inapplicable here."  Opp. at 12.  Plaintiffs miss the point.  Those cases recognize the

5    distinction between fiduciary and settlor activities, a distinction Plaintiffs ignore.  When a plan

6    sponsor makes plan-design decisions—such as determining how plan benefits will be funded—it

7    is not acting in a fiduciary capacity or subject to fiduciary liability.  *See, e.g.*, *Lockheed Corp. v.*

8    *Spink*, 517 U.S. 882, 890 (1996).  Thus, "[a]n employer's or plan sponsor's decision to adopt,

9    modify, or terminate a benefit plan . . . is not a fiduciary act since the statute's defined functions of

10   a fiduciary do not include plan design."  *In re WorldCom, Inc.,* 263 F. Supp. 2d 745, 758 (S.D.N.Y.

11   2003) (citing *Lockheed Corp.*, 517 U.S. at 890).

12       **Third**, even if Plaintiffs' claim were not preempted by ERISA, it would fail under basic

13   principles of contract law.  Specifically, Plaintiffs cannot enforce any contractual obligation under

14   the Merger Agreement or seek to hold Defendants liable for an alleged breach of the agreement

15   because Plaintiffs are not parties to the Merger Agreement.  Under California law, a third party may

16   enforce a contract if the contract is "made expressly for the benefit of a third person." Cal. Civ.

17   Code § 1559.  "A third party qualifies as a beneficiary under a contract if the parties intended to

18   benefit the third party and the terms of the contract make that intent evident."  *Karo v. San Diego*

19   *Symphony Orchestra Ass'n,* 762 F.2d 819, 821–22 (9th Cir. 1985).

20       Here, the Merger Agreement makes clear that Plaintiffs are not third-party beneficiaries.

21   To start, Plaintiffs rely on Section 6.9(a) of the Merger Agreement to argue Twitter was obligated

22   to provide employees with "Severance payments and benefits . . . no less favorable than those

23   provided under Twitter's policies immediately before the merger. Opp. at 11 (citing Dkt. 47, Pls.'

24   Request for Judicial Notice, Ex. A, § 6.9(a)).  But Section 6.9(e) states that "[n]othing contained in

25   this Section 6.9"—which includes Section 6.9(a) on which Plaintiffs rely—"expressed or implied,

26

27

28   ───────────────────────────

benefits are breaches of fiduciary duties, not settlor activities."  Opp. at 11.  But *Frulla* says *nothing*
about fiduciary liability.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8       Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

shall . . . give any Company Service Provider[7] (including any beneficiary or dependent thereof) or other Person any third-party beneficiary or other rights . . . ." Ex. A, § 6.9(e).  Through Section 6.9(e)(ii), the contracting parties unequivocally expressed their intent to not confer third-party beneficiary status on Plaintiffs for purposes of enforcing Section 6.9(a).[8]  The contracting parties further expressed their intent to not confer on Plaintiffs any third-party beneficiary status through Section 9.7, titled "No-Third Party Beneficiaries," which states that the "Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder," and then carves out three specifically enumerated categories of third-party beneficiaries—none of which includes Plaintiffs. *Id.*, § 9.7.

Because the contracting parties expressly excluded Plaintiffs as third-party beneficiaries under the very section in the Merger Agreement Plaintiffs now rely on, and even included a second bespoke no-third party beneficiary clause that also excludes Plaintiffs, it is evident that the parties did not intend to confer third-party beneficiary standing onto Plaintiffs under the Merger Agreement.  Thus, Plaintiffs' claim under the Merger Agreement fails as a matter of law.

**Fourth**, even assuming Plaintiffs could assert a claim regarding the alleged severance plan's funding under ERISA or contract law, Plaintiffs' claim still fails to state a claim under Rule 12(b)(6) because the Amended Complaint provides no non-conclusory allegations about the plan's funding mechanisms, its "required" funding level, or even the amount of any claimed shortfall. Instead, Plaintiffs speculate—without any well-pleaded factual allegations—that the alleged plan must have been "underfunded" (based on some unarticulated requirement) because they did not receive the severance payments they say they are entitled to (from a plan that does not exist).  That is not enough.  Because Plaintiffs' inferential leap is not supported by the facts alleged in the Amended Complaint, and because Defendants' decisions regarding the payment of severance packages to former employees are "more likely explained" by "lawful behavior" than a failure to

---

[7] Company Service Provider is defined to include all of Twitter's current and former employees, including Plaintiffs. *Id.*

[8] This intent is further reflected in Section 6.9(e)(i), which grants the acquiror the unfettered right "to amend, modify, merge or terminate after the Effective Time any Company Benefit Plan, Post-Closing Plan or other employee benefit plan" under which Plaintiffs are now seeking to recover alleged severance payments. *Id.*, § 6.9(e)(i).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9                          Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    abide by unspecified funding requirements, Plaintiffs' claim fails.  *Iqbal*, 556 U.S. at 678, 680.

2        2.      ***Plaintiffs Cannot Assert a Claim for Individual Relief Under Section***

3                ***502(a)(2)***

4        As Defendants explained (Mem. at 10-11), Plaintiffs' fiduciary-breach claim also fails

5    because Plaintiffs seek to recover individual monetary benefits, not relief *on behalf of the alleged*

6    *plan* as required by ERISA Sections 409 and 502(a)(2).  In their Opposition, Plaintiffs contend they

7    seek relief on behalf of the alleged plan because they "request an order requiring Defendants to

8    'fund the Plan in an amount sufficient to pay benefits to Plan participants.'"  Opp. at 12.  This

9    changes nothing.  Dressing up their benefits claim with conclusory and unsupported allegations

10   that the supposed severance plan was "underfunded" does not change the fact that, at its heart,

11   Plaintiffs' suit is one "to compel payment of improperly denied claims."  *Ortega v. Rainbow*

12   *Disposal Co. Inc.*, 2016 WL 11757786, at *3 (C.D. Cal. Jan. 14, 2016).  Indeed, if Plaintiffs were

13   to prevail on their claim, the result would be that they receive the severance benefits they say they

14   are entitled to, not that any defendant would make a contribution to the alleged severance plan.

15   Moreover, the relief Plaintiffs seek is not unique to a Section 502(a)(2) claim and does not make

16   that claim any more appropriate here; they can (and do) seek equitable relief through other claims.

17       C.      **Plaintiffs Fail to State a Claim for Equitable Relief**

18           1.      ***The Claim Must Be Dismissed Because It Seeks Duplicative Relief***

19       As Defendants explained (Mem. at 11-13), Plaintiffs' Section 502(a)(3) claim (Count III)

20   should be dismissed because it seeks the same underlying relief as their denial-of-benefits claim

21   under Section 502(a)(1)(B). Where a plaintiff's claimed injury is an alleged improper denial of

22   benefits, "a claimant may not bring a claim for denial of benefits under 29 U.S.C. § 1132(a)(3)

23   when a claim under § 1132(a)(1)(B) will afford adequate relief."  *Castillo v. Metro. Life Ins. Co.*,

24   970 F.3d 1224, 1229 (9th Cir. 2020).

25       Plaintiffs argue they can simultaneously assert a claim for *both* equitable relief *and* benefits.

26   Opp. at 18 (citing *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 961 (9th Cir. 2016)).  True

27   enough.  But that is only half the story.  Other authority clarifies that a complaint that is not seeking

28   "appropriate equitable relief" under Section 502(a)(3) is still subject to dismissal at the pleadings

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10          Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

stage.  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 661-65 (9th Cir. 2019) (affirming dismissal of ERISA claim despite plaintiffs labeling relief sought as equitable remedies of restitution and disgorgement where plaintiffs sought relief that was legal in nature).  Thus, a plaintiff may seek relief under both 502(a)(1)(B) and 502(a)(3) only where "*the equitable relief she seeks is distinct from past due benefits*, and she alleges that the available legal remedies are inadequate to make her whole."  *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, 2016 WL 107838 (D. Ariz. Jan. 11, 2016) (emphasis added).  That is not true here because Plaintiffs seek the same relief under Sections 502(a)(1)(B), 502(a)(2), and 502(a)(3), and Plaintiffs' benefits claim would be adequately remedied under Sections 502(a)(1)(B) and 502(a)(2).  *See Horan v. Goal Structured Solutions, Inc.*, 2021 WL 5177459, at *6 (S.D. Cal. Nov. 2, 2021) ("A plaintiff may not resort to this equitable catchall provision to seek the same relief that a claim for ERISA benefits under § 1132(a)(1)(B) affords."); *Kaminskiy v. Kimberlite Corp.*, 2014 WL 2196191, at *4 (N.D. Cal. May 27, 2014) (similar).

Plaintiffs argue their Section 502(a)(3) claim is appropriate because it seeks specific "equitable relief" such as the appointment of independent fiduciaries, disgorgement, and injunctive relief.  Opp. at 19-20.  Tellingly, the Amended Complaint seeks those remedies under Plaintiffs' "Prayer for Relief," not under Count III.  And for good reason.  Those remedies are available under Sections 502(a)(1)(B) and 502(a)(2).  For example, Section 502(a)(1)(B) already allows a plaintiff to "enforce his rights under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and to seek declaratory and injunctive relief.  *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147 (1985) (participant can file an "action pursuant to § 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future"); s*ee also Walsh v. Clawson Constr., Inc.*, 2021 WL 6618458, at *1 (N.D. Cal. Oct. 29, 2021) (seeking appointment of independent fiduciary under Section 502(a)(2)); *Gamino v. KPC Healthcare Holdings, Inc.,* 2021 WL 7081190, at *3 (C.D. Cal. Aug. 6, 2021) ("participants can pursue claims under ERISA Section 502(a)(2), which are 'based on breach of fiduciary duty and allow[ ] for the more expansive recovery of 'appropriate relief,' including disgorgement of profits and equitable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11          Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1  remedies.") (citation omitted); *Pette v. Int'l Union of Operating Eng'rs*, 2016 WL 4596338, at *8

2  (C.D. Cal. Sept. 2, 2016) (dismissing Section 502(a)(3) claim because Section 502(a)(2) provided

3  for adequate injunctive relief).

4       Because Plaintiffs' benefits claim would be adequately remedied under Sections

5  502(a)(1)(B) and 502(a)(2), they cannot obtain duplicative relief under Section 502(a)(3).

6              *2.      Plaintiffs Fail to State a Misrepresentation Claim Under ERISA*

7       Plaintiffs' misrepresentation claim fails on its own terms.  For starters, Plaintiffs wrongly

8  assert their claim is not subject to Rule 9(b)'s heightened pleading standard.  Opp. at 13.  But the

9  caselaw cited by the Opposition itself makes clear that Rule 9(b) governs their claim, holding that

10 "Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under

11 ERISA, *and does not allege fraud or mistake*."  *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir.

12 1995) (emphasis added); *see also Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2017

13 WL 11467730, at *2 (C.D. Cal. Sept. 25, 2017) (noting *Concha*'s holding that Rule 9(b) "applies

14 to ERISA claims *based on fraud*") (emphasis added).  Plaintiffs *do* allege fraud here, specifically

15 that Defendants fraudulently concealed the existence of the "Twitter Severance Plan" and misled

16 employees about the company's severance benefits.  Because "[f]raudulent concealment is a

17 component of Plaintiffs' ERISA breach of fiduciary duty claim," the Rule 9(b) pleading standard

18 prescribes that "all averments of fraud or mistake, [and] the circumstances constituting fraud or

19 mistake shall be stated with particularity."  *Evanson v. Price*, 2006 WL 2829789, at *5 (E.D. Cal.

20 Sept. 29, 2006).  Plaintiffs' allegations fall far short of that standard, as well as the more lenient

21 standard under Rule 8(a).

22       The Opposition concedes Plaintiffs' misrepresentation claim comes down to certain alleged

23 "omissions" by Defendants, Opp. at 14, but Plaintiffs' allegations that Defendants "maintained

24 silence" regarding Twitter's "secret" severance plan do not state a plausible misrepresentation

25 claim because Plaintiffs fail to allege such a plan existed.  *See supra* at 3-5.  Simply put, Defendants

26 cannot be liable under ERISA for failing to inform Plaintiffs about a severance plan whose

27 existence has never been plausibly pleaded.  Indeed, Plaintiffs' claim that Defendants' "continued

28 silence . . . harm[ed] employees by defeating their *well-founded expectations*," *id.* (emphasis

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12                Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    added), makes no sense because Plaintiffs also allege Twitter kept the alleged severance plan

2    "secret" for "years" so that employees were not even *aware* they were entitled to any severance

3    benefits.  Twitter employees cannot have had any "expectations" about a plan they did not know

4    exists.  This contradictory and implausible theory cannot support a misrepresentation claim.

5          To the extent Plaintiffs maintain that Defendants made affirmative misrepresentations,

6    those allegations also fail.  To start, Plaintiffs do not identify any alleged misrepresentations by an

7    ERISA fiduciary.  *See Baker v. Save Mart Supermarkets*, 2023 WL 2838109, at *3 (N.D. Cal. Apr.

8    7, 2023) (plaintiff must allege the defendant's status as an ERISA fiduciary acting as a fiduciary).

9    The Opposition does not argue otherwise, but suggests that because "the misrepresentations and

10    omissions were made by non-fiduciary managers does not absolve the fiduciaries, on whom the

11    managers relied, of liability for the misrepresentations."  Opp. at 15.  That is not the law, and even

12    if it were, Plaintiffs make no such allegations.  *See* Am. Compl. ¶¶ 63-65 (alleging only that

13    "Plaintiff Cooper asked his manager multiple times about the layoffs and the availability of

14    severance").

15          Further, Plaintiffs do not plausibly allege Defendants breached their "duty to inform plan

16    participants when changes to [the] plan [were] under 'serious consideration.'"  Am. Compl. ¶ 117

17    (citing *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180–82 (9th Cir. 2004)).  The Opposition

18    insists the Amended Complaint should be leniently interpreted (contrary to Rule 9(b)) to allege that

19    Defendants made a "specific proposal" "not to pay Plan benefits" "to be implemented with the

20    November 4 layoffs."  Opp. at 15-16.  But no matter how leniently one reads the Amended

21    Complaint, Plaintiffs do *not* allege that this "proposal" was "seriously considered" *before* any

22    alleged misrepresentations by Defendants.  Indeed, Plaintiffs allege that the *latest* statement about

23    severance benefits appeared in an "Acquisition FAQ update" on October 24, 2022, Am. Compl.

24    ¶ 49, but that Defendant Musk did not assume control of the company until several days later on

25    October 27, 2022, *id.* ¶ 9.  Thus, any specific proposal by Defendant Musk and X Corp. regarding

26    company severance benefits was made *after* the alleged misrepresentations, and therefore "are not

27    material and hence not an actionable violation of the ERISA[.]" *Mathews v. Chevron Corp.*, 362

28    F.3d 1172, 1180–82 (9th Cir. 2004).  And in any event, there can be no liability for considering

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13    Case No. 3:23-cv-03461-TLT

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1    changes to a non-existent plan.

2        Finally, Plaintiffs simply ignore recent caselaw from this district requiring a plaintiff to

3    plead detrimental reliance as part of a misrepresentation claim. *See, e.g., RJ v. Cigna Health &*

4    *Life Ins. Co.*, 625 F. Supp. 3d 951, 970 (N.D. Cal. 2022) ("to the extent [a] breach of fiduciary

5    duties claim is based on misrepresentations, Plaintiffs must plead . . . detrimental reliance by the

6    plaintiff on the misrepresentation"); *Baker*, 2023 WL 2838109, at *3 (similar); *Vazquez v.*

7    *DataRobot, Inc.*, 2023 WL 6323101, at *11 (N.D. Cal. Sept. 28, 2023) (similar).  Plaintiffs' failure

8    to plead detrimental reliance is fatal.  In the Opposition, Plaintiffs contend the Court "can presume"

9    detrimental reliance at this stage, Opp. at 17, but cite only to caselaw in which a court upheld a

10   presumption of reliance based on alleged misrepresentations made in "official Plan documents or

11   incorporated by reference in . . . SEC filings." *See In re First Am. Corp. ERISA Litig.*, 2008 WL

12   5666637, at *6 (C.D. Cal. July 14, 2008).  Not so here, where Plaintiffs allege only that Twitter

13   issued summary communications to employees before Defendant Musk took control of the

14   company, and point to no plan documents or government filings to support their claim.  For this

15   additional reason, Count III fails.

16        **D.      Defendant Musk Is Not a Fiduciary to Any Twitter Severance Plan**

17        As Defendants explained (Mem. at 16-18), Plaintiffs' claims against Defendant Musk fail

18   for the additional reason that, even if a Twitter severance plan existed, Defendant Musk is not an

19   ERISA fiduciary in relation to that plan.  ERISA "defines 'fiduciary' not in terms of formal [roles],

20   but in *functional* terms of control and authority over the plan." *Johnson v. Couturier*, 572 F.3d

21   1067, 1076 (9th Cir. 2009) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)).

22   Therefore, "[t]o determine whether one qualifies as a fiduciary, courts ask whether one exercises

23   discretionary authority or control respecting management over the plan . . . or has discretionary

24   authority or responsibility in the administration of the plan." *Brown v. Cal. Law Enforcement*

25   *Ass'n, Long–Term Disability Plan*, 81 F. Supp. 3d 930, 934 (N.D. Cal. 2015).

26        Plaintiffs offer only conclusory allegations that "Defendant Musk exercised discretion and

27   control over the Twitter Severance Plan and was thus a functional fiduciary of the Plan." Am.

28   Compl. ¶ 10. The Opposition supplements those tired phrases with other conclusory assertions that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14         Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

are equally vague and meaningless. *See* Opp. at 8 (calling Defendant Musk "the ultimate decisionmaker"). These allegations—which could be leveled against the CEO of every company that allegedly offers an ERISA-governed plan—are not enough to show Defendant Musk exercised discretionary control over the alleged severance plan such that he acted as a fiduciary under ERISA. *See, e.g., Haw. Masons' Pension Tr. Fund v. Glob. Stone Haw., Inc.*, 292 F. Supp. 3d 1063, 1071 (D. Haw. 2017) (finding "conclusory allegations" regarding defendants' authority and control over plan assets failed to plead fiduciary status) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).[9] Indeed, corporate officers "do not become fiduciaries solely by virtue of their corporate position, even if the corporation is a fiduciary, unless it can be shown that they have individual discretionary roles as to plan administration." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 447 (D. Md. Dec. 6, 2005). Plaintiffs do not make that showing here.

The Opposition also contends Defendant Musk was a fiduciary because he "had decision-making authority over communications to employees about future benefits before he formally acquired the company." Opp. at 9. But Plaintiffs offer zero plausible factual allegations showing that Defendant Musk exercised control over Twitter's communications before the merger on October 27, 2022, particularly given widely publicized accounts of Twitter's opposition to the merger and Defendant Musk's own attempts to postpone or call off the deal. In short, Plaintiffs' suggestion that Defendant Musk oversaw pre-merger communications has no basis in reality. Because Plaintiffs do not plausibly allege Defendant Musk was a fiduciary, their claims against him fail as a matter of law and should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

---

[9] *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *In re JDS Uniphase Corp. Erisa Litig.*, 2005 WL 1662131, at *2 (N.D. Cal. July 14, 2005) (finding "conclusory allegations" that defendants "exercis[ed] discretionary authority with respect to management and administration of the Plans" insufficient); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (holding that simple allegations that a defendant falls within the statutory definition of fiduciary are conclusory assertions, not well-pleaded factual allegations); *Daley v. Lockheed Martin Corp.*, 2017 WL 2834130, at *5 (N.D. Cal. June 30, 2017) (similar).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15                    Case No. 3:23-cv-03461-TLT
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1

2   Dated: February 23, 2024                MORGAN, LEWIS & BOCKIUS LLP

3

4                                   By    /s/ Melissa Hill
                                          Melissa Hill (*pro hac vice*)
5                                         Mark Feller
                                          Sean McMahan (*pro hac vice*)
6                                         Jared R. Killeen (*pro hac vice*)

7                                         Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT