Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: 415-442-1000

Melissa Hill (admitted *pro hac vice*)
melissa.hill@morganlewis.com
Jared R. Killeen (admitted *pro hac vice*)
jared.killeen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178
Telephone: 212-309-6000

Sean K. McMahan (admitted *pro hac vice*)
sean.mcmahan@morganlewis.com
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel: + 1.214.466.4000
Fax: +1.214.466.4001

*Attorneys for Defendants X Corp., f/k/a Twitter, Inc.; X Holdings; Elon Musk; and Does*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants | Case No. 3:23-cv-03461-TLT<br><br>**DEFENDANT X CORP.'S STATEMENT IN SUPPORT OF RETAINING DOCUMENT (AND REFERENCES) UNDER SEAL**<br><br>Am. Compl. Filed:  Oct. 13, 2023<br>Hearing Date:       April 9, 2024<br><br>Judge:  Trina L. Thompson |

Pursuant to Civil Local Rule 79-5(f)(3), Defendant X Corp., the successor-in-interest to Twitter, Inc. ("X Corp."),[1] submits this statement, and the accompanying Declaration of Mary Hansbury, in support Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (ECF No. 46) related to Plaintiffs' Opposition To Defendants' Motion To Dismiss.

## I.   BACKGROUND AND PROPOSED MATERIAL TO BE SEALED.

On February 9, 2024, Plaintiffs filed their Opposition to Defendants' Motion To Dismiss ("Opposition") (ECF No. 45). In connection with their Opposition, Plaintiffs filed an administrative motion to seal. (ECF No. 46). In support of their Opposition, Plaintiffs refer to a document they call the "Twitter Severance Matrix" (referred to herein as "Matrix"). The Matrix bears the subheading "Attorney-Client Privileged + Confidential" and contains X Corp.'s privileged compensation information.

In her role as Head of People Experience for Twitter, Inc., Plaintiff Courtney McMillian had access to this document during her employment, was to use it solely for the benefit of the company and was required to maintain it in the strictest confidence. *See* Declaration of Mary Hansbury ("Hansbury Decl.") ¶ 7. But after she was terminated from X Corp., Plaintiff McMillian disclosed it to her attorneys and used it against X Corp. in violation of her confidentiality agreement. *See id.*, Exhibit 1, Section 7(e) ("I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product."). Ignoring the privileged nature of the document (and their ethical obligations)[2] and notwithstanding Plaintiff McMillian's confidentiality obligations, Plaintiffs' attorneys apparently reviewed the Matrix, referenced it throughout the original complaint, and attached the document as Appendix 1-1 to her original complaint. (ECF No. 1-1.)[3]

---

[1]   In March 2023, Twitter, Inc. was merged into X Corp. and ceased to exist. X Corp. is the successor-in-interest to Twitter, Inc.

[2]   *See Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807, 817 (2007) ("When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege . . . the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.").

[3]   Upon discovering the filing, counsel for Defendants demanded that Plaintiffs' counsel remove the document from the public docket or have it sealed because it was protected by the attorney client privilege. Plaintiffs' counsel

Remarkably, even after being apprised of the privileged nature of the document and after removing it from the public docket, Plaintiffs' attorneys continued to use it, including details and even quotations from the document throughout the Opposition. *See* Opposition at 3, 5 n.2-3, 7. Plaintiffs provisionally redacted these references to the privileged Matrix from the copy of Plaintiffs' Opposition filed to the public docket. The Matrix and the redacted portions of the Opposition should remain under seal because it is privileged.

## II.   STANDARD

Where a filing party moves to seal because a document (or portions thereof) has been designated confidential or privileged by another party, the designating party must file a statement or declaration providing a "specific statement of the applicable legal standard and the reasons for keeping a document under seal." Civil L.R. 79-5(c)(1); *see also id*. at 79-5(f)(3). Typically, a court may seal records when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). "Compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes . . .". *Id*. "Courts have accepted attorney–client privilege and the work-product doctrine as sufficient justifications for sealing [under the] 'compelling reason' standard." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3067783, at *3 (N.D. Cal. Mar. 16, 2018) (collecting cases); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 2317835, at *6 (N.D. Cal. May 22, 2018) (same); *Eastman v. Apple Inc.*, No. 18-CV-05929-JST, 2018 WL 5982440, at *3 (N.D. Cal. Nov. 14, 2018).

However, some courts have concluded that a party need not demonstrate "compelling reasons" to justify sealing materials protected by the attorney-client privilege or the work product doctrine. *See Lambright v. Ryan*, 698 F.3d 808, 820 (9th Cir. 2012) ("Attorney-client privileged

---

sought to remove the document from the public docket (ECF No. 4 [Motion to Remove Appendix 1 from the Public Docket and File It Provisionally Under Seal]), but in doing so contended, without basis, that the document was not privileged. *See id*. The Court ordered that the document be "provisionally removed from the public docket and deemed to be filed under seal pending a Court determination on Defendant's assertion of privilege." (ECF No. 7.) Plaintiffs did not re-file this document with their amended complaint (*see* ECF No. 13); nor did Plaintiffs file the Matrix as part of their Opposition. (*See* ECF Nos. 45-46.)

1   materials, of course, are archetypical examples of material that has traditionally been kept secret

2   for important policy reasons." (citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162,

3   (2011)); *Moreno v. SFX Ent., Inc.*, No. CV140880RSWLCWX, 2015 WL 12683794, at *3 (C.D.

4   Cal. Aug. 28, 2015) ("The communication at issue qualifies as privileged attorney-client material,

5   which has been "traditionally kept secret" for policy reasons. No showing of "compelling reasons"

6   for sealing the requested documents is therefore required."); *Hernandez v. Creative Concepts*, No.

7   2:10-CV-02132-PMP-VC, 2013 WL 3864066, at *10 (D. Nev. July 24, 2013) ("[s]ince the logged

8   documents contain attorney-client communications that are 'traditionally kept secret' and 'there is

9   no right of access to documents which have traditionally been kept secret for important policy

10  reasons,' the court finds that the parties need not file a motion with the court demonstrating

11  'compelling reasons' or good cause in order to file the logged documents, or information contained

12  therein, under seal." (citing *Lambright*, 698 F.3d at 820; *Kamakana*, 447 F.3d at 1185)).

### III. THE MATRIX (AND REFERENCES THERETO) SHOULD REMAIN UNDER SEAL BECAUSE THEY CONTAIN PRIVILEGED INFORMATION.

The Matrix in indisputably privileged.  The document was prepared by an X Corp. in-house attorney to provide legal advice in connection with ongoing merger discussions and responses to information requests from the buyer regarding employment and compensation.  Hansbury Decl. ¶ 5. The protection of the attorney-client privilege alone is a sufficient basis to keep the Matrix under seal, regardless of whether this Court requires a compelling reason or not.  *See Moreno*, 2015 WL 12683794, at *3 (finding that "[n]o showing of "compelling reasons" for sealing was required to seal a privileged attorney-client communication and related briefing which referenced to the privileged communication); *Hernandez*, 2013 WL 3864066, at *10 (sealing privileged attorney-client communications and finding that a party need not demonstrate compelling reasons or good cause to warrant sealing privileged materials).  Under federal law, the attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The Ninth Circuit describes the elements of the privilege as follows: "(1)

legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.*; *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21CV02450WHODMR, 2023 WL 2699971, at *3 (N.D. Cal. Mar. 29, 2023). The work-product doctrine covers documents prepared by attorneys, and agents of the attorney, in preparation for litigation. Fed. R. Civ. P. 26(b)(3); *Richey*, 632 F.3d at 567 (citation omitted). A document is deemed "prepared in anticipation of litigation … if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*, No. 19-CV-02141-JM (JLB), 2021 WL 3913470, at *6 (S.D. Cal. Sept. 1, 2021) (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)).

Each of the *Richey* factors confirms the Matrix is protected by the attorney-client privilege. In 2022, in connection with ongoing merger discussions and responses to information requests from the buyer regarding employment and compensation, certain X Corp. business representatives sought legal advice from the X Corp. legal department, including Ms. Hansbury. *See* Hansbury Decl. ¶5. The Matrix reflects attorney work product, legal impressions, and analyses of legal risks of counsel for Twitter and now X Corp. *Id.* ¶ 6. The communication was made in confidence to other X Corp. employees. *Id.* ¶ 5. And, X Corp. takes reasonable steps to protect its confidential and privileged information, including the Matrix, from disclosure. Hansbury Decl. ¶ 8. Accordingly, the Matrix is protected by the attorney-client privilege. *See*, *e.g.*, *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 444-45 (N.D. Cal. 2010) (finding memoranda prepared by in-house attorney for Human Resources Department and related communications were privileged); *Bland v. Fiatallis N. Am., Inc.*, No. 02 C 69, 2002 WL 31655213, at *2 (N.D. Ill. Feb. 3, 2003) (memoranda and letters which analyzed legal liability and reflected communications with attorneys was protected by the attorney-client privilege and could not be used in ERISA litigation).

The Matrix is also protected from disclosure by the attorney work product doctrine. The document was prepared by attorneys for X Corp. in anticipation of potential litigation and reflects

their legal impressions regarding the legal risk potential of legal issues. Hansbury Decl. ¶ 6. *See, e.g., Schaeffer v. Gregory Vill. Partners*, L.P., 78 F. Supp. 3d 1198, 1206 (N.D. Cal. 2015) (in-house attorney's notes regarding contamination of property reflected her legal impressions in anticipation of litigation and was protected by work product doctrine); *Cleveland*, 2021 WL 3913470, at *8 (denying in part motion to compel production of board minutes because they were prepared in anticipation of litigation.

The Matrix is privileged and protected by both the attorney-client privilege and the attorney work product doctrine. It should have never been in the hands of Plaintiffs' attorneys and certainly not filed or used in this litigation. There is no presumptive right of public access to privileged materials, and, accordingly, the Matrix (and references to it in Plaintiffs' Opposition) should remain under seal. *See Lambright*, 698 F.3d at 820; *Moreno*, 2015 WL 12683794, at *3; *Hernandez*, 2013 WL 3864066, at *10.

Even if the Court requires a showing of a compelling reason to retain the document (and references to it in Plaintiffs' Opposition) under seal, the disclosure of the Matrix would significantly harm X Corp. (Hansbury Decl. ¶ 10) and this harm outweighs any interest in public disclosure. *See, e.g., Fed. Trade Comm'n*, 2018 WL 2317835, at *6 (sealing portions of pretrial order and brief under compelling reasons standard because the materials revealed confidential legal advice); *Eastman*, 2018 WL 5982440, at *3 (sealing an exhibit submitted in opposition to a motion to dismiss because it contained attorney-client privileged communications).

### IV.     PLAINTIFFS' CLAIMS THAT THE MATRIX (AND REFERENCES THERETO) IS NOT PRIVILEGED SHOULD BE REJECTED.

Plaintiffs' efforts to overcome the protections that should appropriately be afforded the Matrix are unavailing. First, Plaintiffs' contention that the Matrix is not privileged (*see* ECF No. 4) lacks factual support. Their speculative "understandings" of the document is insufficient to defeat a showing that the document is plainly protected. *Id.* at 4. Tellingly, Plaintiff McMillian offers no verified facts to suggest that she understood the document to be anything other than privileged. *See id.* She offers no explanation as to how she obtained the document or how and why she retained it after her departure from the Company, no doubt because any such explanation would

confirm the privileged and confidential nature of the document. *See id. passim.* Nor is Plaintiffs' mistaken reliance on cases involving communications from nonlawyers that did not reflect or seek legal advice sufficient to justify unsealing the Matrix.[4] None of these cases involve the situation here, where an **attorney** is providing legal advice to business representatives on legal risks, exposure, and strategy.

Next, Plaintiffs' broad contention that "the attorney-client privilege does not apply to ERISA Plan documents, such as the [Matrix]" (ECF No. 4 at 5 (citing cases)) puts the rabbit in the hat. Mere allegations that document "is a 'welfare benefit plan' under ERISA" (*see, e.g.,* Compl. ¶¶ 2, 16, 27, 79) does not make it one. And simply saying something is a "plan document" does not make it true. *See* Defendants' Motion to Dismiss (ECF No. 38) at 7.

Finally, the fiduciary exception also does not apply because, even if Plaintiffs plausibly assert that an ERISA plan exists, the Matrix does not relate to the management or administration of a plan to warrant application of the exception. *Bland*, 2002 WL 31655213, at *4 (finding memorandum analyzing legal risks and its attachments were privileged and the fiduciary exception did not apply because the document did not involve the management of the plan). Notably, the cases Plaintiffs rely on related to ERISA's fiduciary exception to the attorney client privilege (*see* ECF No. 4 at 4) involved situations in which there was no dispute that the plan at issue was an ERISA plan and the document at issue involved the management and administration of the plan. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 921 (9th Cir. 2012) (fiduciary exception applied to benefits determination involving long-term disability insurance plan administered by an insurance company); *Tom v. Com Dev USA, LLA*, No. 216CV1363PSGGJSX, 2017 WL 2423797,

---

[4] *See* ECF No. 4 at 2-4 (citing cases including *Economus v. City & Cnty. of San Francisco*, No. 18CV01071HSGDMR, 2019 WL 1411233, at *2 (N.D. Cal. Mar. 28, 2019) (percipient witness incident report which "only convey[ed] factual information" was not privileged); *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19CV02033YGRJCS, 2022 WL 3083000, at *1 (N.D. Cal. Aug. 3, 2022), *motion for relief from judgment denied sub nom. In re Apple Inc. Sec. Litig.*, No. 4:19-CV-2033-YGR, 2022 WL 4351392 (N.D. Cal. Sept. 12, 2022) (affirming magistrate judge's decision that communications relating to an investor letter from nonlawyers were not privileged); *In re Ambry Genetics Data Breach Litig.*, No. SACV2000791CJCKEgSX, 2021 WL 4860514, at *3 (C.D. Cal. July 30, 2021) (denying privilege claim relating to factual information contained in forensic reports prepared by third party vendor); *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.* No. C01-20418JW, 2005 WL 1459555, at *5 (N.D. Cal. June 21, 2005) (identities of witnesses interviewed by an attorney); *In re Grand Jury,* 23 F.4th 1088 (9th Cir. 2021) (affirming district court that found primary purpose of certain documents was to obtain tax advice).

at *3 (C.D. Cal. Jan. 12, 2017) (fiduciary exception applied to retirement plan fiduciaries' communications regarding benefit determination).[5]

Here, the Matrix does not involve a benefits determination, managing assets of the plan or how to administer a defined plan. Instead, the document reflects attorney work product, legal impressions, and analyses of legal risks of counsel for X Corp. See Hansbury Decl. ¶ 6. Accordingly, the fiduciary exception does not apply to erase X Corp.'s valid privilege claim.

### V.  CONCLUSION

The Court should retain the Matrix, as well as the references in the Opposition, under seal.

Dated: February 23, 2024

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Melissa Hill
Melissa Hill (admitted pro hac vice)
Sean McMahan (admitted pro hac vice)
Jared R. Killeen (admitted pro hac vice)
Mark A. Feller

Attorneys for Defendants

---

[5] Plaintiffs also rely on a criminal case, United States v. Mett, 178 F.3d 1058 (9th Cir. 1999). ECF No. 4 at 4. But there, the Ninth Circuit Court of Appeals reversed a trial court's admission of a legal memorandum advising plan trustees about their legal exposure. Id. at 1066. The Court reasoned that the fiduciary exception applied when the legal advice at issue is designed to serve the plan beneficiaries. Id. at 1064. The Court rejected an "expansive view" of the fiduciary exception and held that it did not apply because, among other things, "where a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump the beneficiaries' general right to inspect documents relating to plan administration." Id.