Kate Mueting, DC Bar No. 988177*
Dacey Romberg, DC Bar No. 90003767*
Samone Ijoma, MD Bar No. 2012170086*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206
kmueting@sanfordheisler.com
dromberg@sanfordheisler.com
sijoma@sanfordheisler.com

Charles Field, SBN 189817
**SANFORD HEISLER SHARP, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
Telephone: (619) 577-4252
cfield@sanfordheisler.com

Kristi Stahnke McGregor, GA Bar No.
674012*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com

Christopher Owens, MD Bar No. 220280004*
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, Maryland 21202
Telephone: (410) 834-7422
cowens@sanfordheisler.com

*Attorneys for Plaintiffs
and the Potential Class*

*admitted pro hac vice

Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000

Melissa Hill (*pro hac vice*)
melissa.hill@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000

Sean K. McMahan (*pro hac vice*)
sean.mcmahan@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
Tel: 214.466.4000

Jared R. Killeen (*pro hac vice*)
jared.killeen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000

*Attorneys for Defendants X Corp., f/k/a
Twitter, Inc.; X Holdings, Elon Musk; and
Does*

1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTHERN CALIFORNIA**
**SAN FRANCISCO DIVISION**

11

12

13

14

15

16

17

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, DOES,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT<br><br>**JOINT RULE 26(f) CASE MANAGEMENT STATEMENT**<br><br>Hon. Trina L. Thompson |

18

19

20

21

22

23

24

Counsel for Plaintiffs Courtney McMillian, Ronald Cooper, and the potential class (collectively, "Plaintiffs") and Counsel for Defendants X Corp. (formerly known as "Twitter"), X Holdings Corp., and Elon Musk (collectively, "Defendants") conferred pursuant to the Court's November 2, 2023, Order (Dkt. 18) and November 15, 2023, Clerk's Notice (Dkt. 22), Local Rule 16-9, the Standing Order for All Judges of the Northern District of California (Contents of Joint Case Management Statement), and Federal Rule of Civil Procedure 26(f) on January 23, 2024, and February 22, 2024, and submit this joint case management statement:

25

# I.    JURISDICTION AND SERVICE

This Court has federal question jurisdiction over this action, 28 U.S.C. § 1331, because the action arises under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), which also provides this Court with jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). No issues exist as to personal jurisdiction or venue, and all parties have been served.

# II.    FACTS

## A.    Brief Factual Chronology

In October 2022, Defendant Musk acquired ownership of Twitter. Beginning in November 2022, Twitter engaged in a reduction of its workforce as part of a strategic reorganization purportedly to improve the health of the company. On November 4, 2022, Twitter notified approximately 2,600 employees they were being discharged as part of a reduction in force and their last day of employment with Twitter would be January 4, 2023. In addition to receiving at least 60 days' paid, non-working time between the date they were notified of the layoff and their termination date, consistent with applicable law, these individuals were also offered a severance package equivalent to one month's pay. Following the initial rounds of layoffs, additional employees were let go and also offered one month's pay in severance, in addition to the 60 days or more paid, non-working time.

Plaintiffs are former employees of Twitter. Upon notice of termination of their employment, Plaintiffs were offered severance packages as described above. Plaintiffs' severance packages included a "lump sum" cash payment. Plaintiffs filed this lawsuit on July 12, 2023, and it is one of several lawsuits filed before and after this action by former Twitter employees related to the former employees' severance benefits. Plaintiffs assert their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiffs allege Defendants maintained a severance plan, which they contend is an employee welfare benefit plan

as defined in ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A). Defendants contend Twitter maintained no such plan and assert that even if they did, Defendants had no obligation to fund such a plan under ERISA. Plaintiffs assert they had this obligation.

Plaintiffs allege that Defendants were obligated by ERISA and the alleged plan documents to provide terminated employees with the severance benefits they were owed according to the alleged plan, including a payment equaling a certain number of months of base pay that varied depending on the employee's job level and tenure; a portion of the employee's performance bonus; payment for restricted stock units vesting within a certain time period from termination; a payment for either three or six months of continued health benefits; outplacement services; and a bonus if the employee led a business resource group ("Severance Benefits"). Defendants deny these allegations. Plaintiffs allege that Defendant Musk and other fiduciaries breached their duties under ERISA by failing to ensure that the alleged plan was able to meet its contractual obligations and by misleading the alleged plan participants about their severance benefits. Defendants deny these allegations and any such liability. Plaintiffs seek to hold all fiduciaries jointly and severally liable for the harm to the alleged plan and plan participants. Defendants deny that there are any "fiduciaries" because they deny the existence of any ERISA-governed severance plan, and further deny that Defendant Musk was a fiduciary of any alleged plan even if it existed. Plaintiffs further allege that regardless of Defendant Musk's fiduciary status, he operated Twitter in such a manner that it was his alter ego and that, in the interest of justice and equity, the corporate veil should not prevent Plaintiffs from the relief they are due. Defendants deny these allegations.

### B.    Factual Issues of Dispute

Plaintiffs assert the following factual issues of dispute. Defendants do not concede that the following "factual issues" are relevant to Plaintiffs' claims or Defendants' defenses in this action, and further maintain that some or all of the "factual issues" below will become irrelevant following

the Court's ruling on Defendants' Motion to Dismiss. Defendants reserve all rights to object to Plaintiffs' "factual issues" on relevance or any other grounds, including during discovery (should the parties conduct discovery in this case).

(i)   Existence of a welfare benefit plan as that term is defined in ERISA, 29 U.S.C. § 1002(1)(A)

     a.   Did the nature of the Severance Benefits require ongoing administrative oversight?

     b.   Did determination of Severance Benefits require some degree of discretion?

     c.   Was the source of funding for the Severance Benefits general corporate assets ?

     d.   Were the Severance Benefits governed by plan documents?

     e.   Were the Twitter employees responsible for determining Severance Benefits at Twitter, e.g. human resources staff, provided with documents outlining the benefits to which a terminated employee was entitled and the factors to be used in making that determination?

     f.   Was there an administrative committee that reviewed severance benefit claims at Twitter?

     g.   Was there a procedure for requesting severance benefits at Twitter?

     h.   Was there an appeal process for denial of severance benefits at Twitter?

(ii)   Benefits

     a. Were class members provided benefits based on class members' base salary, tenure, job level, number of RSUs, bonus amounts, and value of health insurance continuation and outplacement services?

     b. Did class members receive any Severance Benefits? If so, what and how much?

(iii)   Management, Control, or Administration of Severance Benefits

**Joint Rule 26(f) Case Management Statement**

  a. Who had authority or power related to Severance Benefits, and what authority or powers did they have?

  b. Did Defendants or representatives or agents of Defendants take actions or make decisions related to Severance Benefits? If so, what were those acts or decisions?

 (iv) Funding Severance Benefits

  a. Does the Merger Agreement require payment of Severance Benefits for at least a year from the date of the Merger?

  b. What decisions or actions did Defendants make to ensure Twitter Severance Benefits were paid to comply with the Merger Agreement, assuming the Merger Agreement imposed any such obligation?

 (v) Misleading Statements and Concealment

  a. What statements did Defendants make, either directly or through others, to class members about the alleged Severance Benefits available upon termination?

  b. How were these statements, if any, made?

  c. If statements were made, were the statements accurate and/or did they omit information?

  d. Who else made decisions related to communications with class members about the Severance Benefits available upon termination? What decisions did they make, and why?

## III. LEGAL ISSUES

At this stage of the litigation, the principal legal issues include:

 (i) Whether Twitter maintained an employee welfare benefit plan as defined in ERISA § 3(1)(A), 29 U.S.C. § 1002(1)(A), for providing former Twitter employees with Severance Benefits;

(ii)   Whether, if such a plan is found to exist, Twitter failed to provide benefits due to members of the potential Class under the alleged plan under ERISA § 502(a)(1)(B);

(iii)  Whether the Merger Agreement created any obligation in relation to Twitter's Severance Benefits;

(iv)   Whether Plaintiffs and the potential Class may assert a claim for harm to the alleged severance plan under ERISA § 502(a)(2) for Defendants' alleged failure to ensure the severance plan had sufficient funds to pay Severance Benefits for one year after the Merger consistent with Section 6.9(b) of the Merger Agreement;

(v)    Whether Plaintiffs and the potential Class may assert a claim for equitable relief under ERISA § 502(a)(3);

(vi)   Whether, if such a plan is found to exist, Defendant Musk was a fiduciary to the alleged plan;

(vii)  Whether Defendant Musk may be held personally liable for Plaintiffs' claims in this action;

(viii) Whether Defendants were required under ERISA to ensure the alleged plan had adequate funding, and, if so, whether Defendants failed to do so;

(ix)   Whether Defendants' decisions regarding funding the alleged plan were fiduciary or settlor in nature, and whether, if fiduciary, Defendants breached their fiduciary duties to the alleged plan by allegedly failing to fund the alleged plan;

(x)    Whether Defendants had a duty under ERISA to provide complete and accurate information about the alleged plan to alleged participants and beneficiaries, and, if so, whether Defendants failed to provide complete and accurate information;

(xi)   Whether Defendants breached their fiduciary duties under ERISA by failing to provide complete and accurate information to alleged plan participants and beneficiaries;

(xii) Whether Defendants are liable for failing to monitor other alleged plan fiduciaries or non-fiduciaries who knowingly participated in the fiduciaries' alleged breach of duties;

(xiii) Whether class certification is appropriate;

(xiv) Whether Defendants complied with ERISA, including its disclosure and reporting requirements and its fiduciary obligations, in administering the alleged plan; and

(xv) Whether Plaintiffs are entitled to a jury trial where they assert claims under ERISA § 502, 29 U.S.C. § 1132.

## IV.   MOTIONS

### A.   Prior Motions

(i)     Plaintiffs' Motion to Remove Appendix 1 from the Public Docket and File it Provisionally Under Seal (Dkt. 4); filed July 17, 2023, and granted July 18, 2023 (Dkt. 7).

(ii)    Plaintiffs' Unopposed Motion for Relief from Case Management Calendar (Dkt. 11); filed September 27, 2023, and granted September 29, 2023 (Dkt. 12).

(iii)   Joint Motion for Relief from Case Management Schedule Pursuant to Civil L.R. 16-2(d) (Dkt. 16); filed October 27, 2023, and granted November 2, 2023 (Dkt. 18).

(iv)    Stipulated Request for Order Changing Time Regarding Briefing Schedule Plaintiffs' Motion for Notice of Action and Hearing Date (Dkt. 25); filed December 7, 2023, and granted December 8, 2023 (Dkt. 26).

(v)     Joint Motion for Order Clarifying Deadline for Rule 26(a)(1) Initial Disclosures (Dkt. 42); filed January 30, 2024, and ruled on February 21, 2024 (Dkt. 49).

(vi)    Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should be Sealed; filed on February 9, 2024 (Dkt. 46), and Defendants' Statement re

Administrative Motion to Consider Whether Another Party's Material Should be Sealed; filed on February 23, 2024 (Dkt. 51), and ruled on February 27, 2024 (Dkt. 52).

(vii)   Stipulated Requested for Order Changing Time re: Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should be Sealed (Dkt. 48), ruled on March 6, 2024 (Dkt. 53).

**B.   Pending Motions**

(i)   Plaintiffs' Motion for Notice of Suit (Dkt. 24); filed December 1, 2023, and fully briefed as of January 12, 2024 (Defendants' Opposition at Dkt. 35 and Plaintiffs' Reply at Dkt. 41).

(ii)   Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 38); filed January 9, 2024. Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 45) was filed on February 9, 2024. Defendants' Reply was filed on February 23, 2024 (Dkt. 50).

(iii)   Plaintiffs' Request for Judicial Notice (Dkt. 47); filed February 9, 2024.

**C.   Anticipated Motions**

(i)   Plaintiffs anticipate filing a motion for class certification. (See section IX below.) Assuming discovery proceeds in a timely and cooperative manner, Plaintiffs do not anticipate filing any discovery motions.

(ii)   Defendants seek a stay of discovery pending the Court's resolution of Defendants' pending motion to dismiss. Plaintiffs oppose a stay of discovery. Parties will be prepared to address the proposed stay during the case management conference, and the Parties ask the Court for additional opportunity to formally brief the issue should the Court wish.

(iii)   Defendants anticipate filing a motion for summary judgment.

## V.    AMENDMENT OF PLEADINGS

Plaintiffs anticipate amending the pleadings to identify the Doe Defendants when discovery enables the identification of the individuals who Plaintiffs contend acted in a fiduciary capacity towards alleged plan participants and the alleged plan and allegedly breached those fiduciary duties. Plaintiffs also preserve the right to amend the pleadings to conform to facts learned in discovery.

## VI.    EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and are meeting and conferring pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues in these actions. Should any disputes arise, the parties will seek the guidance of the Court.

## VII.    DISCLOSURES

The parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on March 7, 2024. The Parties disclosed the information required by Rule 26(a)(1), including the identity of individuals likely to have discoverable information that the party may use to support its claims or defenses, a description by category of all documents, electronically stored information, and tangible things that the disclosing party has in its possession custody or control and may use to support the party's claims or defenses, a computation of each category of damages claimed, and any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment. To the extent that there are any perceived deficiencies in the disclosures, the parties will meet and confer and, if an agreement cannot be reached, the parties will advise the Court of any need to compel further disclosures.

## VIII.    DISCOVERY

(i)      *Discovery to Date:* No discovery has been taken to date beyond the exchange of initial disclosures pursuant to Rule 26(a)(1).

(ii)     *Consent to Electronic Service*: The parties consent and agree, pursuant to Federal Rule of Civil Procedure 5(b)(2)(e), that service may be made by electronic mail, with copies sent to all attorneys of record for the party served.

(iii)    *Subjects for Discovery*: The parties anticipate fact discovery focusing on the following subjects, although Defendants believe that discovery should be stayed pending the resolution of Defendants' Motion to Dismiss, and reserve the right to object to Plaintiffs' specific discovery requests if and when discovery proceeds. Plaintiffs oppose any stay of discovery.

- The existence, administration, funding, and fiduciary oversight of the alleged Twitter severance plan before, during, and after the Merger;
- Which former Twitter/X Corp. employees qualify as participants of the alleged plan, should such a plan exist;
- Communications to Twitter employees about the alleged plan and/or their severance benefits at Twitter before, during, and after the Merger; and
- Information and data about potential class members, including title, tenure, base pay, BRG Lead status, and other compensation or benefits (such as health insurance premiums, RSUs, and outplacement services).

(iv) *Sequencing of Discovery:*

a.   Plaintiffs' Position: Plaintiffs believe that merits and class discovery should proceed simultaneously, followed by expert discovery. Discovery necessary to determine whether class certification is appropriate will occur prior to class certification

briefing. Additional merits and expert discovery will continue following class certification briefing.

Plaintiffs object to the stay of discovery Defendants advocate for below. An automatic stay on discovery is not triggered by the filing of a motion to dismiss, and stays are "the exception to the rule." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018).

District courts in the Ninth Circuit often consider two factors to determine the appropriateness of a discovery stay: (1) whether the pending motion is potentially dispositive of the entire case, and (2) whether the pending motion can be decided absent additional discovery. "[T]he two-factor test is not satisfied by superficial statements or vague articulations demonstrating nothing more than the traditional burdens of litigation." *Id*.

While a motion to dismiss "could be dispositive of an entire action," that is only *if* the motion is granted in its entirety and *if* the Court denies Plaintiffs' leave to amend; "those are big 'ifs.'" *Id*. Courts "liberally" grant leave to amend. *Garcia v. Enter. Holdings, Inc.*, 2014 WL 4623007, at *3 (N.D. Cal. Sep. 15, 2014). *See also Nat'l Union Fire Ins. Co. v. Res. Dev. Serv's., Inc.*, 2010 WL 3746290, at *1 (N.D. Cal. Sep. 18, 2010) (denying motion to stay discovery where defendant assumed that the court would not grant plaintiff leave to amend any deficient claims).

Defendants' Motion to Dismiss is unlikely to be granted as Plaintiffs have adequately pled all their claims, including the existence of a welfare benefits plan under ERISA. Even if Defendants' Motion to Dismiss is granted, Defendants have not shown that Plaintiffs' claims are "utterly frivolous, or filed merely in order to conduct a 'fishing expedition'" or otherwise provided evidence that the Court is likely to dismiss

1    Plaintiffs' Amended Complaint without leave to amend. *Optronic*, 2018 WL

2    1569811, at *1 (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal.

3    1990)). Thus, Defendants can, at most, only "superficially" satisfy the first factor. *Id.*

4    Regarding the second factor, the fact that a motion to dismiss under Rule 12(b)(6) is

5    generally decided without further discovery does not warrant granting a stay. *Id.* at

6    *2. "The mere filing of a motion to dismiss is not ordinarily sufficient to stop the

7    discovery process, derail a case schedule, and delay proceedings." *Id.* (citing *Gray*,

8    133 F.R.D. at 40). If it were, the majority of cases would be stayed, creating an

9    "inefficient and chaotic system" that is not "contemplated by the Federal Rules" and

10   is "directly at odds with the need for expeditious resolution of litigation." *Id.* (citing

11   *Gray*, 133 F.R.D. at 40).

12   Here, Defendants' Motion to Dismiss is unlikely to be dispositive of the case, and

13   Defendants have made only generic arguments about the expense of discovery which

14   apply in every case. Therefore, discovery should not be stayed.

15   Plaintiffs maintain that discovery should include any material that is "nonprivileged

16   matter that is relevant to any party's claim or defense and proportional to the needs

17   of the case" in accordance with Rule 26(b)(1) of the Federal Rules of Civil Procedure.

18   Discovery is not limited to issues or time periods raised in the pleadings. *See Baptiste*

19   *v. Lids*, 2013 WL 5708848, at *1 (N.D. Cal. Oct. 18, 2013) (Recognizing that

20   information outside of the events in the pleadings can be discoverable by allowing

21   discovery into plaintiff's allegedly discriminatory boss's racial comments at *previous*

22   jobs). The relevancy standard under Rule 26(b)(1) should be "construed liberally"

23   and "discovery should be allowed unless the information sought has no conceivable

24   bearing on the case." *Id.* (internal citations omitted).

25

1  Defendants may not create artificial limitations that may deprive Plaintiffs of

2  discoverable information. In particular, Twitter's severance practices prior to the

3  Merger are relevant to establishing the existence of an employee welfare benefits plan

4  under ERISA. Arbitrarily cutting off discovery prior to the Merger would exclude

5  this highly relevant information necessary to the claims asserted. Moreover, the class

6  period continues until the entry of judgement, and, accordingly, cutting off discovery

7  at the termination of a single named plaintiff would also exclude discovery of

8  information relevant to the class's claims.

9  b. Defendants' Position: Defendants propose the Court stay discovery pending the

10  resolution of Defendants' Motion to Dismiss. "The district court has wide discretion

11  in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988);

12  *Hall v. Tilton*, 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010) ("A district court has

13  broad discretion to stay discovery pending the disposition of a dispositive motion.").

14  Contrary to Plaintiffs' outdated caselaw from over 30 years ago, many courts in this

15  district (including this one) apply a two-prong test to determine whether a stay of

16  discovery is appropriate: "(1) will the motion dispose of the entire case (or at least

17  the issue at which discovery is aimed) and (2) can the motion be decided without

18  further discovery?" *Onuoha v. Facebook, Inc.*, 2017 WL 11681325, at *1 (N.D. Cal.

19  Apr. 7, 2017) (collecting cases). Here, both prongs are satisfied because Defendants

20  "raise numerous significant challenges to the complaint" that are "potentially

21  dispositive of the entire case," and Defendants' "motion can be decided without

22  further discovery because the motion is fully briefed." *Nelson v. F. Hoffman-*

23  *LaRoche, Inc.,* 2022 WL 19765995, at *1-2 (N.D. Cal. Nov. 2, 2022) (J., Thompson)

24  (staying discovery). A stay is especially appropriate on this basis in a putative ERISA

25

Case No. 3:23-cv-03461-TLT
**Joint Rule 26(f) Case Management Statement**
14

class action, such as this one, because it will save the resources of the Court and the parties. Courts recognize that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013). Here, Plaintiffs anticipate that electronic discovery may be substantial, yet they have not sufficiently identified an ERISA plan under which they might be entitled to the benefits they seek. Defendants should not be forced to incur substantial and expensive electronic discovery in a putative class action that, Defendants submit, does not state a claim. Further, should the Court dismiss some or all of Plaintiffs' claims, the scope of discovery will change dramatically (or become unnecessary altogether). Moreover, the subjects on which Plaintiffs seek discovery also involve complicated privilege issues and potential applicability of the fiduciary exception to the attorney-client privilege. Defendants should not be made to incur substantial time and expense in engaging in such discovery before the Court determines which claims (if any) will survive dismissal. In any event, Defendants reserve the right to object to Plaintiffs' specific discovery requests if and when discovery proceeds.

Further, Defendants maintain that discovery should be limited to the period at issue in the Amended Complaint—namely, April 2022 (when the Twitter merger was announced) through April 2023 (when Plaintiff Cooper left the company). Because Plaintiffs' allegations focus on a brief, discrete time period during which they say the alleged misconduct occurred, they are not entitled to discovery predating the denial of benefits and fiduciary breaches alleged in their Amended Complaint.

(iv)  *ESI Protocol*: The parties will file a proposed order on electronic discovery no later than March 29, 2024.

(v)  *Privilege*: The parties have discussed issues regarding the protection of information by a privilege or the work-product doctrine, as required by FRCP 26(f)(3)(D), as well as the fiduciary exception to privilege. The parties agree to provide privilege logs pursuant to FRCP 26(b)(5) as the materials are withheld from production and sufficiently prior to the close of discovery to permit any disputes to be brought to the Court and resolved prior to commencing depositions. The parties agree to the procedure set forth in FRCP 26(b)(5)(B) to assert a claim of privilege or work-product protection after production and will discuss an agreement pursuant to Rule 502 of the Federal Rules of Evidence.

(vi)  *Protective Order*: The parties anticipate submitting a stipulated protective order applying to (i) information protected from disclosure by any applicable statute, regulation, or other applicable law; (ii) research, design, development, financial, technical, marketing, planning, manufacturing, or commercial information that a party has maintained as confidential; (iii) trade secrets; and (iv) private, sensitive, or privileged information, the disclosure of which would qualify for protection from public disclosure and for use for any purpose other than this Action. The parties anticipate filing a proposed protective order no later than March 29, 2024.

(vii)  *Changes to the Limits on Discovery*:

  a.  Plaintiffs' Position: Plaintiffs believe that the complexity of this case and its underlying facts warrant relaxing the limitation on discovery imposed by the Federal Rules of Civil Procedure and the Northern District of California's local rules. *Cf., Del Campo v. American Corrective Counseling Serv's., Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) ("Given the breadth and complexity of this case, this

Case No. 3:23-cv-03461-TLT
**Joint Rule 26(f) Case Management Statement**

1   limitation is unwarranted."); *Mintz v. Mark Bartelstein & Assocs. Inc.*, 2012 WL

2   12886492, at *1 (C.D. Cal. Sept. 14, 2012) (granting motion for more than ten

3   depositions, prior to their completion, where the moving party has shown "among

4   other things, that there are multiple parties and that the complexity of the case

5   warrants more than ten depositions."); *Stiles v. Walmart, Inc.*, 2020 WL 589107, at

6   *3 (E.D. Cal. Feb. 6, 2020) ("Where the action is complex, parties are not required

7   to exhaust the ten allowable depositions prior to seeking leave to take additional

8   depositions.").

9   The relevant time period is split into three phases that will each require separate

10  witnesses (e.g. pre-Merger, during the Merger negotiations, and post-Merger), the

11  termination of employees resulting in it being unlikely that a single witness will be

12  able to testify about a topic, the necessity to prove that an ERISA plan existed at all,

13  what the terms of that alleged plan were, who the fiduciaries were, whether the

14  fiduciaries followed the plan, Defendants' failure to follow standard ERISA

15  documentation and procedural practices, and the unknown number of Doe

16  Defendants involved in decisions related to the alleged severance plan. Necessary

17  depositions will include, for example: (1) witnesses regarding Twitter's severance

18  practices prior to the Merger to establish the existence of an employee welfare

19  benefits plan under ERISA prior to the Merger; (2) witnesses involved in the merger

20  negotiations, and, in particular, the inclusion of language in the Merger Agreement

21  promising severance payments and benefits for continuing employees; (3) witnesses

22  familiar with communications to Twitter employees regarding the continuation of

23  severance payments and benefits after the Merger, including, for example, the

24  drafting of the fifteen FAQ updates to Twitter employees and company-wide emails

25

Case No. 3:23-cv-03461-TLT

**Joint Rule 26(f) Case Management Statement**

regarding the Merger; (4) witnesses familiar with the decision not to provide the same severance payments and benefits after the Merger as those provided prior to the Merger; (5) witnesses familiar with the identity of individuals who had responsibility, discretionary authority, or control respecting the management of the alleged severance plan after the Merger in order to identify the fiduciary Doe Defendants; (6) witnesses familiar with the rights of terminated employees under the alleged severance plan relating to Restricted Stock Units prior to and after the Merger; (7) witnesses familiar with what knowledge the individuals with responsibility, discretionary authority, or control respecting management of the alleged severance plan after the Merger had regarding prior communications to employees regarding the continuation of severance payments and benefits after the Merger; (8) witnesses familiar with whether the individuals with responsibility, discretionary authority, or control respecting management of the alleged severance plan took any formal steps to amend or terminate the plan; and (9) if so, witnesses familiar with any notice provided to Twitter employees regarding the purported amendment or termination of the alleged severance plan.

Plaintiffs believe this case necessitates an expansion of the number of depositions, the hours of 30(b)(6) testimony, and number of interrogatories. Given the distinct timeframes involved and the numerous discrete factual issues, further depositions would not be cumulative, but rather essential for fully fleshing out the factual record. *Cf. City of Lincoln v. United States*, 2018 WL 3917711, at *8 (E.D. Cal. Aug. 16, 2018) (declining to require a "particularized showing" and noting that "courts have required only a Rule 26(2)(b) 'benefits versus burdens approach' and sought to ensure that 'the discovery is not unreasonably cumulative or duplicative.'") (quoting

*Laryngeal Mask Co. Ltd. v. Ambu A/S*, 2009 WL 10672436, at *2 (S.D. Cal. July 17, 2009) (declining to adopt both "particularized showing" and "exhaustion requirement")).

Requiring Plaintiffs to first exhaust the limit of ten depositions under the Federal Rules would prejudice Plaintiffs by impeding their ability to plan how to proceed with discovery in this matter. Courts routinely grant requests to extend the limits on the number of depositions permitted in complex cases like this at the discovery planning stage. *See, e.g. Del Campo,* 2007 WL 3306496, at *6 ("[I]t would be prejudicial to require Plaintiffs to choose the ten depositions to take before they know whether they will be granted more."); *Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*, 2018 WL 5993585, at *2 (E.D. Cal. Nov. 6, 2018) ("[T]here is no reason to conclude that if the need for additional depositions is clear from the outset the court must engage in arbitrary delay before entertaining a motion for depositions in excess of the presumptive 10."). Plaintiffs have attempted to confer with Defendants on this issue, but Defendants oppose any change to the limits imposed by the Federal Rules of Civil Procedure and the Northern District of California's local rules.

    b. Defendants' Position: Defendants oppose expanding the scope of discovery beyond the limitations imposed by the Federal Rules of Civil Procedure and the Court's local rules, and believe any such expansion would be premature at this early stage of litigation before Plaintiffs have taken a single deposition or collected a single document. "A party seeking to exceed the presumptive limit [of ten depositions] bears the burden of making a 'particularized showing' of the need for additional depositions." *Acosta v. SW Fuel Mgmt., Inc.*, 2017 WL 8941165, *7 (C.D. Cal. Sept. 19, 2017), *aff'd* 2018 WL 1913772 (Mar. 28, 2018) (citation omitted). To make this

"particularized showing," courts generally require the party to "exhaust their allowed number of depositions *before* making a request for additional" depositions. *Id.* (emphasis added). *See, e.g., O'Connell v. Celonis, Inc.,* 2023 WL 5022273, at *1 (N.D. Cal. July 21, 2023); *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008). This is required because parties "must always assess whether or not a deposition of that witness is truly necessary, based in part upon the time and expense that even a single deposition incurs for all parties involved.'" *Acosta*, 2017 WL 8941165 at *6. Plaintiffs do not meet their burden to demonstrate a particularized need for additional depositions (or other discovery) here. Instead, Plaintiffs speculate that the "complex facts" in this case will require expanded discovery, but fail to identify with any specificity, in the complaint or elsewhere, who those potential deponents would be, let alone that they amount to more than ten individuals. That is not enough to meet their burden, especially when discovery has not even started, and Plaintiffs have not taken a single deposition. Moreover, Plaintiffs exaggerate the potential scope of discovery by suggesting there are "multiple time periods" in this case, when, as Plaintiffs well know, there is a single putative class period, and Plaintiffs' allegations go back less than two years, to mid-2022. In short, Plaintiffs provide no reason that the Court must expand discovery now, let alone a "particularized need" that would satisfy their burden.

(viii)   *Video Depositions Permitted*: As allowed by Rule 30(b)(4), the parties stipulate that depositions may be taken remotely over video conference.

(ix)   *Discovery Disputes*: The parties have not yet identified any discovery disputes.

## IX.   CLASS CERTIFICATION

Plaintiffs' Position: Plaintiffs will move to have the claims certified for class treatment

1    under Rule 23(b)(1)(A) or (B) or Rule 23(b)(2). The proposed Class is defined as:

2        All participants and beneficiaries of the Plan who were terminated from Twitter
         since the date of Defendants Musk's takeover, October 27, 2022, through the date
3        of judgement.

4    Am. Class Action Compl. (Dkt. 13 ¶ 82). Plaintiffs reserve the right to modify this

5    definition following further investigation and discovery. Plaintiffs submit that Defendants'

6    alleged misconduct was directed at all members of the potential class, giving rise to

7    numerous common questions of fact and law. This action meets the requirements of Rule

8    23 and is certifiable as a class action for the following reasons: (1) the class is so numerous

9    that joinder of all plaintiffs would be impracticable; (2) there are numerous questions of

10   law and fact common to class members; (3) plaintiffs' claims are typical of the defined

11   class; (4) plaintiffs are adequate class representatives; and (5) there are no substantial

12   individualized questions of law or fact among class members. Under ERISA § 1113(2),

13   fiduciary breach claims are subject to a six-year statute of repose. The defendant has the

14   burden of establishing that a 3-year statute of limitations applied where plaintiff had "actual

15   knowledge" of the breach. Whether a three-year or six-year statute of limitations applies,

16   Plaintiffs' class claims are timely given that the events underlying Plaintiffs' breach of

17   fiduciary duties claims occurred in 2022—far less than three years before filing of this

18   Action.

19       **Defendants' Position:** Defendants likely will oppose class certification on several grounds.

20   Discovery may establish that Plaintiffs cannot meet Federal Rule of Civil Procedure 23(a)'s

21   commonality, typicality, or adequacy requirements, or the requirements of Rule 23(b)(1) or (b)(2).

22   Further, Plaintiffs' claims—and the claims of putative class members—may be subject to

23   individualized defenses such as whether any severance agreements bar individual claims or if the

24   claims of any members of the putative class are untimely under ERISA's three-year "actual

25

knowledge" statute of limitations for fiduciary breach claims, if it is shown that those putative class members had actual knowledge of the alleged ERISA plan at least three years before Plaintiffs asserted their claims here.

## X.   RELATED CASES

The Parties are not presently aware of any further cases meeting the requirements of Civil Local Rule 3-12 as interpreted by courts in this district that have been filed in this Court.

## XI.   RELIEF

Plaintiffs, on behalf of themselves and the class, seek the following relief:

(i)   An order Compelling Defendants to abide by the requirements of ERISA with respect to the alleged severance plan;

(ii)   An order compelling Defendants to abide by the terms of the alleged plan—as described in the Matrix, the Acquisition FAQ, and other relevant documents;

(iii)   An Order compelling Defendants to appoint one or more independent fiduciaries to participate in the management of the alleged plan;

(iv)   An Order enjoining Defendants from any further violations of ERISA, including their fiduciary duties prescribed therein;

(v)   An Order requiring Defendants to fund or ensure the alleged plan is funded in an amount sufficient to pay benefits to alleged plan participants;

(vi)   Disgorgement of any excessive fees or amounts by which Defendants unjustly enriched themselves through the violations of their fiduciary duties;

(vii)   An Order finding and adjudging that Defendants Musk and Does are personally liable for losses to the alleged plan; attorneys' fees and costs pursuant to ERISA § 502(g);

1      (viii)     Service awards for the named Plaintiffs in recognition of the time, effort, and risk they

2                  incurred in bringing this action and as compensation for the value they have provided to

3                  the class members; and

4      (ix)      An Order compelling Defendants to provide the full terms of severance according to the

5                  alleged plan to all terminated employees from the date of Defendant Musk's takeover of

6                  the company to one year from the date of execution of the Merger Agreement, an amount

7                  that is no less than $500 million, plus pre-judgment and post-judgment interest at the

8                  maximum legal rate.

9          Defendants deny any wrongdoing or that Plaintiffs are entitled to any relief whatsoever.

10 Both Parties reserve the right to seek attorneys' fees and costs should they prevail in this action.

11 **XII.   SETTLEMENTS AND ADR**

12          Pursuant to ADR Local Rule 3-5 and Civil Local Rule 16-8, on October 3, 2023; October

13 23, 2023; and February 22, 2024; the parties met and conferred regarding the available dispute

14 resolution options. Plaintiffs believe that settlement discussions would be productive, and that

15 discovery will inform the parties' evaluation and negotiations. Plaintiffs have informed Defendants

16 that if Defendants are considering a resolution that would compromise Plaintiffs' claims,

17 Plaintiffs' counsel should be included in the discussions.

18 **XIII.   OTHER REFERENCES**

19          Plaintiffs do not believe this case is suitable for binding arbitration, a special master, or

20 reference to the Judicial Panel on Multidistrict Litigation.

21 **XIV.   NARROWING OF ISSUES**

22          The parties believe that this case would be most expeditiously resolved by expediting the

23 Court's consideration of the issues raised by Defendants' pending motion to dismiss and of

24 whether class certification is appropriate. The parties' proposed schedule below contemplates that.

25

Case No. 3:23-cv-03461-TLT
**Joint Rule 26(f) Case Management Statement**

## XV.    SCHEDULING

The parties will submit a proposed scheduling order consistent with the following:

| Event | Proposed Deadline |
|---|---|
| Parties file stipulated protective order and order on electronic discovery | March 31, 2024 |
| Motion for class certification | 150 days before the close of fact discovery. Should Plaintiffs submit an expert report supporting their motion for class certification, Defendants shall have thirty (30) days to depose Plaintiffs' expert. |
| Opposition to motion for class certification and class expert rebuttal reports due | 60 days after motion for class certification filed. Should Plaintiffs submit an expert report supporting their motion for class certification, Defendants shall have an additional thirty (30) days (for a total of ninety (90) days) to submit an opposition to Plaintiffs' motion (including any class-certification expert report). |
| Reply in support of motion for class certification and class expert reply reports due | 45 days after opposition to motion for class certification filed |
| Last day for Plaintiffs to move to amend pleadings | 120 days before the close of fact discovery, provided, however, that consistent with the Federal Rules Plaintiff may move to amend thereafter for good cause, e.g. information discovered after the deadline to amend. |
| Close of fact discovery | 365 days after Case Management Order, if discovery is not stayed pending resolution of Defendants' motion to dismiss, or 365 days after Defendants answer the Complaint, if discovery is stayed pending resolution of Defendants' motion to dismiss. |
| Deadline for Plaintiffs to serve expert reports | 60 days after close of fact discovery |
| Deadline for Defendants to serve expert reports | 60 days following the filing of opening expert disclosures |
| Reply expert disclosures (unrelated to class certification) | 30 days following the filing of rebuttal expert disclosures |
| Close of expert discovery | 60 days following the filing of reply expert disclosures |
| Dispositive and *Daubert* motions | 60 days following close of expert discovery |
| Oppositions to dispositive and *Daubert* motions | 60 days following the filing of opening dispositive and *Daubert* motions |

| Replies to dispositive and *Daubert* motions | 45 days following the filing of opposition to dispositive and *Daubert* motions |
|---|---|
| Pretrial conference | 21 days prior to trial |
| Trial | 60 days after ruling on dispositive motion(s) or as soon thereafter as is convenient for the Court |

## XVI.   TRIAL

Plaintiffs have requested a jury trial. Defendants oppose Plaintiffs' request. The parties believe it is premature to estimate the length of the trial.

## XVII.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed their Certification of Interested Entities of Parties required by Civil Local Rule 3-15 on July 12, 2023. Dkt. 1. Counsel for Plaintiffs certify that there is no non-party interested entities with regard to Plaintiffs' claims.

Defendants filed their Certification of Interested Entities of Parties required by Civil Local Rule 3-15 on March 7, 2024.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines of Professional Conduct for the Northern District of California.


DATED: March 7, 2024                              Respectfully submitted,

1    */s/ Jared R. Killeen*                         */s/ Kristi Stahnke McGregor*

2    Mark A. Feller                              Kristi Stahnke McGregor, GA Bar No.
     Melissa D. Hill                             674012
3    Jared R. Killeen                            **SANFORD HEISLER SHARP, LLP**
     Sean K. McMahan                             611 Commerce Street, Suite 3100
4    **MORGAN, LEWIS & BOCKIUS LLP**             Nashville, TN 37203
     mark.feller@morganlewis.com                 Telephone: (615) 434-7008
5    melissa.hill@morganlewis.com                kmcgregor@sanfordheisler.com
     jared.killeen@morganlewis.com
6    sean.mcmahan@morganlewis.com                Kate Mueting, DC Bar No. 988177
                                                 Dacey Romberg, DC Bar No. 90003767
7    *Attorneys for Defendants X Corp.,*         Samone Ijoma, MD Bar No. 2012170086
     *X Holdings, and Elon Musk*                 **SANFORD HEISLER SHARP, LLP**
8                                                700 Pennsylvania Avenue SE, Suite 300
                                                 Washington, DC 20003
9                                                Telephone: (202) 499-5206
                                                 kmueting@sanfordheisler.com
10                                               dromberg@sanfordheisler.com
                                                 sijoma@sanfordheisler.com
11
                                                 Charles Field, SBN 189817
12                                               **SANFORD HEISLER SHARP, LLP**
                                                 7911 Herschel Avenue, Suite 300
13                                               La Jolla, CA 92037
                                                 Telephone: (619) 577-4252
14                                               cfield@sanfordheisler.com

15                                               Christopher Owens, MD Bar No. 220280004
                                                 **SANFORD HEISLER SHARP, LLP**
16                                               111 S. Calvert Street, Suite 1950
                                                 Baltimore, Maryland 21202
17                                               Telephone: (410) 834-7422
                                                 cowens@sanfordheisler.com
18
                                                 *Attorneys for Plaintiffs*
19                                               *and the Potential Class*

20

21

22

23

24

25                                                          Case No. 3:23-cv-03461-TLT
                          **Joint Rule 26(f) Case Management Statement**
                                              26