# EXHIBIT A

Kate Mueting, DC Bar No. 988177*
Dacey Romberg, DC Bar No. 90003767*
Samone Ijoma, MD Bar No. 2012170086*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206
kmueting@sanfordheisler.com
dromberg@sanfordheisler.com
sijoma@sanfordheisler.com

Charles Field, SBN 189817
**SANFORD HEISLER SHARP, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
Telephone: (619) 577-4252
cfield@sanfordheisler.com

Kristi Stahnke McGregor, GA Bar No. 674012*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com

Christopher Owens, MD Bar No. 220280004*
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, Maryland 21202
Telephone: (410) 834-7422
cowens@sanfordheisler.com

*Attorneys for Plaintiffs
and the Potential Class*

* admitted *pro hac vice*

Case No. 3:23-cv-03461-TLT-RMI
**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
i

UNITED STATES DISTRICT COURT
DISTRICT OF NORTHERN CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, DOES,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT-RMI<br><br>**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge: Trina L. Thompson<br>Magistrate Judge: Robert M. Illman |

Plaintiffs seek leave to file this sur-reply in order to briefly respond to two new issues raised by Defendants in their Reply[1] that Plaintiffs planned to address during oral argument prior to argument being canceled by the Court. As explained below, Defendants argue for the first time in their Reply that (1) the Court cannot rely upon the Severance Matrix document attached to the initial Complaint, Dkt. 1–1, and referenced in the Amended Complaint ("Matrix") in deciding Defendants' Motion to Dismiss, and (2) Plaintiffs have transformed their Section 502(a)(2) claim for breach of fiduciary duty into a state law breach of contract claim by relying upon the Merger Agreement as the basis for the duty to fund the plan, and that Plaintiffs are not third-party beneficiaries to the Merger Agreement.

### I. The Court Need Not Rely Upon the Matrix to Find Plaintiffs Have Adequately Pled that Twitter's Severance Plan is a Plan Under ERISA

Defendants contend that the Court should disregard the Matrix because (1) the Severance Matrix document is purportedly privileged, and (2) the Matrix was not attached as an exhibit to the Amended Complaint. *See* Reply at 5. Plaintiffs are in the process of submitting the issue of whether the Matrix is protected by privilege to the Magistrate Judge appointed to resolve discovery disputes. Should the Court believe it needs the Matrix to find that Plaintiffs have adequately pled the existence of an ERISA plan, Plaintiffs respectfully request that the Court defer that ruling until the issue of the Matrix's privilege has been resolved, which may require discovery into the facts surrounding the creation and use of the Matrix.[2]

However, the Court does not need the Matrix to decide in Plaintiffs' favor and deny Defendants' Motion to Dismiss. It is not required that there be a formal plan document to find that an ERISA plan exists. *See, e.g., Horn v. Berdon, Inc. Defined Benefit Plan*, 938 F.2d 125, 127 (9th Cir. 1991) ("[T]here is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such."); *Davidson v. Hewlett-Packard Co.*, 2019 WL 3842001, at *2 (N.D. Cal. Aug. 15, 2019) (finding ERISA plan based on oral promises and an email because

---

[1] "Reply" refers herein to Reply in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Dkt. 50.

[2] For example, Plaintiffs contest several of the facts set forth in the declaration put forth by Defendants in support of retaining Plaintiffs' opposition briefing under seal, including the assertion that the Matrix was created in October 2022 in connection with the acquisition of Twitter by Musk. *See* Dkt. 51-1 ¶5.

Case No. 3:23-cv-03461-TLT-RMI

**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**

1

"ERISA does not require a formal, written plan").[3] Plaintiffs' complaint alleges sufficient facts, outside of the Matrix document itself, which at this stage must be accepted as true, to raise the allegations of an ERISA plan "above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For example, the Amended Complaint describes plan documents, criteria for determining severance eligibility and level, and administrative procedure and staff used to administer the plan. *See* Dkt. 13, ¶¶ 27–37. These facts are sufficient at the pleading stage to support the existence of a plan under ERISA. *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 410 (S.D.N.Y. 2015) ("[T]he Court is not required to decide the applicability of ERISA at the motion to dismiss stage . . . it may not be possible to determine whether ERISA applies as a matter of law if the documentation before the Court is limited, and in such cases courts may deny motions to dismiss and decide the applicability of ERISA at a later stage.").[4] Accordingly, the Court can determine that Plaintiffs have adequately pled facts supporting the existence of an ERISA plan without reference to the Matrix document itself.

In addition, should the Court find it necessary to rely upon the Matrix—its contents or the mere fact of its existence—the fact that Plaintiffs attached it to their initial complaint but not the Amended Complaint presents no obstacle. *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 812 (N.D. Cal. 2015) (holding that wage statements attached to first but not second complaint were incorporated by reference); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff

---

[3] *See also Woerner v. Fram Grp. Operations*, 658 F. App'x 90, 94—95 (3d Cir. 2016) (noting that "an employer . . . can establish an ERISA plan rather easily" and collecting Third and Ninth Circuit cases).

[4] Defendants' primary challenge to the existence of a plan is that the work of the numerous staff dedicated to administering this scheme—applying it to each employee departing under any circumstance from Twitter's global workforce over the course of years—was insufficiently discretionary, their calculations insufficiently complex. But this level of factual exegesis is inappropriate at this stage, where the documentation before the Court is limited, and Plaintiffs' allegations must be accepted as true. *Boudinot v. Shrader*, 2012 WL 489215, at *7 (S.D.N.Y. Feb. 15, 2012) (denying motion to dismiss where, *inter alia*, court could not yet determine whether benefits were discretionary). Tellingly, almost every case Defendants rely upon for their argument that no plan exists addressed the matter on summary judgment. The sole Ninth Circuit case decided at the motion to dismiss stage, *Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir. 1994), dealt with a severance provision in a single employee's employment agreement, requiring a single calculation and a single determination—whether the employee was terminated for cause—to be made once, upon the employee's departure.

Case No. 3:23-cv-03461-TLT-RMI
**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
2

refers extensively to the document or the document forms the basis of the plaintiff's claim.").[5] Defendants' caselaw—which merely supports the general principle that an amended complaint supersedes the previous one—is not to the contrary.

## II. The Fact that Plaintiffs' Breach of Fiduciary Duty Claims Rely Upon the Merger Agreement Does Not Transform Those Claims Into State Law Contract Claims Requiring Plaintiffs to be Third Party Beneficiaries Under the Merger Agreement

Defendants also raise new arguments in their Reply for why Plaintiffs' ERISA Section 502(a)(2) claim for breach of fiduciary duties should be dismissed—that Plaintiffs have transformed their ERISA claim into a state law breach of contract claim and that Plaintiffs are not third-party beneficiaries to the Merger Agreement. Neither is correct.

Plaintiffs' Section 502(a)(2) claim is based on Defendant fiduciaries' breaches of their fiduciary duties created by the Merger Agreement; Plaintiffs are not trying to enforce the Merger Agreement. The Fifth Circuit rejected the same argument made here by Defendants in *Halliburton Company Benefits Committee v. Graves*, 463 F.3d 360, 375–76 (5th Cir. 2006) (other portions clarified on denial of rehearing in *Halliburton Co. Benefits Committee v. Graves*, 479 F.3d 360 (5th Cir. Feb. 13, 2007)). Like Defendants, Halliburton had signed a merger agreement that said it would provide employees with the same benefits as before the merger. *Id*. at 362, 365. In the dispute that arose after Halliburton attempted to change the benefits, Halliburton argued that former employees' ERISA claim should fail because of the merger agreement's no-third-party-beneficiary clause. *Id*. at 369. The court disagreed, explaining that the former employees were not enforcing a breach of contract claim and that Halliburton was "wrongfully equat[ing] a plan participant's enforcement of a plan right under ERISA with a third party's enforcement of a

---

[5] Defendants also misstate in the Reply that Plaintiffs "acknowledge that Twitter in fact did make public filings related to its actual employee benefit plan as required by law." Reply at 5. Actually, Plaintiffs acknowledge that Defendants *referenced* the Twitter's executive severance plan and acknowledge it being a plan under ERISA, in a filing with the *U.S. Securities and Exchange Commission*. Pls' Opp. to Defs' Mot. to Dismiss, Dkt. 45, at n. 4. Plaintiffs do *not* acknowledge that Defendants made public filings *required by law*, i.e. filings with the *Department of Labor* ("DOL"), with regard to the executive severance plan, which Defendants raised in their opening brief as evidence of the existence, or lack thereof, of an ERISA plan. Dkt. 38, at 7. Rather, although recognizing that the executive severance plan, which is similar to the Severance Plan at issue in this action, is a plan under ERISA, Plaintiffs have not found evidence that Twitter filed the required forms with the DOL. If true, this would evidence that Twitter did not always file the required forms with the DOL even when it acknowledged a severance plan was an ERISA plan. However, these facts are outside the pleadings – additional evidence that discovery is necessary to decide Defendants' motion to dismiss.

Case No. 3:23-cv-03461-TLT-RMI
**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
3

provision in a contract." *Id*. at 376. Furthermore, "To adopt Halliburton's argument that…a no-third-party-beneficiary clause can trump rights prescribed by ERISA would fly in the face of [ERISA's] exclusive remedial scheme..." *Id*.

Plaintiffs' Section 502(a)(2) claim should not be dismissed even if it were impacted by the third-party-beneficiary provisions because those provisions do not prohibit former employees from bringing claims to their Severance Benefits. Third-party-beneficiary provisions are used as interpretive aids when a contract is unclear about whether the signatories intended to benefit a third party, but they do not apply where the contract unambiguously reveals an intent to benefit a particular third party. *See, e.g., Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 4182998, at *5 (Del. Ch. Sept. 11, 2008) (merger agreement's disclaimer of third-party beneficiaries were "belied by the Agreement's specific grant of benefits" to plaintiff); *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019) (provision that conferred benefit on plaintiffs could not be read unambiguously with the bespoke third-party-beneficiary provision that excluded plaintiffs and more factual evidence was necessary)[6].

Contracts must be interpreted as a whole and in a way that doesn't render any provision meaningless. *See Cybrary v. Learningwise Education*, 2023 WL 1778614, at *4 (D. Del. Feb. 6, 2023). Section 6.9(a) only benefits former employees; it would be meaningless and unenforceable if former employees are not third-party beneficiaries of that provision. Section 6.9(e) can be harmonized with Section 6.9(a) by reading it as providing that the employees are not third-party beneficiaries of the Merger Agreement *as a whole*. Thus, even if former employees would not have standing to enforce the entire Merger Agreement, they can bring claims for the benefits clearly intended for them by Section 6.9(a). This, unlike Defendants' bait-and-switch interpretation of 6.9(a), 6.9(e), and 9.7, is a coherent reading of the Merger Agreement. Regardless, Plaintiffs' proposed interpretation of a contract need not be correct to defeat a motion to dismiss, but rather, only needs to be reasonable. *Cybrary*, at *5.[7]

---

[6] Section 9.8 of the Merger Agreement includes a choice of law provision of Delaware law. Dkt. 47-1 at 84. Accordingly, Delaware law applies. *Evans v. PayPal, Inc.*, 2022 WL 1813993 (N.D. Cal. June 2, 2022).
[7] Defendants also point to facts outside the pleadings, i.e. "well publicized accounts of Twitter's opposition to the merger and Defendant Musk's own attempts to postpone or call off the deal" in support of their argument that Musk

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: April 9, 2024 | Respectfully submitted, |
| 3 | | Sanford Heisler Sharp, LLP |
| 4 | | By: */s/ Kristi Stahnke McGregor* |
| 5 | | Kristi Stahnke McGregor, GA Bar No. 674012 |
| 6 | | (admitted *pro hac vice*) |
| | | **SANFORD HEISLER SHARP, LLP** |
| 7 | | 611 Commerce Street, Suite 3100 |
| | | Nashville, TN 37203 |
| 8 | | Telephone: (615) 434-7008 |
| | | kmcgregor@sanfordheisler.com |
| 9 | | |
| 10 | | *Attorney for Plaintiffs* |
| | | *and the Potential Class* |

---

[27] did not have authority over the communications to employees about future benefits, Reply at 15, ignoring that Musk had agreed to move forward with the deal by the time of some of the communications. This is yet more evidence of the need for discovery to decide Defendants' motion to dismiss.

Case No. 3:23-cv-03461-TLT-RMI
**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
5

# CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy of this filing to all counsel of record.

Mark A. Feller
Melissa D. Hill
Jared R. Killeen
Sean K. McMahan
**MORGAN, LEWIS & BOCKIUS LLP**
mark.feller@morganlewis.com
melissa.hill@morganlewis.com
jared.killeen@morganlewis.com
sean.mcmahan@morganlewis.com

*Attorneys for Defendants X Corp.,*
*X Holdings, and Elon Musk*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: April 9, 2024                         */s/ Kristi Stahnke McGregor*
                                             Kristi Stahnke McGregor, GA Bar No. 674012
                                             (admitted *pro hac vice*)
                                             **SANFORD HEISLER SHARP, LLP**
                                             611 Commerce Street, Suite 3100
                                             Nashville, TN 37203
                                             Telephone: (615) 434-7008
                                             kmcgregor@sanfordheisler.com

Case No. 3:23-cv-03461-TLT-RMI
**PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**
6