Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: 415.442.1000

Melissa Hill (*pro hac vice*)
melissa.hill@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178
Tel: 212.309.6000

Sean K. McMahan (*pro hac vice*)
sean.mcmahan@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Tel: 214.466.4000

Jared R. Killeen (*pro hac vice*)
jared.killeen@morganlewis.com
**MORGAN, LEWIS & BOCKIUS, LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000

*Attorneys for Defendants X Corp., f/k/a Twitter, Inc.; X Holdings; Elon Musk; and Does*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT<br><br>**DEFENDANTS' RESPONSE TO NOTICE OF QUESTIONS**<br><br>Re:     Dkt. Nos. 24, 38, 47<br><br>Judge:  Trina L. Thompson |

Pursuant to the Court's Notice of Questions (Dkt. 65) regarding Plaintiffs' Motion for Notice of Suit (Dkt. 24), Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 38), and Plaintiffs' Request for Judicial Notice (Dkt. 47), Defendants X Corp., X Holdings Corp., and

Elon Musk (together "Defendants'), provide the following responses:

**Question No. 1.** What is the effective date, or are the effective dates, of the "formalized policy [memorialized] in the several documents that provide a uniform and detailed policy framework for the numerous post-termination benefits Twitter provided to employees" ("the alleged ERISA plan" or "the Plan")? How many companies have the same alleged ERISA plan for their workers/former workers? Please attach to a Declaration or Stipulation all documents that make up the alleged ERISA plan.

**Defendants' Response to Question No. 1.** As explained in Defendants' Motion to Dismiss, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged in the Amended Complaint. Plaintiffs have identified no governing plan documents or "formalized polic[ies]" that provide an ongoing administrative scheme for Twitter severance payments, let alone the "effective dates" for such documents. Instead, Plaintiffs mischaracterize the so-called "Severance Matrix" as an ERISA plan document, when that document is not a plan document at all but privileged work-product containing certain Twitter compensation information prepared by the Company's in-house counsel in anticipation of litigation and in connection with certain employment decisions related to the merger. Plaintiffs improperly filed the "Severance Matrix" on the Court's docket before seeking to have it provisionally sealed, and the document remains sealed today. Plaintiffs also appear to suggest that a communication sent by Twitter to its employees in 2022, titled "Acquisition FAQs," constitutes a plan document. But the Supreme Court and the Ninth Circuit have made clear that this sort of summary communication does not "constitute the terms of the plan" under ERISA. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012); *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 500 F. App'x 575, 577 (9th Cir. 2012). Nor does the Merger Agreement identified in Plaintiffs' Opposition to Defendants' Motion to Dismiss constitute an ERISA plan under any reading of the Agreement or the law. *See* Dkt. 50, Defs.' Reply, at 6-10. In short, Plaintiffs do not (and cannot) point to a single shred of evidence that Twitter and/or X Corp. maintained an ERISA-governed severance plan as alleged in the Amended Complaint. Indeed, the

more than 2,000 other employees that are currently suing Defendants in court or arbitration in connection with its reductions in force following the merger recognize this. None of those employees claims the existence of an ERISA plan, and instead they are proceeding on state law breach-of-contract and promissory-estoppel theories. Moreover, if Twitter and/or X Corp. did maintain an ERISA-governed severance plan as alleged, Defendants would have every incentive to say so, because if a court were to so conclude, it would be a basis for Defendants to dismiss all those 2,000+ contract-related claims on the ground that they are preempted by ERISA. *See* 29 U.S.C. § 1144(a); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993) (noting ERISA's preemption clause is "deliberately expansive"). The Court should thus recognize this lawsuit for what it is: an opportunistic effort by a plaintiffs' law firm to belatedly piggyback on the reduction-in-force-related litigation brought by other plaintiffs' firms in the hope of extracting a nuisance-value settlement. As to the Court's second sub-question, because no "Plan" exists, there are necessarily no other companies who have offered the same alleged ERISA plan for their employees.

**Question No. 2.** Is the document filed as ECF No. 1-1, at 2 ("Severance Matrix") a part of the "several documents" referenced in Question No. 1?

**Defendants' Response to Question No. 2.** Defendants incorporate their response to Question No. 1. As explained above, the "Severance Matrix" is not an ERISA plan document, but privileged work-product that contains certain compensation information. And even if the "Severance Matrix" were a "formalized policy" constituting an ERISA plan (it is not), the document was obtained through inappropriate means and is not properly before the Court, and thus should not be considered in connection with Plaintiffs' Amended Complaint or the Notice of Questions.

**Question No. 3.** What are the first and last names (and titles at the time of signing) of the individuals who signed the documents constituting the alleged ERISA plan? Which of those individuals are alleged to be fiduciaries? Is Plaintiff aware of the identities of any of the DOE Defendants, if not already listed? If so, what are their first and last names and current titles.

**Defendants' Response to Question No. 3.** Defendants incorporate their responses to Question Nos. 1 and 2. As explained above, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged, and therefore there are no plan documents or "formalized polic[ies]" that contain the signatures of any individuals currently or formerly employed by Twitter or X Corp. Similarly, because there are no fiduciaries in relation to the alleged severance plan, there are no plan documents identifying any named fiduciaries, and no individuals acting as functional or de facto fiduciaries to a plan. Further, as explained in Defendants' Motion to Dismiss, Plaintiffs fail to adequately allege that Defendant Musk (or anyone else) acted as a functional fiduciary in relation to the any plan. "To determine whether one qualifies as a fiduciary, courts ask whether one exercises discretionary authority or control respecting management over the plan . . . or has discretionary authority or responsibility in the administration of the plan." *Brown v. Cal. Law Enforcement Ass'n, Long-Term Disability Plan*, 81 F.Supp.3d 930, 934 (N.D. Cal. 2015) (citing 29 U.S.C. § 1002(21)(A)). Plaintiffs have failed to allege that Defendant Musk (or anyone else at Twitter or X Corp.) exercised any discretionary authority over Twitter's severance payments in order to survive dismissal of those claims, and Defendants maintain that Plaintiffs would fail to make such a showing even if this case proceeded to discovery.

**Question No. 4.** For the period before October 27, 2022, assuming the Plan had been governed by ERISA during that period, please list all the locations where the alleged ERISA plan was administered. If there have been multiple locations where the alleged ERISA plan was administered, please provide a timeline showing the dates and locations so that the Court knows when the location of the alleged ERISA plan's place of administration was changed.

**Defendants' Response to Question No. 4.** Defendants incorporate their responses to Question Nos. 1-3. As explained above, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged, and therefore there was no "location" (or "locations") where the alleged plan was or could have been administered.

**Question No. 5.** For the period before October 27, 2022, if or when applicable, how often

did the employer(s) submit contributions to the alleged ERISA plan?

**Defendants' Response to Question No. 5.** Defendants incorporate their responses to Question Nos. 1-4. As explained above, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged, and therefore Twitter and/or X Corp. did not submit any employer contributions to the alleged plan.

**Question No. 6.** For the period on and after October 27, 2022, assuming the alleged ERISA plan has been governed by ERISA, please list all the locations (*i.e.* city and state) where the alleged ERISA plan has been administered. If there have been multiple locations where the plan has been administered, please provide a timeline showing the dates and locations so that the Court knows when the location(s) of the alleged ERISA plan's place(s) of administration was changed, and the current location(s) of the alleged ERISA plan's place(s) of administration.

**Defendants' Response to Question No. 6.** Defendants incorporate their responses to Question Nos. 1-5. As explained above, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged, and therefore there was no "location" (or "locations") where the alleged plan was or could have been administered.

**Question No. 7.** For the period on and after October 27, 2022, how often did the employer(s) submit contributions to the alleged ERISA plan, if at all?

**Defendants' Response to Question No. 7.** Defendants incorporate their responses to Question Nos. 1-6. As explained above, Twitter and/or X Corp. did not maintain an ERISA-governed severance plan as alleged, and therefore Twitter and/or X Corp. did not submit any employer contributions to the alleged plan.

**Question No. 8.** Besides the cases listed in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Notice of Action, please list all cases—whether filed in state court or federal court—that were filed against any of the Defendants relating to the failure to pay wages or provide employee benefits during the same or overlapping period that Plaintiff is alleging Defendants

denied her and the putative class benefits under the alleged ERISA plan.

**Defendants' Response to Question No. 8.** In addition to the *Cornet, Borodaenko,* and *Strifling* cases identified in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Notice of Action, Defendants identify the following cases that relate to the alleged failure by Twitter and/or X Corp. to pay wages or provide employee benefits during the same period Plaintiffs allege in the Amended Complaint:

1. *Justice, et al. v. Twitter, Inc.*, CGC-23-604287 (Cal. Sup. Ct. Jan. 26, 2023).
2. *Adler v. Twitter, Inc.,* Case No. 3:23-cv-01788 (N.D. Cal. April 13, 2023).
3. *Zeman v. Twitter, Inc.,* Case No. 3:23-cv-01786 (N.D. Cal. April 13, 2023).
4. *Arnold v. X Corp.*, Case No. 1:23-cv-00528 (D. Del. May 23, 2023).
5. *Borghino v. Twitter, Inc.*, CGC-23-606992 (Cal. Sup. Ct. June 12, 2023).
6. *Schobinger v. Twitter, Inc.,* Case No. 3:23-cv-03007 (N.D. Cal. June 20, 2023).
7. *Woodfield v. X Corp.*, Case No. 1:23-cv-00780 (D. Del. July 18, 2023).
8. *Weinberg v. Twitter, Inc.,* Case No. 3:23-cv-04016 (N.D. Cal. Aug. 8, 2023).
9. *Rosa v. X Corp.,* Case No. 2:23-cv-22908 (D.N.J. Dec. 5, 2023).
10. *Frederick-Osborn v. Twitter, Inc.*, Case No. 3:24-cv-00125 (N.D. Cal. Jan. 5, 2024).

Of these cases, the *Cornet, Justice,* and *Woodfield* cases in particular assert claims that putative class members were denied severance to which they allege they were contractually or otherwise entitled and are pending in the United States District Court for the District of Delaware (*Cornet* and *Woodfield*) and the Superior Court for the County of San Francisco (*Justice*). These actions seek materially identical relief to that requested by Plaintiffs here, under varying legal theories.

While Defendants maintain the Court should dismiss Plaintiffs' claims with prejudice for the reasons set forth in their Motion to Dismiss (including because Plaintiffs fail to allege an ERISA-governed Twitter severance plan existed), the Court may also decide within its discretion to stay this case pending the resolution of these other putative class actions that seek severance benefits allegedly owed to former Twitter and X Corp. employees. A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6   Case No. 3:23-cv-03461-TLT
DEFENDANTS' RESPONSE TO NOTICE OF QUESTIONS

(1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The inherent power to stay includes ordering a stay "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "Where a stay is considered pending the resolution of another action, the court need not find that two cases possess identical issues; a finding that the issues are substantially similar is sufficient to support a stay." *Murillo v. Target Corp.*, 2023 WL 4553597, at *5 (C.D. Cal. July 14, 2023); *see also Murillo v. Target Corp.*, 2023 WL 4553597, at *12 (C.D. Cal. July 14, 2023) ("it is hardly surprising or unfair that [one] case will have to wait in line for an earlier-filed class action brought by a substantially similar putative class asserting substantially similar claims.").

Dated: April 12, 2024

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Melissa Hill*
Melissa Hill (pro hac vice)
Sean McMahan (pro hac vice)
Jared R. Killeen (pro hac vice)
Mark A. Feller

Attorneys for Defendants