Kate Mueting, DC Bar No. 988177*
Dacey Romberg, DC Bar No. 90003767*
Samone Ijoma, MD Bar No. 2012170086*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206
kmueting@sanfordheisler.com
dromberg@sanfordheisler.com
sijoma@sanfordheisler.com

Charles Field, SBN 189817
**SANFORD HEISLER SHARP, LLP**
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
Telephone: (619) 577-4252
cfield@sanfordheisler.com

Kristi Stahnke McGregor, GA Bar No. 674012*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com

Christopher Owens, MD Bar No. 220280004*
**SANFORD HEISLER SHARP, LLP**
111 S. Calvert Street, Suite 1950
Baltimore, Maryland 21202
Telephone: (410) 834-7422
cowens@sanfordheisler.com

*Attorneys for Plaintiffs*
*and the Potential Class*

* admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTHERN CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, DOES,<br><br>Defendants. | Case No. 3:23-cv-03461-TLT-RMI<br><br>**PLAINTIFFS' ANSWERS TO THE COURT'S NOTICE OF QUESTIONS RE DKT. NOS. 24, 38, 47**<br><br>Judge: Trina L. Thompson |

Plaintiffs Courtney McMillian and Ronald Cooper ("Plaintiffs") provide the following answers to the Court's Notice of Questions Re Dkt. Nos. 24, 38, 47 (Dkt. 65):

***Question No. 1.*** *What is the effective date, or are the effective dates, of the "formalized policy [memorialized] in the several documents that provide a uniform and detailed policy framework for the numerous post-termination benefits Twitter provided to employees" ("the alleged ERISA plan" or "the Plan")? How many companies have the same alleged ERISA plan for their workers/former workers? Please attach to a Declaration or Stipulation all documents that make up the alleged ERISA plan.*

***Plaintiffs' Answer:*** Plaintiffs understand that the severance plan at issue in this case dates at least to 2019, when Twitter Inc. memorialized its severance policy in a "Severance Matrix" which human resources staff used to determine eligibility and benefits. McMillian Decl. ¶¶ 6, 7.[1] A summary of the Severance Matrix was provided to employees in a May 2022 e-mail and in May 2022 and October 2022 entries in "Twitter Acquisition: Tweep[2] FAQs" ("FAQs"), first published to employees in April 2022 and regularly updated through October 2022. McMillian Decl. ¶¶ 15-17.

Where a formal, written plan instrument is lacking, summary plan documents ("SPDs") or other documents or communications may set the terms of the plan, individually or collectively. *See Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017) (finding plan consisted collectively of summary document and contract).[3] The Supreme Court's holding in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), is not to the contrary: that case merely holds that where a formal written instrument exists, it cannot be overridden by a summary document or communication. *See Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015) ("*Amara* addressed only the circumstance where both a governing plan document *and* an SPD existed, and the plan administrator sought to enforce the SPD's terms *over* those of the plan document.") (emphasis in original).[4]

ERISA covers plans that are not in writing, where the Court determines, on the basis of all the surrounding circumstances, that "a reasonable person could ascertain the intended benefits,

---

[1] Plaintiffs dispute Defendants' contention that the Severance Matrix was created in October 2022. Rather, the Severance Matrix was created well before the Merger was even announced and was used in the regular work of determining departing employees' severance eligibility and level going back to at least 2019. McMillian Decl. ¶ 7. Plaintiffs further dispute that the Severance Matrix is privileged and are submitting this issue to the Magistrate Judge for resolution.

[2] Twitter employees were referred to as "Tweeps."

[3] *See also Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 345 (5th Cir. 2017) (holding that "where a plan has an SPD but no separate written instrument, the SPD can serve as the plan's written instrument" and collecting cases); *Deboard v. Sunshine Mining and Refin. Co*. 208 F.3d 1228, 1238-39 (10th Cir. 2000) (finding that letters to employees created ERISA plan).

[4] *See also Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We interpret *Amara* as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents. We need not determine which is the case here, though, because the SPD does not conflict with the Plan or present terms unsupported by the Plan; rather, it *is* the Plan.").

beneficiaries, source of financing, and procedures for receiving benefits." *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 724 (9th Cir. 2021) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982); *Davidson v. Hewlett-Packard Co.*, 2019 WL 3842001 at *3 (N.D. Cal. 2019) (finding ERISA plan based on oral promises and an email because "ERISA does not require a formal, written plan"); *Brixius v. Am Transfer Co.*, 2017 WL 1408096 at *3 (E.D. Cal. April 20, 2017) ("Although ERISA contains numerous requirements that a plan must adhere to – a written instrument, named fiduciaries, public reports, etc. – these requirements are not part of the definition of a 'plan.'") (citing *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985), *abrogated on other grounds by Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

Plaintiffs allege, at minimum, the existence of a *de facto* or informal plan pursuant to Twitter/X Corp.'s years-long practice of providing severance benefits to departing employees pursuant to an ongoing administrative scheme, and the repeated written and oral promises to provide employees these benefits for at least a year following the October 2022 merger, as also memorialized in the Merger Agreement and in Defendants' explanation of that agreement to employees in the May 2022 e-mail and FAQs. *See* Plaintiffs' Am. Compl., Dkt. #13 at ¶¶ 2, 27, 38-39; McMillian Decl. ¶¶ 13-17; Ex. A at 1-2, 14. Whether the documents discussed above meet the formal requirements of 29 U.S.C. § 1102(a), collectively or individually, is a matter the Court should properly decide after discovery has revealed the total universe of related plan documents.

Plaintiffs seek further clarification on the court's question: "How many companies have the same alleged ERISA plan for their workers/former workers?" If the Court is asking whether other companies had the exact same Severance Plan as Twitter/X Corp., Plaintiffs do not have sufficient information to answer that question. If the Court is asking whether other companies, aside from Twitter/X Corp., utilize ERISA-covered severance plans, Plaintiffs answer that ERISA-covered severance benefit plans are common. *See, e.g., Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) ("[P]lans to pay employees severance benefits . . . are employee welfare benefit plans within the meaning of the Act.").

***Question No. 2.*** *Is the document filed as ECF No. 1-1, at 2 ("Severance Matrix") a part of the "several documents" referenced in Question No. 1?*

***Plaintiffs' Answer:*** Yes. The Severance Matrix, along with the Merger Agreement, formed the basis for Defendants' communications to employees in the FAQs and company-wide May 2022 email, with these communications purporting to summarize these documents for plan beneficiaries. McMillian Decl. ¶¶ 13-14.

***Question No. 3.*** *What are the first and last names (and titles at the time of signing) of the individuals who signed the documents constituting the alleged ERISA plan? Which of those individuals are alleged to be fiduciaries? Is Plaintiff aware of the identities of any of the DOE Defendants, if not already listed? If so, what are their first and last names and current titles.*

***Plaintiffs' Answer:*** Plaintiffs are not aware of whether any individuals signed the documents constituting the alleged ERISA plan. Plaintiff McMillian is aware of the identities of individuals who exercised discretionary authority or discretionary responsibility over administration and management of the Plan[5] prior to October 27, 2022. The individuals include:

- Dalana Brand, Vice President of People Experience and Head of Inclusion and Diversity (until February 2022); Chief People and Diversity Officer (February 2022 - October 28, 2022)
- Mary Hansbury, Global Head of Employment Law (present)
- Sean Edgett, General Counsel (until October 27, 2022)
- Ned Segal, Chief Financial Officer (until October 27, 2022)

McMillian Decl. ¶ 10.

However, only one of these individuals remained employed at Twitter after October 28, 2022. Plaintiffs are not aware of which individuals, other than Defendant Musk, exercised discretionary authority or discretionary responsibility over administration and management of the Plan, and, therefore, were fiduciaries of the Plan, following October 27, 2022.

---

[5] *See* 29 U.S.C. § 1002(21)(A) (definition of a fiduciary).

Public reporting indicates that several individuals assisted and knowingly participated in the Defendants' breaches of fiduciary duty. Those individuals include:

- Steve Davis, CEO of the Boring Company[6]
- Jared Birchall, CEO of Neuralink[7] and Managing Director of Excession, LLC[8]
- David Sacks, Co-Founder and Partner at Craft Ventures, involved in financing purchase of Twitter by Defendant Musk
- Pablo Mendoza, venture capitalist and Managing Director at Vy Capital
- Jason Calacanis, venture capitalist involved in financing purchase of Twitter by Defendant Musk
- Alex Spiro, personal lawyer to Defendant Musk

***Question No. 4.*** *For the period before October 27, 2022, assuming the Plan had been governed by ERISA during that period, please list all the locations where the alleged ERISA plan was administered. If there have been multiple locations where the alleged ERISA plan was administered, please provide a timeline showing the dates and locations so that the Court knows when the location of the alleged ERISA plan's place of administration was changed.*

***Plaintiffs' Answer:*** In the period before October 27, 2022, the Plan was administered at Twitter headquarters at 1355 Market Street, San Francisco, California. McMillian Decl. ¶ 11

***Question No. 5.*** *For the period before October 27, 2022, if or when applicable, how often did the employer(s) submit contributions to the alleged ERISA plan?*

***Plaintiffs' Answer:*** For the period before October 27, 2022, the employer made contributions to the Plan each time a departing employee was determined to be eligible for severance benefits. Upon making that determination, and determining the level and type of severance to which the employee was entitled, and applying any multiplier factors, the company

---

6 Defendant Musk is the founder and owner of the Boring Company.
7 Defendant Musk is the co-founder and owner of Neuralink.
8 Excession, LLC is Defendant Musk's home office.

would provide the funds that the Plan would use to provide severance benefits to beneficiaries. [9] Where an employee was deemed eligible for outplacement services, those services were provided by a third-party provider. Upon information and belief, the company made payments to that service provider for these Plan services either until the former employee no longer needed them, or until the Plan-provided duration ended.

***Question No. 6.*** *For the period on and after October 27, 2022, assuming the alleged ERISA plan has been governed by ERISA, please list all the locations (i.e. city and state) where the alleged ERISA plan has been administered. If there have been multiple locations where the plan has been administered, please provide a timeline showing the dates and locations so that the Court knows when the location(s) of the alleged ERISA plan's place(s) of administration was changed, and the current location(s) of the alleged ERISA plan's place(s) of administration.*

***Plaintiffs' Answer:*** For the period on or after October 27, 2022, the Plan continued to be administered at Twitter/X Corp.'s headquarters at 1355 Markey Street, San Francisco, California.

***Question No. 7.*** *For the period on and after October 27, 2022, how often did the employer(s) submit contributions to the alleged ERISA plan, if at all?*

***Plaintiffs' Answer:*** Plaintiffs are not aware of any contributions to or payments from the Plan on or after October 27, 2022. While Defendants made offers of severance benefits to some employees terminated after October 27, 2022, these payments did not comport with the terms of the Plan, therefore, it is unclear whether those payments were made pursuant to the Plan.

***Question No. 8.*** *Besides the cases listed in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Notice of Action, please list all cases—whether filed in state court or federal court—that were filed against any of the Defendants relating to the failure to pay wages or provide*

---

[9] Welfare benefit plans under ERISA "ha[ve] been construed to include severance benefits paid out of general assets, as well as out of a trust fund." *Fort Halifax*, 482 U.S. at 7 n.5.

*employee benefits during the same or overlapping period that Plaintiff is alleging Defendants denied her and the putative class benefits under the alleged ERISA plan.*

***Plaintiffs' Answer:*** Plaintiffs are aware of the following actions filed in courts against Defendants relating to the failure to pay wages or provide employee benefits, in addition to more than 2,000 individual private arbitrations reported in the press.

**Lawsuits Relating to Severance**

| Case Name | Case Number & Court |
|---|---|
| *Arnold et al v. X Corp. et al* | 1:23-CV-00528 (D. Del.) |
| *Agrawal et al v. Musk et al* | 3:24-CV-01304 (N.D. Cal.) |
| *Cornet et al v. Twitter, Inc.* | 1:23-CV-00441 (D. Del.) |
| *Ma v. Twitter, Inc. et al* | 4:23-CV-03301 (N.D. Cal.) |
| *Rosa v. X Corp. et al* | 2:23-CV-22908 (D.N.J) |
| *Schobinger v. Twitter, Inc. et al* | 3:23-CV-03007 (N.D. Cal.) |
| *Woodfield v. Twitter, Inc. et al* | 1:23-CV-00780 (D. Del.) |

**Lawsuits Relating to Wages**

| Case Name | Case Number & Court |
|---|---|
| *Rodriguez v. Twitter, Inc.* | 3:22-CV-07222 (N.D. Cal.) |
| *Gadala v. Twitter, Inc. et al* | 3:23-CV-01595 (N.D. Cal.) |
| *Adler v. Twitter, Inc.* | 3:23-CV-01788 (N.D. Cal.) |
| *Weber v. X Corp et al* | 2:23-CV-00233 (E.D. Wash.) |
| *Frederick-Osborn v. Twitter, Inc. et al* | 4:24-CV-00125 (N.D. Cal.) |

DATED: April 12, 2024

Respectfully submitted,

Sanford Heisler Sharp, LLP

By: *<u>/s/ Kristi Stahnke McGregor</u>*
Kristi Stahnke McGregor, GA Bar No. 674012
(admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com

*Attorney for Plaintiffs*
*and the Potential Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy of this filing to all counsel of record.

Mark A. Feller
Melissa D. Hill
Jared R. Killeen
Sean K. McMahan
**MORGAN, LEWIS & BOCKIUS LLP**
mark.feller@morganlewis.com
melissa.hill@morganlewis.com
jared.killeen@morganlewis.com
sean.mcmahan@morganlewis.com

*Attorneys for Defendants X Corp., X Holdings, and Elon Musk*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: April 12, 2024

<u>*/s/ Kristi Stahnke McGregor*</u>
Kristi Stahnke McGregor, GA Bar No. 674012
(admitted *pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7008
kmcgregor@sanfordheisler.com