

**Sanford Heisler Sharp, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Fax: (615) 434-7020
www.sanfordheisler.com

*Kristi Stahnke McGregor*, Of Counsel
(615) 434-7008
kmcgregor@sanfordheisler.com        New York | Washington, DC | San Francisco | Palo Alto | Baltimore | Nashville | San Diego

April 3, 2024

**VIA EMAIL**
Melissa D. Hill
Melissa.hill@morganlewis.com

Re: *McMillian and Cooper v. X. Corp., f/k/a Twitter, Inc., X Holdings, Elon Musk Does* – Case No. 23-cv-03461-TLT

Dear Counsel:

We write in response to your March 13, 2024 email accusing our client, Courtney McMillian, of improperly and illegally downloading, printing, and/or retaining company documents. Given the serious allegations that you are lodging against our client, we have taken the time to—once again—confer with our client and confirm that the only Twitter documents she retained upon termination are the two documents already disclosed to you previously—The Severance Matrix and a Twitter Workday file.[1] We take very seriously the allegations in your e-mail that our client engaged in illegal behavior. Please identify the basis for your belief that our client violated any law and identify the law you contend our client violated.

Despite your refusal to specify which other documents you contend our client improperly downloaded and/or printed and when, we have also confirmed that any files downloaded and/or printed by Ms. McMillian were downloaded and/or printed *prior* to her termination as part of her job responsibilities, and that she did so in her capacity as the Head of People Experience at that time. As mentioned in our September 2023 correspondence—more than six months ago—our client was locked out of *all* Twitter systems, including her computer, on the day of her termination, and, accordingly, could not download or print documents after her termination. We note that Ms. McMillian was a remote employee during her tenure at the company, where she regularly downloaded and printed hard copy documents to facilitate her work. Use of her "personal" printer was a regular, encouraged, and expected part of her work—so much so that Twitter regularly paid for her ink cartridges. The allegations by X Corp., through its counsel, that Ms. McMillian improperly printed or downloaded company documents are baseless.

Our client has also confirmed that, pursuant to her confidentiality agreement with Twitter, she destroyed when she was let go all Twitter documents and files other than the two at issue. Her

---

[1] Our client also retained her personal employment records, such as her offer letter and performance evaluations, and equity letter, given to her in the regular course of her employment. Our client rightfully possesses those documents and was under no obligation to delete or return them per any confidentiality or other agreement.

Melissa Hill
April 3, 2024
Page 2 of 2

retention of the WorkDay file was unintentional. As we stated in our letter of September 13, 2023—upon receipt of a preservation letter from you—our client remembered that she had used a flash drive to do some of her work in October/November 2022, and said flash drive may still have a Twitter WorkDay file on it. We immediately arranged for our e-discovery vendor to image the flash drive to determine what (if any) Twitter files were on the flash drive. Upon learning that there was one Twitter file on the flash drive, we had our vendor store a copy of the file and notified you shortly thereafter. Despite our prior offer to delete the file or discuss more on a phone call, we heard no more from you on the matter until your e-mail of March 13, 2024.

We also confirmed in our September 13, 2023 letter that our client had not accessed the file since October 2022, and we also have not accessed it at any point. The file would have been destroyed, consistent with Twitter's confidentiality agreement, however, in your August 2023 letter, you instructed Ms. McMillian to preserve all Twitter documents in her possession. As such, our vendor continues to retain a copy of the file. As a practical matter, there is no way to "return" the WorkDay file as you now demand. Please confirm whether Twitter would like the WorkDay file destroyed or preserved pending outcome of this litigation.

As we previously expressed in our June 2023 e-mail correspondence, we do not believe the Matrix to be privileged. Accordingly, a dispute exists regarding whether the Matrix is privileged. The stipulated ESI protocol the parties plan to file at the end of this week provides a process for resolving disputes regarding privilege of documents and treatment of documents pending resolution of a privilege dispute. The Matrix should be handled pursuant to this provision. Accordingly, pursuant to that provision and Magistrate Illman's standing order, the parties should submit a 5-page joint letter outlining the dispute. We will provide you with a draft of a joint letter for submission to the Court.

However, to be clear, even if the Matrix were privileged, which we do not believe it to be, our client's actions relating to the Matrix were entirely proper. It is permissible for a client to share confidential documents with her counsel in furtherance of her legal claims. *See Layer2 Commc'ns Inc v. Flexera Software LLC*, 2014 WL 2536993, at *9 (N.D. Cal. June 5, 2014); *Rutherford v. Palo Verde Health Care Dist.*, 2014 WL 12632901, at *10–11 (C.D. Cal. Apr. 17, 2014); *Neal v. Health Net, Inc.*, 123 Cal. Rptr. 2d 202, 216 (Cal. Ct. App. 2002). Accordingly, Ms. McMillian did not act improperly be sharing the Matrix with her counsel in furtherance of this legal action.

Our offer to delete any copies of the inadvertently retained Workday file and submit the issue of privilege with regard to the Matrix to the Court for resolution should resolve this matter fully. We reserve all rights should there be any further attempts to harass or intimidate our client in retaliation for bringing this lawsuit by way of unsubstantiated allegations of improper or illegal conduct on the part of our client. Please let us know if you have any questions or if you would like to discuss further.

Sincerely,

Kristi Stahnke McGregor