

**Sanford Heisler Sharp, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Fax: (202) 499-5199
www.sanfordheisler.com

*Samone Ijoma,* Associate
(202) 499-5232
sijoma@sanfordheisler.com

New York | Washington, DC | San Francisco | Palo Alto | Baltimore | Nashville | San Diego

May 20, 2024

**VIA EMAIL**
Melissa D. Hill
Melissa.hill@morganlewis.com

**Re:**   *McMillian and Cooper v. X. Corp., f/k/a Twitter, Inc., X Holdings, Elon Musk Does* –
Case No. 23-cv-03461-TLT-RMI

Dear Counsel:

We write in response to your series of emails regarding Ms. McMillian's conduct in the days and weeks leading up to her termination from Twitter/X Corp. As we've indicated in our prior communications with you, Ms. McMillian accessed a number of compensation and benefits documents in her role as Head of People Experience. It is our hope that this letter provides the additional information you seek in lieu of a formal declaration from our client and, as you've requested, the parties can appropriately address these matters when the stay of discovery is lifted.

Despite our numerous attempts at clarifying Ms. McMillian's actions and her rights, you have now accused our client of theft, where there is absolutely no basis for that assertion. As stated previously, we caution Defendants from continuing to make these accusations and thinly veiled threats against our Firm and our client. It is not the case that Ms. McMillian "stole" anything. After Ms. McMillian acquired severance responsibilities from Ms. Dalana Brand, upon Ms. Brand's promotion to Vice President of People Experience and Head of Diversity and Inclusion, Ms. McMillian began using the Twitter Severance Matrix to facilitate her work on compensation and benefits for the company.

As such, in the week and days leading up to the November 4, 2022 notice of Ms. McMillian's termination, she continued to access benefits and compensation information integral to her role, including the Twitter Severance Matrix, a Workday file, and other documents she accessed during her time serving as Head of People Experience. It is no secret and perfectly acceptable that Ms. McMillian downloaded and printed various materials as part of her job responsibilities. Despite Twitter/X Corp.'s attempts to manufacture something nefarious from Ms. McMillian doing her job, Ms. McMillian had a right to access all of the documents you reference as part of her job responsibilities, and specifically, in preparation for anticipated layoffs.

Nonetheless, our prior representations to you regarding these documents are true and correct: (1) Ms. McMillian retained personal employment records given to her in the regular course of business, including her performance reviews, offer letter, and equity offer; (2) Ms. McMillian retained the disputed Twitter "Severance Matrix" and shared it with her counsel for purposes of

Melissa Hill
May 20, 2024
Page 2 of 2

seeking legal advice and to blow the whistle on violations of ERISA; (3) Ms. McMillian remembered in August 2023 that a Twitter Workday file still existed on a flash drive she used to prepare for anticipated layoffs; (4) keeping the Workday file was inadvertent; and (5) Ms. McMillian destroyed any and all other company documents after she received notice of her termination and prior to her separation date and Ms. McMillian starting a new position at another company.

We also note that the November 4 communication Ms. McMillian received notifying Ms. McMillian of her termination also stated that Twitter would be sending a second communication with instructions on how to return company property. Ms. McMillian did not receive this second communication and Twitter made no efforts to obtain its property until the start of this litigation. It seems that Twitter is only now concerned with Ms. McMillian's so-called retention of company documents in an attempt to silence Ms. McMillian and interfere with her ability to pursue her own legal rights and the rights of the members of this prospective class under ERISA. *See ERISA Section 510, 29 U.S.C. § 1140* ("It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating [to ERISA]").

We also understand that Defendants are threatening to seek disqualification of our Firm and Ms. McMillian but, even assuming Plaintiffs and their counsel acted inappropriately in retaining and relying on the Matrix (which we have not) disqualification is not an appropriate remedy here. As a general rule, disqualification is an extreme remedy only afforded in rare cases. *See Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120, at *5 (N.D. Cal. Mar. 13, 2014) ( "An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity."). In addition, Courts have frowned upon frivolous disqualification motions as it lends itself to gamesmanship, which is most certainly what Defendants are doing here. *See Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, No. 3:15-cv-01525-GPC-AGS, 2018 WL 538961, at *7 (S.D. Cal. Jan. 24, 2018) (finding against disqualification, in part because of "the risk that this motion was brought as a matter of tactical gamesmanship").

As always, we are happy to discuss any of this on a call. Please let us know if you would like to discuss these issues further.

Sincerely,

Samone Ijoma