1  Mark A. Feller (SBN 319789)
   mark.feller@morganlewis.com
2  **MORGAN, LEWIS & BOCKIUS, LLP**
   One Market, Spear Street Tower
3  San Francisco, CA 94105-1596
   Tel: 415.442.1000
4
   Melissa Hill (*pro hac vice*)
5  melissa.hill@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS, LLP**
6  101 Park Avenue
   New York, NY 10178
7  Tel: 212.309.6000

8  Sean K. McMahan (*pro hac vice*)
   sean.mcmahan@morganlewis.com
9  **MORGAN, LEWIS & BOCKIUS, LLP**
   1717 Main Street, Suite 3200
10 Dallas, TX 75201-7347
   Tel: 214.466.4000
11
   Jared R. Killeen (*pro hac vice*)
12 jared.killeen@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS, LLP**
13 2222 Market Street
   Philadelphia, PA 19103
14 Tel: 215.963.5000

15 *Attorneys for Defendants X Corp., f/k/a Twitter, Inc.; X Holdings; Elon Musk; and*
16 *Does*

17              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
18

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER<br><br>Plaintiffs,<br><br>v.<br><br>X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, Does,<br><br>Defendants | Case No. 3:23-cv-03461-TLT-RMI<br><br>**EXHIBIT 1 TO DECLARATION OF MARY HANSBURY IN SUPPORT OF DEFENDANT X CORP.'S STATEMENT IN SUPPORT OF RETAINING DOCUMENT (AND RELATED REFERENCES) UNDER SEAL [DKT. 051-1]**<br><br>Judge: Trina L. Thompson |

# EXHIBIT 1

# EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment, continued employment, access to confidential and trade secret information, benefits, certain monies, bonuses, and/or other benefits with Twitter, Inc., a Delaware corporation (the "**Company**"), I hereby represent to, and agree with the Company as follows:

1.  **Purpose of Agreement.** I understand that the Company is engaged in a continuous program of research, development, production, and marketing in connection with its business and, furthermore, that it is critical for the Company to preserve and protect: (i) its "**Confidential Information**" (as defined in Section 7 below); (ii) its rights in "**Inventions**" (as defined in Section 2 below); and (iii) in any and all intellectual property rights related to (i) and/or (ii). Accordingly, I am entering into this Employee Invention Assignment and Confidentiality Agreement (this "***Agreement***") as a condition of my employment with the Company, whether or not I am expected to make, conceive, or reduce to practice Inventions for the Company.

2.  **Disclosure of Inventions.** I will promptly disclose in confidence to the Company any and all inventions, improvements, ideas, developments, designs, trademark, word mark, trade dress, service mark, logo, certification marks, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works, and trade secrets that I make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable, or protectable as trade secrets (the "***Inventions***").

3.  **Work for Hire; Assignment of Inventions.**

    (a) I acknowledge and hereby agree that any and all Inventions that are copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and, furthermore, that the Company will be considered the author and owner of such copyrightable works. To the extent I create, within the scope of my employment, copyrightable works that are not works for hire, I hereby agree to assign, and do hereby irrevocably transfer and assign, such copyrightable works to the Company.

    (b) I hereby agree that any and all Inventions that (i) are developed using equipment, supplies, facilities, or trade secrets of the Company; (ii) are developed on Company time; (iii) result from work performed by me for the Company; or (iv) are related to the Company's business or actual or demonstrably anticipated research and development (collectively (i) through (iv) the "***Assigned Inventions***"), will be the sole and exclusive property of the Company. I hereby agree to assign, and do hereby irrevocably transfer and assign, the Assigned Inventions to the Company. I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. The foregoing assignment of Assigned Inventions includes, for example, the assignment of any and all rights I have or may have anywhere in the world for patents, patent applications, copyrights, mask works, trade secrets, databases or other stores of data (including, but not limited to data created or curated for training machine learning models), and trademarks, along with any registrations of or applications to register such rights anywhere in the world, to the full extent permitted by law.

    (c) Attached hereto as **Exhibit A** is a list describing all Inventions that were made by me prior to the date of this Agreement, which belong to me, and which are not assigned to the Company ("***Prior Inventions***"). If no such list is attached, I agree that it is because no such Prior Inventions exist. I acknowledge and agree that if I use any of my Prior Inventions in the scope of my employment, or include them in any product or service of the Company, I hereby grant to the Company a perpetual, irrevocable, non-exclusive, worldwide, royalty-free license to use, disclose, make, sell, copy, distribute, modify, and create works based on, perform, and/or display such Prior Inventions and, furthermore, to sublicense to third parties with the same rights.

4.  **State-specific Provisions.**

    *For residents of Delaware, Illinois, Kansas or North Carolina, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas



rev.JUN2020

1

Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

*For residents of Minnesota, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, and (a) which does not relate (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) does not result from any work performed by me for the Company. Minnesota Statutes 13A Section 181.78.

*For residents of Utah, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention which was created entirely on my own time, and which is not (a) conceived, developed, reduced to practice, or created by me (i) within the scope of my employment with the Company, (ii) on the Company's time, or (iii) with the aid, assistance, or use of any of the Company's property, equipment, facilities, supplies, resources, or patents, trade secrets, know-how, technology, confidential information, ideas, copyrights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the result of any work, services, or duties performed by my for the Company, (c) related to the industry or trade of the Company, or (d) related to the current or demonstrably anticipated business, research, or development of the Company. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

*For residents of Washington, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facilities, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Washington Rev. Code, Title 49 RCW: Labor Regulations Chapter 49.44.140.

5. **Assignment of Other Rights.** In addition to the foregoing assignment of Assigned Inventions to the Company, I hereby agree to assign, and do hereby irrevocably transfer and assign, to the Company any and all intellectual property beyond those specified in Section 3 that I create within the scope of my employment or are related to the Company's business or actual or demonstrably anticipated research and development, including, but not limited to any and all "Moral Rights" (as defined below) that I may have in or with respect to any and all Assigned Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "*Moral Rights*" mean any rights to claim authorship of or credit on an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." Notwithstanding the foregoing, I will have the right to claim participation in the development, creation, or modification of the Assigned Inventions on my resume or in my curriculum vitae, provided that I obtain the Company's advance approval for such disclosures before providing the disclosure to any third-party.

6. **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights, and other legal protections for the Company's Assigned Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. If the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and, where permitted by law, my attorney in fact, which appointment is coupled with an interest,to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me.



7.    **Confidential Information.**

(a)    *Definition of Confidential Information*. I understand that "Confidential Information" means information (including, but not limited to, any and all combinations of individual items of information) that the Company or any subsidiary or affiliate of the Company ("***Twitter Group***") has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known and which the Company wishes to maintain as confidential. Confidential Information includes both information disclosedby the Company to me, and information developed or learned by me during the course of my employment with the Company. Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of any member of the Twitter Group, whether or not such information is identified as Confidential Information. By example, and without limitation, Confidential Information includes any and all non- public user data, any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Twitter Group, or to the Twitter Group's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, marketing plans, business strategies, or other information regarding the Twitter Group's products or services and markets therefor, customer lists, customer data,and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), domain names, Inventions (as defined above in Section 2), ideas, technology, drawings, engineering, hardware configuration information, finances and related financial information, forecasts, and other business information disclosed by the Company to me either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Confidential Information shall not include any such information which I can establish
(i) was publicly known or made generally available outside the Company prior to the time of disclosure by the Company to me; (ii) becomes publicly known or made generally available outside the Company after disclosure by the Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

(b)    *Nonuse and Nondisclosure*. I agree that during and after my employment with the Company, I will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information. I will not (i) use Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose Confidential Information to any third party without the prior written authorization of the General Counsel of the Company, or his or her authorized representative. When compelled by applicable law to disclose Confidential Information, I shall provide written notice, prior to disclosure, to the General Counsel of the Company. I agree that I obtain no title to any Confidential Information, and that the Company retains all Confidential Information as the sole property of the Company. I understand that my unauthorized use or disclosure of Confidential Information during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legal action by the Company. I understand that my obligations under this Section shall continue after termination of my employment and also that nothing in this Agreement prevents me from engaging in protected activity, as described in Section 7(e) below.

(c)    *Permission to Publish*. I will obtain the prior written consent of the Company's General Counsel or his or her delegate before I submit for publication or lecture on any matter or material connected to my work with the Company or which may refer to, involve or include Confidential Information.

(d)    *Safeguarding Confidential Information*. I will take all reasonable safeguards to protect Confidential Information including:

(i)    maintaining in a safe place all documents, drawings and data in any form that contain Confidential Information;

(ii)    not permitting the download or storage in electronic form of any Confidential Information on any non-encrypted device;

(iii)    handling Confidential Information in accordance with the Company's and the Twitter Group's information security policies; and



3

rev.JUN2020

(iv)     notifying the Company immediately if I learn of any unauthorized or unlawful disclosure of Confidential Information.

(e)     I understand that nothing in this Agreement limits or prohibits me from filing a charge or complaint with, or otherwise communicating or cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including, but not limited to the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("**Government Agencies**"), including, but not limited to disclosing documents or other information as permitted by law, without giving notice to, or receiving authorization from, the Company. Notwithstanding, in making any such disclosures or communications, I agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Confidential Information to any parties other than the Government Agencies. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend TradeSecrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in **Exhibit C**.

(f)     *Former Employer Confidential Information*. I agree that during my employment with the Company,I will not improperly use, disclose, or induce the Company to improperly use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep such proprietary information or trade secrets in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to, in writing, by such third party and the Company.

(g)     *Third Party Information*. I recognize that the Company has received, and in the future may receive, from third parties (for example, customers, suppliers, licensors, licensees, partners, and collaborators) as well as its subsidiaries and affiliates ("**Associated Third Parties**"), information which the Company is required to maintain and treat as confidential or proprietary information of such Associated Third Parties ("**Associated Third Party Confidential Information**"), and I agree to use such Associated Third Party Confidential Information only as directed by the Company and to not use or disclose such Associated Third Party Confidential Information in a manner that would violate the Company's obligations to such Associated Third Parties. By way of example, Associated Third Party Confidential Information may include, but not be limited to, the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated ThirdParties a duty to hold all such Associated Third-Party Confidential Information in the strictest confidence, and not touse it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agreeto comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legalaction by the Company.

8.     **Return of Company Materials.**

(a)     *Definition of Electronic Media Equipment and Electronic Media Systems.* I understand that "Electronic Media Equipment" includes, but is not limited to, computers, external storage devices, thumb drives, mobile devices (including, but not limited to, smart phones, tablets, and e-readers), telephone equipment, and other electronic media devices. I understand that "Electronic Media Systems" includes, but is not limited to, computer servers, messaging and email systems or accounts, applications for computers or mobile devices, and web-based services (including, but not limited to cloud-based information storage accounts).

(b)     *Return of Company Property.* I understand that anything that I created or worked on for the Company while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property,



rev.JUN2020

4

including, but not limited to, Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items including, without limitation, any and all records maintained for Inventions made or contributed by me.

(c) *Return of Company Information on Company Electronic Media Equipment.* In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained in Company Electronic Media Equipment before I return the information to the Company.

(d) *Return of Company Information on Personal Electronic Media Equipment.* In addition, if I have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including, but not limited to, Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and, if I locate such information, I agree to notify the Company of that fact and then provide the Company with a computer-useable copyof all such Company information from those equipment and systems. I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information, remove myself from membership in electronic groups created/sponsored for use by Twitter employees for work purposes (including but not limited to Twitter DM groups and access to Twitter dogfood).

(e) *No Expectation of Privacy in Company Property.* I understand that I have no expectation of privacy in Company property, and I agree that any Company property is subject to inspection by Company personnel at any time with or without further notice. As to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes, I agree that the Company, at its sole discretion, may have reasonable access, as determined by the Company in good faith, to such personal Electronic Media Equipment or personal Electronic Media Systems to review, retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems or to take such other actions necessary to protect the Company or Company property, as determined by the Company reasonably and in good faith. I also consent to an exit interview and an audit to confirm my compliance with this Section 8, and I will certify in writing that I have complied with the requirements of this Section 8.

9. **No Breach of Prior Agreement.**  I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party. I represent that I will not bring with meto the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company. I represent that I have completed **Exhibit B** hereto truthfully and accurately.

10. **Efforts; Duty Not to Compete; Outside Activities.** I understand that my employment with the Company requires my undivided attention and effort. As a result, during my employment, I will not, without the Company's express written consent, engage in any other employment, business activity or outside directorships that (i) directly or indirectly competes with the current or future business of the Company; (ii) uses any Company information, equipment, supplies, facilities or materials; or (iii) otherwise conflicts with the Company's business interest and causes a disruption of its operations. I further agree that I have disclosed to the Company on **Exhibit D** all of my existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships ("Outside Relationships") that may create a conflict of interest and in the future will disclose Outside Relationships to the Company during my employment pursuant to the Company's policies (currently found at go/outsideprojects). I understand that the Company will review these relationships for any actual or potential conflict of interest and will advise me if any changes, including, potentially, cessation of an activity or termination of a relationship, is required as a condition of employment with the Company.

11. **Notification.** I hereby authorize the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and my responsibilities hereunder.



12. **Employment Non-Competition Obligations.** I agree that for a period of one (1) year after the termination of my employment, for any reason, whatsoever, I will not, without the Company's express written consent, engagein any other employment or business that (i) directly or indirectly competes with the current or then anticipated future business of the Company and on which I directly or indirectly worked for the Company during the last 24 months of my employment; and/or (ii) would cause me to use or disclose or potentially use or disclose any trade secrets or proprietary or Confidential Information of the Company. I agree that, as a Director level and above employee, I am part of the Company's management personnel, and that the restrictions contained in this Section are necessary to protect against my disclosure of highly sensitive information of the business of the Company, including, but not limited to, the Company's trade secrets.

13. **Non-Solicitation of Employees/Consultants.** During my employment with the Company and for a period of one (1) year thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my own benefit or for the benefit of any other person or entity.

14. **Non-Solicitation of Suppliers/Customers.** During my employment, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company. After the termination of my employment with the Company, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or proprietary or confidential information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including, but not limited to their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or proprietary or confidential information of the Company.

15. **Name & Likeness Rights.**  I hereby authorize the Company to use, reuse, and to grant others acting on the Company's behalf the right to use and reuse, my name, photograph, likeness (including, but not limited to caricature), voice, and biographical information, and any reproduction or simulation thereof, in any form of media or technology now known or hereafter developed (including, but not limited to, film, video and digital or other electronic media), both during and after my employment, for purposes related to Company recruitment, research, development, promotion, and/or marketing the Company's image, and/or its current or anticipated products or services.

16. **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy. I agree that the Company shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions, without the posting of a bond enjoining such breach or threatened breach. Should the Company successfully enforce any portion of this Agreement before a trier of fact, the Company shall be entitled to receive and recover from me all of its reasonable attorney's fees, litigation expenses and costs incurred as a result of enforcing this Agreement against me.

17. **Governing Law; Severability.** This Agreement will be governed by and construed in accordance with the laws of the State in which I reside during the course of my employment, without giving effect to its laws pertaining to conflict of laws. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

18. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

19. **Entire Agreement.** This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

20. **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto.  No amendment of or waiver of, or modification of any obligation under this Agreement



will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

21.     **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement, without my further consent, and shall bind and inure tothe benefit of the Company, its successors, and assigns. No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company. If the Company makes any assignment of the rights and/or obligations herein or transfers my employment or relationship within the Company, I agree that this Agreement shall remain binding upon me.

22.     **Further Assurances.** The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

23.     **"At Will" Employment.** I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time. I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, with or without notice and with or without cause, for any reason or for no reason, by either the Company or myself. I acknowledge that any statements or representations to the contrary are ineffective, unless put into a writing signed by the Company. I further acknowledge that my participation in any stock option or benefit program is not to be construed as any assurance of continuing employment for any particular period of time.

24.     **Effective Date of Agreement.** This Agreement shall be effective as of the first day I provide services to the Company.

**EMPLOYEE**

*Courtney McMillian*
Courtney McMillian (Oct 27, 2022 09:37 EDT)
Signature

Name  Courtney McMillian

Oct 27, 2022
Date

**Twitter, Inc.**

*Dalana Brand*

Dalana Brand
Chief People and Diversity Officer



# EXHIBIT A
## Disclosure of Previous Inventions

1. Except as listed in Section 2 below, the following is a complete list of all Inventions that were made by me, alone or jointly with others, prior to the date of this Agreement, which belong to me or in which I have other legal rights and/or interests, and which are not assigned to the Company (specifically excluding any open source projects to which you have contributed):

    ☒ No qualifying Inventions.

    ☐ Qualifying Inventions listed below:

    _____

    _____

    _____

    _____

    _____

    ☐ Additional Sheets Attached.

2. Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to certain Inventions, which are listed and described generally below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| | Invention | Party(ies) | Relationship |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |

☐ Additional sheets attached.

☐ There are qualifying Inventions, but I am not permitted to provide information to complete Section 2.

I certify that the information provided in this Exhibit A is accurate.

*Courtney McMillian*
Courtney McMillian (Oct 27, 2022 09:37 EDT)
Signature

Oct 27, 2022
Date

Printed Name: Courtney McMillian



rev.JUN2020

8

# EXHIBIT B
## Proprietary Information Obligations Checklist (On Hire)

Twitter respects the right of every company to protect confidential and proprietary information. We don't want you (or anyone who works for us) to improperly use or disclose protected information of others. As such, it is important that you understand and comply with your continuing obligations to protect former employer information.

In addition, you must ensure that employment with Twitter, Inc. does not violate any legal and/or enforceable contractual obligation to a third party. In order to ensure your compliance with those obligations, please fill out, sign, and return this checklist on or before your start date.

| | | Have you, without permission, taken home or retained, or brought to Twitter offices, or given to any Twitter employee anything belonging to a current or former employer, including, without limitation: | | |
|---|---|---|---|---|
| 1. | **Electronic files or hard copy documents?** (Examples – non-public customer contact lists, business papers, source code) | | Yes ☐ | No ☐ |
| 2. | **Equipment?** (Examples –keys, badges, computer disks, laptop, cell phone, etc.) | | Yes ☐ | No ☐ |
| 3. | **Voicemails or emails?** (Including forwarding, without permission, your former voicemail or email accounts.) | | Yes ☐ | No ☐ |

If you answered "Yes" to any of the above, please explain (attach additional sheets if needed):

_____

_____

_____

_____

I certify that the information provided in this Exhibit B is accurate.

*Courtney McMillian*
Courtney McMillian (Oct 27, 2022 09:37 EDT)
Signature

Courtney McMillian
Printed Name

Oct 27, 2022
Date



rev.JUN2020

9

# EXHIBIT C
## Notice under the Defend Trade Secrets Act of 2016

" . . . An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal .......An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual—(A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

# EXHIBIT D
## Disclosure of Outside Employment or Activities

*NOTE: The information you provide here will first be routed to your manager for his/her approval; after your manager approves, it goes to Legal Compliance. Legal Compliance may request additional information about the matter. If you have questions about this form, please email compliance@twitter.com.*

The following is a complete list of all of my existing employment and/or business relationships <u>that I intend to continue to participate in once employed by the Company</u>, including but not limited to existing employment, business relationships, consulting, advising relationships, outside directorships, research projects, investments in privately held companies, and other relationships that may create a conflict of interest with my employment with theCompany.

☐ None
☐ See Below

Description of the activity:
_____
_____
_____

_____

Type of organization:
☐ For-Profit
☐ Not-for-Profit
☐ Self-Employment
☐ Twitter Competitor
☐ Twitter Business Partner

Compensation type:
☐ Volunteer
☐ Paid

Anticipated use of Twitter Resources (tools, equipment, etc.), if any?
_____
_____
_____

Estimated weekly time commitment spent on this activity?
_____
_____
_____

Is this activity related to the work you will perform at Twitter?
_____
_____
_____

☐ Additional Sheets Attached.

I certify that the information provided in this Exhibit D is accurate.

*Courtney McMillian*                         Oct 27, 2022
Courtney McMillian (Oct 27, 2022 09:37 EDT)
Signature                                    Date

Courtney McMillian
Printed Name