KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, <br><br> Plaintiffs, <br><br> v. <br><br> X CORP., f/k/a/ TWITTER, INC., X HOLDINGS, ELON MUSK, DOES, <br><br> Defendants. | Case No. 3:23-cv-03461-TLT <br><br> **NOTICE OF MOTION AND MOTION OF NON-PARTY JACOB SILVERMAN TO INTERVENE AND OPPOSE SEALING JUDICIAL RECORDS** <br><br> [Memorandum of Points and Authorities and [Proposed] Order Filed Concurrently Herewith] <br><br> HEARING DATE: September 17, 2024 <br> TIME: 2:00 PM <br><br> Judge: Hon. Trina L. Thompson |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, September 17, 2024 at 2:00 pm, or as soon as this matter may be heard before the Honorable Trina L. Thompson, United States District Court Judge for the District of Northern California, non-party Intervenor Jacob Silverman will and hereby does move to intervene in the above-captioned access for the limited purpose of opposing Defendants' motion to seal their Supplemental Rule 7.1 Corporate Disclosure Statement (the "Disclosure Statement"), filed in redacted form at ECF No. 95-3.  This motion is made on the grounds that:

1)    Mr. Silverman is entitled to intervene in the above-captioned action for the limited purpose of asserting his common law and First Amendment rights of access to judicial records filed with this Court, including the Disclosure Statement.

2)    The First Amendment right of access attaches to Rule 7.1 disclosure statements.  *See, e.g.*, *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 (S.D. Ga. 2016).  A party attempting to overcome the First Amendment's presumption of access can do so only if—and only to the extent that—it can show that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest." *CBS, Inc v. U.S. Dist. Ct. for Central Dist. of Cal.*, 765 F.2d 823, 825 (9th Cir. 1985) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).  Under that strict standard, the Disclosure Statement cannot be sealed.

3)    The common law right of access likewise attaches to Rule 7.1 disclosure statements.  *See, e.g.*, *Mayer v. Patriot Pickle, Inc.*, No. 23-cv-1299, 2024 WL

162881, at *4 (W.D.N.Y. Jan. 16, 2024) (collecting cases refusing to seal disclosure statements under the common law).  A party can rebut that "strong" presumption of access only by demonstrating "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure. . . ."  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted).  Under that strict standard, too, the Disclosure Statement cannot be sealed.

    This Notice of Motion and Motion are based on the concurrently filed Memorandum of Points and Authorities; all pleadings, records, and files in the above-captioned case; all matters of which the Court shall take judicial notice; and on such argument as may be presented by counsel at any hearing to be held on this Motion.

    Plaintiffs have no objection to this Motion; Defendants oppose any efforts to intervene in this case, and also oppose any efforts to unseal or prevent sealing of the document in question.

Dated: July 9, 2024

s/ *Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN

1  KATIE TOWNSEND (SBN 254321)
2  ktownsend@rcfp.org
   REPORTERS COMMITTEE FOR
3  FREEDOM OF THE PRESS
4  1156 15th Street NW, Suite 1020
   Washington, D.C. 20005
5  Telephone: (202) 795-9300
6  Facsimile: (202) 795-9310

7  *Counsel for Non-Party Intervenor*
8  JACOB SILVERMAN

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  COURTNEY MCMILLIAN and            Case No. 3:23-cv-03461-TLT
    RONALD COOPER,
14                                     **MEMORANDUM OF POINTS AND**
                       Plaintiffs,     **AUTHORITIES IN SUPPORT OF**
15                                     **MOTION OF NON-PARTY JACOB**
                                       **SILVERMAN TO INTERVENE AND**
16         v.                          **OPPOSE SEALING JUDICIAL**
                                       **RECORDS**
17  X CORP., f/k/a TWITTER, INC., X
18  HOLDINGS, ELON MUSK, DOES,         [Notice of Motion and Motion and
                                       [Proposed] Order Filed Concurrently
19                     Defendants.     Herewith]
20
                                       DATE: September 17, 2024
21                                     TIME: 2:00 PM
22
                                       Judge: Trina L. Thompson
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........................................................................iiii

INTRODUCTION.............................................................................................1

FACTUAL BACKGROUND ...........................................................................2

ARGUMENT ....................................................................................................5

I.    The motion to intervene should be granted........................................5

II.    The Disclosure Statement should be unsealed...................................6

    A.    The First Amendment and common law presumptions of public access attach to Rule 7.1 corporate disclosure statements...................................7

    B.    Neither the First Amendment nor the common law presumption of public access is overcome with respect to the Disclosure Statement. .... 10

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s):**

## Cases

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018)........................................8

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470, 473 (9th Cir. 1992) ..........................................................5

*Best Odds Corp. v. iBus Media Ltd.*,
   No. 2:14-cv-00932, 2014 WL 5687730, at *2 (D. Nev. Nov. 4, 2014)...................10

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
   920 F.3d 209, 211 (5th Cir. 2019) ..........................................................6

*Carlyle v. Cicatello*,
   No. 1:22-CV-61, 2022 WL 21794410, at *1 (M.D. Ga. Nov. 28, 2022) ..........10, 11

*Ctr. for Auto Safety v. Chrysler Group*,
   809 F.3d 1092, 1101 (9th Cir. 2016) .....................................................9, 10

*Darton Archery, LLC v. Bowtech, LLC*,
   No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023) ................7, 10, 11

*Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68 (1st Cir. 2022) ........................................9

*Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*,
   No. 3:22-cv-00237, 2023 WL 4711158, at *3 (W.D. Pa. July 24, 2023)............8, 11

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122, 1135 (9th Cir. 2003) .........................................................9

*Ford v. City of Huntsville*,
   242 F.3d 235, 240 (5th Cir. 2001) ..........................................................6

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596, 609 n.25 (1982).................................................................6

*In re Copley Press*,

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY JACOB
SILVERMAN TO INTERVENE AND UNSEAL JUDICIAL RECORDS — CASE NO. 3:23-cv-03461-TLT

518 F.3d 1022, 1026 n.2 (9th Cir. 2008) .................................................................9

*In re Marriage of Burkle*,
135 Cal. App. 4th 1045, 1063 (2006)..................................................................12

*Kamakana v. City & County of Honolulu*,
447 F.3d 1172, 1178–79 (9th Cir. 2006) .............................................................11

*Manssor v. NRRM, LLC*,
No. 23-cv-00236, 2023 WL 4093413, at *2 (W.D. Tex. June 20, 2023) ...........8, 11

*Mayer v. Patriot Pickle Inc.*,
No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024)..........8, 10, 11

*Nixon v. Warner Commc'ns., Inc.*,
435 U.S. 589, 597 (1978)........................................................................................7

*Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*,
920 F.2d 1462, 1466 (9th Cir. 1990) .....................................................................10

*Overstock.com, Inc. v. Goldman Sachs Group, Inc.*,
231 Cal. App. 4th 471 (2014)................................................................................12

*Packingham v. North Carolina*,
582 U.S. 98, 107 (2017).................................................................................*passim*

*Press-Enter. Co. v. Superior Court* (*Press-Enterprise II*),
478 U.S. 1, 8 (1986)..............................................................................................7, 8

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
187 F.3d 1096, 1100 (9th Cir. 1999) ...................................................................5, 6

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
312 F.R.D. 673, 675 n.3 (S.D. Ga. 2016) ....................................................2, 6, 8, 11

*United States v. Bradley*,
No. 405CR059, 2007 WL 1703232, at *1 (S.D. Ga. June 11, 2007) .......................2

*United States v. Bus. of Custer Battlefield Museum & Store*,
658 F.3d 1188, 1192 (9th Cir. 2011) .......................................................................7

*United States v. Index Newspapers LLC*,
   766 F.3d 1072, 1093 (9th Cir. 2014) ....................................................... 11

*Valley Bank of Nevada v. Superior Ct.*,
   15 Cal. 3d 652 (1975) .............................................................................. 11

*Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*,
   No. 2:23-cv-81, 2023 WL 2435806, at *1–2 (M.D. Fla. Feb. 16, 2023) .......... 10, 11

*Wilkins v. Tory Burch, LLC*,
   No. 4:23-cv-422, 2023 WL 3600084, at *1–2 (E.D. Mo. May 23, 2023) ............. 10

*WSOU Invs., LLC v. Salesforce, Inc.*,
   No. 6:20-cv-1163, 2023 WL 2213200, at *2 (D. Del. Feb. 24, 2023) ............... 10, 11

**Statutes:**

Protecting Americans from Foreign Adversary Controlled Applications Act, Pub.
   L. No. 118-50 (Apr. 24, 2024) ................................................................ 14

**Other Authorities**

Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's
   Twitter Deal*, Wash. Post (Nov. 1, 2022) ................................................ 14

Hamza Shaban & Faiz Siddiqui, *Here's Who Helped Elon Musk Buy Twitter*, Wash.
   Post (Dec. 24, 2022) ................................................................................ 3

Jacob Silverman, *Musk of the Spheres*, The Baffler (July 2022) ................... 3

Jacob Silverman, *Terms of Service: Social Media and the Price of Constant
   Connection* (2015) ................................................................................... 2

Low De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now
   Part of Musk's X Corp.*, L.A. Times (Apr. 11, 2023) .................................. 4

María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of
   Censorship Requests by Authoritarian Governments*, El País (May 24, 2023) ....... 15

Matthew Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21,
   2024) ...................................................................................................... 3

McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism, and
   the Golden Age of Fraud* (2023) ................................................................ 2

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY JACOB
SILVERMAN TO INTERVENE AND UNSEAL JUDICIAL RECORDS — CASE NO. 3:23-cv-03461-TLT

Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019) .................................................................................. 14

Rebecca Kern, *Musk's Foreign Investors In Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022) ........................................................ 14

Rohan Goswami, *Elon Musk Told Joe Rogan He Bought Twitter to Stop 'Extinctionist' Mind Virus*, CNBC (Nov. 2, 2023) .................................... 3

Will Oremus et al., *A Year Later, Musk's X Is Tilting Right. And Sinking*, Wash. Post (Oct. 27, 2023) ..................................................................... 1, 3

**Rules:**

L.R. 79-5(g)(3) ......................................................................................... 5

L.R.  3-15 ............................................................................................. 1, 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY JACOB
SILVERMAN TO INTERVENE AND UNSEAL JUDICIAL RECORDS — CASE NO. 3:23-cv-03461-TLT

**INTRODUCTION**

Non-party Jacob Silverman—a journalist who covers the technology industry—seeks to intervene in the above-captioned matter for the limited purpose of opposing Defendants' motion to seal their supplemental corporate disclosure statement in this proceeding. *See* ECF No. 95-3 (the "Disclosure Statement").

Social media platforms like X play host to "the modern public square," providing "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). But as private actors with First Amendment rights of their own, the platforms also make "expressive choices" about "which third-party content [their] feeds will display, or how the display will be ordered and organized." *Moody v. NetChoice, LLC*, No. 22-277 (U.S. July 1, 2024), slip op. at 26. And when ownership of a platform passes from one set of hands to another, some messages may win out over others. *See* Will Oremus et al., *A Year Later, Musk's X Is Tilting Right. And Sinking*, Wash. Post (Oct. 27, 2023), https://perma.cc/5QVF-WU7J (noting that Elon Musk "has led Twitter in an explicitly political direction" since purchasing the platform).

X Corp. "is wholly owned by X Holdings Corp." Defs.' Supp. Rule 7.1 Corporate Disclosure Statement and Certification Pursuant to Local Rule 3-15 at 1 (ECF No. 95-3) (the "Disclosure Statement"). In this action, consistent with Civil Local Rule 3-15, this Court ordered X Corp. to disclose the owners or stakeholders of X Holdings Corp., *see* Order (ECF No. 90), to identify individuals or entities with "a

financial interest of any kind in the subject matter in controversy," L.R. 3-15.  But on the basis of vague gestures at its business interests, X Corp. seeks to file that information entirely under seal.  *See* Disclosure Statement at 1–5.  The First Amendment and common law rights of access to judicial records demand far greater transparency.  Even in a run-of-the-mill case, disclosure statements—because they speak to the possible existence of conflicts of interest—touch on "matters of utmost public concern" at the heart of the public's right to supervise the judicial process. *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 n.3 (S.D. Ga. 2016) (quoting *United States v. Bradley*, No. 405CR059, 2007 WL 1703232, at *1 (S.D. Ga. June 11, 2007)).  Here, where that judicial record further implicates the public's ability to understand the financial interests that manage expression in "the modern public square," *Packingham*, 582 U.S. at 107, the case for sunlight is at its apex.

For the reasons herein, Mr. Silverman respectfully urges this Court to grant his motion to intervene and deny Defendants' motion to seal the Statement.

## FACTUAL BACKGROUND

Mr. Silverman is a journalist, a contributing editor for *The Baffler* and *The New Republic*, and the author of several books about the technology industry.  *See* Ben McKenzie & Jacob Silverman, *Easy Money: Cryptocurrency, Casino Capitalism, and the Golden Age of Fraud* (2023); Jacob Silverman, *Terms of Service: Social Media and the Price of Constant Connection* (2015).  He has written repeatedly about Elon Musk's purchase of Twitter in particular, *see, e.g.*, Jacob Silverman, *Musk of the*

*Spheres*, The Baffler (July 2022), https://perma.cc/7FGT-HELV, and is currently writing a book about the growing influence of conservative politics in Silicon Valley.

X Corp., for its part, owns and operates X (formerly Twitter): one of the world's most influential platforms, "[a] site that fueled social movements such as the Arab Spring, Black Lives Matter and #MeToo."  Oremus et al., *supra*, "Until October 2022, X (then known as Twitter) was a publicly traded company," but "[it] was taken private by billionaire entrepreneur Elon Musk toward the end of that month, and its name was subsequently changed to X in March 2023."  Matthew Frankel, *Who Owns X (Formerly Twitter)?*, The Motley Fool (Mar. 21, 2024), https://perma.cc/HG8U-RY4X.  As Musk has described it, he purchased the platform because the previous leadership's decisions about which content to host were "having a corrosive effect on civilization."  Rohan Goswami, *Elon Musk Told Joe Rogan He Bought Twitter to Stop 'Extinctionist' Mind Virus*, CNBC (Nov. 2, 2023), https://perma.cc/R36G-2W3B.  Musk was backed in the transaction by a range of prominent figures, from Silicon Valley investors to foreign sovereigns, many of whom publicly confirmed their ownership stakes in the company.  *See* Hamza Shaban & Faiz Siddiqui, *Here's Who Helped Elon Musk Buy Twitter*, Wash. Post (Dec. 24, 2022), https://perma.cc/8UHJ-J546.  On April 4, 2023, in filings in unrelated litigation, the platform disclosed that Twitter, Inc., had been merged into X Corp., and that X Corp., in turn, is wholly owned by a holding company named X Holdings Corp.  *See* Low

De Wei & Marika Katanuma, *Twitter Company 'No Longer Exists'; It's Now Part of Musk's X Corp.*, L.A. Times (Apr. 11, 2023), https://perma.cc/82SC-S7AP.

In this matter, Plaintiffs allege that the fiduciaries responsible for Twitter's severance plan failed to provide certain benefits to participants after Musk's purchase of the company. *See* Complaint at 2 (ECF No. 1). On March 7, 2024, Defendants filed a corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 3-15 that stated that X Corp. "is wholly owned by X Holdings Corp." and that "[n]o publicly held corporation owns 10% or more of X Corp.'s stock," but did not otherwise identify the individuals or entities with a financial interest at stake in these proceedings. Defs.' Rule 7.1 Corporate Disclosure Statement and Certification Pursuant to Local Rule 3-15 at 1 (ECF No. 55). On May 6, Plaintiffs moved this Court for an order requiring Defendants to supplement their disclosure statement, pointing out that Defendants' failure to disclose the owners of X Holdings Corp. failed to comply with Local Rule 3-15's requirement that a statement disclose any individuals or entities with "a financial interest of any kind in the subject matter in controversy or in a party to the proceeding." Pls.' Administrative Motion at 4 (quoting L.R. 3-15) (emphasis omitted). This Court granted that motion on May 29. *See* Order (ECF No. 90).

On June 26, Defendants moved for leave to file a supplemental disclosure statement that would redact in their entirety the names of the individuals or entities

with an ownership interest in X Holdings Corp.  *See* Disclosure Statement at 1–5;

Defs.' Admin. Mot. to Seal at 1–6 (ECF No. 95).  Plaintiffs did not oppose sealing.

To vindicate the strong public interests at stake in public access to the

Disclosure Statement—including not just the public's right to monitor the handling of

these judicial proceedings but also its ability to understand the ownership of "the

modern public square," *Packingham*, 582 U.S. at 107—Mr. Silverman seeks to

intervene in this matter for the limited purpose of opposing the motion to seal it.

## ARGUMENT

**I.     The motion to intervene should be granted.**

The Ninth Circuit has made clear that "[n]onparties seeking access to a judicial

record in a civil case may do so by seeking permissive intervention under Rule

24(b)."  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir.

1999); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.

1992) (intervention granted to seek modification of protective order).  The question

of public access provides the "common question of law or fact" that Rule 24(b)(1)

requires, *see San Jose Mercury News*, 187 F.3d at 1100, and such a motion is timely

even if filed "years" after the records were sealed "where an intervenor is pressing the

public's right of access to judicial records." *Id.* at 1101; *accord* L.R. 79-5(g)(3)

(emphasizing that "non-parties may, at any time, file a motion" to unseal).  Mr.

Silverman's motion to intervene should therefore be granted under Rule 24(b)(1).

Mr. Silverman is also entitled to intervene as of right.  A journalist or "a news agency has a legal interest in challenging a confidentiality order" that satisfies Rule 24(a)'s need for "an interest relating to the property or transaction that is the subject of the underlying action."  *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001).  That interest is not "adequately protected by the parties."  *San Jose Mercury News*, 187 F.3d at 1101; *see also BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019) ("Most litigants have no incentive to protect the public's right of access.").  And, as already explained above, intervention is timely.

Through either lens, because "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" when public access to judicial records or proceedings is at stake, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation and internal quotation marks omitted), Mr. Silverman's motion to intervene to oppose sealing should be granted.

## II.   Defendants' motion to seal should be denied.

Defendants have not justified—and cannot justify—keeping the contents of the Disclosure Statement secret.  In federal litigation, corporate disclosure statements are almost invariably available to the public:  Their relevance to evaluating conflicts of interest implicates "matters of utmost public concern," *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3 (internal citation omitted), and no countervailing interests favor secrecy because "the public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute a clearly defined and serious

injury" that would justify abridging the public's understanding of the judicial process, *Darton Archery, LLC v. Bowtech, LLC*, No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023). The First Amendment and common law require the same result here, where the heightened public interest in understanding the financial interests that shape free expression on one of the world's most widely used platforms is at stake.

A.    **The First Amendment and common law presumptions of public access attach to Rule 7.1 corporate disclosure statements.**

"The law recognizes two qualified rights of access to judicial proceedings and records, a common law right 'to inspect and copy public records and documents, including judicial records and documents,' . . . and a 'First Amendment right of access'" to certain judicial proceedings and documents. *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (first quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978), then quoting *Press-Enter. Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986)). Both the First Amendment and common law presumptions of access attach to corporate disclosure statements.

In determining whether the First Amendment presumption attaches to a class of records, courts look to the complementary and related considerations of "experience and logic"—that is, "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478

U.S. at 8, 9.  Applying that framework, other federal courts have readily concluded that the constitutional presumption of access attaches to disclosure statements.  *See Steel Erectors, Inc.*, 312 F.R.D. at 675.  As to experience, public access to such statements has been the historical rule and any degree of secrecy a "narrow exception."  *Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc.*, No. 3:22-cv-00237, 2023 WL 4711158, at *3 (W.D. Pa. July 24, 2023); *see also, e.g.*, *Manssor v. NRRM, LLC*, No. 23-cv-00236, 2023 WL 4093413, at *2 (W.D. Tex. June 20, 2023) (corporate disclosure statements can be sealed only in "limited circumstances").[1]

Logic points in the same direction.  "[T]he corporate disclosure form is required so that the court can evaluate issues of jurisdiction and recusal—issues that are central to the performance of the judicial function and useful in the judicial process."  *Mayer v. Patriot Pickle Inc.*, No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (internal citation omitted).  Because of their relationship to judicial integrity, such disclosures implicate "matters of utmost public concern" at the heart of the public's right to supervise and understand the judicial process.  *Steel Erectors, Inc.*, 312 F.R.D. at 675 n.3 (internal citation omitted); *see also Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018)

---

[1]      Defendants point to *Anoke v. Twitter*, No. 3:23-cv-002217 (N.D. Cal. June 13, 2023), as an example of another matter in which they were permitted to file this information under seal.  But the summary order in that case contained no reasoning and no findings, likely because no members of the press or public were heard on the propriety of sealing.  Moreover, Mr. Silverman's motion to intervene and unseal in *that* case is currently pending before Judge Illston.  *See* Motion of Non-Party Jacob Silverman to Intervene and Unseal Judicial Records, *Anoke v. Twitter*, No. 3:23-cv-002217 (N.D. Cal. July 3, 2024) (ECF No. 44).  *Anoke* provides no basis for secrecy here.

(judicial records that implicate recusal "relat[e] to respect for the legal system" and therefore trigger "the presumption of a public right to court records").  As the U.S. Court of Appeals for the First Circuit recently observed in the related context of pseudonymity, obscuring the true parties-in-interest in a proceeding "dims the public's perception of the matter and frustrates its oversight of judicial performance;" impedes press and public scrutiny of "judicial conflicts of interest" or "ex parte contacts;" and ultimately undermines the public's ability to judge "whether justice was done." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68 (1st Cir. 2022).  Both experience and logic,[2] then, make clear that the First Amendment presumption of access to judicial records attaches to corporate disclosure statements in particular.

The common law both reinforces that conclusion and affords a separate basis for presuming public access to disclosure statements.  The common law guarantees "a strong presumption in favor of access to court records," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), one that attaches to any judicial record "more than tangentially related to the merits of a case," *Ctr. for Auto Safety v. Chrysler Group*, 809 F.3d 1092, 1101 (9th Cir. 2016).  Corporate disclosure statements easily clear that bar because of their necessity, as discussed above, to

---

[2]     As the Ninth Circuit has explained, either consideration standing alone can ground a presumption of access to a particular class of judicial records: "Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows," *In re Copley Press*, 518 F.3d 1022, 1026 n.2 (9th Cir. 2008),  but "even without an unbroken history of public access, the First Amendment right" will attach "if public scrutiny would benefit the proceedings." *Id.* (internal citation and quotation marks omitted).  This case is especially straightforward, though, because both complementary considerations support a constitutional presumption of public access.

"evaluat[ing] issues of jurisdiction and recusal—issues that are central to the

performance of the judicial function and useful in the judicial process." *Mayer*, 2024

WL 162881 at *5 (internal citation omitted).  It is no wonder, then, that numerous

courts have recognized a common law presumption of access to such statements.[3]

In sum, whether under the First Amendment or common law, the clear weight

of authority makes clear that the press and public have a presumptive right of access

to the disclosure statement that Defendants must file with the Court in this matter.

## B.     Neither the First Amendment nor the common law presumption of public access is overcome with respect to the Disclosure Statement.

Where the First Amendment presumption attaches to a judicial record, it may

be overcome only if—and only to the extent that—"(1) closure serves a compelling

interest; (2) there is a substantial probability that, in the absence of closure, this

compelling interest would be harmed; and (3) there are no alternatives to closure that

would adequately protect the compelling interest." *Oregonian Publ'g Co. v. U.S.

Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990).  A party can

only overcome the "strong" common law presumption, for its part, by demonstrating

---

[3]      *See, e.g.*, *Wilkins v. Tory Burch, LLC*, No. 4:23-cv-422, 2023 WL 3600084, at *1–2 (E.D. Mo. May 23, 2023);  *Wiens Cap. Mgmt., LLC v. Advoc. Consulting Legal Grp., PLLC*, No. 2:23-cv-81, 2023 WL 2435806, at *1–2 (M.D. Fla. Feb. 16, 2023); *Carlyle v. Cicatello*, No. 1:22-CV-61, 2022 WL 21794410, at *1 (M.D. Ga. Nov. 28, 2022); *WSOU Invs., LLC v. Salesforce, Inc.*, No. 6:20-cv-1163, 2023 WL 2213200, at *2 (D. Del. Feb. 24, 2023); *Darton Archery, LLC*, 2023 WL 2755760, at *1.  The lone exception on which Defendants' wholly rely, *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932, 2014 WL 5687730, at *2 (D. Nev. Nov. 4, 2014), was decided on the ground that corporate disclosure statements are "non-dispositive," *id.*—but the Ninth Circuit has since rejected the suggestion that the common law presumption of public access turns on whether a judicial record is literally "dispositive" in favor of the "more than tangentially related to the merits" test, *Ctr. for Auto Safety*, 809 F.3d at 1101.  *Best Odds* is therefore no longer good law.

"compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted).  In either analysis, blanket secrecy is disfavored because tailored redactions offer a less-restrictive alternative.  *See id.* at 1183–85; *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1093 (9th Cir. 2014).  Here, where the Disclosure Statement implicates both the "public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors, Inc.*, 312 F.R.D. at 675, and the public's ability to understand the ownership of "the modern the public square," *Packingham*, 582 U.S. at 107, Defendants' showing falls well short of justifying sealing the Disclosure Statement.

For one, Defendants have attempted only a good-cause showing, which "will not, without more, satisfy a 'compelling reasons' test"—to say nothing of the First Amendment.  *Kamakana*, 447 F.3d at 1181.  But under any standard, as a long line of courts have held in this same posture, "[p]ublic disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute an injury.  Corporations and LLCs may offer individuals protection from liability, but they don't entitle individuals to anonymity in court proceedings." *WSOU Investments*, 2023 WL 2213200, at *2.[4]  Defendants rely entirely on *Valley Bank of Nevada v. Superior Ct.*, 15 Cal. 3d 652 (1975), for the contrary suggestion that

---

[4]     *Accord Mayer*, 2024 WL 162881, at *4; *Darton Archery, LLC*, 2023 WL 2755760, at *1; *Wiens Cap. Mgmt.*, 2023 WL 2435806, at *1–2; *Manssor*, 2023 WL 4093413, at *2; *Driver Opportunity Partners I*, 2023 WL 4711158, at *3; *Carlyle*, 2022 WL 21794410, at *1.

California recognizes an outlier right to corporate privacy, but that case does nothing to move the ball forward.  Setting aside the fact that *Valley Bank* dealt with consumer banking information, not a corporation's ownership information, that case spoke to the scope of *discovery*; it has nothing to say about the standard for sealing judicial records subject to a presumption of access.  *See Overstock.com, Inc. v. Goldman Sachs Group, Inc.*, 231 Cal. App. 4th 471, 504 (2014) (distinguishing *Valley Bank* on that ground); *see also In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1063 (2006) (*Valley Bank* "does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are . . . presumptively public records").  Otherwise, *Valley Bank* would suggest that Local Rule is invalid *in toto*, and that Rule 7.1 disclosure statements should be sealed as a matter of course.  That is not, it likely goes without saying, this or any other jurisdiction's practice.

Without some concrete explanation of the harm that would result from transparency, Defendants' threadbare gestures at corporate privacy fall well short of its burden to show "articulable facts identifying interests favoring continued secrecy, *and* to show that these specific interests overc[o]me the presumption of access by outweighing the public interest in understanding the judicial process."  *Kamakana*, 447 F.3d at 1181 (internal citation and quotation marks omitted).  The naked assertion that transparency here "potentially could enable X Holdings Corp.'s competitors to undermine X Holdings Corp.'s competitive position in the marketplace, allow current or prospective business partners or counterparties to take

unfair advantage of X Holdings Corp. in negotiations or other business affairs, or otherwise prejudice X Holdings Corp.'s business interests," Defs.' Admin. Mot. to Seal at 4, for its part, is a classic example of the sort of conclusory "hypothesis or conjecture" that is inadequate to justify sealing judicial records. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *see Mayer*, 2024 WL 162881, at *4 (denying motion to seal disclosure statement where party claimed "that its corporate structure and ownership information are confidential business information" but "[did] not explain how disclosure of that purportedly confidential information might damage its business" (internal quotation marks and alteration omitted)).  What's more, even if it were true that transparency might—through some unexplained process to which the other firms that file disclosure statements daily in the federal courts are not vulnerable—harm Defendants' competitive interests, Defendants would still have failed to meet their burden because their motion to seal nowhere explains "why its business interests outweigh the public interest in disclosure of companies with whom a federal judge may have a conflict of interest." *Steel Erectors*, 312 F.R.D. at 67.

The keen public interest in the information in question only underlines that Defendants cannot justify secrecy here.  For one, Defendants' insistence that this Court can evaluate recusal even if the information is kept secret from the public is irrelevant.  "Recusal issues involve the operations of the courts and the judicial conduct of judges," issues "of utmost public concern" that the public is entitled to evaluate for itself through first-hand access to judicial records, *Steel Erectors,* 312

F.R.D. at 675 n.3 (internal citation omitted), and courts have therefore forthrightly rejected the suggestion that disclosure statements can be sealed simply because the Court would still have enough information, *see Mayer*, 2024 WL 162881, at *5.

Moreover, the possible influence of a social media platform's ownership on its content and privacy practices is a subject of recurring—and legitimate—public controversy, as Musk's own explanations for acquiring Twitter highlight. *See* Goswami, *supra*. Only a few months ago, Congress adopted new legislation to ratchet up regulatory scrutiny of platforms controlled by "foreign adversaries," Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50 (Apr. 24, 2024), and the President and members of Congress have raised similar concerns over the degree of control major foreign investors may have over X Corp., *see* Faiz Siddiqui et al., *U.S. Exploring Whether It Has Authority to Review Musk's Twitter Deal*, Wash. Post (Nov. 1, 2022), https://perma.cc/4NYC-ETFS; Rebecca Kern, *Musk's Foreign Investors In Twitter Are 'Worthy' of Review, Biden Says*, POLITICO (Nov. 9, 2022),  https://bit.ly/3RFfp9Q.  The public involvement of the Kingdom of Saudi Arabia's Prince Alaweed bin Talal al Saud, *see* Shaban & Siddiqui, *supra*, has drawn special scrutiny because of the Kingdom's history of infiltrating Twitter to collect sensitive information on dissidents, *see* Patrice Taddonio, *How Saudi Arabia Weaponized Twitter to Target MBS Critics*, PBS (Nov. 7, 2019), https://perma.cc/W274-JPTK.  But any number of journalists and news organizations have raised broader concerns about the possibility that X Corp.'s

financial interests have influenced its greater willingness, since Musk's purchase of the platform, to remove content at the request of authoritarian governments. *See* María Antonia Sánchez-Vallejo, *Under Elon Musk, Twitter Has Approved 83% of Censorship Requests by Authoritarian Governments*, El País (May 24, 2023), https://perma.cc/PQJ8-CLFA. Whether those apprehensions are well-founded or not, the public has an interest in understanding who controls the firms that operate "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham*, 582 U.S. at 107.

Taken together, the balance of interests tips dramatically in favor of access. Defendants have offered only conclusory assertions that disclosure of their ownership information—apparently unlike disclosure of the ownership information of the legions of other corporate entities that litigate daily, in sunlight, in the federal courts—would cause unspecified harm to its business. Whether under the First Amendment or the common law, Defendants' motion to seal should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Silverman respectfully requests that the Court grant his motion to intervene and deny Defendants' motion to seal the Disclosure Statement.

Dated: July 9, 2024

s/ *Katie Townsend*
Katie Townsend

1

2

REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

3

4

*Counsel for Non-Party Intervenor*
JACOB SILVERMAN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY JACOB
SILVERMAN TO INTERVENE AND OPPOSE SEALING JUDICIAL RECORDS — CASE NO. 3:23-cv-03461-TLT