1  KATIE TOWNSEND (SBN 254321)
   ktownsend@rcfp.org
2  GRAYSON CLARY (*pro hac vice*)
   gclary@rcfp.org
3  REPORTERS COMMITTEE FOR
4  FREEDOM OF THE PRESS
   1156 15th Street NW, Suite 1020
5  Washington, D.C. 20005
   Telephone: (202) 795-9300
6  Facsimile: (202) 795-9310
7
   JEAN-PAUL JASSY (SBN 220513)
8     jpjassy@jassyvick.com
   JASSY VICK CAROLAN LLP
9  355 South Grand Avenue, Suite 2450
   Los Angeles, California 90071
10 Telephone:    310-870-7048
   Facsimile:    310-870-7010
11
12 NICHOLAS R. HARTMANN (SBN 301049)
      nhartmann@jassyvick.com
13 JASSY VICK CAROLAN LLP
   601 Montgomery Street, Suite 850
14 San Francisco, California 94111
   Telephone:    415-539-3399
15 Facsimile:    415-539-3394
16
   *Counsel for Non-Party Intervenor*
17 JACOB SILVERMAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MCMILLIAN and RONALD COOPER, | Case No. 3:23-cv-03461-TLT |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION OF NON-PARTY JACOB SILVERMAN TO INTERVENE AND OPPOSE SEALING JUDICIAL RECORDS** |
| v. | |
| X CORP., f/k/a TWITTER, INC., X HOLDINGS, ELON MUSK, DOES. | DATE: October 1, 2024 TIME: 2:00PM |
| Defendants. | Judge: Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ................................................................................................................. iii

SUMMARY OF ARGUMENT ............................................................................................................. 1

ARGUMENT ......................................................................................................................................... 2

I.    The motion to intervene should be granted. ............................................................................ 2

    A.    The motion to intervene is timely. ................................................................................ 3

    B.    Defendants are not prejudiced by being held to their burden to prove compelling reasons to justify sealing the Disclosure Statement. ..................................................... 5

II.    The Disclosure Statement should not be sealed. ..................................................................... 6

    A.    The First Amendment requires access to the Disclosure Statement. ........................... 6

    B.    The common law requires access to the Disclosure Statement. .................................. 8

    C.    Even under a good-cause standard, the Disclosure Statement should not be sealed. 10

CONCLUSION .................................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   404 F. Supp. 3d 486 (D. Mass. 2018) .............................................................................. 9

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ............................................................................................ 4

*Best Odds Corp. v. iBus Media Ltd.*,
   No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014) ...................................... 9

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
   712 F.3d 1349 (9th Cir. 2013) ................................................................................ 1, 4, 5

*Cosgrove v. Nat'l Fire & Marine Ins. Co.*,
   770 F. App'x 793 (9th Cir. 2019) ................................................................................ 3, 5

*Courthouse News Serv. v. Planet*,
   947 F.3d 581 (9th Cir. 2020) ............................................................................................ 6

*Ctr. for Auto Safety v. Chrysler Grp.*,
   809 F.3d 1092 (9th Cir. 2016) .......................................................................................... 9

*Darton Archery, LLC v. Bowtech, LLC*,
   No. 23-cv-140, 2023 WL 2755760 (D. Del. Apr. 3, 2023) .............................................. 2

*Doe v. Mass. Inst. of Tech.*,
   46 F.4th 61 (1st Cir. 2022) ................................................................................................ 6

*El Vocero de Puerto Rico v. Puerto Rico*,
   508 U.S. 147 (1993) .......................................................................................................... 7

*Globe Newspaper Co. v. Super. Ct.*,
   457 U.S. 596 (1982) .......................................................................................................... 7

*Grosjean v. Am. Press Co.*,
   297 U.S. 233 (1936) ........................................................................................................ 10

*In re Copley Press*,
   518 F.3d 1022 (9th Cir. 2008) ..................................................................................... 1, 6

*In re Marriage of Burkle*,
   135 Cal. App. 4th 1045 (2006) .................................................................................... 2, 8

*Jones v. PGA Tour, Inc.*,
   No. 22-cv-04486, 2023 WL 5520771 (N.D. Cal. Aug. 24, 2023) ............................... 3, 4

*Kamakana v. City & County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................................................................. 8

*Mayer, v. Patriot Pickle Inc.*,
  No. 23-CV-1299, 2024 WL 162881 (W.D.N.Y. Jan. 16, 2024) ....................................................... 9

*Muhaymin v. City of Phoenix*,
  No. CV-17-04565, 2021 WL 5173767 (D. Az. Nov. 3, 2021) ................................................... 1, 5

*Overstock.com, Inc. v. Goldman Sachs Group, Inc.*,
  231 Cal. App. 4th 471 (2014) .................................................................................................. 8

*Packingham v. North Carolina*,
  582 U.S. 98, 107 (2017) ................................................................................................. 2, 8, 10

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ............................................................................................... 10

*Press-Enter. Co. v. Super. Ct.*,
  464 U.S. 501 (1984) ................................................................................................................ 7

*Pub. Citizen v. Liggett Grp., Inc.*,
  858 F.2d 775 (1st Cir. 1988) .................................................................................................... 3

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*,
  187 F.3d 1096 (9th Cir. 1999) ......................................................................................... 1, 3, 5

*Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*,
  312 F.R.D. 673 (S.D. Ga. 2016) ............................................................................................ 2, 8

*Valley Bank of Nev. Super. Ct.*,
  15 Cal. 3d 652 (1975) ........................................................................................................... 2, 8

**Other Authorities:**

Nate Raymond & Moira Warburton, *Congress Approves Tougher Financial Disclosure Rules for
  U.S. Judges*, Reuters (Apr. 27, 2022) ........................................................................................ 7

**Rules:**

L.R. 7-11 .......................................................................................................................................... 4

L.R. 79-5 ...................................................................................................................................... 1, 4

## SUMMARY OF ARGUMENT

Defendants—conceding, as they must, that "corporate disclosure statements are generally publicly available on court dockets," Defs.' Opp'n at 15 (ECF No. 105)[1]—are so unable to justify sealing the one they filed in this case that their main line of defense is this: Mr. Silverman, a non-party journalist, had just a four-day window in which to raise the press and public's presumptive right of access to judicial records. Even a cursory effort to review this Court's local rules and Ninth Circuit law would have made clear to Defendants that their argument is frivolous. *See* L.R. 79-5(g)(3) (providing that "non-parties may, at any time, file a motion requesting that the Court unseal a document," including "after the case is closed"); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999) ("[D]elays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records."). The rest of Defendants' arguments for secrecy are just as weak.

As to intervention, Defendants acknowledge that the only relevant question is timeliness, *see* Defs.' Opp'n at 9–10, and they have nothing to counter the "consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated," *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (citation omitted). Timeliness is measured relative to prejudice, *see id.* at 1354, and the only prejudice Defendants point to is that they must respond to Mr. Silverman's arguments against sealing the Disclosure Statement and might lose, *see* Defs.' Opp'n at 11. But the mere fact that Defendants "need to explain why the relevant records should remain sealed is not, itself, unduly prejudicial. It is, after all, their burden to establish that either good cause or compelling reasons justify curtailing the public's right to access judicial records." *Muhaymin v. City of Phoenix*, No. CV-17-04565, 2021 WL 5173767, at *2 (D. Az. Nov. 3, 2021).

The merits are likewise straightforward. As Defendants concede, "corporate disclosure statements are generally publicly available," Defs.' Opp'n at 15; that tradition of access settles that

---

[1] Throughout this reply, citations to filings in this action use the internal pagination of the document in question.

a First Amendment presumption of access applies, *see In re Copley Press*, 518 F.3d 1022, 1026 n.2 (9th Cir. 2008) ("[w]here access has traditionally been granted to the public," the constitutional presumption attaches). And the entirety of Defendants' effort to show a countervailing interest sufficient to overcome that presumption rests on the incorrect claim that California recognizes a constitutional right not to file corporate-disclosure information. *Compare* Defs.' Opp'n at 13 (citing *Valley Bank of Nev. Super. Ct.*, 15 Cal. 3d 652, 656 (1975)), *with In re Marriage of Burkle*, 135 Cal. App. 4th 1045, 1063 (2006) (*Valley Bank* "does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are . . . presumptively public records"). Were that the case, Local Rule 3-15 would be invalid in all its applications, and corporate disclosure statements would be sealed in each and every case heard in this District.

That is not the law. Whether under the First Amendment, common law, or good cause, the result is ultimately the same: "Public disclosure that an individual has an ownership interest in an entity created by a state cannot be said to constitute a clearly defined and serious injury," *Darton Archery, LLC v. Bowtech, LLC*, No. 23-cv-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023). Defendants' bare desire to keep their Disclosure Statement secret trumps neither the "public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 675 & n.3 (S.D. Ga. 2016), nor the public's interest in understanding the ownership of "the modern public square," *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). For the reasons herein and in Mr. Silverman's opening memorandum of law, the Disclosure Statement should not be sealed.

## ARGUMENT

### I.  The motion to intervene should be granted.

Defendants' principal bid is a lengthy objection to Mr. Silverman's intervention. As they candidly reveal, Defendants believe they will be "prejudiced" because Mr. Silverman may "succeed[] in opposing the sealing of the Statement," Defs. Opp'n at 7. But Defendants' fear that they will fail to persuade this Court on the merits is not a valid reason to deny intervention. Courts

routinely allow journalists to present more thorough arguments for access than the parties did,[2] even where "years" have passed since an action was dismissed, *San Jose Mercury News*, 187 F.3d at 1101, to say nothing of a motion filed while the case remained live, *see Jones v. PGA Tour, Inc.*, No. 22-cv-04486, 2023 WL 5520771, at *2–3 (N.D. Cal. Aug. 24, 2023) (granting the *New York Times*' motion to intervene and unseal records on a "10- to 18-week delay," hours before the action was dismissed). Indeed, intervention by members of the press and public to unseal judicial records is so routine that the Ninth Circuit has instructed district courts to simply proceed to the merits in that posture, *see Cosgrove v. Nat'l Fire & Marine Ins. Co*,. 770 F. App'x 793, 795 (9th Cir. 2019) ("In ruling on a motion to intervene for this purpose, a court *must* evaluate whether the countervailing interests opposing public disclosure can overcome the presumption in favor of it." (emphasis added)). The same holds here.

### A. The motion to intervene is timely.

As Defendants agree, when a non-party moves to intervene for the limited purpose of unsealing judicial records, the only question to be addressed is timeliness.[3] *See* Defs.' Opp'n at. 14. And the answer is clear: "[D]elays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records," *San Jose Mercury News*, 187 F.3d at 1101, because where a right of access exists, "it exists today for the records of cases decided a hundred years ago as surely as [it] does for lawsuits now in the early stages of motions litigation," *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (internal citation omitted).

---

[2] Defendants' suggestion that the public's interest in transparency was adequately represented by the Plaintiffs when Defendants' motion to seal was <u>unopposed</u> is, to put it mildly, meritless. *See San Jose Mercury News,* 187 F.3d at 1101 ("The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away."); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (condemning "stipulated sealings . . . where the parties agree, the busy district court accommodates, and nobody is left in the courtroom to question whether the decision satisfied the substantive requirements").

[3] Mr. Silverman maintains that intervention as of right is also proper for the reasons stated in his opening memorandum. But because the permissive intervention inquiry is straightforward—and avoids a question the Ninth Circuit has not yet addressed—this Reply focuses there.

     Defendants have failed to surface a single case in which a journalist or news organization was denied leave to intervene to unseal judicial records on timeliness grounds. Indeed, in a failure of candor with the Court, Defendants simply ignore clear and binding Ninth Circuit precedent that forecloses their argument that Mr. Silverman's "request to intervene in a case where Plaintiffs' claims have been dismissed cannot be construed as timely." Defs.' Opp'n at 7. Setting aside the fact that Mr. Silverman moved to intervene before dismissal was granted, *see PGA Tour, Inc.*, 2023 WL 5520771, at *2–3 (granting a news organization's motion to intervene in just that posture), this jurisdiction—and every other—follows the "consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." *Blum*, 712 F.3d at 1353 (internal citation omitted) (collecting cases); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 471 (9th Cir. 1992) (two years after dismissal).

     Rather than acknowledge that authority, Defendants insist that members of the press and public have just four days after a party files a motion to seal to learn of the case and the pending sealing motion, obtain counsel, and file a full-fledged motion to intervene to object to sealing. *See* Defs.' Opp'n at 14 (citing Civ. L.R. 7-11(b)). Setting aside the fact that such an approach would be utterly unworkable, this Court's Local Rules say no such thing. Local Rule 7-11(b) is addressed to the parties, *see* L.R. 7-11(b) (referencing service on the "other parties"), while Local Rule 79-5(g)(3) governs motions to unseal judicial records brought by "non-parties" like Mr. Silverman. L.R. 79-5(g)(3).[4] And that Rule, for its part, expressly provides that "non-parties may, <u>at any time</u>, file a motion requesting that the Court unseal a document"—including "after the case is closed." *Id.* (emphasis added); *see also, e.g.*, *PGA Tour, Inc.*, 2023 WL 5520771, at *2–3 (citing L.R. 79-5(g)(3) in granting a motion to intervene and unseal filed several hours before the action was dismissed).

     Just as fundamentally, though, the passage of time is relevant to the intervention inquiry <u>only</u> if it causes prejudice to a party. *See Blum*, 712 F.3d at 1354 ("Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of rights of the existing parties" (internal

---

[4] Further underlining the point, Local Rule 7-11(b) applies only to an "Opposition to or Support for Motion for Administrative Relief," which is not what Mr. Silverman filed. He filed a standalone motion to intervene, which is why Defendants filed an opposition rather than a reply.

citation omitted)). And as discussed below, Defendants' arguments as to prejudice not only have nothing to do with the timing of Mr. Silverman's motion, they lack merit on their own terms.

### B. Defendants are not prejudiced by being held to their burden to prove compelling reasons to justify sealing the Disclosure Statement.

Prejudice is rarely, if ever, a bar to a motion to intervene to unseal judicial records: "[A]ssuming an intervenor does assert a legitimate, presumptive right to open the court record of a particular dispute, the potential burden or inequity to the parties should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion[.]" *San Jose Mercury News*, 187 F.3d at 1101. In other words, whether Defendants can demonstrate cognizable harm if the Disclosure Statement is unsealed is a merits question, not a reason to avoid reaching the merits. *See Cosgrove*, 770 F. App'x at 795. And the rule in this jurisdiction, as Local Rule 79-5 reflects, is that prejudice can rarely, if ever, be found in closed cases. *See Blum*, 712 F.3d at 1354 (prejudice "not present when the existing parties have settled their dispute and intervention is for a collateral purpose" (internal citation omitted)).

Defendants offer no basis for departing from that rule here. Again, they fail to cite a single case denying a journalist's motion to intervene to unseal judicial records on the basis of prejudice. Instead, Defendants object without citation to that they do not want Mr. Silverman to "succeed[] in opposing the sealing of the [Disclosure] Statement." Defs.' Opp'n at 7, and that they resent "litigat[ing] the sealing of the Statement when the parties had already agreed that Plaintiffs would not oppose such a sealing," *id.* at 9. But those complaints could just as well apply to every motion to intervene—they have nothing to do with whether Mr. Silverman intervened one day or one decade after the motion to seal was filed—and the fact that Plaintiffs did not oppose secrecy makes it more, not less, important that Mr. Silverman be heard: "The right of access to court documents belongs to the public, and the Plaintiffs were in no position to bargain that right away." *San Jose Mercury News*, 187 F.3d at 1101.

At base, Defendants' only complaint is that they "will need to explain why the relevant records should remain sealed." *Muhaymin*, 2021 WL 5173767, at *2. That is the point of the right of access, not prejudice. After all, it is Defendants' "burden to establish that either good cause or

compelling reasons justify curtailing the public's right of access to judicial records." *Id.* And as Defendants' efforts to avoid the issue underline, they cannot meet that burden in this case.

**II.     The Disclosure Statement should not be sealed.**

Conceding that "corporate disclosure statements are generally publicly available on court dockets," Defs.' Opp'n at 15, Defendants contend theirs should be kept uniquely secret. The reasons they offer—which would describe every such statement—do not satisfy their burden under any plausibly relevant standard: not the First Amendment, not common law, and not good cause.

**A.     The First Amendment requires access to the Disclosure Statement.**

"[B]oth our common experience and the logical extension of First Amendment principles leads to the conclusion that the press's right of access to civil proceedings and documents fits squarely within the First Amendment's protections." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (internal citation and alteration omitted).[5]  And the same considerations of experience and logic make clear that the presumption attaches to corporate disclosure statements in particular. As Defendants concede, experience supports a First Amendment presumption of access to disclosure statements. *See* Defs.' Opp'n at 19. And that ends the analysis: "Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows. It is only where access has traditionally not been granted that we look to logic." *In re Copley Press*, 518 F.3d at 1026 n.2.

Logic, in any event, would lead to the same result. Defendants' suggestion that public access to disclosure statements plays no positive role in the judicial process is, frankly, ridiculous. Courts have forthrightly recognized the "contribution to governance of investigative reporting" that exposes "judicial conflicts of interest." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68–69 (1st Cir. 2022) (internal citation omitted). Just three years ago, an investigation by the *Wall Street Journal*

---

[5]     Again, Defendants' brief failed to draw the Court's attention to binding Circuit precedent. *See* Defs.' Opp'n at 14 n.3 (citing a 2019 decision to argue that "a court within this district questioned whether the First Amendment standard even applied to access to civil proceedings" without acknowledging the Ninth Circuit's contrary holding in *Courthouse News* in 2020).

1  relied on corporate disclosure statements to surface nearly 700 cases in which more than 100 federal

2  judges improperly failed to recuse—prompting a wave of vacated rulings, reforms from the Judicial

3  Conference, and bipartisan legislation.  *See* Nate Raymond & Moira Warburton, *Congress Approves*

4  *Tougher Financial Disclosure Rules for U.S. Judges*, Reuters (Apr. 27, 2022),

5  https://bit.ly/4c5ABNr.

6        Without experience or logic to stand on, Defendants lean on a non-sequitur, arguing that

7  "while corporate disclosure statements are generally publicly available on court dockets, the

8  information regarding the identities of privately held companies' shareholders is not publicly

9  available information." Defs.' Opp'n at 15.[6]  That attempt to conflate the two stages of the right of

10  access inquiry is precisely the type of gambit the Supreme Court squarely rejected in *Globe*

11  *Newspaper*.  There, Massachusetts attempted to evade the presumption of access to criminal trials

12  by disputing the history of access to "the testimony of minor sex victims" in particular.  *Globe*

13  *Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 605 n.13 (1982).  But the Justices rejected that evasion,

14  emphasizing that the presumption of access attaches to criminal trials "as a general matter" and

15  "[w]hether the First Amendment right of access to criminal trials can be restricted in the context of

16  any particular criminal trial . . . depends not on the historical openness of that type of criminal trial

17  but rather on the state interests assertedly supporting the restriction."  *Id.*  So too here.  Whatever

18  information Defendants happen to have included in <u>this</u> Disclosure Statement, they cannot avoid

19  confronting the presumption of access to such statements "as a general matter."  *Id*

20        And as to this Disclosure Statement, Defendants cannot carry their burden to show that

21  sealing "is essential to preserve higher values and is narrowly tailored to serve that interest."

22  *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 510 (1984).  The entirety of Defendants' discussion of

23  countervailing interests is this: "Article I, section 1 of the California Constitution provides a

24

25  [6]  Defendants also include an extended comparison of the local rules of this Court and the
26  Southern District of Georgia, but it is difficult to understand why:  The First Amendment "does not look to the particular practice of any one jurisdiction but instead to the experience in that *type* or
27  *kind* of hearing throughout the United States." *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (per curiam) (internal citation omitted).  Defendants do not dispute that disclosure
28  statements are generally available to the public in this and every other jurisdiction.

constitutional inalienable right to privacy, which includes the privacy of a person's financial information, such as investments and financial holdings." Defs.' Opp'n at 13 (citing *Valley Bank*, 15 Cal. 3d at 656)). But California law says no such thing. As Mr. Silverman's opening brief pointed out, setting aside the fact that *Valley Bank* dealt with consumer banking information—not a corporation's ownership information—that case spoke to the scope of <u>discovery</u>; it has nothing to say about the standard for sealing judicial records. *See Overstock.com, Inc. v. Goldman Sachs Group, Inc.*, 231 Cal. App. 4th 471, 504 (2014) (distinguishing *Valley Bank* on that ground); *see also In re Marriage of Burkle*, 135 Cal. App. 4th at 1063 (*Valley Bank* "does not mean that parties who come to court, voluntarily or not, are entitled to privacy in respect of court records that are . . . presumptively public records"). Defendants entirely fail to respond.

As Mr. Silverman's opening memorandum explained, the overwhelming weight of persuasive authority that has dealt with corporate-ownership information holds that avoiding disclosure of an ownership interest is not a valid interest—let alone a compelling one. *See* Mem. of P. & A. at 20 & n.4 (ECF No. 96) (collecting cases). Defendants have offered nothing that would overcome "the public interest in disclosure of companies with whom a federal judge may have a conflict of interest," *Steel Erectors*, 312 F.R.D. at 675, to say nothing of the heightened public interest in understanding who owns one of "the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham*, 582 U.S. at 107. The First Amendment requires public access to the Disclosure Statement.

   **B.**  **The common law requires access to the Disclosure Statement.**

Defendants likewise cannot justify secrecy under the common law, which would require showing "compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted). Protesting that burden, Defendants insist that "[t]he Statement was not part of any dispositive motion and was not tangentially or even remotely related in any way to the merits of this action." Defs.' Opp'n at 2. That claim makes no sense. It would have been a grave ethical breach for this Court to grant Defendants' motion to dismiss <u>without</u> first considering the Disclosure Statement and evaluating whether to recuse; that is surely not what happened. And

because consideration of the Disclosure Statement was a mandatory prerequisite to this Court's power to adjudicate the merits, other courts have had no difficulty concluding such statements are "central to the performance of the judicial function." *Mayer, v. Patriot Pickle Inc.*, No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (internal citation omitted). The point of the common law presumption is to promote "confidence in the administration of justice," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal citation omitted), and no issue is more central to "respect for the legal system" than the possible existence of grounds for recusal. *Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018).

Defendants also continue to cling to *Best Odds Corp. v. iBus Media Ltd.*, No. 2:14-cv-00932, 2014 WL 5687730 (D. Nev. Nov. 4, 2014). But as Mr. Silverman's opening brief explained, *Best Odds* was decided under a standard that the Ninth Circuit rejected in *Center for Auto Safety*, and it appears to have never been cited by any other court for its analysis of the issue. No wonder, because the decision's entire analysis of whether a presumption of access attached is this sentence: "iBus Media Limited's motion is non-dispositive." *Id.* at *2. But even putting that aside, *Best Odds* is distinguishable. The statement there was sealed "as a prophylactic against potential litigation abuses that will needlessly increase the cost of litigation." *Id.* at *3; *see also id.* at *1 (noting that the plaintiff had "a history of filing baseless 'strike' suits" and allegedly had filed the case solely "to discover the identity of Defendants' parent corporations in order to create additional leverage").

As the Ninth Circuit has explained, courts may justifiably guard against that sort of risk on a case-by-case basis. *See Ctr. for Auto Safety*, 809 F.3d at 1102 (noting that Rule 11 sanctions, not shrinking the reach of the right of access, would be the remedy if litigants used frivolous litigation to publicize information for improper purposes). But here, Defendants have not argued—and would have no basis to argue—that Mr. Silverman's motion has anything other than a journalistic purpose. Indeed, Defendants do not even respond to Mr. Silverman's discussion of the public interests at stake. The legitimate public interest in access to the Disclosure Statement is substantial, and the common law, too, requires that it be unsealed.

**C.     Even under a good-cause standard, the Disclosure Statement should not be sealed.**

Even if a good-cause standard applied (it does not), secrecy still would be improper in light of the strong public interests favoring transparency.  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).  And even where that showing is made, the court must go on to "balance[] the public and private interests" at stake.  *Id.* at 1211.  As discussed above, Defendants have not offered a legitimate interest in support of secrecy and there is nothing "specific" at all about their showing, which would apply to every corporate disclosure statement filed in this District.  *Id.*  Mr. Silverman, for his part, seeks access to the Disclosure Statement for a legitimate—and for that matter vital—purpose:  To promote "informed public opinion" on "the public and business affairs of the nation," *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936), by enabling the public to better understand the ownership of one of "the most important places . . . for the exchange of views" in contemporary American life, *Packingham*, 582 U.S. at 104.  Even under a good-cause analysis, the relevant balance of interests weighs heavily in favor of access.

## CONCLUSION

For the foregoing reasons, Mr. Silverman respectfully requests that the Court grant his motion to intervene and deny the motion to seal the Disclosure Statement.

Dated: August 5, 2024

                                               s/ *Katie Townsend*
                                               Katie Townsend
                                               REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

                                               s/ *Nicholas Ryan Hartmann*
                                               Nicholas Ryan Hartmann
                                               JASSY VICK CAROLAN LLP
                                               *Counsel for Non-Party Intervenor*
                                               JACOB SILVERMAN