Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Trina L. Thompson, Judge

COURTNEY McMILLIAN,          )
                             )
          Plaintiff,         )
                             )
   VS.                       )   **NO. 3:23-CV-03461-TLT**
                             )
X CORP., f/k/a TWITTER, INC.,)
X HOLDINGS, ELON MUSK, DOES, )
                             )
          Defendants.        )
_____)

                         San Francisco, California
                         Tuesday, December 3, 2024

                 <u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES**</u>:

For Defendants:
                    MORGAN, LEWIS & BOCKIUS LLP
                    One Market Plaza
                    Spear Street Tower, 28th Floor
                    San Francisco, California 94105
              BY:   **ERIC MECKLEY, ATTORNEY AT LAW**


For Intervenor Jacob Silverman:
                    REPORTERS COMMITTEE FOR FREEDOM
                      OF THE PRESS
                    1156 15th Street NW, Suite 1020
                    Washington, D.C. 20005
              BY:   **GRAYSON CLARY, ATTORNEY AT LAW**

                    JASSY VICK CAROLAN LLP
                    601 Montgomery Street, Suite 850
                    San Francisco, California 94111
              BY:   **NICHOLAS R. HARTMANN, ATTORNEY AT LAW**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

<u>**Tuesday - December 3, 2024**</u>                                    <u>**1:57 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

---o0o---

**THE COURTROOM DEPUTY:**  And now calling

Case Number 23-CV-03461, McMillian vs. Musk, et al.

Counsel, will you please state your appearances, beginning

with the intervenors.

**MR. CLARY:**  Grayson Clary, Your Honor, for proposed

intervenor Jacob Silverman.

**THE COURT:**  Thank you.

**MR. MECKLEY:**  Good afternoon, Your Honor.  Eric

Meckley appearing on behalf of defendants.

**THE COURT:**  Good afternoon.

Now, I know this was a case where there was some request

for a telephone presentation, but keep in mind, we had

previously set the matter in November, and then there were

administrative motions that went back and forth and the matter

was continued to today.

Now then, we have two matters before the Court.  One is

whether Mr. Silverman, non-party, is allowed to intervene in

this matter, and then whether this Court has jurisdiction to

hear the case in light of the fact that the matter is before

the Ninth Circuit Court of Appeals with regards to the Court's

decision in denying -- strike that -- in dismissing the matter

in ECF 97.

1       The Court recognizes that the Ninth Circuit, in its

2   wisdom, could, in fact, reverse the Court's ruling and the

3   matter would start anew from where it was at the time that the

4   motion was granted.  If they do not, then the matter proceeds

5   in the other filed cases throughout the state as well as in

6   other jurisdictions.

7       Finally, we then look to see -- if the Court does find

8   that Mr. Silverman is properly before the Court and the Court

9   has jurisdiction to hear this matter, the motion to seal was

10  tentatively denied, and it was thereafter that we received

11  Mr. Silverman's objection to an order that actually was

12  consistent with his request.

13      And then, finally, the Court will have some questions with

14  regards to whether, in fact, the Court can finally rule and

15  whether a stay pending the appeal is most appropriate.  And

16  the Court has already given a tentative order in ECF 119.

17      With that in mind, counsel for Mr. Silverman, if you would

18  begin with your argument with regards to why Mr. Silverman at

19  this time should be able to intervene and whether the Court has

20  jurisdiction.

21      **MR. CLARY:**  Certainly, Your Honor.  And as you noted,

22  since we have a thicket of different motions here, I'm happy to

23  address the issues in whatever order the Court thinks would be

24  most helpful.

25      On intervention, the place that I'd start is the Court's

1  tentative ruling, which turned on Local Rule 7-11's timeline

2  for filing an opposition to an administrative motion to seal.

3      Now, I recognize that the stakes of the question in this

4  particular case might be a little small, given the Court's

5  tentative denial of the motion to seal on the merits, but we do

6  respectfully disagree with the suggestion that Mr. Silverman

7  filed too late, and I'd offer a couple of reasons why.

8      The first is the difficult situation that this would put

9  members of the press and public trying to intervene to oppose

10  sealing in, especially when contrasted with what the local

11  rules have to say in Rule 79-5 about a non-party's motion to

12  intervene and unseal.  So if a member of the press and public

13  only has the four days, under Rule 7-11, to learn that a motion

14  to seal exists, obtain counsel, draft a full-fledged motion to

15  intervene and oppose, and get that docketed, those are going to

16  be serious logistical hurdles to be incurred.

17      **THE COURT:**  But here, there wasn't four days.  The

18  tentative ruling was back on September 25th, '24, and I believe

19  Mr. Silverman's request came sometime well thereafter, even a

20  month later.

21      **MR. CLARY:**  It's true, my recollection is it was

22  something like 12 days or a few weeks after the ruling.

23      The point I would emphasize, though, is for a non-party

24  motion to intervene and unseal a document, both the local rules

25  and Ninth Circuit precedent make clear permissive intervention

in the right-of-access context is proper not just days or weeks, but even months or years after an action is closed.

So Rule 79-5 provides expressly that a non-party can intervene and unseal, quote, at any time and specifically contemplates unsealing years after a matter is closed.

The Ninth Circuit, similarly, in cases like *San Jose Mercury News*, *Beckman Industries*, and a number of others that are cited in our paper, has upheld the right of members of the press and public to move to unseal judicial records long after the merits of a case have concluded.

**THE COURT:** But my question was more precise. It had to do not after the merits of the case have concluded but while the case is still pending appeal.

**MR. CLARY:** Yes. So I think the two questions go to the same point, which is that the reason that the rules for non-party intervention in the motion-to-unseal context are so permissive is the Ninth Circuit has repeatedly recognized you don't need an independent jurisdictional basis for a motion that just asks the Court to exercise its own inherent power over its own records, an issue that's collateral to the merits of the proceeding.

And that's the reason why the notice of appeal, similarly, doesn't affect this Court's jurisdiction to act on either the motion to seal the records or the motion to intervene and unseal them. Again, under *Beckman*, we don't need some

1  independent source of jurisdiction to ask this Court to

2  exercise its inherent supervisory power over the records at

3  issue here; and as a result, the fact that the notice of appeal

4  divests this Court of jurisdiction over other matters --

5  right? -- like proceeding to trial on the actual substantive

6  merits of the case, it has no effect on Mr. Silverman's motion.

7       I think it also bears highlighting, the consequences of a

8  contrary ruling would be quite odd because the Ninth Circuit

9  also isn't in a position to hear a motion from Mr. Silverman to

10  unseal this Court's records.  And the appeal of the merits of

11  this case to the Ninth Circuit wouldn't incorporate the

12  document that we're after in the record.  So that would leave

13  us in a situation where there would be no court with

14  jurisdiction to entertain a motion to unseal the materials, and

15  we think, as a practical matter, that can't be right.

16       **THE COURT:**  All right.  Now, the document that you're

17  referencing is the corporate disclosure statement?

18       **MR. CLARY:**  That's right.  Specifically, the

19  supplemental corporate disclosure statement.

20       **THE COURT:**  All right.  And is there any other case or

21  vehicle by which you have access to that information where it's

22  already been made public in some other filings?

23       **MR. CLARY:**  Well, that -- it's one of those cases

24  where, since we don't have access to the specific document

25  we've asked to unseal, we can only go on the Court's

1  characterization of it and our friends' on the other side.  But

2  both the Court's tentative ruling and the defendants' papers

3  indicate that the corporate disclosure statement here is

4  identical to the one that was recently unsealed in

5  *Anoke v. Twitter*.  So on the merits of the case, that's one of

6  the reasons we don't think there's a basis for sealing here.

7       So if that's what Your Honor was thinking of, we have

8  access to a document that we have been told in these

9  proceedings is materially identical by way of the proceedings

10  in *Anoke v. Twitter*.

11       **THE COURT:**  All right.  And then as it relates to the

12  supplemental corporate disclosure statement, just for my

13  benefit, please explain to the Court again why the good cause

14  standard does not apply.  This is referenced in ECF 108 at

15  page 4.  And be sure to either provide the Court with the

16  citations or the portions of your briefing that cite to the law

17  that supports that the good cause standard does not apply.

18       **MR. CLARY:**  Sure.  So I think I would say up-front, as

19  an umbrella point, whether the Court approaches the question

20  through the lens of good cause, the common law, or the

21  First Amendment, we do think the bottom-line answer ends up

22  being the same because, as you can see from the cases cited in

23  our briefing which take those diversity of roads to the same

24  outcome, you end up in the same place because for none of those

25  standards is it a cognizable injury to have it revealed that

1  you have an ownership interest in a corporation.

2      And so if you look to the cases in our papers, we have

3  *Steel Erectors* in the -- a federal district court case out of

4  Georgia, which takes the First Amendment route and concludes

5  that that presumption attaches to corporate disclosure

6  statements.

7      We have a number of cases in there that apply the common

8  law presumption.  So, one with the colorful name of

9  *Mayer v. Patriot Pickle*, if I'm remembering correctly, out of

10  one of the federal district courts in New York, and which

11  collects a number of other cases on the same subject.

12      The way you get there under the relevant legal test,

13  I think this is actually a case where, notwithstanding,

14  you know, the impulse towards constitutional avoidance, the

15  First Amendment analysis is actually the easiest.  That's

16  because the Ninth Circuit has told courts asking whether the

17  presumption of access attaches to a particular kind of document

18  to look to the complementary considerations of experience and

19  logic, either one of which, under Ninth Circuit case law, is

20  sufficient to conclude that a document is presumptively

21  accessible to the public for purposes of the First Amendment.

22      And here, as I read the defendants' papers, we don't

23  actually have a dispute that the experience prong is satisfied.

24  The defendants' opposition to our motion to intervene

25  acknowledged corporate disclosure statements are generally

1    publicly available on courts' dockets; and the raft of case law

2    recognizing a common law or First Amendment presumption of

3    access, I think, only reinforces that conclusion.  So given

4    that we don't seem to have a dispute that these documents are

5    overwhelmingly filed in public, I think that's sufficient to

6    reach the conclusion the First Amendment presumption attaches.

7        Now, that said, I do think the same result obtains under

8    the common law.  And for those purposes, the Ninth Circuit, in

9    *Center for Auto Safety*, explained that the relevant test is

10   whether a document is more than tangentially related to the

11   merits of the case.  And in our view, corporate disclosure

12   statements very much are because they're necessary to

13   evaluating issues of recusal.

14       So the *Patriot Pickle* court, for instance, emphasized

15   corporate disclosure statements essentially provide the gateway

16   to the Court's ability to adjudicate the merits of the case at

17   all because if there's a conflict that would justify recusal,

18   then the Court has no basis ruling on any other substantive

19   motions in the case.

20       And that's a function that really goes to the heart of the

21   public's interest in being assured of judicial integrity, the

22   very function that the right of access to judicial records is

23   intended to advance.

24       Now, with all that said, I do think this is a case where

25   the choice of standard is not necessarily outcome

determinative, and so I acknowledge the Court's tentative

ruling took the position that the good cause standard would

apply.

The thing I would add beyond what we've already said in

our papers is we would urge that, to the extent the Court is of

the view that even the good cause standard wouldn't be

satisfied here, then it would suffice to sort of -- it would

suffice to assume, without deciding, what the relevant standard

is, assume, without deciding, that the most generous standard

for the defendants applies, which would be good cause.

And that is the route that was taken by, as I imagine

Your Honor noticed, the federal district court in

*Anoke v. Twitter*, addressing the same issue.  That decision

assumed, without deciding, that the relevant standard would be

good cause because the choice had no stakes.  The Twitter

parties couldn't demonstrate harm even under the most lenient

possible standard.  And that would lead to back-and-forth

about, you know, exactly which of these is the right lens for a

case in which it would be outcome determinative.

**THE COURT:**  All right.  So I'm going to slowly talk to

give my court reporter a little bit of a rest with her fingers.

**MR. CLARY:**  Apologies, Your Honor.

**THE COURT:**  I can see the smoke coming up here.

I note that the defendants indicate that the shareholders'

expectation of privacy would be violated if the Court granted

this motion to seal.  And one of the questions I had, when you were talking about the standards -- and I probably should have interrupted.  Please explain to the Court the two standards and why you think the Ninth Circuit rejected *Best Odds* and -- the *Best Odds* standard and *Center for Auto Safety*.  If you can just clarify that for our record.

        **MR. CLARY:**  Sure.

So prior to *Center for Auto Safety*, courts had often made the decision between the good cause standard and the common -- stronger common law presumption of access by asking whether a particular document was dispositive or non-dispositive.  Right?  So, you know, a motion for summary judgment which can resolve the whole case would be dispositive in that framework, as contrasted with, say, a discovery motion that just adjudicates the obligation to produce particular documents which would be non-dispositive.

The Ninth Circuit, in *Center for Auto Safety*, clarified that that distinction was too mechanistic.  It didn't capture the reality that there's a much broader range of judicial records that go to that core purpose of allowing the public to oversee the judiciary and have confidence in its operations than the short list of motions that can genuinely dispose of the merits of a case.  And as a result, we think the decision in *Best Odds*, which predates *Center for Auto Safety*, can't be squared with that more capacious understanding.

1      *Best Odds* is very express, that the Court in that case was

2   basing its analysis on the idea that a corporate disclosure

3   statement is non-dispositive.  But we know, with the benefit of

4   the Ninth Circuit subsequent case law, what we actually need to

5   ask is:  Is a corporate disclosure statement more than

6   tangentially related to the merits of the case?

7      And for the reasons we offered, the idea that the

8   corporate disclosure statement is essential to issues of

9   recusal that go to the heartland of judicial integrity in a way

10   that a discovery motion does not --

11      **THE COURT:**  But their position is that the owners' and

12   shareholders' expectation of privacy will be violated if I

13   grant this motion not to seal.  So --

14      **MR. CLARY:**  I think -- oh, sorry, Your Honor.

15      I think the trouble with that argument is it describes

16   every corporate disclosure statement, when we all agree that

17   the overwhelming majority of corporate disclosure statements

18   are not sealed.

19      I haven't seen anything in the submissions in support of

20   sealing in this case that could not be copy and pasted into a

21   motion to seal the corporate disclosure statement of any other

22   company that has stakeholders.

23      But if that's enough to justify sealing this kind of

24   document, then they'd be sealed throughout the federal

25   judiciary, and the public would have to take a just-trust-us

1  attitude about all questions of recusal and whether or not

2  federal judges have done an adequate job assessing whether or

3  not there's a financial interest in play that could call their

4  impartiality into question.  I think the -- and this is,

5  I think, why, you know, the choice of standard, while important

6  in the abstract, doesn't necessarily change the bottom-line

7  outcome here.

8      In any event, even under the good cause standard, the

9  showing would need to be something particularized to this case.

10 It can't be hypothetical and conjectural.  And there's no

11 showing in the papers that, you know, X Corp.'s particular

12 shareholders face some particular risk of harassment, some

13 substantiated concern that if their association is made public,

14 there will be some sort of damage to their reputation.

15     And I think that's illustrated, as Your Honor pointed out

16 in the tentative ruling, by the fact that this information now

17 is public; and as far as I know, and certainly in the record of

18 this case, there's been no suggestion that any injury of any

19 kind came to any of the individuals whose names were disclosed

20 in connection with those proceedings.

21     **THE COURT:**  And speaking of cut and paste, when I

22 reviewed the *Anoke vs. Twitter* case, it seems that it's almost

23 identical in terms of the filings, and that case is now being

24 reviewed.

25     Is there anything about the status of that case or the

content of that case has any bearing on the decision that
this Court will make, since you did say everything is
particularized?  Is there anything different that the Court
should be aware of?

MR. CLARY:  Well, I think the most important
difference is that because the information was unsealed in
*Anoke v. Twitter*, this Court has a consideration before it that
wasn't before the *Anoke* court and that isn't before the
Ninth Circuit in the appeal in *Anoke*, which is:  What's the
impact of the fact that this information is already publicly
known?

That's why, in connection with defendants' motion to stay,
we don't think there's any basis to hold up the resolution of
this case while the Ninth Circuit considers *Anoke v. Twitter*
because, on defendants' own view of what should happen in that
case, the Ninth Circuit is only going to answer:  Was it the
right decision to unseal this information at the time based on
the facts that were before the Court in *Anoke*?

But this Court is confronted with a very different
decision because the information has since become public.  And
given the Ninth Circuit's repeated guidance that publicly
available information cannot be sealed, that one fact suffices
to decide this case without reference to any of the other
considerations that might have been presented in the first
instance.

1              **THE COURT:**  All right.  Thank you.  And thank you for

2      letting me know that *Anoke* is with the E silent.  Thank you.

3              **MR. CLARY:**  Oh, I'm not confident that it is.  That's

4      just how I've been pronouncing it.

5              **THE COURT:**  I believe you might be right.

6         And I'm going to give you an opportunity to consult with

7      your colleague, since your colleague is here, may want to

8      participate; but I want to turn my attention to defense counsel

9      now.

10        Please explain to the Court whether non-party

11     Mr. Silverman even needs to demonstrate independent

12     jurisdiction, given the holding in *Cosgrove vs. National Fire &*

13     *Marine Insurance Company*.

14             **MR. MECKLEY:**  Your Honor, I want to answer that

15     question, but I think we might be able to get to something that

16     I think could obviate the need to explore some of that, and

17     that is -- I always pronounce it *"A NO Key*."  That's just me.

18        But as the Court referred to, we have filed a notice of

19     appeal in *Anoke* that's pending before the Ninth Circuit right

20     now; and, in fact, I think ten days ago the Ninth Circuit

21     issued an order for expedited briefing.  And based on that

22     order, our brief is due in ten days, on December 13th, and we

23     will be filing a brief in ten days.  Pursuant to the judge --

24     the Ninth Circuit's order, briefing will be completed by the

25     end of January in *Anoke*.

1          Contrary to counsel's representation of what is at issue

2    in *Anoke*, in fact, the primary issue in *Anoke* is whether the

3    district court actually properly required my clients to

4    disclose every shareholder in a private corporation in the

5    disclosure statement.  That's the primary issue.  And that

6    issue absolutely will impact this Court because if --

7          **THE COURT:**  Now, their position is somewhat well-taken

8    because, from what I'm understanding, the underpinning of the

9    argument is:  How can a district court judge or the Court make

10   an informed decision about whether they should recuse unless

11   they know who all the shareholders are or who's involved in the

12   decision-making process for the corporation so that they know

13   "Do I have a personal relationship with this individual?"

14   "Do I have a monetary relationship with this person?" and so

15   that they can make sure that there's transparency, that there's

16   confidence in the community in what the Court is doing, and

17   that the Court is exercising its ethical obligation and making

18   sure it's making a clear and thorough examination?  At least

19   that's what I gleaned from the argument I was hearing.

20         **MR. MECKLEY:**  Yes, those are all fair points.  But

21   what you have to look at and what we'll be exploring in our

22   appellate brief is, there's Federal Rule of Civil

23   Procedure 7.1, which is the broad, all-encompassing disclosure

24   rule, and then there's the Court's -- this Court's local rule,

25   and those aren't, at least, written identically.

1          And my understanding is -- and I haven't done a complete

2     survey of the decisions from this district but -- that

3     Judge Illston's ruling might have been the first time that we

4     had an interpretation of the local rule as to this exact

5     scenario.

6          **THE COURT:**  Now, that's a categorical statement.  So

7     now I probably will have some very excited term clerk that's

8     going to start looking to see if that's true or not.

9          **MR. MECKLEY:**  Okay.  But the bottom line is, I think

10    all the concerns that Your Honor just expressed with regard to

11    the need to do a full and fair evaluation to determine whether

12    to recuse yourself are applicable with respect to Federal Rule

13    of Civil Procedure 7.1, and that does not require what

14    the Court required here.  You can achieve all those objectives

15    through what 7.1 requires and not go to where we went here.

16         I think the logic behind it, also, if you play that out to

17    public corporations, it doesn't apply.  I mean, public

18    corporations, when they file their disclosure statements, don't

19    list every single person who owns a share of stock in that

20    corporation.  I might own Microsoft stock.  I guarantee you

21    Microsoft isn't doing a corporate disclosure statement listing

22    me on there.  And it's sort of unfair to apply that same type

23    of, you know, parameters to private corporations when it's not

24    applied to the public corporations.

25         Here --

1          **THE COURT:**  So what parameters would you suggest?

2          **MR. MECKLEY:**  The -- well, with respect to private

3    corporations, judges -- and public corporations as well --

4    judges know their own personal investments.  They know:  Have I

5    invested in this company?  If it's a private company, they

6    would certainly know:  Have I invested in this company or not?

7          The interests of, you know, maintaining an impartial

8    judiciary, I think, are achieved through the judge's own

9    knowledge and that providing an expansive list of every --

10   whether it's a private corporation or public corporation's --

11   shareholder or investor doesn't serve that need and, in fact,

12   goes beyond to the point of, you know, extremist, which I think

13   the committee drafters, the drafting rules to 7.1 acknowledge

14   that, you know, this isn't something that is to be used and

15   create an undue burden on parties.

16         In fact, I think I have some of the notes here.  This is

17   the advisory committee notes to FRCP 7.1 (as read):

18              "[Even though the disclosures] may seem limited,

19         they are calculated to reach a majority of the

20         circumstances that are likely to call for

21         disqualification on the basis of financial

22         information that a judge may not know or recollect."

23         And the advisory committee notes further noted -- and this

24   is a quote -- quote (as read):

25              "Framing a rule that calls for more detailed

1          disclosure will be difficult."  Closed quote.

2          And emphasized that, quote (as read):

3              "Unnecessary disclosure requirements place a

4          burden on the parties and on courts."

5          And, finally (as read):

6              "Corporate disclosure statements are required to

7          contain limited information but are not used to be

8          discovery tools."

9          Now, here, I would suggest this isn't necessarily a

10   discovery tool because the intervenor is not a party, but I

11   will suggest that it is something other than just a legitimate

12   interest.  Maybe it is --

13          **THE COURT:**  What would that be?

14          **MR. MECKLEY:**  -- akin to a discovery tool in that this

15   type of motion is not being filed in every case where there's a

16   private corporation who is a party and filing a corporate

17   disclosure statement.

18          **THE COURT:**  But I'm still confused from the

19   perspective that there was a comment that this is already in

20   the public coffers.  This is something that someone can find in

21   other filings.  So why the resistance in this case to share

22   something that's already out there?

23          **MR. MECKLEY:**  Well, Your Honor, because we are

24   challenging it before the Ninth Circuit and because there's

25   some very unique circumstances here that I feel hindered my

1  client.  Specifically, Judge Illston issued an order to file

2  the unsealed corporate disclosure statement.  She did that on,

3  I believe, a Thursday, and she gave us 15 days to do it.

4      We were intending to file a notice of appeal and seek a

5  stay in that period.  On the Friday, one day after her order is

6  issued, my client is contacting me and saying:  It's public.

7  What is going on?  We don't have to file this for 15 days.

8          THE COURT:  How was your client injured, though?

9          MR. MECKLEY:  Well, by due process.  We weren't

10  allowed to file per -- the statement per the Court's actual

11  direction and take appropriate steps to protect our interests

12  because the disclosure statement was unsealed.  Not -- from our

13  standpoint, it just got unsealed; and then we contacted the

14  clerk and they immediately resealed it.  But in that 24-hour

15  window -- not our fault -- 24-hour window, intervenor got ahold

16  of it, publishes it; it comes out to the world.  And that's

17  through no fault of my clients that that happened.

18          THE COURT:  That's not our situation here, though.

19          MR. MECKLEY:  It's not.  But that's -- there's no way

20  to evaluate this case without taking it in the context of *Anoke*

21  in the sense of what happened in *Anoke* and where *Anoke* is now.

22      And the bottom line, which I think is my whole pitch to

23  you today, is that staying the ruling on this for the very

24  brief time until the Ninth Circuit issues its ruling --

25          THE COURT:  Which would be probably in March?

1          **MR. MECKLEY:**  February or March.  Okay.

2      In this intervening period, we're having -- which promotes

3  the ordinary course of justice, judicial efficiency, it

4  simplifies issues.  There's no pending deadlines in this case.

5  Your Honor already has the unsealed corporate disclosure

6  statement, so you've had the opportunity to make a

7  determination regarding recusal or disqualification.  It sort

8  of begs the question:  What is the issue?  What's the urgency

9  that the intervenor expresses here when there's nothing to be

10  decided?  This case is up on appeal.  You've reviewed the list

11  and can make any decision regarding recusal.

12          **THE COURT:**  But would you --

13          **MR. MECKLEY:**  So waiting --

14          **THE COURT:**  But would you --

15          **MR. MECKLEY:**  -- three months, it doesn't hurt

16  anything.

17          **THE COURT:**  Would you agree that I'm guided by the

18  United States Supreme Court, SCOTUS, and the Ninth Circuit --

19  anything else is persuasive authority -- and that the

20  Ninth Circuit has clearly stated that it leans towards

21  transparency and open courts and information and that if

22  something is to be sealed, the burden is on the person or the

23  party that's asking for the sealing and to be able to qualify

24  under certain criterion?

25      So the two areas that I'm most curious about is the injury

1   to your client if I do not grant your request to seal and then

2   how does it invade on the expectation of privacy of a

3   shareholder.  Does a shareholder invest in a company and expect

4   to be shielded from the public that that's where they're

5   putting their money?

6          **MR. MECKLEY:**  Sure.

7       So to your first question, absolutely.  The

8   U.S. Supreme Court and the Ninth Circuit dictate what the Court

9   must do, for sure.

10      I do take an issue with the characterization of a

11  corporate disclosure statement as somehow tangentially related

12  to the underlying merits of the case.  That is a stretch too

13  far.  That snaps, in my opinion.

14      We all know what dispositive motions are:  motions to

15  dismiss, Rule 12(f) motions, motions for summary judgment.  A

16  corporate disclosure statement is not in any way a dispositive

17  motion or in the same universe as a dispositive motion.

18      And the Ninth Circuit case law, particularly *Philips* --

19  which we cited in our papers -- and the *Best Odds* case --

20  which, granted, it's from a district court in Nevada, was not

21  overturned by the *Auto Safety* case -- they draw a distinction.

22  Is this a dispositive or a non-dispositive?  And when it's a

23  non-dispositive -- we quoted this -- private interests

24  predominate.  So that, I think, addresses the law.

25      Now, with respect to your questions about the privacy

1  interests, we submitted the declaration that made clear

2  invest- -- the company keeps its information private.  It does

3  not publicly disclose it.  It keeps it confidential.  Pursuant

4  to some investors, there's almost a contract- -- there is a

5  contractual agreement to keep it private and confidential.

6  Doesn't make it public.

7       And people who are investing in a private corporation have

8  a belief and assumption that their investments will be private.

9  I think that is within -- particularly here in California where

10 we have such a broad privacy right under Article I, Section 1,

11 privacy interests extend to your financial dealings and

12 financial holdings, and that is to be expected here.  So the

13 interest -- there is a potential harm.

14      Now, the question is:  Well, has there been a harm?  Have

15 they shown that someone has been harassed in the interim, when

16 this information has been released, to now?  I don't think that

17 should be the standard.  I don't think we should be basing the

18 standard on:  Have you been hurt so now we're going to do

19 something?  It's the potential that you could be hurt by this.

20 And this is -- as we know, these are companies and people that

21 are very much in the public eye and --

22           **THE COURT:**  The potential harm is?

23        **MR. MECKLEY:**  Well, potentially being harassed on any

24 form of social media or in the public sphere, things like that.

25 We live in a very politicized environment, and that type of

harm, I think, is real.

THE COURT:  And then going back to my question about *Cosgrove vs. National Fire & Marine Insurance Company*, when a third party seeks to intervene solely to unseal a court record, they do not need to demonstrate independent jurisdiction or a common question of law or fact.  And that's in *Cosgrove*, citing *Beckman Industries Incorporated vs. International Insurance Company*, found at 966 F.2d 470, decided by the Ninth Circuit in 1992.

Do you feel that that passage has any impact on non-party Silverman in that they have to demonstrate any independent jurisdiction for this Court to rule on this?

MR. MECKLEY:  I would not try to rebut or distinguish *Cosgrove*, Your Honor.

THE COURT:  All right.

MR. MECKLEY:  It's applicable law.

THE COURT:  All right.  And then final comments based on all of the arguments made by counsel on behalf of Mr. Silverman?

MR. MECKLEY:  I think I've responded to each of the material arguments that were made.

I, again, reiterate my point that I think a brief stay of this until we have the Ninth Circuit that could weigh in harms no one, gets us guidance from the body, the court that will have, presumably, the, at least, close to next-to-final say in

1    this, and serves the interest of judicial efficiency.

2           **THE COURT:**  All right.  So a stay until the first week

3    of March of 2025?

4           **MR. MECKLEY:**  That's assuming the Ninth Circuit rules

5    that way.  If I were to ask the Court for a specific order, I

6    would ask for a stay until the Ninth Circuit issues its order

7    on the appeal in *Anoke*, which I anticipate shouldn't be much

8    beyond the first quarter.

9           **THE COURT:**  All right.  Counsel, you may respond.

10   Final word.  And take in consideration the request for the

11   stay, the length of the stay, and all of the questions posed by

12   the Court to counsel.

13          **MR. CLARY:**  Thank you, Your Honor.

14       I think I'll direct my remaining comments to the stay

15   issue because I do think it's sort of the last live practical

16   issue in this case.

17       I can't agree with the suggestion that there's no harm to

18   waiting.  The basic logic of the right of access is that there

19   are some things the public should be able to evaluate for

20   themselves without taking on faith the representations of

21   counsel and the Court.

22       Opposing counsel might believe that there is no value in

23   this document becoming public, but at the end of the day,

24   whatever references to it might appear in other documents in

25   this court, we don't have access to it.  We're being denied

access to it.

And I think the case law in the Ninth Circuit and in other jurisdictions is quite clear. Every day the press and public are denied access to a judicial record that they're entitled to see for themselves is a separate and cognizable injury.

On top of that, we're all speculating -- right? -- as to when exactly the Ninth Circuit will or won't resolve this case. It could be March. It could be June. It could be December.

**THE COURT:** But you have my tentative ruling and you know that I am leaning consistent with *Anoke*; and so with that in mind, and also indicating that if I grant a stay, it wouldn't be beyond the first week of March.

**MR. CLARY:** Well, we're certainly pleased to hear that Your Honor is leaning in the direction of denying the motion to seal. We would still urge that the Court go ahead and finalize the tentative ruling and, in particular, that the denial of the motion be with prejudice because, as I think opposing counsel's comments indicated, at the end of the day, this is a case in which the Twitter parties got a stroke of bad luck.

In the *Anoke* proceedings, they expected to have more time to seek appellate review of whether or not the material should be unsealed. That didn't happen. The material became public, showed up in the pages of the *Washington Post*. It's now publicly available on the docket of the U.S. District Court for the Northern District of California. Thanks to the appeal in

*Anoke*, it's now part of the record of the U.S. Court of Appeals for the Ninth Circuit.

This information is as public as public can get.  And so I'm just not sure whether you're thinking about whether the denial of the motion should be with prejudice or not or whether to grant a stay.  I'm not sure what value there could be to further proceedings.  This -- the information that they want to keep private is publicly known; and secrecy, as the Ninth Circuit emphasized in *Copley Press*, is a one-way street.

**THE COURT:**  Well, they're suggesting that if I prematurely deny their motion to seal, which is their position, then I'm compounding the issue and that people can be harassed on social media, not to mention Twitter, but can be harassed through some social media vehicle.

And you've indicated that it was in the *Washington Post*, and you kind of flirt with the idea that it's possibly highly probable that it's going to be the same information that is contained in this docket.

So with that said, would a stay until March harm the public?

**MR. CLARY:**  I think it would because it undermines the public's ability to assure themselves that the document actually contains what the defendants say it contains.

At the end of the day, if we're thinking about that core function of allowing the public to understand for itself did

this Court fully and fairly evaluate issues of recusal before adjudicating the case, the only way to serve that function is for the actual document, the one on which this Court, in fact, relied before adjudicating the case, be available to the public.  And the defense's position seems to be:  No, the public doesn't get to assure itself of that.

That's the injury to the interests protected by the First Amendment and common law that will continue to be inflicted each day a stay is in effect.

And so we do think that there is still a public interest in having access to this information, notwithstanding the disclosure of the document in *Anoke*.

The last thing I would -- oh.

**THE COURT:**  Before you reach your last point, let's hypothetically say that the Ninth Circuit reviews *Anoke*, decides that we're going to affirm in part, remand on maybe doing some surgery with regards to the order.  Maybe redacting something; maybe deleting something.  I don't know.  But what if there's some corrective measure that the Ninth Circuit implores that then becomes binding on this Court?  Is there harm in waiting to see if that, in fact, takes place?

**MR. CLARY:**  Well, so I guess I'd offer two points in response.  One is that the harm is that sort of public interest in assuring itself that the document really is what it's represented to be and played the role that it was supposed to

1   have played in the proceedings.

2       But I also want to underline, I think it's extremely

3   speculative to think that the Ninth Circuit's decision is going

4   to touch on any of the issues that opposing counsel has

5   suggested it will.  Without sort of, you know, bothering the

6   Court with the substance of the same counsel's disputes over

7   the motion to dismiss the appeal in *Anoke*, the Ninth Circuit

8   has repeatedly held that a decision to -- or, sorry -- an

9   appeal of a decision to unseal judicial documents becomes moot

10  once the documents are available to third parties.

11      We're happy to supply that case law to the Court.  There's

12  a mountain of it.  And it's true of every federal jurisdiction

13  that I'm aware of.

14      The highest-profile example would be the -- the Court

15  might be familiar with the Cosby deposition, which was case in

16  which a district court inadvertently made a judicial record

17  available prematurely to the news media, attempted to swiftly

18  reseal it.  Cosby appealed.  The Third Circuit said:  Appeal

19  dismissed as moot.  You're out of luck.  Once a document is

20  widely available to third parties on the Internet, there's no

21  realistic relief that an appellate court can provide.  And

22  I think that's the situation here.

23      The other point I would emphasize is the defendants have

24  suggested that the Ninth Circuit in *Anoke* will decide whether

25  or not this information should have been included in the

 1    disclosure statement in the first instance.  I think that's

 2    even farther afield.  That isn't the order that the defendants

 3    appealed.  The order to disclose that information was issued

 4    years before Mr. Silverman intervened in that case.  The

 5    defendants didn't appeal it at the time.  The time to appeal

 6    that order passed.  And the defendants in *Anoke* did not

 7    designate that order in their notice of appeal to the

 8    Ninth Circuit.

 9          I'm not -- I sort of struggle to imagine how and why the

10    Ninth Circuit would reach out to decide a far-reaching argument

11    that the Northern District of California's local rules are

12    incompatible with a constitutional right to privacy when the

13    order that they've actually appealed is just our standalone

14    motion to unseal the document that was actually filed.

15          I think it's even less likely that the Ninth Circuit is

16    going to overhaul this district's local rules in a way that

17    would affect the merits of this appeal, especially since right

18    after the advisory committee note that my friend on the other

19    side was quoting to the federal rules governing corporate

20    disclosure statements, the advisory committee noted that the

21    federal rule does not prohibit local rules that supplement the

22    disclosures required under the national rule.

23          And there are any number of other courts -- I'm familiar

24    with the Northern District of Texas -- that have local rules

25    that are identical to the one that the Northern District of

California follows because a number of jurisdictions have
supplemented the federal rule to capture something closer to
the full range of scenarios that might call for recusal under
the canons of judicial conduct.

And if I could just tie that back to what I think is the
substance of this case for a second.  I think that underlines
why these documents are important to the public.  As the
advisory committee note my colleague quoted indicates, they're
not discovery devices.  They're not like discovery materials.
They're ultimately designed to influence a question that's much
more central to public oversight of the judiciary.  They're
supposed to be the mechanism by which parties, the courts, and
the public have confidence that the judge assigned to
adjudicate a case is in a position to do so impartially.  And
the public can't have confidence in the judiciary if that
decision to recuse is made on the basis of a secret record to
which it will never have access.

**THE COURT:**  Okay.  Thank you.

All right.  For both counsel, if there is any additional
on-point case citations you would like to share with the Court
from the Ninth Circuit and from SCOTUS, from the United States
Supreme Court, you have until the end of the business day
tomorrow, one page, citations with a brief, succinct statement
as to what it stands for.  If it does not stand for that, when
I read it, that's going to be problematic.  So make sure that

1     it's on point if there's something you would like for me to

2     read in supplement to support your points today.

3        And thank you so much.  A decision will be provided within

4     two weeks of today's date, if not sooner.  All right?

5          **MR. CLARY:**  Thank you, Your Honor.

6          **THE COURT:**  Thank you.  The matter is under

7     submission.

8          **MR. MECKLEY:**  Thank you, Your Honor.

9          **THE COURT:**  Thank you.

10          **THE COURTROOM DEPUTY:**  Thank you.  Court is adjourned.

11             (Proceedings adjourned at 2:43 p.m.)

12                  ---o0o---

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:  Monday, January 6, 2025

7

8

9

10

11    _____

12          Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

13          CSR No. 7445, Official United States Reporter

14

15

16

17

18

19

20

21

22

23

24

25